CHHABRA LAW FIRM, PC
ROHIT CHHABRA (SBN 278798)
Email: rohit@thelawfirm.io
257 Castro Street Suite 104
Mountain View, CA  94041
Telephone: (650) 564-7929

**Attorney for Plaintiff**
Open Source Security Inc. and
Bradley Spengler

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| OPEN SOURCE SECURITY INC. and Bradley Spengler | Case No.: 3:17-cv-04002-LB |
| Plaintiffs, | Date Filed: July 17, 2017 |
| v. | FIRST AMENDED COMPLAINT **[Fed. R. Civ. P. 15 (a) (1)(B)/ Fed. R. Civ. P. 15 (a)(2)]** |
| BRUCE PERENS, and Does 1-50, | 1. DEFAMATION PER SE 2. DEFAMATION PER QUOD 3. FALSE LIGHT 4. TORTIOUS INTERFERENCE WITH PROSPECTIVE ADVANTAGE |
| Defendants. | |
| | **DEMAND FOR JURY TRIAL** |

## **FIRST AMENDED COMPLAINT**

Plaintiff Open Source Security, Inc. ("OSS" or "Plaintiff") and Plaintiff Bradley Spengler

("Spengler" or "Co-Plaintiff") (Collectively "Plaintiffs"), jointly and severally allege against

Defendant Bruce Perens ("Defendant") and Does 1-50 (Collectively, including Defendant Perens, "Defendants"), the following:

## INTRODUCTION

1.      Defendant is a computer programmer, known for his creation of the Open Source Definition and co-founder of the Open Source Initiative. This action arises from Defendants' abusive and false claims published in a blog post[1] ("Original Posting") of June 28, 2017 and further due to Defendants' abusive and false claims published in an updated/revised version of the blog post[2] ("Updated Posting"), on Defendant's website, http://www.perens.com (the "Website"), regarding Plaintiffs' business, which has resulted in substantial harm to Plaintiffs' reputation, goodwill, and future business prospects.

## PLAINTIFFS

2.      Plaintiff OSS is a corporation registered in the State of Pennsylvania, with its regular and established place of business in the State of Pennsylvania.

3.      Plaintiff Bradley Spengler is the chief executive officer and lone share-holder of OSS, residing in the State of Pennsylvania.

## DEFENDANTS

4.      Defendant is an individual who wrote, or provided instructions to write, the Original Posting, the Updated Posting, or a combination thereof (Collectively referred as "the Postings"), at issue, and based on information and belief, owns and operates the Website, and further based on information and belief, is a citizen and resident of Berkeley, California, and further based on information and belief published the Postings from Berkeley, California.

---

[1] Bruce Perens, *Warning: Grsecurity: Potential contributory infringement and breach of contract risk for customers,* BRUCE PERENS (Jun 28, 2017), http://perens.com/blog/2017/06/28/warning-grsecurity-potential-contributory-infringement-risk-for-customers/ (last visited Jun 29, 2017). A true and correct copy is attached hereto as **Exhibit 1**. Also See Decl. of Rohit Chhabra, Exhibit 12.

[2] Bruce Perens, *Warning: Grsecurity: Potential contributory infringement and breach of contract risk for customers,* BRUCE PERENS (Jun 28, 2017, updated Jul 10, 2017), http://perens.com/blog/2017/06/28/warning-grsecurity-potential-contributory-infringement-risk-for-customers/ (last visited Jul 14, 2017). A true and correct copy is attached hereto as **Exhibit 2**. Also See Decl. of Rohit Chhabra, Exhibit 12.

5.      Defendant Doe 1 is a company or individual that provides the server(s) to host the Website, doing business in California, and has provided assistance and support to Defendant Perens to publish the Postings.

6.      Defendant Doe 2 is a company or individual that helped write the Postings at issue, doing business in California.

7.      Plaintiffs are not aware of the true names, identities, and/or capacities of defendants sued herein under the fictitious names of "Does." Based on information and belief, Plaintiffs allege that each Doe defendant is responsible in some manner forming the basis of this complaint. It is further alleged that Plaintiffs' injuries were directly or proximately caused by such defendants. Plaintiffs will amend this complaint to allege their true names when ascertained.

8.      It is alleged each defendant aided and abetted the actions of the defendants set forth below, in that each defendant had knowledge of those actions, provided assistance and benefited from those actions, in whole or in part. Each of the defendants was the agent of each of the remaining defendants, and in doing the actions hereinafter alleged, was acting within the course and scope of such agency and with the permission and consent of other defendants.

## JURISDICTION

9.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332. Diversity of citizenship exists since the parties are citizens of different states. Further, the amount in controversy exceeds $75,000 with respect to Plaintiffs' claims against each Defendant.

## VENUE

10.     Venue is proper in the Northern District of California under 28 U.S.C. §1391(b)(2), as a substantial part of the events giving rise to the claims at issue in this lawsuit occurred in this District.

## INTRADISTRICT ASSIGNMENT

11.     Assignment to the San Francisco Division of this Court is appropriate under Civil L.R. 3-2(d), in that, based on information and belief, Defendant resides in the County of Alameda. In addition, this action involves dissemination of the defamatory Postings using the Google search engine and Google, Inc. has a substantial presence in San Francisco. Further, Cloudflare, Inc., through its services, shields the true location of the server hosting the Website, including the identity of defendant

Doe 1, provides managed Domain Name Service (DNS) to the Website, and is headquartered in San Francisco.

## FACTS COMMON TO ALL COUNTS

12.     Plaintiffs provide kernel hardening security software, in the form of source code ("Patches"), using licensed work of the Linux Operating System kernel that is released under the  GNU General Public License, version 2 ("GPLv2"), under the trade name of Grsecurity® to their customers. At the time the Postings were published, Plaintiffs had approximately 45 private entities as customers (individually "Customer", collectively "Customers") throughout the United States and all over the world via their website[3].

13.     The Patches are released under the GNU General Public License, version 2 ("GPLv2").[4]

14.     Section 6 of the GPLv2[5] provides, in part:

> Each time you redistribute the Program (or any work based on the Program), the recipient automatically receives a license from the original licensor to copy, distribute or modify the Program subject to these terms and conditions. You may not impose any further restrictions on the recipients' exercise of the rights granted herein.

15.     As defined by the GPLv2, the Patches that have already been distributed or provided to Customers are the Program over which the license applies. [6]

16.     The Program, as defined in the GPLv2, does not include future versions of the software that have not yet been developed, created, or released under the GPLv2.[7]

---

[3] Open Source Security, Inc., *Grsecurity*, http://www.grsecurity.net (last visited Jul 16, 2016).

[4] See Open Source Security, Inc., *Download*, GRSECURITY, https://grsecurity.net/download.php (last visited Jul 16, 2016).

[5] Free Software Foundation, *The GNU General Public License, version 2,* THE GNU OPERATING SYSTEM AND THE FREE SOFTWARE MOVEMENT (June 1991), https://www.gnu.org/licenses/old-licenses/gpl-2.0.html (last visited Oct 1, 2017). A true and correct copy is attached hereto as **Exhibit 3**. Also See Decl. of Rohit Chhabra, Exhibit 12.

[6] See Ex. 3, *supra*, Section 0.

[7] See generally Ex. 3, *supra*.

17.     The Patches are provided to Customers contingent upon a Stable Patch Access Agreement ("Access Agreement"), which is limited to governing access to stable versions of the Grsecurity® product from Plaintiffs' resources and servers.[8]

18.     The Access Agreement provides, in part:[9]

> The User has all rights and obligations granted by grsecurity's software license, version 2 of the GNU GPL. These rights and obligations are listed at http://www.gnu.org/licenses/old-licenses/gpl-2.0.en.html.
>
> Notwithstanding these rights and obligations, the User acknowledges that redistribution of the provided stable patches or changelogs outside of the explicit obligations under the GPL to User's customers will result in termination of access to future updates of grsecurity stable patches and changelogs.

19.     The GPLv2 further states, in part:[10]

> When we speak of free software, we are referring to freedom, not price. Our General Public Licenses are designed to **make sure that you have the freedom to distribute copies of free software** (and charge for this **service** if you wish), that you receive source code or can get it if you want it, that you can change the software or use pieces of it in new free programs; and that you know you can do these things.

(emphasis added).

20.     Since Plaintiff OSS is a licensee of the Linux kernel code under the GPLv2, the "[f]reedom to distribute copies of free software" as a service, also applies to Plaintiffs. Freedom means the right *to* perform an action, including the right *to not* perform an action. Therefore, the freedom to distribute copies of the Patches also includes the freedom to not distribute copies of the Patches to any entity, at the time of its release, by Plaintiffs.

---

[8] Open Source Security, Inc., *Stable Patch Access Agreement*, GRSECURITY (Oct. 2, 2016). A true and correct copy is attached hereto as **Exhibit 4**. Also See Decl. of Rohit Chhabra, Exhibit 12.

[9] *Id.*, *Redistribution*

[10] Ex. 3, supra, *Preamble*

21.     The Access Agreement provides OSS the right to exercise their freedom to not distribute copies of free software to any Customer, *as a service*, if the Patches are redistributed outside of the explicit obligations under the GPLv2 to the customer's users.[11]

22.     The Access Agreement does not prevent any Customer from exercising their right to redistribute the Patches, if they choose to do so.

23.     It is common knowledge in the open source community that Red Hat is a multinational open source software company and is listed on the New York Stock Exchange. Further, it is common knowledge in the open source community that Red Hat has been employing similar policies, limiting its services if a user exercises its right to redistribution, under the GPLv2, since at least 2003.

24.     On March 5, 2011, Bradley Kuhn, GPL expert, and President of the Software Freedom Conservancy, wrote a blog post about Red Hat's business practices:[12]

> I do have strong, negative opinions about the [Red Hat Enterprise Linux] business model; I have long called it the "if you like copyleft, your money is no good here" business model. It's a GPL-compliant business model merely because the GPL is silent on whether or not you must keep someone as your customer. **Red Hat tells [Red Hat Enterprise Linux] customers that if they chose to engage in their rights under GPL, then their support contract will be canceled.** I've often pointed out (although this may be the first time publicly on the Internet) that **Red Hat found a bright line of GPL compliance, walked right up to it,** and were the first to stake out a business model right on the line.

(emphasis added).

25.     As reported by journalist Sam Varghese of ITwire news on March 11, 2011, Red Hat has in its terms and conditions placed "on its customers - anyone who redistributes its GPL-ed code will lose support from the company."[13]  When Sam Varghese asked Bradley Kuhn about Red Hat's distribution limitation, Kuhn stated:

---

[11] *Ex. 4, Redistribution, supra.*

[12]  Bradley M. Kuhn, The Slur "Open Core": Toward More Diligent Analysis (March 5, 2011), http://ebb.org/bkuhn/blog/2011/03/05/open-core-slur.html (last visited, Oct 1, 2017). A true and correct Copy has been attached hereto as **Exhibit 5.** Also See Decl. of Rohit Chhabra, Exhibit 12.

[13] Sam Varghese, *GPL expert gives Red Hat the all-clear,* ITWIRE  (March 11, 2011), https://www.itwire.com/opinion-and-analysis/open-sauce/45725-gpl-expert-gives-red-hat-the-all-clear (last

> To my knowledge, Red Hat is in compliance with GPLv2 and GPLv3 on all their distributions and business models.
> ...
> The question comes down to whether or not telling someone 'your money's no good here, I don't want to provide services to you anymore' is a 'further restriction'. **I'm not persuaded that it's a 'further restriction'.** I agree it's an unfortunate consequence, but if we interpreted the GPL to say that you were required to keep someone as a customer no matter what they did, that would be an unreasonable interpretation.[14]

(emphasis added).

26. Mr. Kuhn has further opined:

> Now, I'm talking [] about the letter of the license. The spirit of the license is something different. GPL exists (in part) to promote collaboration, and if you make it difficult for those receiving your distributions to easily share and improve the work with a larger community, it's still a fail (in a moral sense), **but not a failure to comply with the GPL.**[15]

(emphasis added).

27.     Mr. Kuhn stated that Red Hat had been employing such business practices since at least 2003.[16] Mr. Kuhn further clarified Red Hat's business model has been consistent for over a decade.[17]

28.     The Access Agreement can be terminated at any time for any reason.[18]

29.     OSS has the right to refuse future service to any customer for any reason.[19]

---

visited, August 7, 2017). A true and correct copy has been attached hereto as **Exhibit 6.** Also See Decl. of Rohit Chhabra, Exhibit 12.

[14] *Id.*

[15] Bradley Kuhn, *Thoughts On GPL Compliance of Red Hat's Linux Distribution,* EBB.ORG, at p. 2 (March 11, 2011) http://ebb.org/bkuhn/blog/2011/03/11/linux-red-hat-gpl.html (last visited August 7, 2017). A true and correct copy is hereto attached as **Exhibit 7.** Also See Decl. of Rohit Chhabra, Exhibit 12.

[16] Ex. 6, *supra*.

[17] Ex. 7: *supra,* at p. 3, stating "The [Red Hat Enterprise Linux] model ... has been consistent for **nearly a decade**. (It was once called the "Red Hat Advanced Server", but **the business model seems to be the same**)." (emphasis added).

[18]  See, Ex. 4, *supra*.

[19] As long as it is permitted by local, state, and federal laws and regulations.

30.     "[A] trader or manufacturer ...[that] carries on an entirely private business, and can sell to whom he pleases; ... he may cease to do any business whenever his choice lies in that direction... ." *United States v. Trans-Missouri Freight Association,* 166 U.S. 290, 320-21 (1897).

31.     "A manufacturer of course generally has a right to deal, or refuse to deal, with whomever it likes, as long as it does so independently." *Monsanto Co. V. Spray-Rite Service Corp.* 465 U.S. 752, 761 (1984).

32.     The Access Agreement enforces Plaintiffs' right to refuse business with any Customer and refuse to distribute free software at its discretion, as long as it is lawful.  In exercising its right to distribute free software as it chooses to, OSS is doing so independently.

33.     Defendant is recognized and well known in the Open Source community. He "is one of the founders of the Open Source movement in software, and was the person to announce "Open Source" to the world. He created the Open Source Definition, the set of legal requirements for Open Source licensing which still stands today." [20]

34.     Defendant "instructs engineers in how to comply with legal requirements and how to deal with intellectual property issues in their own work, and produces clarity for attorneys who are working on issues of computer software."[21]

34.     Defendant was an expert witness for the plaintiff in the appeal of *Jacobsen v. Katzer*[22], which established the legality of Open Source licenses."[23]

35.     Defendant has worked as a case strategy consultant for Google's outside counsel in the district court case of *Oracle v. Google*.[24]

36.     Defendant has also taught Continuing Legal Education classes to attorneys in many states.[25]

---

[20]  Perens.com, *About Bruce Perens*, BRUCE PERENS, http://perens.com/about-bruce-perens/ (last visited, Sep 29, 2017). A true and correct copy is attached hereto as **Exhibit 8.** Also See Decl. of Rohit Chhabra, Exhibit 12.

[21]  *Id.*

[22] 535 F. 3d 1373 (2008)

[23] *Id.*

[24]  *Id.*

37.     Defendant was keynote speaker at the Baker and Mackenzie Tech Days 2015, a Silicon Valley event attracting over 250 attorneys.[26]

38.     Defendant has also published more than 24 books on open source software, all but one have been profitable and "several still sell well more than a decade after publication."[27]

39.     Defendant is aware that "publicity [is] a tool" available to him.[28]

40.     Defendant acknowledges that he is well versed with the law. He has stated the following while asserting his view point to a commenter on Slashdot (http://www.Slashdot.org):[29]

**Re:Please Read The Entire Statement (Score:3)**

by Bruce Perens ( 3872 ) <bruce@perens.com> on Sunday July 09, 2017
@07:56PM (#54775533) Homepage Journal

OK, if you're a real lawyer, I have no problem arguing law with you. I've won against folks who were admitted to the supreme court before.

41.     Defendants published statements in the Original Posting on June 28, 2017.[30]

42.     In the Original Posting, Defendants published:

**Warning: Grsecurity: Potential contributory infringement and breach of contract risk for customers**

It's my strong opinion that your company should avoid the Grsecurity product sold at grsecurity.net because it presents a contributory infringement and breach of contract risk.

---

[25] *Id.*

[26] *Id.*

[27] *Id.*

[28] Bruce Perens, Commenting to *Re: Why does no one care that Brad Spengler of GRSecurity is blatantly violating the intention of the rights holders to the Linux Kernel?* DEBIAN.ORG, (Jun 14, 2017), https://lists.debian.org/debian-user/2017/07/msg00814.html  (last visited Jul 16, 2017) A true and correct copy of the cited webpage is attached hereto as **Exhibit 9**. Also See Decl. of Rohit Chhabra, Exhibit 12.

[29] Defendant's Special Motion to Strike [hereinafter, Def.], Ex. A., at p. 55. [ECF Dkt No. 11-2]

[30] Ex. 1, *supra.*

...

Currently, Grsecurity is a commercial product and is distributed only to paying customers. My understanding from several reliable sources is that customers are verbally or otherwise warned that if they redistribute the Grsecurity patch, as would be their right under the GPL, that they will be assessed a penalty: they will no longer be allowed to be customers, and will not be granted access to any further versions of Grsecurity. GPL version 2 section 6 explicitly prohibits the addition of terms such as this redistribution prohibition.

It is my opinion that this punitive action for performance of what should be a right granted under the GPL is infringing of the copyright upon the Linux kernel and breaches the contract inherent in the GPL.

As a customer, it's my opinion that you would be subject to contributory infringement by employing this product under the no-redistribution policy currently employed by Grsecurity.
...
In the public interest, I am willing to discuss this issue with companies and their legal counsel, under NDA, without charge.

I am an intellectual property and technology specialist who advises attorneys, not an attorney. This is my opinion and is offered as advice to your attorney. Please show this to him or her.

(emphasis in original, signifying title of the publication.)

43.     On July 9, 2017, at or about 2:10 p.m., the Original Posting was partially reproduced, and linked, on slashdot.org, a website well known by programmers and software developers in the Open Source community.

44.     On July 9, 2017, at or about 4:58 p.m., an anonymous reader commented on the slashdot.org publication of the Original Posting, challenging Defendants' assertion and stating that he Access Agreement of the Grsecurity product did not seem to be violating the GPLv2:[31]

---

[31] Def. Ex. A, *supra*, at p. 11

**Re:Not related to their mark (Score:2)**

by Anonymous Coward on Sunday July 09, 2017 @04:58PM (#54774851)

I've had a look over their agreement here [grsecurity.net], and there is nothing to prevent redistribution of a patch under the terms and conditions of the GPLv2. It states that if it a patch is distributed *outside of the terms of the GPLv2*, then access to *further patches in the future* (not the patch provided) will be denied, on a works for hire basis.

I honestly don't think you've got all your ducks lined up here, and yes, I realise who I'm saying it to and how the hordes here will descend upon me.

45.     On July 9, 2017, at or about 5:09 pm, Defendants responded to the above comment by stating:[32]

**Re:Not related to their mark (Score:5, Interesting)**

by Bruce Perens ( 3872 ) <bruce@perens.com> on Sunday July 09, 2017 @05:09PM (#54774895) Homepage Journal

The problem isn't with the text there. It's with what else they have told their customers. It doesn't even have to be in writing.

I have witnesses. If there was ever a case, obviously the prosecution would have to depose people to make this point. I am not actually planning on a case, though. I think this warning will have the desired effect.

46.     Plaintiffs allege that there are no witnesses who can reasonably provide evidence that would suggest a violation of the GPLv2 by the Grsecurity product. Therefore, Defendants made a false assertion of a material fact in an attempt to justify the statements published in the Original Posting.

47.     On July 10, 2017, at or about 8:11 a.m. (pacific time), Defendants published the Updated Posting, as can be verified by its meta-data: [33]

---

[32] *Id.*

[33] Meta-data of Ex. 2, *supra*, at p. 3 (last retrieved Sep 29, 2017). A true and correct copy is attached hereto as **Exhibit 10**.  Also See Decl. of Rohit Chhabra, Exhibit 12.

1
                   &lt;time&gt;&lt;time class="updated" datetime="2017-07-
2
                   10T15:11:18+00:00"&gt;July 10, 2017&lt;/time&gt;

3      48.    In the Updated Posting, Defendants explicitly stated that the Access Agreement was in

4 violation of the GPLv2, despite admitting, a few hours ago to the slashdot.org reader, that the Access

5 Agreement did not violate the GPLv2. In the Updated Posting, Defendants published:

6

7      **Warning: Grsecurity: Potential contributory infringement and
8      breach of contract risk for customers**

9      It's my strong opinion that your company should avoid the Grsecurity
       product sold at grsecurity.net because it presents a contributory
10     infringement and breach of contract risk.
       ...
11     ... Under their Stable Patch Access Agreement, customers are warned
       that if they redistribute the Grsecurity patch, as would be their right
12     under the GPL, that they will be assessed a penalty: they will no longer
       be allowed to be customers, and will not be granted access to any further
13     versions of Grsecurity. GPL version 2 section 6 explicitly prohibits the
       addition of terms such as this redistribution prohibition.
14

15     ... Grsecurity's Stable Patch Access Agreement adds a term to the GPL
       prohibiting distribution or creating a penalty for distribution. GPL
16     section 6 specifically prohibits any addition of terms.  Thus, the GPL
       license, which allows Grsecurity to create its derivative work of the
17     Linux kernel, terminates, and the copyright of the Linux Kernel is
       infringed. The GPL does not apply when Grsecurity first ships the work
18     to the customer, and thus the customer has paid for an unlicensed
       infringing derivative work of the Linux kernel developers with all rights
19     reserved.  The contract from the Linux kernel developers to both
       Grsecurity and the customer which is inherent in the GPL is breached.
20

21     As a customer, it's my opinion that you would be subject to both
       contributory infringement and breach of contract by employing this
22     product in conjunction with the Linux kernel under the no-
       redistribution policy currently employed by Grsecurity.
23     ...
       In the public interest, I am willing to discuss this issue with companies
24     and their legal counsel, under NDA, without charge.

25

26     I am an intellectual property and technology specialist who advises
       attorneys, not an attorney. This is my opinion and is offered as advice
27     to your attorney. Please show this to him or her.

28 (emphasis in original, signifying title of the publication.)

49.     The statements in the Postings and comments, specifically, including, but not limited to:

(i) "Warning: Grsecurity: Potential contributory infringement and breach of contract risk for customers"

(ii) "It's my strong opinion that your company should avoid the Grsecurity product sold at grsecurity.net because it presents a contributory infringement and breach of contract risk."

(iii) "My understanding from several reliable sources is that customers are verbally or otherwise warned ..."

(iv) "...It's with what else they have told their customers. It doesn't even have to be in writing. I have witnesses.... ."

(v) "GPL version 2 section 6 explicitly prohibits the addition of terms such as this redistribution prohibition."

(vi) "As a customer, it's my opinion that you would be subject to contributory infringement by employing this product under the no-redistribution policy currently employed by Grsecurity."

(vii) "The GPL does not apply when Grsecurity first ships the work to the customer, and thus the customer has paid for an unlicensed infringing derivative work of the Linux kernel developers with all rights reserved."

(viii) "The contract from the Linux kernel developers to both Grsecurity and the customer which is inherent in the GPL is breached."

(ix) "As a customer, it's my opinion that you would be subject to both contributory infringement and breach of contract by employing this product in conjunction with the Linux kernel under the no-redistribution policy currently employed by Grsecurity."

(Collectively, "Statements") are false because the Access Agreement does not violate the GPLv2. Further, Plaintiffs allege Defendants do not have any "reliable sources" or "witnesses" that can provide any evidence or testimonial facts that can support a showing of a violation of the GPLv2 by Plaintiffs.

50.     The Statements are false because Defendants have admitted that Plaintiff's Access Agreement did not violate the GPLv2 on Jul 9, 2017, prior to publication of the Updated Posting.

51.     Defendant's statements in both Postings, stating that Customers are subject to liability if they employ the Grsecurity product are false since such statements are based on a false assertion of facts that Plaintiffs are in violation of the GPLv2.

53.     Defendants are not aware of any legal authority holding that OSS has violated the terms of the GPLv2.

54.     Defendants are not aware of the existence of any legal authority that can even remotely suggest that the Access Agreement may have violated the terms of the GPLv2.

55.     Defendants are not aware of any legal authority holding that the Grsecurity product presented a contributory infringement and breach of contract risk to Plaintiff's customers.

56.     Defendants are not aware of the existence of any legal authority that can even remotely suggest that the Grsecurity product presents a contributory infringement and breach of contract risk to Plaintiff's customers.

57.     Plaintiffs have been targeted by outside businesses and individuals, including Defendants, who have wrongfully, negligently, or maliciously accused Plaintiffs, by virtue of the Access Agreement, of violating the terms of the GPLv2.

58.     Defendants knew, or should have known, that the Statements were based on a false assertion of fact, despite admitting that the Access Agreement did not violate the GPLv2.

59.     Defendant maliciously published the Original Posting, falsely claiming that he had witnesses to whom Plaintiffs had made verbal statements, based on which he asserted a false statement of fact that the Grsecurity product violated the GPLv2.

60.     Defendant maliciously published the Updated Posting asserting that the Grsecurity® product violated the GPLv2, despite admitting that the Access Agreement did not violate the GPLv2.

61.     The Statements were a malicious and intentional attempt by Defendants to publicly smear Plaintiff's reputation and harm its future business prospects.

62.     Defendants knew the Statements were false or had serious doubts about the truth of such statements.

63.     Defendants were at least negligent and did not ascertain, or attempted to ascertain, the true facts before publishing the Statements included in the Postings.

64.     The Postings are available on the front (home) page of the Website.

65.     With an estimated Internet traffic of 16,560 unique visitors each month[34] to the Website, the Original Posting is widely disseminated and read by thousands of people.

66.     The Original Posting was also partly reproduced, linked, and discussed on www.slashdot.org ("Slashdot").[35] Since the Updated Posting was associated to the same web-link as the Original Posting, the Updated Posting was thus also widely disseminated and read by thousands of people.

67.     Slashdot is a website well known by programmers and software developers in the Open Source community and has an Internet traffic of approximately 3.2 million unique visitors each month.[36]

68.     Defendant further stated:

> I am bothered by the sort of action that Open Source Security Inc. is doing, and felt that informing the customers (albeit indirectly, in places like Slashdot) was the best way to effect a change. This was a case where publicity was the most effective means of effecting change … .[37]

69.     The Postings were seen and read by at least tens of existing Consumers and potential clients, and at least hundreds, if not thousands of professional colleagues and business partners.

70.     "If a speaker says, 'In my opinion John Jones is a liar,' he implies a knowledge of facts which lead to the conclusion that Jones told an untruth. Even if the speaker states the facts upon which he bases his opinion, if those facts are *either incorrect or incomplete,* or if his assessment of them is

---

[34] *perens.com Traffic Worth,* SITEWORTHTRAFFIC.COM, http://www.siteworthtraffic.com/report/perens.com (Jul 16, 2017) (last visited Jul 16, 2017).

[35] *Bruce Perens Warns Grsecurity Breaches the Linux Kernel's GPL License*, SLASHDOT (Jul 9, 2017, 2:10 pm), https://linux.slashdot.org/story/17/07/09/188246/bruce-perens-warns-grsecurity-breaches-the-linux-kernels-gpl-license (last visited Jul 16, 2017).

[36] *Slashdot.org Traffic Worth*, SITEWORTHTRAFFIC.COM, http://www.siteworthtraffic.com/report/slashdot.org (Jul 16, 2017) (last visited Jul 16, 2017). Also see generally, *Slashdot*, WIKIPEDIA, https://en.wikipedia.org/wiki/Slashdot (last visited Jul 16, 2017).

[37] Bruce Perens, commenting on *Bruce Perens Warns Grsecurity Breaches the Linux Kernel's GPL License*, SLASHDOT, (Jul 9, 2017, 4:27 pm), https://slashdot.org/comments.pl?sid=10840323&cid=54774713 (last visited Jul 16, 2017).

1  *erroneous*, the statement may still imply a false assertion of fact." *Milkovich v. Lorain Journal Co.* 497

2  U.S. 1, 18  (1990) [emphasis added]).

3       71.     The Statements are not constitutionally protected speech because it includes a false

4  assertion of fact. See *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974).

5       72.     Defendants published the Postings intentionally, and acted with malice, oppression, and

6  fraud, despite admitting the Access Agreement did not violate the GPLv2, with the sole purpose to

7  generate negative publicity against Plaintiff's business as it was "more effective than writing to" OSS

8  about their disagreement with the Access Agreement.[38]

9       73.     The Statements in the Postings have caused OSS extraordinary damages, including loss

10  of potential customers and loss of good will.

11       74.     As a direct or proximate cause of the publication of the Statements in the Postings, over

12  35 potential business customers have not signed the Access Agreement with OSS. An updated amount

13  of damages, including evidence thereof, will be presented during trial.

14       75.     As a direct or proximate cause of the publication of the Statements in the Postings at

15  least four existing Customers have terminated business relations with Plaintiffs. An updated amount of

16  damages, including evidence thereof, will be presented during trial.

17       76.     Prior to the publication of the Postings, OSS was in the process of hiring a full-time

18  software engineer to further enhance the security features in the Grsecurity® product. The employee

19  was expected to start working on the Grsecurity® product in September 2017.  However, as a direct or

20  proximate cause of the Postings, OSS had to implement a hiring freeze and divert its resources towards

21  legal fees and unexpected costs of litigation. The hiring freeze has harmed OSS at a time when it was

22  geared towards expanding its business operation.

23       77.     The publication of the Postings also caused OSS to incur the extraneous expense to hire

24  an independent contractor to monitor and counteract the negative publicity resulting due to the

---

[38] Bruce Perens, Commenting to *Re: Why does no one care that Brad Spengler of GRSecurity is blatantly violating the intention of the rights holders to the Linux Kernel?* DEBIAN.ORG, (Jun 19, 2017), https://lists.debian.org/debian-user/2017/06/msg00759.html  (last visited Jul 16, 2017). A true and correct copy of the cited webpage is attached hereto as **Exhibit 11**. Also See Decl. of Rohit Chhabra, Exhibit 12.

publication of the Postings which has further caused an expense of $6,300. An updated amount of damages, including evidence thereof, will be presented during trial.

## CLAIMS FOR RELIEF

FIRST CLAIM
Defamation *Per Se*– Libel
(By Plaintiff OSS against all Defendants)

78.     OSS repeats and re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

79.     Readers of the Postings reasonably understood that the Statements in the Postings were about Plaintiff.

79.     Readers reasonably understood the Statements in the Postings meant that Plaintiff's conduct, characteristics, or a condition were incompatible with the proper exercise of their lawful business, trade, profession or office.

80.     The Statements in the Postings are false.

81.     The Defendants together and each of them acting in concert, jointly and severally, and individually, have defamed OSS by knowingly, intentionally, willfully, or negligently publishing statements about OSS which they knew or should have known to be false.

82.     Defendants were negligent and failed to use reasonable care to determine the truth or falsity of the Statements in the Postings.

83.     Defendants intended to injure OSS in its trade or profession by developing a wrongful fear that Plaintiff's clients may be subject to legal liability if they continued to use the Grsecurity® product.

84.     As a proximate result of the Postings, OSS has suffered loss of business and professional reputation.

85.     Due to the Statements in the Postings, OSS has suffered general and special damages, including, without limitation, lost revenue and profits as a function of damage to Plaintiff's business

reputation; diminution in the pecuniary value of Plaintiff's goodwill, administrative costs in connection with Plaintiff's efforts to monitor and counteract the negative publicity, and other pecuniary harm.

86.     Defendants' false Statements in the Postings, or relating to the Postings, have caused OSS damages in an amount to be determined at trial, but in excess of $75,000 as to each defendant.

87.     The negative and false Postings were created and published by Defendants with malice and/or oppression as the content of the Postings contains false statements that were known by Defendants to be false; the Postings were deliberately published with the intention of destroying Plaintiff's reputation and the reputation of Plaintiff's services, and to cause OSS to lose its ability to continue its business. OSS is entitled to punitive damages.

## SECOND CLAIM
### Defamation *Per Quod*– Libel
### (By Plaintiff OSS against all Defendants)

88.     OSS repeats and re-alleges each and every allegation of the foregoing paragraphs as if fully set forth herein.

89.     The Statements in the Postings tended to discourage others from associating or dealing with Plaintiff, since associating or dealing with Plaintiff presented "a contributory infringement and breach of contract risk."

90.     The statements in the Postings were a substantial factor in causing OSS harm and damages as alleged in paragraphs 73 – 77 and 84–87.

## THIRD CLAIM
### False Light
### (By Plaintiff Spengler against all Defendants)

91.     Spengler repeats and re-alleges each and every allegation of the paragraphs 1 – 77, as if fully set forth herein.

92.     Defendants published the Postings on the Website.

93.     Defendants further discussed the contents of the Postings with readers of Slashdot, attempting to convince them that the statements in the Postings were an accurate analysis of the law.[39]

94.     Defendant publicized the Postings and showed Co-Plaintiff Spengler in false light, by implication of the false statements in the Postings available on the Website, abusing a position of power based on his recognition in the Open Source community, and further by engaging in a discussion about the contents of the Postings with readers of Slashdot where readers reasonably associated Spengler with OSS.

95.     By implication of the Postings, Spengler became the topic of discussion in numerous comments.[40]

96.     Based on the Postings, a Slashdot commenter stated, "Grsecurity guys ... simply steal it in the hopes of making a buck... "[41]; another commenter stated, "Brad has some mental issues. He's not a bad guy, but with his problems ..."[42]

97.     The false light created by the Postings is highly offensive to a reasonable person in Spengler's position since the Postings attempted to destroy his reputation and the reputation of his services, and sought to cause Spengler to lose his ability to continue his business.

98.     Defendants knew the Postings would create a false impression about Spengler and/or acted with reckless disregard for the truth.

99.     Defendants were negligent in determining the truth of the information in the Postings or whether a false impression would be created by its publication.

100.     As a direct or proximate cause of the Postings, Spengler's well-being was harmed and he had to seek psychological help for the emotional distress caused by the Postings.

101.     As the sole shareholder of OSS, Co-Plaintiff was further harmed and damages occurred, as alleged in paragraphs 73–77.

---

[39] See Def. Ex. A, *supra*, (ECF- Docket No. 11-2)

[40] *Id.*

[41] *Id.* at p. 44

[42] *Id.* at p. 35

102.    As a proximate result of the Postings, Spengler has suffered loss of professional reputation.

103.    Due to the Statements in the Postings, Spengler has suffered general and special damages, including, without limitation, lost revenue and profits as a function of damage to Spengler's business reputation; diminution in the pecuniary value of Spengler's goodwill, administrative costs in connection with Spengler's efforts to monitor and counteract the negative publicity, and other pecuniary harm.

104.    Defendants' false Statements in the Postings, or relating to the Postings, have caused Spengler damages in an amount to be determined at trial, but in excess of $75,000 as to each defendant.

105.    The negative and false Postings were created and published by Defendants with malice and/or oppression as the content of the Postings contains false statements that were known by Defendants to be false; the Postings were deliberately published with the intention of destroying Spengler's reputation and the reputation of Spengler's services, and to cause Spengler to lose his ability to continue his business. Spengler is entitled to punitive damages.

106.    Defendants' conduct was a substantial factor in causing the harm to Plaintiffs.

107.    In publicizing the Postings on the Website and further discussing the matter on Slashdot, Defendant publicized the Postings to the public at large or to so many people that the Postings and the comments provided by users was substantially certain to become public knowledge.

<u>FOURTH CLAIM</u>
Intentional Interference with Prospective Relations
(By Plaintiffs against all Defendants)

108.    Plaintiffs repeats and re-allege each and every allegation of the foregoing paragraphs as if fully set forth herein.

109.    Plaintiffs and Customers and other potential clients were in an economic relationship that probably would have resulted in an economic benefit to Plaintiff.

110.    Since the Postings were directed to Plaintiffs customers, Defendants knew of an economic relationship between Plaintiffs and their Customers and other Potential Clients.

111.    Further, by (i) making the Postings available on this Website, (ii) taking advantage of Defendant's reputation in the open source community, and (iii) soliciting Customers, potential customers, or their attorneys to contact Defendant and (iv) by vastly disseminating the information publicly on well-known websites and by directly engaging with readers, it is alleged that it was reasonable for a few potential customers and existing Customers to contact Defendants, thereby Defendants reasonably knew of the economic relationship; it is further alleged a few potential customers or existing Customers did contact Defendants.

112.    By publishing the Postings, and urging that Plaintiffs' current and potential clients "should avoid the Grsecurity product sold at grsecurity.net because it presents a contributory infringement risk," Defendants intended to disrupt the economic relationship.

113.    Defendants engaged in wrongful conduct through misrepresentation, fraud, deceit, malice, or oppression.

114.    The relationship has been disrupted.

115.    Plaintiffs were harmed as alleged in paragraphs 73 – 77, 84 – 87, and 102 – 105.

116.    Defendants' wrongful conduct was a substantial factor in causing Plaintiffs harm.

117.    Defendants intentionally and wrongfully interfered with an economic relationship between Plaintiffs and existing Customers or potential clients that probably would have resulted in an economic benefit to Plaintiffs.

**PRAYER FOR RELIEF**

With regard to all counts, Plaintiffs, jointly and severally, pray that judgment be entered against Defendant Bruce Perens and Does 1-50, each and every one of them, acting in concert, jointly and severally, for compensatory actual damages in excess of $2 million resulting from their financial, reputational and professional injury to Plaintiff, as well as equitable relief as may be appropriate, and such other relief the Court may deem just and proper. Plaintiffs further pray for an award of punitive damages in an amount in excess of $1 million, to punish Defendants for their outrageous, deceitful, unprecedented, vicious and malicious conduct toward Plaintiffs designed so to discourage the public from conducting business with Plaintiffs.

Plaintiffs further seek an Injunctive relief, including a preliminary and permanent injunction enjoining restraining Defendants from engaging in the conduct described above.

## **JURY DEMAND**

Plaintiffs request this case be tried to a jury on all issues triable by a jury.


Dated this 2nd October 2017.

                                              Respectfully Submitted,

                                              CHHABRA LAW FIRM, PC

                                              *s/Rohit Chhabra*
                                              Rohit Chhabra
                                              Attorney for Plaintiffs
                                              Open Source Security Inc. & Bradley Spengler