CHHABRA LAW FIRM, PC
ROHIT CHHABRA (SBN 278798)
Email: rohit@thelawfirm.io
257 Castro Street Suite 104
Mountain View, CA  94041
Telephone: (650) 564-7929

**Attorney for Plaintiffs**
Open Source Security Inc. and
Bradley Spengler

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

OPEN SOURCE SECURITY INC. and
BRADLEY SPENGLER

     Plaintiffs,

 v.

BRUCE PERENS, and Does 1-50,

     Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 3:17-cv-04002-LB

**Opposition to Defendant Bruce Perens'
Motion to Dismiss pursuant to Fed. R. Civ.
P. 12(b)(6) And Special Motion to Strike
pursuant to CA. Code of Civ. P. § 425.16.
and Bradley Spengler's Decl. In Support to
Opposition to Perens' Motion to Dismiss
and Special Motion to Strike**

Hearing Date: October 26, 2017
Time: 9:30 a.m.
Location: Courtroom C, 15th Floor
Judge: Hon. Laurel Beeler

3:17-CV-04002-LB

PLAINTIFF'S OPPOSITION TO DEFENDANT PERENS' MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE

**Table of Contents**

I.     SUMMARY ........................................................................................................... 1

II.    FACTS ................................................................................................................... 4

   1. The GPL ........................................................................................................... 4

   2. Defendant Bruce Perens ................................................................................... 4

   3. Plaintiffs Open Source Security and Bradley Spengler ..................................... 5

   4. Plaintiff's private contract agreement with its limited number of customers ........ 5

   5 Plaintiff's right to refuse service to anyone for any non-discriminatory reason ....... 6

   6. Defendant Perens' blog post ............................................................................. 6

       (i). First Publication ........................................................................................ 6

       (ii) Perens admits that the Access Agreement does not violate the GPL ............... 7

       (iii) Second Publication ................................................................................... 8

   7. Perens' Actions ................................................................................................ 9

   8. Damages and Harm resulted due to Defendants conduct .................................. 10

III.   ARGUMENTS ..................................................................................................... 11

   1. First Amended Complaint, as a matter of course .............................................. 11

   2. Alternatively, Plaintiff Moves this Court and Requests Leave to File First Amended Complaint ...... 11

   3. Joinder (Permissive) ....................................................................................... 12

   4. In Fed. Court. A Special Motion to Strike is inappropriate without giving Plaintiff the Opportunity to conduct discovery ........... 12

   5 Defendants' defamatory statements are not protected conduct ........................... 13

   6. Opposition to Motion to Dismiss under Fed. R. Civ. P. 12 (b) (6) ..................... 15

       (i) Defamation per se and per Quod .................................................................. 16

           (A). Plaintiff OSS Is NOT A Public Figure or a Limited Purpose Figure ........... 16

           (B) Perens Made False Statements of Fact Which Were Not Privileged ............ 16

           (C) Negligence ........................................................................................... 18

           (D) Actual Harm ........................................................................................ 18

       (ii) False Light .............................................................................................. 19

       (iii) Intentional Interference with Prospective Economic Advantage ................... 20

IV.    CONCLUSION ..................................................................................................... 22

PLAINTIFF'S OPPOSITION TO DEFENDANT PERENS' MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE

1
2
3

**Cases**

4 *AMPEX Corp. v. Cargle*, 128 Cal.App.4th 1569, 1576 (2005)................................................ 16

5 *Balistreri v. Pacifica Police Dept.*, 901 F. 2d 696(9th Cir. 1990)........................................ 12

6 *Bosley Medical Institute, Inc. v. Kremer*, 403 F.3d 672 (9th Cir. 2005). ............................... 13

7 *Coastal Abstract Serv, Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725 (9ᵗʰ Cir. 1999) ........................ 17

8 *Fellows v. National Enquirer*  42 Cal.3d 234 (1986). ................................................... 19

9 *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 343 (1974)................................................ 16

10 *Global Telemedia Intern., Inc. v. Doe 1*, 132 F.Supp.2d 1261 (C.D. Cal. 2001).................................. 16

11 *Hailstone v. Martinez*, 169 Cal. App. 4th 728, 736 ................................................ 14

*Hill v. National Collegiate Athletic Assn.* 7 Cal.4th 1, 24 (1994). ........................................ 19

*Jacobsen v. Katzer* 535 F. 3d 1373 (2008) ..................................................... 4

12 *Kahn v. Bower*, 232 Cal.App.3d 1599, 1607, 284 Cal.Rptr. 244, 248 (1991) ................................... 17

13 *Korea Supply Company V. Lockheed Martin Corp* 29 Cal.4th 1134 (Cal. 2003)................................. 20

14 *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001)......................................... 12

15 *Milkovich v. Lorain Journal Co.*, 487 U. S. 1, 19 (1990).................................................. 16

16 *Moyer v. Amador Valley Joint Union High Sch. Dist.*, 225 Cal.App.3d 720(1990). ........................... 17

17 *Overhill Farms, Inc. v. Lopez* 190 Cal.App.4th 1248 (2010)............................................. 20

*Rivero v. American Federation of State, County and Municipal Employees*, 105 Cal.App.4th 913

18    (2003). ....................................................................................... 14, 15

19 *Rodriguez v. Panayiotou*, 314 F.3d 979, 985 (9th Cir. 2002) ............................................ 16

20 *Rogers v. Home Shopping Network, Inc.*, 57 F.Supp.2d 973 .............................................. 13

21 *Scott v. Eversole Mortuary*, 522 F.2d 1110 (9th Cir.1975).............................................. 12

22 *Semiconductor Equipment And Materials International, Inc. V. The Peer Group,* No. C 15-cv-00866-

23    YGR, at *14 (N.D. Cal. September 18, 2015)................................................... 13

24 *Verizon Delaware v. Covad Communications*, 377 F. 3d 1081. 1091 (9th Cir. 2004) ........................ 12

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir.2003)....................................... 12

25 *Weinberg v. Feisel*, 110 Cal. App 4th 1122, 1132 (2003)................................................ 14

26 -
27
28

PLAINTIFF'S OPPOSITION TO DEFENDANT PERENS' MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE

**Statutes**

Cal. Code Civ. Proc. § 425.16(e)(1)-(4). .............................................................. 13

**Rules**

**Fed. R. Civ. P. 12(b)(6)** ..................................................................... 15

Fed. R. Civ. P. 15(a)(1)(B) .................................................................. 11

Fed. R. Civ. P. 15(a)(2). ..................................................................... 12

Fed. R. Civ. P. 19 ............................................................................. 12

Fed. R. Civ. P. 20 ............................................................................. 12

**Treatises**

Restatement Second of Torts, section 652E ....................................... 19

PLAINTIFF'S OPPOSITION TO DEFENDANT PERENS' MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE

# I. SUMMARY

Open source software is computer software that is made available with source code that can be modified, used, or shared under certain defined terms and conditions. One such license is the GNU General Public License version 2 ("GPL") which defines redistribution rights to any software released under the license. The Linux kernel code is released under the GPL. As stated in the preamble of the GPL, software released under the license is considered "free software," that is, freedom to distribute (or to not distribute), and developers are free to charge for such distribution as a service, if they wish to.

Plaintiff Open Source Security Inc. (OSS) is a small private company located in Pennsylvania and develops software code that fixes security vulnerabilities in the Linux kernel code (a concept commonly referred to as *patching* or providing *patches*). OSS releases the *patches*, in source code form, under the GPL, to approximately 45 of its customers (at the time the blog posts were published) via a Stable Patch Access Agreement ("Access Agreement"). In the Access Agreement, OSS's 45 customers are unequivocally informed that they have all the rights under the GPL for the current *patches* being released.  However, OSS further offers an, optional, *incentive* to not redistribute the patches outside the boundaries defined in the Access Agreement if they wish to utilize its server resources and receive continued access to future versions of the *patches.* If Plaintiffs' customers wish to, they are free to redistribute the patches in their possession – Plaintiffs can choose not to distribute future releases to any customer since the GPL does not grant an inherent right to future releases.

The GPL in its preamble provides the licensee the "freedom to distribute free software (and charge for it as a service if you wish to)... ." Since Plaintiffs are incorporating Linux kernel code into their *patches*, as a licensee of the Linux kernel, Plaintiffs are also granted the freedom to distribute their modifications or additions to the Linux kernel code, under the GPLv2.  Since freedom to distribute code means to distribute (or not distribute code) without any consequences, Plaintiffs have the inherent right to not distribute code. Further, since each version or update is technically new software and is released independently under the GPL, Plaintiffs are explicitly granted, under the GPL, the freedom to distribute each version, at their discretion.  It is respectfully submitted that any alternative conclusion is bound to succumb under its own fallacy.

Defendant Bruce Perens is a famous and well-regarded, personality in the open source community. Perens is also respected as an expert in open source matters and has published 24 books on the subject. He has also appeared as an expert witness in court. Perens also thoroughly understands the

PLAINTIFF'S OPPOSITION TO DEFENDANT PERENS' MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE

law. Although not an attorney himself, Perens has taught continued legal education (CLE) to attorneys in many states. Further Perens has also implied that he understands the law better than attorneys admitted to the U.S. Supreme Court. Reasonably, the open source community, including Plaintiffs, have no reason to doubt Perens' knowledge or expertise in the subject matter.

This action began due to a blog post that was initially published on June 28, 2017, and further updated on July 10, 2017 by Perens, in which he discussed his "strong opinion" on how Plaintiff's customers were subjecting themselves to legal liability by doing business with Plaintiff.

The underlying *premise* of both publications was that the GPL "explicitly prohibits the addition of terms such as [those provided by the Access Agreement]."  Based on this premise, Perens stated that Plaintiffs' redistribution clause of the Access Agreement was, *as a matter of fact*, violating the GPL, and thus the *patches* were a product of unlicensed work. Based on such a false assertion, Perens expressed his strong opinion stating that Plaintiff's customers were subjecting themselves to potential legal liability under copyright and/or contract law from the creators of the Linux kernel.

However, Defendant, as an expert in open source matters, being well versed with the law, knew or reasonably should have known that the Access Agreement, in part, only enforces Plaintiff's freedom to distribute free software as they wish to – a right explicitly granted to Plaintiffs by the GPL (as a licensee of the Linux kernel code). Defendant knew or should have known, that the Access Agreement does not prevent or restrict a user from exercising their right of redistributing the *patches*, but only defines conditions upon which Plaintiffs are willing to offer their customers access to their server resources and exercise their freedom to distribute future software – a condition beyond the scope of the GPL of the current version of the patches released to Plaintiffs' customers.

Indeed, Perens admitted that Plaintiffs were not violating the GPL under the Access Agreement. On July 9, 2017, at or about 5:09 p.m., prior to updating the blog post, Perens, responding to a commenter on slashdot.org, admitted that "*[t]he problem isn't with the text [of the Access Agreement]. It's with what else they have told their customers. It doesn't even have to be in writing. I have witnesses.*" However, despite admitting that the Access Agreement was not in violation of the GPL, on July 10, 2017, at or about 8:15 a.m., Perens updated the blog post and explicitly published that the Access Agreement violated the GPL.  Reasonably, Perens' statements in each version of the blog post were published either negligently, maliciously, or a combination thereof, and cannot be considered protected speech.

Since Plaintiff only had 45 customers in a *niche* market, Perens' blog post was not about initiating a healthy debate or raising awareness about a matter of public concern related to the rights provided by the GPL, but was specifically written, using *fear-mongering* techniques, to dissuade Plaintiff's limited number of customers from doing business with it. This is clear since Red Hat, a multi-national open source software company has been employing such business practices since as early as 2003, but Perens never published his disagreement with Red Hat. In fact, Perens agrees that Red Hat's business practices are not in violation of the GPL, when both, Plaintiffs and Red Hat, are providing services (Red Hat limits its services related to customer support upon redistribution, and Plaintiffs limits its services related to access to their servers for future versions and utilization of their resources upon redistribution). Neither company prevents actual restriction of redistribution of the software code that has been  released explicitly under the GPL.  Further, Perens, abusing his celebrity-like status, sensationalized and publicized a matter of private concern between plaintiffs and its 45 private customers in an attempt to damage Plaintiff's reputation in the open source community. In fact, based on Perens' own admission such tactics were "more effective than writing to [Plaintiff]".

Therefore, by using false facts and abusing his reputation in the community, Perens not only published libelous statements about Plaintiffs in a matter of private concern, but also invoked the curiosity of the open source community, and attempted to convert a private matter into an illusory public concern regarding the GPL.

With respect to Defendant Perens' special motion to strike based on California's Anti-*SLAPP* statute, Plaintiffs respectfully submits that:

1. Pursuant to precedential case law, since Perens alleges that Plaintiffs have not plead facts supporting its allegations, for any matter in which it is held that Plaintiffs have not been able to submit sufficient facts, an anti-SLAPP motion should be deemed *premature* without giving Plaintiffs the opportunity to conduct discovery.

2. Defendant Perens has not established a prima facie case that the subject matter of his posting was of public concern.

3. Even if such a prima facie case has established, Plaintiff has established a likelihood of success on the merits in this matter.

PLAINTIFF'S OPPOSITION TO DEFENDANT PERENS' MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE

# II. FACTS[1]

## 1. The GPL

The GPL is an open source licensing agreement which limits certain rights of the author of the software. *See, generally,* First Amended Complaint ("FAC"), Ex. 3. The GPL, in part provides:

> When we speak of free software, we are referring to freedom, not price. Our General Public Licenses are designed to **make sure that you have the freedom to distribute copies of free software** (and charge for this **service** if you wish), that you receive source code or can get it if you want it, that you can change the software or use pieces of it in new free programs; and that you know you can do these things.

*See* FAC ¶19 (emphasis added).

Further, section 6 of the GPL, states:

> Each time you redistribute the Program (or any work based on the Program), the recipient automatically receives a license from the original licensor to copy, distribute or modify the Program subject to these terms and conditions. You may not impose any further restrictions on the recipients' exercise of the rights granted herein.

*See* FAC ¶ 14.

The GPL limits its terms and conditions to the software program currently being released under it. *See* FAC ¶ 16. Specifically, the GPL states "[t]his License applies to any program or other work which contains a notice placed by the copyright holder saying it may be distributed under the terms of this General Public License." *See* FAC Ex. 3, Section 0.  The GPL does not, implicitly or explicitly, extend to future versions that may or may not be created or released by the software developer. *See* FAC, Ex. 3.

## 2. Defendant Bruce Perens

Bruce Perens is a well-known personality in the open source community. *See* FAC ¶ 33. He is known for being "one of the founders of the Open Source movement in software, and was the person to announce 'Open Source' to the world". *See Id.*  He created the Open Source Definition, the set of legal requirements for Open Source licensing which still stands today." *See Id.*

---

[1] Plaintiff request the Court to take Judicial Notice to these facts as it deems appropriate.

PLAINTIFF'S OPPOSITION TO DEFENDANT PERENS' MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE

Perens has represented himself as an expert for the plaintiff in prominent open source cases like *Jacobsen v. Katzer* 535 F. 3d 1373 (2008). *See* FAC ¶ 34. He has also worked as a case strategy consultant for Google's outside counsel in the district court case of *Oracle v. Google*. *See* FAC ¶ 35. Although not an attorney, Perens has taught Continuing Legal Education classes to attorneys in many states and was a keynote speaker at a Silicon Valley event attracting over 250 attorneys." *See* FAC ¶ ¶ 36 -37

Perens has also published more than 24 books on open source software, all but one have been profitable and "several still sell well more than a decade after publication." *See* FAC ¶ 38.  Perens is also very well versed with the law.  During his discussions with a commenter on slashdot.org, Perens has stated that he has "won against folks who were admitted to the supreme court ... ." *See* FAC ¶ 40.

### 3. Plaintiffs Open Source Security and Bradley Spengler

Plaintiff Open Source Security ("OSS") is a small private corporation located in the State of Pennsylvania. *See* FAC ¶ 2. Plaintiff Bradley Spengler ("Spengler") is the CEO and lone share-holder of OSS. *See* FAC ¶ 3; *See* Declaration of Bradley Spengler ("Spengler Decl.")  ¶1. Plaintiff offers software code, in the form of source code ("Patches"), for the Linux kernel providing security fixes, under the trade name, grsecurity® to 45 of its customers, at the time the blog posts were published. *See* FAC ¶ 12. Grsecurity® is released under the GPL. *See* FAC ¶ 13. Plaintiff does not advertise its services to anyone other than having Internet presence via its website, http://www.grsecurity.net. *See* Spengler Decl. ¶ 3.  Spengler has not undertaken any voluntary affirmative action through which he has attempted to seek to influence the resolution of any public issue related to the GPL. *See* Spengler Decl. ¶4.

### 4. Plaintiff's private contract agreement with its limited number of customers

At or about September 2015, Plaintiff established an Access Agreement with its customers who are primarily private businesses. *See* Spengler Decl. ¶5. As of June 28, 2017, Plaintiff only had approximately 45 customers receiving its *patches*. *See* Spengler Decl. ¶6.

The Access Agreement  states, in part:

> The User has all rights and obligations granted by grsecurity's software license, version 2 of the GNU GPL. These rights and obligations are listed at http://www.gnu.org/licenses/oldlicenses/gpl-2.0.en.html ...
>
> Notwithstanding these rights and obligations, the User acknowledges that redistribution of the provided stable patches or changelogs outside of the explicit

PLAINTIFF'S OPPOSITION TO DEFENDANT PERENS' MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE

obligations under the GPL to User's customers will result in termination of access to **future** updates of grsecurity stable patches and changelogs... .
*See* FAC, Ex. 4, (emphasis in original).

The Access Agreement, by itself only controls access to the servers and resources under the dominion and control of Plaintiffs and distributes the Patches, as a service. *See* FAC ¶21.  The Access Agreement does not govern any right granted to Plaintiff's customers under the GPL; customers are free to distribute the Patches if they desire to do so. *See* FAC ¶22. If a customer does not require Plaintiffs' service, they are free to modify, host, copy, redistribute, and even charge for their services using the Patches in their possession, since such a right is granted within the GPL. *See* Spengler Decl.¶ 7.

Multi-national companies like Red Hat have been refusing service and engaging in such business models since as early as 2003. *See* FAC  ¶ 23. While not happy with such business practices, GPL experts like Bradley Kuhn, President of the Software Freedom  Conservancy, have repeatedly stated, on publicly available media platforms, that such practices are complaint with the GPL. *See* FAC ¶¶ 24 – 27.

### 5. Plaintiff's right to refuse service to anyone for any non-discriminatory reason

Plaintiff does not engage in a discriminatory practice under any State or Federal law or regulation. *See* Spengler Decl. 8. Neither has Perens alleged so. The Access Agreement further states, in part, "... we reserve the right to revoke access to the stable patches and changelogs at any time for any reason."  *See* FAC Ex. 4. "[A] trader or manufacturer ...[that] carries on an entirely private business, and can sell to whom he pleases; ... he may cease to do any business whenever his choice lies in that direction... ." *United States v. Trans-Missouri Freight Association*, 166 U.S. 290, 320-21 (1897).  "A manufacturer of course generally has a right to deal, or refuse to deal, with whomever it likes, as long as it does so independently." *Monsanto Co. V. Spray-Rite Service Corp.* 465 U.S. 752, 761 (1984).

### 6. Defendant Perens' blog post

### (i) First Publication

On June 28, 2017, Perens published a blog post on his website, www.perens.com, stating:

PLAINTIFF'S OPPOSITION TO DEFENDANT PERENS' MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE

*Warning: Grsecurity: Potential contributory infringement and breach of contract risk for customers*

*It's my strong opinion that your company should avoid the Grsecurity product sold at grsecurity.net because it presents a contributory infringement and breach of contract risk.*
...

Currently, Grsecurity is a commercial product and is distributed only to paying customers. My understanding from *several reliable sources* is that customers are verbally or otherwise warned that if they redistribute the Grsecurity patch, as would be their right under the GPL, that they will be assessed a penalty: they will no longer be allowed to be customers, and will not be granted access to any further versions of Grsecurity. *GPL version 2 section 6 explicitly prohibits the addition of terms such as this redistribution prohibition.*

It is my opinion that this punitive action for performance of what should be a right granted under the GPL is infringing of the copyright upon the Linux kernel and breaches the contract inherent in the GPL.

*As a customer, it's my opinion that you would be subject to contributory infringement by employing this product under the no-redistribution policy currently employed by Grsecurity.*

*See* FAC ¶42 (emphasis in original; *italics* added).

**(ii) Perens admits that the Access Agreement does not violate the GPL**

On July 9, 2017, at or about 2:10 p.m., Perens' blog post was partially reproduced, and linked, on slashdot.org, a website well known by programmers and software developers in the Open Source community, having an Internet traffic of approximately 3.2 million unique visitors each month. *See* FAC ¶¶ 43, 66, and 67.

On July 9, 2017 at or about 4:27 p.m., Perens responded to a comment, stating in part:

I am bothered by the sort of action that Open Source Security Inc. is doing, and felt that informing the customers (albeit indirectly, in places like Slashdot) was the best way to effect a change. This was a case where publicity was the most effective means of effecting change ...

*See* FAC ¶68.

On July 9, 2017, at or about 4:58 p.m., an anonymous reader commented on the slashdot.org posting:

I've had a look over their agreement here [link to the subscription agreement on grsecurity.net], and **there is nothing to prevent**

- 7 -

3:17-CV-04002-LB

PLAINTIFF'S OPPOSITION TO DEFENDANT PERENS' MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE

> **redistribution of a patch under the terms and conditions of the
> GPLv2.** It states that if it a patch is distributed outside of the terms of the
> GPLv2, then access to further patches in the future (not the patch
> provided) will be denied ...

*See* FAC ¶ 44 (emphasis added).

On July 9, 2017, at or about 5:09 pm, Perens responded to the above comment, stating:

> **The problem isn't with the text there.** *It's with what else they have told
> their customers. It doesn't even have to be in writing. I have witnesses.* If
> there was ever a case, obviously the prosecution would have to depose
> people to make this point.

*See* FAC ¶ 45 (emphasis and *italics* added).

**(iii) Second Publication**

On July 10, 2017, at or about 8:11 a.m., Perens updated the blog post. *See* FAC ¶47. In this

publication Perens updated the blog post to:

> **Warning: Grsecurity: Potential contributory infringement and breach of
> contract risk for customers**
>
> It's my strong opinion that your company should avoid the Grsecurity product
> sold at grsecurity.net because it presents a contributory infringement and breach
> of contract risk.
> ...
> *... Under their Stable Patch Access Agreement, customers are warned that if they
> redistribute the Grsecurity patch, as would be their right under the GPL, that they
> will be assessed a penalty: they will no longer be allowed to be customers, and
> will not be granted access to any further versions of Grsecurity. GPL version 2
> section 6 explicitly prohibits the addition of terms such as this redistribution
> prohibition.*
>
> ... Grsecurity's Stable Patch Access Agreement adds a term to the GPL
> prohibiting distribution or creating a penalty for distribution. GPL section 6
> specifically prohibits any addition of terms.  Thus, the GPL license, which allows
> Grsecurity to create its derivative work of the Linux kernel, terminates, and the
> copyright of the Linux Kernel is infringed. *The GPL does not apply when
> Grsecurity first ships the work to the customer, and thus the customer has paid for
> an unlicensed infringing derivative work of the Linux kernel developers with all
> rights reserved.  The contract from the Linux kernel developers to both Grsecurity
> and the customer which is inherent in the GPL is breached.*
>
> *As a customer, it's my opinion that you would be subject to both contributory
> infringement and breach of contract by employing this product in conjunction*

1    *with the Linux kernel under the no-redistribution policy currently employed by Grsecurity.*

2    *See* FAC ¶42 (emphasis in original, *italics* added).

3

4

5    ***7. Perens' Actions***

6    Collectively, in both the original blog post, its revision, and comments on

     slashdot.org, Defendant made the following defamatory statements, including, but

7    not limited to:

8

9            (i) "Warning: Grsecurity: Potential contributory infringement and
             breach of contract risk for customers"

10

11           (ii) "It's my strong opinion that your company should avoid the
             Grsecurity product sold at grsecurity.net because it presents a
12           contributory infringement and breach of contract risk."

13           (iii) "My understanding from several reliable sources is that
             customers are verbally or otherwise warned ..."

14
             (iv)  "...It's with what else they have told their customers. It doesn't
15           even have to be in writing. I have witnesses.... ."

16           (v) "GPL version 2 section 6 explicitly prohibits the addition of terms
             such as this redistribution prohibition."

17

18           (vi) "As a customer, it's my opinion that you would be subject to
             contributory infringement by employing this product under the no-
19           redistribution policy currently employed by Grsecurity."

20           (vii) "The GPL does not apply when Grsecurity first ships the work to
             the customer, and thus the customer has paid for an unlicensed
21           infringing derivative work of the Linux kernel developers with all
             rights reserved."

22

23           (viii) "The contract from the Linux kernel developers to both
             Grsecurity and the customer which is inherent in the GPL is
24           breached."

25           (ix) "As a customer, it's my opinion that you would be subject to both
             contributory infringement and breach of contract by employing this
26           product in conjunction with the Linux kernel under the no-
             redistribution policy currently employed by Grsecurity."

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANT PERENS' MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE

*See* FAC ¶ 49.

Perens' defamatory statements are demonstrably false. These statements are defamatory because Plaintiffs did not violate the GPL, and Perens has admitted that the Access Agreement does not violate the GPL. Just because Perens was bothered by Plaintiffs' business practices, since he was aware that "publicity [is] a tool" available to him, he decided to publish false statements of facts regarding Plaintiffs' business practices and attempted to dissuade Plaintiffs' customers from doing business with Plaintiffs. *See* FAC ¶¶ 32, 68, and 49.

It is alleged Perens was at least negligent and did not attempt to ascertain the truthfulness and veracity of the statements identified above, or knew the statements were false or had serious doubts about the truthfulness of such statements. *See* e.g., FAC ¶¶ 57, 59, 60, 62, 63, 72, 81, 82, 99, and 117; Also see FAC ¶¶ 44-45, 48 and 49 (Perens admitting his statements were false, and despite that updating the blog post and publishing that the Access Agreement was violating the GPL).

Further, Plaintiffs allege Defendants do not have any "reliable sources" or "witnesses" that can provide any evidence or testimonial facts that can support a showing of a violation of the GPLv2 by Plaintiffs. *See Id.* In fact, Plaintiffs have never conveyed any verbal statements about its Access Agreement or its redistribution policies to anyone. *See* Spengler Decl. 9.

Since Spengler is the sole-shareholder of OSS, Spengler's name is often associated when OSS is discussed in the open source community. *See* e.g., FAC, Ex. 9 and 11 (title/ subject stating Spengler along with OSS). Defendant discussed the contents of the Postings with readers of Slashdot, attempting to convince them that the statements in the Postings were an accurate analysis of the law. He publicized the Postings. Plaintiff Spengler, by association, became a subject of discussion in numerous posts on Slashdot. *See* FAC ¶¶ 94-96. The false light created was highly offensive to a reasonable person in Spengler's position since the blog posts attempted to destroy his reputation and the reputation of his services, and sought to cause Spengler to lose his ability to continue his business. *See* FAC ¶ 97.

### 8. Damages and Harm resulted due to Defendants conduct

The statements in the blog posts have caused OSS extraordinary damages, including loss of potential customers and loss of good will. See FAC ¶ 73. As a direct or proximate cause of the publications, over 35 potential business customers have not signed the Access Agreement. *See* FAC

PLAINTIFF'S OPPOSITION TO DEFENDANT PERENS' MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE

¶74. Further, at least four existing Customers have terminated business relations with Plaintiffs. *See* FAC ¶75.  Further, prior to the publication of the blog posts, OSS was in the process of hiring a full-time software engineer to further enhance the security features in the Grsecurity® product. The employee was expected to start working on the Grsecurity® product in September 2017.  However, as a direct or proximate cause of the Postings, OSS had to implement a hiring freeze and divert its resources towards legal fees and unexpected costs of litigation. The hiring freeze has harmed OSS at a time when it was geared towards expanding its business operation. *See* FAC ¶ 76.  The publication of the blog posts also caused OSS to incur the extraneous expense to hire an independent contractor to monitor and counteract the negative publicity resulting due to the publications which has further caused an expense of $6,300. See FAC ¶ 77.  As a proximate result of the Postings, OSS has suffered loss of business and professional reputation. Due to the blog posts OSS has suffered general and special damages, including, without limitation, lost revenue and profits as a function of damage to Plaintiff's business reputation; diminution in the pecuniary value of Plaintiff's goodwill, administrative costs in connection with Plaintiff's efforts to monitor and counteract the negative publicity, and other pecuniary harm. See FAC ¶¶  85 – 87.

Further, Spengler was also mentally distressed by the blog posts and comments and the negative publicity it generated towards his ability to do business and loss of reputation in the community that he had to seek psychological help for the emotional distress. See FAC ¶ 100; See also Spengler Decl. 10.

## III. ARGUMENT

### 1. First Amended Complaint, as a matter of course

"A party may amend its pleading once as a matter of course within ... 21 days after service of a motion under Rule 12(b) ...  ." Fed. R. Civ. P. 15(a)(1)(B).

Plaintiffs OSS and Spengler have filed its first amended complaint and requests the Court to permit such a filing, as a matter of course. Plaintiff OSS respectfully submits, Spengler should be allowed to be named co-plaintiff, as an amendment of a matter of course, under Fed. R. Civ. P 15(a).

PLAINTIFF'S OPPOSITION TO DEFENDANT PERENS' MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE

**2. Alternatively, Plaintiff Moves this Court and Requests Leave to File First Amended Complaint**

"Rule 15(a) applies where plaintiffs "expressly requested" to amend even though their request "was not contained in a properly captioned motion paper."" *Balistreri v. Pacifica Police Dept.*, 901 F. 2d 696(9th Cir. 1990), citing *Scott v. Eversole Mortuary*, 522 F.2d 1110 (9th Cir.1975). "[G]ranting a defendant's anti-SLAPP motion to strike a plaintiff's initial complaint without granting the plaintiff leave to amend would directly collide with Fed.R.Civ.P. 15(a)'s policy favoring liberal amendment." *Verizon Delaware v. Covad Communications*, 377 F. 3d 1081. 1091 (9th Cir. 2004) (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir.2003), where the district court's conducting analysis of defendants' anti-SLAPP motions with respect to the first amended complaint as opposed to the original complaint was deemed proper).

Therefore, if the Court determines that amending the complaint, as a matter of course is not permitted, Plaintiffs respectfully move the Court to grant leave to amend the complaint pursuant to Fed. R. Civ. P. 15(a)(2).

**3. Joinder (Rule 20)**

*Alternative Permissive joinder of Plaintiff Spengler*

Although Plaintiff has submitted a motion to join Bradley Spengler as a required party under Fed. R. Civ. P. 19, if the Court determines that such a motion was not proper, in the alternative, Plaintiff OSS has concurrently filed a second joinder motion under Fed. R. Civ. P. 20 and seeks the Court's permission to join Plaintiff Spengler. As alleged in the First Amended Complaint, Spengler asserts:

(i) a right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences, that is, the defamatory publications in this action; and

(ii) any question of law or fact common to all plaintiffs arises in this action, since the facts of false light and defamation are common to all plaintiffs.

Therefore, this Court should grant permission to join Spengler as co-plaintiff in this action.

**4. In Federal Court, a special motion to strike pursuant to California's anti-SLAPP statute, alleging Plaintiff's lack of evidence is inappropriate without giving Plaintiff the opportunity to conduct discovery**

This Court has stated that, " ... the Ninth Circuit requires a party opposing an anti-SLAPP motion be afforded the same right of discovery as a party opposing summary judgment under Rules 56(f) and (g), [citing *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001)] (reversing district court's granting of certain defendants' anti-SLAPP motions and remanding to the district court to, in part, permit discovery where information "in the defendants' exclusive control" may have been "highly probative to [plaintiff's] burden"); [citing *Rogers v. Home Shopping Network, Inc.*, 57 F.Supp.2d 973, 982] ("Because the discovery-limiting aspects of § 425.16(f) and (g) collide with the discovery allowing aspects of Rule 56, these aspects of subsections (f) and (g) cannot apply in federal court"). *Semiconductor Equipment And Materials International, Inc. V. The Peer Group,* No. C 15-cv-00866-YGR, at *14 (N.D. Cal. September 18, 2015).

Therefore, if the Court determines that the Plaintiffs, for any claim, are unable to prove an allegation due to lack of evidence, as contended by Perens, the Court should deem this anti-SLAPP motion as prematurely filed, and *sua sponte* grant Plaintiff a motion to continue Defendant's motion to dismiss and special motion to strike pursuant to California's anti-SLAPP statute, for those respective claims.

**5. Defendants' defamatory statements are not protected conduct and are thus not subject to a special motion to strike under the California anti-SLAPP statute.**

The California anti-SLAPP statute allows certain parties limited immunity from suit for statements made in pursuit of their First Amendment rights. Neither the immunity nor its application is absolute and even its fairly liberal reach does not extend to Perens' defamatory and false statements that the Plaintiffs' Grsecurity product violated the GPL and that Plaintiffs' customers were thus subject liability. The statute protects only:

> 1. any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law;
> 2. any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law;
> 3. any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; or

4. any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Cal. Code Civ. Proc. § 425.16(e)(1)-(4).

Perens holds the burden of proof to show that his defamatory statements were protected. *Bosley Medical Institute, Inc. v. Kremer*, 403 F.3d 672, 682 (9th Cir. 2005). Perens cannot meet his burden because his false assertions of facts are not constitutionally protected free speech, as a matter of law. There is no credible evidence that Perens' defamatory statements were made before legislative, executive or judicial bodies. Further, his statements did not involve any issue of public interest, but were limited to Plaintiffs existing customers who were 45 private businesses at the time of the blog post(s) were published. Further his  statements were not made in anticipation of litigation. Therefore, the defamatory statements do not fall under the protection of the anti-SLAPP statute, and Perens' Special Motion to Strike must be denied.

Perens' Defamatory Statements Are Not An Issue Of Public Interest

Perens claims that simply because his blog post was linked to slashdot.org, and generated over 470 comments, the response by the public is conclusive that the matter was of public interest.  It is undeniable that Perens is well-known in the open source community. His opinions are also well respected in the community. Indeed,  when someone coins the term open source, creates the open source definition, writes 24 books on the subject matter, represents himself as an expert on the subject matter during appeal, and teaches continuing legal education to 250+ attorneys, such a person will be well respected and his views taken very seriously. Perens' blog post was specifically addressed to Plaintiffs' customers – which numbered 45 at the time of the publication of the defamatory statements.

Not all disputes are a matter of public interest for purposes of a special motion to strike. In order to be of ―public interest, an issue must be one that ―impacts a broad segment of society and/or that affects a community in a manner similar to that of a governmental entity. *Rivero v. American Federation of State, County and Municipal Employees*, 105 Cal.App.4th 913, 920 (2003).

Perens cannot turn his personal dissatisfaction with Plaintiffs' business practices or the Access Agreement into a public issue merely by abusing his fame and reputation and communicating it to a large number of people. *Weinberg v. Feisel*, 110 Cal. App 4th 1122, 1132 (2003).  "[P]ublic interest is not mere curiosity. Further, the matter should be something of concern to a substantial number of people. Accordingly, a matter of concern to the speaker and a relatively small, specific audience is not

PLAINTIFF'S OPPOSITION TO DEFENDANT PERENS' MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE

a matter of public interest" ... Moreover, the focus of the speaker's conduct should be the public interest, not a private controversy. Finally, a defendant charged with defamation cannot, through his or her own conduct, create a defense by making the claimant a public figure. Otherwise private information is not turned into a matter of public interest simply by its communication to a large number of people. *Hailstone v. Martinez*, 169 Cal. App. 4th 728, 736 (citing *Weinberg supra*, at pp. 1132-1133).

The instant case is most like *Rivero*, *supra*. In that case, a janitorial supervisor at a public university sued a union for defamation after he was accused of bribery, nepotism, theft and extortion. The Union's anti-SLAPP motion alleged that the issue was one of public concern because it involved unlawful workplace activities which concerned the public and public policy, especially at a publicly financed institution. The court rejected this argument, finding that the dispute between the supervisor and the union simply did not rise to a matter of public interest. *Rivero*, 105 Cal.App.4th at 924.

In the instant matter, the title of Perens' blog post was, "Warning: Grsecurity: Potential contributory infringement and breach of contract risk for customers." In both the original blog post and its update revision,  Perens began by communicating directly to his audience – the 45 customers of Plaintiffs. He stated:

> It's my strong opinion that your company should avoid the Grsecurity product sold at grsecurity.net because it presents a contributory infringement and breach of contract risk.

In both the original blog post and its updated version, Perens continued by explaining Plaintiffs' business practice and then made conclusory statements that such practices violated the GPL, without any further analysis or discussion. Perens then continued discussing how Plaintiffs' clients were subjecting themselves to liability.

Since the subject matter of the blog post was to inform Plaintiffs' 45 customers of their potential liability if they continued to use the grsecurity® product, Perens abused his fame and invoked the curiosity of the public, none of them who were directly affected by Plaintiffs' business practices.

Thus, these statements are not protected by sections 425.16(e)(3) and (4).

**6. Opposition to Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)**

Even if Perens' statements are considered as a matter of public interest, Plaintiffs respectfully submit that they can sufficiently demonstrate a probability of prevailing on the merits of the claims.

**(i). Defamation per se and Per Quod**

Plaintiff OSS severally brings the action of defamation per se and defamation per quod. *See* FAC ¶¶ 78 – 90.

**(A) Plaintiff OSS Is Not A Public Figure Or A Limited Purpose Public Figure**

Public figures are entities which, ―by reason of the notoriety of their achievements or the vigor and success with which they seek the public's attention, are properly classed as public figures. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 343 (1974).  Plaintiff OSS is a small private corporation with one employee and four part-time independent contractors.  Spengler Decl. ¶ 2. Prior to the publication of the blog post(s), OSS has never sought the public attention and did not even advertise their services or their product, except for having Internet presence. Spengler Decl. ¶3.

Plaintiffs are not limited purpose public figures either. A limited public figure is one who injects himself into a particular public controversy. *Gertz*, 418 U.S. at 351. In determining if a business is a limited purpose public figure the Fourth District Court of Appeal provided the necessary factors to consider: (1) if the company is publicly traded; (2) the number of investors and (3) whether the company has promoted or injected itself into the controversy by means of numerous press releases. *AMPEX Corp. v. Cargle*, 128 Cal.App.4th 1569, 1576 (2005). In this case, none of the *AMPEX* factors are met. (i) OSS is a small private incorporation. (ii) OSS has no investors, and (iii) OSS has not promoted or injected itself into the controversy, at issue, by means of any press release. In fact, even after Perens' defamatory publication, Spengler did not make any comments to the public about Perens' post, or attempted to defend OSS from Perens' allegations. Thus, OSS is not a limited public figure.

**(B) Perens Made False Statements Of Fact Which Were Not Privileged And Which Have A Natural Tendency To Cause Damages**

Perens' false statements of "opinion" are actionable because they are facts rather than opinions and admissible evidence shows they are demonstrably false.

Generally, statements of fact are actionable. *Global Telemedia Intern., Inc. v. Doe 1*, 132 F.Supp.2d 1261, 1267-68 (C.D. Cal. 2001). A defendant cannot hide behind a claim of ―opinion when the statement in question – however phrased – states a provable (or disprovable) fact. *Rodriguez v. Panayiotou*, 314 F.3d 979, 985 (9th Cir. 2002); *Milkovich v. Lorain Journal Co.*, 487 U. S. 1, 19 (1990). The dispositive question is whether a reasonable fact finder could conclude that the relevant

PLAINTIFF'S OPPOSITION TO DEFENDANT PERENS' MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE

statements imply a provably false factual assertion. *Milkovich*, 497 U.S. at 19. The United States Supreme Court affirmed this rule in *Milkovich* when it stated, ─[e]ven if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false statement of fact. *Id.* at 19-20. Thus, ─a false assertion of fact [can] be libelous even though couched in terms of opinion. *Moyer v. Amador Valley Joint Union High Sch. Dist.*, 225 Cal.App.3d 720, 723 (1990).

Firstly, Perens has admitted that the Access Agreement did not violate the GPL.[2] FAC ¶ 44-45. Therefore, his statements are demonstrably, by admission, false. Thus, Perens cannot avoid liability by simply claiming that his defamatory statements were "opinions" of a layperson.

*Coastal Abstract Serv, Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725 (9th Cir. 1999) cannot apply to Perens.  Perens cannot simply evade liability by now claiming to be a layperson and at other times, representing himself as an expert in a matter taken to the  Court of Appeals.  Perens can either claim to be a layperson or represent himself as an expert in disputes over the legality of open source matters, as he did in *Jacobsen v. Katzer*, supra. But it cannot be both. The court should take Judicial Notice that Perens has represented himself as an expert in *Jacobsen.* Further, Perens has written at least 23 successful books in open-source matters, and has implied that his understanding of the law is better than seasoned attorneys admitted to the US Supreme Court. Clearly, Perens cannot be held to the same standard of a layperson and his "opinions" cannot be simply considered as that of a lay person.

Furthermore, due to Perens' reputation and fame, his opinions are well respected in the open source community and are generally considered to be true by the community. While no one may take a layperson's opinion seriously, Perens who advises attorneys and teaches continuing legal education to them, has the persuasive power to convince the masses to agree with his view point.

Nonetheless, the facts of *Coastal Abstract, supra,* can be distinguished from the present matter. There, Plaintiff sued defendant for defamation, among others, since defendant had claimed that plaintiff did not have a business license in California, as required by statute. Plaintiff in fact did not have a business license and the Ninth circuit stated, that "an opinion that does not convey a false factual implication is not defamatory under California law." (citing *Kahn v. Bower*, 232 Cal.App.3d 1599, 1607, 284 Cal.Rptr. 244, 248 (1991)). Thus, the Court held that if plaintiff had a California business license then a false factual implication may have existed, however, since it did not, there was no issue resulting in defamation (truth that plaintiff did not have a business license was a defense).

---

[2] This Court is requested to take Judicial Notice of FAC ¶¶ 44-45.

Here, Perens does not have truth as a defense, since Perens has admitted that the Access Agreement does not violate the GPL, his opinion that Plaintiff has violated the GPL (and subjecting its clients to liability) are not only *false on its face* (and thus defamatory), but also conveys false factual implications that Plaintiff's clients are subject to liability.

Furthermore, Perens has incorrectly held that whether Plaintiff OSS is in violation of the GPL is an unsettled question of law.  To the contrary the law is clear.

A license agreement, by definition, can only apply to a product or service which is agreed upon – in other words, there needs to be an agreement. Since the GPL only governs the current "Program" under which it is released, reasonably, there can no demand or expectation of a grant of right of a software that has not even been released.

Furthermore, the GPL in its preamble provides the licensee the "freedom to distribute free software (and charge for it as a service if you wish to)... ." Since Plaintiffs are incorporating Linux kernel code into their *patches*, as a licensee of the Linux kernel, the freedom to distribute their modifications or additions to the Linux kernel code, is also granted to Plaintiffs under the GPLv2. Since freedom to distribute code means to distribute (or not distribute code) without any consequences, Plaintiffs have the inherent right to not distribute code if they choose to do so. Further, since each version or update is technically new software and is released independently under the GPL, Plaintiffs are explicitly granted, under the GPL, the freedom to distribute each version, at their discretion. Thus, there can be no violation of the GPL. Finally, it is well known that a business can choose with whom it may do business and with it may not. However, Perens wants this Court to follow his absurd rationale and contradict common law principles worth of many decades of wisdom, if not centuries.

Based on paragraphs 12 – 32 of the First Amended Complaint, Plaintiffs request this Court to take Judicial Notice that Plaintiffs are not in violation of the GPL.

**(C) Negligence**

Perens has repeatedly contend that Plaintiffs do not allege that Perens was negligent, so the defamation claim fails.

However, in the amended complaint, it is now alleged that Perens was at least negligent and did not attempt to ascertain the truthfulness and veracity of the statements at issue, or knew the statements were false, or had serious doubts about the truthfulness of such statements. *See* e.g., FAC ¶¶ 57, 59, 60, 62, 63, 72, 81, 82, 99, and 117; Also see FAC ¶¶ 44-45, 48 and 49 (Perens admitting his statements

PLAINTIFF'S OPPOSITION TO DEFENDANT PERENS' MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE

were false, and despite that updating the blog post and publishing that the Access Agreement was violating the GPL).

**(D) Actual Harm**

Plaintiff OSS has suffered actual, as alleged in the amended complaint.  The statements in the blog posts have caused OSS extraordinary damages, including loss of potential customers and loss of good will. See FAC ¶ 73. As a direct or proximate cause of the publications, over 35 potential business customers have not signed the Access Agreement. *See* FAC ¶74. Further, at least four existing Customers have terminated business relations with Plaintiffs. *See* FAC ¶75.  Further, prior to the publication of the blog posts, OSS was in the process of hiring a full-time software engineer to further enhance the security features in the Grsecurity® product. The employee was expected to start working on the Grsecurity® product in September 2017.  However, as a direct or proximate cause of the Postings, OSS had to implement a hiring freeze and divert its resources towards legal fees and unexpected costs of litigation. The hiring freeze has harmed OSS at a time when it was geared towards expanding its business operation. *See* FAC ¶ 76.  The publication of the blog posts also caused OSS to incur the extraneous expense to hire an independent contractor to monitor and counteract the negative publicity resulting due to the publications which has further caused an expense of $6,300. See FAC ¶ 77.  As a proximate result of the Postings, OSS has suffered loss of business and professional reputation. Due to the blog posts OSS has suffered general and special damages, including, without limitation, lost revenue and profits as a function of damage to Plaintiff's business reputation; diminution in the pecuniary value of Plaintiff's goodwill, administrative costs in connection with Plaintiff's efforts to monitor and counteract the negative publicity, and other pecuniary harm. See FAC ¶¶  85 – 87.

Thus, Plaintiff has demonstrated a likelihood of success in prevailing the defamation claims.

**(ii) False Light**

The Restatement Second of Torts, section 652E provides:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

PLAINTIFF'S OPPOSITION TO DEFENDANT PERENS' MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE

"California common law has generally followed Prosser's classification of privacy interests as embodied in the Restatement." *Hill v. National Collegiate Athletic Assn.* 7 Cal.4th 1, 24 (1994).

"In order to be actionable, the false light in which the plaintiff is placed must be highly offensive to a reasonable person. Although it is not necessary that the plaintiff be defamed, publicity placing one in a highly offensive false light will in most cases be defamatory as well." *Fellows v. National Enquirer* 42 Cal.3d 234, 238–239 (1986).

Here, while Plaintiff OSS alleges defamation per se and defamation per quod, Plaintiff Spengler does not allege he has personally been defamed by the blog posts. However, since Spengler's name is generally associated with Plaintiff OSS, Spengler claims false light as an implication of the Postings resulting him in harm personally. Thus, the false light claims are not superfluous.

### (iii) Intentional Interference with Prospective Economic Advantage

"[S]pecific intent is not a required element of the tort of interference with prospective economic advantage....[ A] plaintiff may alternately plead that the defendant knew that the interference was certain or substantially certain to occur as a result of its action." *Korea Supply Company V. Lockheed Martin Corp* 29 Cal.4th 1134, 1154 (Cal. 2003).  "Although varying language has been used to express this threshold requirement, the cases generally agree it must be reasonably probable that the prospective economic advantage would have been realized but for defendant's interference." *Youst, supra,* at p. 71. "[I]n the absence of other evidence, timing alone may be sufficient to prove causation. . . . Thus, . . . the real issue is whether, in the circumstances of the case, the proximity of the alleged cause and effect tends to demonstrate some relevant connection. If it does, then the issue is one for the fact finder to decide." *Overhill Farms, Inc. v. Lopez* 190 Cal.App.4th 1248, 1267 (2010).

As pleaded in the amended complaint,

Perens in his original blog post stated:
My understanding from several reliable sources is that customers are verbally or otherwise warned that if they redistribute the Grsecurity patch, as would be their right under the GPL, that they will be assessed a penalty.
FAC ¶ 42.

Moreover, Perens claimed "It's with what else they have told their customers. It doesn't even have to be in writing. I have witnesses. ..." FAC ¶45.  Clearly, Perens has asserted he has knowledge

PLAINTIFF'S OPPOSITION TO DEFENDANT PERENS' MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE

1  about an economic relationship, either with a present customer or potential customer who has enquired

2  about the Access Agreement from Plaintiffs. While Plaintiffs allege Perens does not have such

3  knowledge, based on Perens' own assertions, he knew about a relationship, that remains unknown to

4  Plaintiffs. Further Plaintiffs have also allege that 35 potential customers have not engaged in business

5  with Plaintiffs since the publication of the defamatory statements. FAC ¶74. Furthermore, four existing

6  customers ceased business relationships with Plaintiff after the publication of the defamatory

7  statements.  FAC ¶ 75.  It is further alleged that it is reasonably probable that the prospective economic

8  advantage would have been realized but for defendant's interference. FAC ¶ 111.

9      Perens further alleges that Plaintiffs have failed to identify even one potential customer. It is

10  respectfully submitted, Plaintiffs cannot indiscriminately release identities of potential customers, and

11  subject them to harassment due to the publicity Perens has caused to the instant matter. Plaintiff will

12  release the names pursuant to a Court Order (L.R. 79-5). However, prior to doing so, since Plaintiffs

13  have not been given the opportunity to conduct discovery yet, such a Court Order would be appropriate

14  only once it is determined the customers or potential customers who contacted Perens.

15      Plaintiffs incorporate the arguments of Section III (4) herein and requests the Court to give

16  Plaintiffs an opportunity to conduct discovery before ruling on this claim and should hold Perens'

17  special motion to strike pursuant to California's anti-SLAPP statute as untimely and premature.

18  //

19  //

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28

PLAINTIFF'S OPPOSITION TO DEFENDANT PERENS' MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE

# IV. CONCLUSION

This Court should thus dismiss Perens Special Motion to Strike and Motion to Dismiss, and award Plaintiffs its attorney's fees for having to oppose this frivolous motion.


Dated this 2nd October 2017.

Respectfully Submitted,

CHHABRA LAW FIRM, PC

s/*Rohit Chhabra*
Rohit Chhabra
Attorney for Plaintiffs
Open Source Security Inc. & Bradley Spengler

PLAINTIFF'S OPPOSITION TO DEFENDANT PERENS' MOTION TO DISMISS AND SPECIAL MOTION TO STRIKE