CHHABRA LAW FIRM, PC
ROHIT CHHABRA (SBN 278798)
Email: rohit@thelawfirm.io
257 Castro Street Suite 104
Mountain View, CA  94041
Telephone: (650) 564-7929

**Attorney for Plaintiffs**
Open Source Security Inc. &
Bradley Spengler

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| OPEN SOURCE SECURITY INC. and BRADLEY SPENGLER<br><br>Plaintiffs,<br><br>v.<br><br>BRUCE PERENS, and Does 1-50,<br><br>Defendants. | Case No.: 3:17-cv-04002-LB<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT (DEFAMATION *PER SE*); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date: November 16, 2017<br>Time: 9:30 a.m.<br>Location: Courtroom C, 15th Floor<br>Judge: Hon. Laurel Beeler |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on November 16, 2017 at 9:30 a.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Laurel Beeler, Magistrate Judge of the United States District Court for the Northern District of California (Courtroom C, 15th Floor), located at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiff Open Source Security, Inc. ("OSS") will and hereby does move the Court for an Order granting partial summary judgment in favor of OSS for Count I of the First Amended Complaint (Defamation *per se*), based on the evidence submitted in the

First Amended Complaint filed on October 2, 2017 (ECF No. 18 and 18-1) and evidence submitted by Perens in his motion to dismiss and special motion to strike, filed on September 18, 2017 (ECF No. 11-1 and 11-2).

This motion is being made pursuant to Rule 56 of the Federal Rules of Civil Procedure. Using admissible evidence already gathered by Plaintiffs and further provided by Defendant Perens, this motion is based on the grounds that there is no genuine issue as to any material fact and that plaintiff is entitled to judgment as a matter of law.

This motion is based upon this Notice of Motion, the Memorandum of Points and Authorities in support thereof, the files and documents in this action, and all other matters properly presented to the Court prior to its ruling.

Pursuant to Civ. L.R. 56-2 and Section V of Hon. Laurel Beeler's Standing Order, no separate or joint statement of facts are being submitted herewith.

Dated this 11th October, 2017.

Respectfully Submitted,

CHHABRA LAW FIRM, PC

/s/*Rohit Chhabra*
Rohit Chhabra
Attorney for Plaintiffs
Open Source Security Inc. & Bradley Spengler

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT FOR PARTIAL SUMMARY JUDGMENT ON COUNT I (DEFAMATION PER SE)

### I. INTRODUCTION

Open source software is computer software that is made available with source code that can be modified, used, or shared under certain defined terms and conditions. One such license is the GNU General Public License version 2 ("GPL") which defines redistribution rights to any software released under the license. The Linux kernel code is released under the GPL. As stated in the preamble of the GPL, software released under the license is considered "free software," that is, freedom to distribute (or to not distribute), and developers are free to charge for such distribution as a service, if they wish to do so.

Plaintiff Open Source Security Inc. ("OSS" or "Plaintiff") is a small private company located in Pennsylvania and develops software code that fixes security vulnerabilities in the Linux kernel code (a concept commonly referred to as *patching* or providing *patches*). OSS releases the *patches*, in source code form, under the GPL, to approximately 45 of its customers (at the time the blog posts were published) via a Stable Patch Access Agreement ("Access Agreement"). In the Access Agreement, OSS's 45 customers are unequivocally informed that they have all the rights under the GPL for the current *patches* being released.  However, OSS further offers an, optional, *incentive* to not redistribute the patches outside the boundaries defined in the Access Agreement if they wish to utilize its server resources and receive continued access to future versions of the *patches.* Plaintiff's customers can choose to decline this incentive and if they wish to – they are free to redistribute the patches in their possession. Plaintiff can choose not to distribute future releases to any customer since the GPL does not grant an inherent right to future releases (since each version is technically new software and thus needs to be released under its own license). Furthermore, no court of law can ever rule contrary to Plaintiff's right to terminate access to its server and Internet resources and cancel the Access Agreement of any party (and thus refuse to do business with that party) at its discretion.

-1-

3:17-CV-04002-LB

Plaintiff Open Source Security's Notice of Motion And Motion For Partial Summary Judgment

Defendant Bruce Perens is a famous and well-regarded personality in the open source community. Perens is also respected as an expert in open source matters and has published 24 books on the subject. He has also appeared as an expert witness in court. Perens also thoroughly understands the law. Although not an attorney himself, Perens has taught continued legal education (CLE) to attorneys in many states. Further Perens has also implied that he understands the law better than attorneys admitted to the U.S. Supreme Court. Reasonably, the open source community, including Plaintiffs, have no reason to doubt Perens' knowledge or expertise in the subject matter.

This action began due to a blog post that was initially published on June 28, 2017, and further updated on July 10, 2017 by Perens, in which he discussed his "strong opinion" on how Plaintiff's customers were subjecting themselves to legal liability by doing business with Plaintiff.

The underlying *premise* of both publications was that the GPL "explicitly prohibits the addition of terms such as [those provided by the Access Agreement]." Based on this premise, Perens stated that Plaintiffs' redistribution clause of the Access Agreement was, *as a matter of fact*, violating the GPL, and thus the *patches* were a product of unlicensed work. Based on such a false assertion, Perens expressed his strong opinion stating that Plaintiff's customers were subjecting themselves to potential legal liability under copyright and/or contract law from the creators of the Linux kernel.

However, Defendant, as an expert in open source matters, knew or reasonably should have known that the Access Agreement, in part, only enforces Plaintiff's freedom to distribute free software as they wish. Defendant knew or should have known, that the Access Agreement does not prevent or restrict a user from exercising their right of redistributing the *patches*, but only defines conditions upon which Plaintiff is willing to offer their customers future access to their server resources and exercise their freedom to distribute future software – a condition beyond the scope of the GPL of the current version of the patches released to Plaintiff's customers.

Indeed, Perens admitted that Plaintiff was not violating the GPL under the Access Agreement. On July 9, 2017, at or about 5:09 p.m., prior to updating the blog post, Perens, responding to a

commenter on slashdot.org, admitted that "*[t]he problem isn't with the text [of the Access Agreement]. It's with what else they have told their customers. It doesn't even have to be in writing. I have witnesses.*" However, despite admitting that the Access Agreement was not in violation of the GPL, on July 10, 2017, at or about 8:11 a.m., Perens updated the blog post and explicitly published that the Access Agreement violated the GPL. Reasonably, Perens' statements in each version of the blog post were published either negligently, maliciously, or a combination thereof, and cannot be considered protected speech.

## II. PROCEDURAL HISTORY

The instant matter was initiated on July 17, 2017. On September 18, 2017, Defendant Perens filed a motion to dismiss pursuant to Fed. Civ. P. R. 12 (b)(6) and a special motion to strike pursuant to Cal. Code of Civ. P. §425.16. On Oct. 2, 2017, Plaintiffs filed a first amended complaint and opposition/response to Perens' motion to dismiss/ special motion to strike. On Oct. 10 2017, Perens filed a motion to withdraw the motion to dismiss and special motion to strike, pursuant to Civ. L.R. 7-7 due to Plaintiffs' First Amended complaint.

## III. ARGUMENT

**A. Summary Judgment is Appropriate on Motions Such as This Where Facts Are Not in Dispute and the Only Question Presented is One of Law.**

Summary judgment is proper when the moving party can show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In this instance, there is no genuine dispute as to any material fact because the issue is one of law. In such instances, summary judgment is not a disfavored procedure. *Tokio Marine & Fire Ins. Co., Ltd. v. United Air Lines, Inc.*, 933 F. Supp. 1527, 1529 (C.D. Cal. 1996). Rather, it is a useful procedural tool in avoiding trial. *Scripps Clinic & Research Foundation v. Genentech, Inc.*, 927 F.2d 1565 (Fed Cir. 1991). It is particularly appropriate

where no issues are presented involving the credibility of witnesses, *Earp v. Ornoski*, 431 F.3d 1158, 1170 (9th Cir. 2005), *cert. denied*, 547 U.S. 1159 (2006); motivation or intent, *Douglas v. Anderson*, 656 F.2d 528, 535(9th Cir. 1981); bias, *Alameda Books, Inc. v. City of Los Angeles*, 631 F.3d 1031, 1043 (9th Cir. 2011); or a person's state of mind. *F.T.C. v. Network Services Depot, Inc.*, 617 F.3d 1127, 1139 (9th Cir. 2010). The issues in the present motion involve none of these complications.

**B. Summary Judgment Is Particularly Appropriate in Libel Per Se Cases Such as This One Where Only Questions of Law Are Presented.**

Under California law, a libel is a written publication made in an unprivileged context that is false and that causes another to be exposed to hatred, contempt, ridicule or obliquy, or causes him to be shunned or avoided, or which has a tendency to injure him in his occupation. Calif. Civil Code §45. It is an invasion of the interest in a person's reputation. *Anthoine v. North. Cent. Counties Consortium*, 571 F.Supp.2d 1173 (E.D. Cal. 2008). California courts have added requirements that such a publication be intentional in nature and that the publication in question be of a factual nature - i.e., susceptible of being proved true or false - rather than an opinion. *Price v. Stoessel*, 620 F.3d 992, 998 (9th Cir. 2010), citing *Gilbert v. Sykes*, 147 Cal. App. 4th 13, 53 Cal Rptr. 3d 752, 764 (2007).

However, a defendant cannot hide behind a claim of opinion when the statement in question – however phrased – states a provable (or disprovable) fact. *Rodriguez v. Panayiotou*, 314 F.3d 979, 985 (9th Cir. 2002); *Milkovich v. Lorain Journal Co.*, 487 U. S. 1, 19 (1990). The dispositive question is whether a reasonable fact finder could conclude that the relevant statements imply a provably false factual assertion. *Milkovich*, 497 U.S. at 19. The United States Supreme Court affirmed this rule in *Milkovich* when it stated, ―[e]ven if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false statement of fact. *Id.* at 19-20. Thus, a false assertion of fact [can] be libelous even though couched in terms of opinion. *Moyer v. Amador Valley Joint Union High Sch. Dist.*, 225 Cal.App.3d 720, 723 (1990).

Courts have also held that the publication must be made to one or more persons who understand its defamatory meaning and application to the injured party. *Scott v. Solano County Health and Social Services Department*, 459 F.Supp.2d 959 (E.D. Cal. 2006). A libel that is defamatory without the need to introduce explanatory matter is libel on its face or "per se" libel. *Slaughter v. Friedman*, 185 Cal. Rptr. 244, 32 Cal. 3d 149, 649 P.2d 886. Such a libel is one that has a natural tendency to injure a person's reputation. *Taus v. Loftus*, 54 Cal. Rptr. 3d 775, 804, 40 Cal 4th 683, 151 P.2d 1185 (Cal. 2007). California courts have imposed virtually no restrictions on what kinds of publications may be held libelous per se. The publication, furthermore, does not have to state explicitly the defamation that is intended. *Condit v. National Enquirer, Inc.*, 248 F.Supp.2d 945 (E.D. Cal. 2002) (newspaper article regarding alleged "blowup phone call" between wife of former United States Congressman and intern with whom he allegedly had an affair, which referred to such call as a "heated phone screamfest" and stated that wife was "enraged," was reasonably susceptible of defamatory meaning; such statements attributed to wife a bitter and angry disposition, intemperance, and loss of control, which could subject her to contempt and humiliation). Libels per se are actionable even if they are susceptible to innocent interpretations. *MacLeod v. Tribune Pub. Co.*, 343 P.2d 36, 52 Cal.2d 536 (Cal. 1959). Finally, whether a publication is libelous on its face is a question of law. *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1010 (9th Cir. 2001); (citing *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 695 (9th Cir. 1998). If a publication is shown to be libelous per se, furthermore, damages are presumed. *Clark v. McClurg*, 215 Cal. 279, 284, 9 P.2d 505 (Cal. 1932). In both instances, no factual inquiry is required. Summary judgment motions, therefore, are particularly appropriate where, as here, a libel per se is alleged.

**C. The primary question here is whether Defendants' statements in the updated publication of July 20, 2017, that Plaintiff's Access Agreement is in violation of the GPL and thus, by trade of the Grsecurity product, was subjecting its customers to legal liability are Libelous *per se*.**

There is no dispute that Plaintiff's Stable Patch Access Agreement ("Access Agreement"), states, in part:

-5-

3:17-CV-04002-LB

Plaintiff Open Source Security's Notice of Motion And Motion For Partial Summary Judgment

> The User has all rights and obligations granted by grsecurity's software license, version 2 of the GNU GPL. These rights and obligations are listed at http://www.gnu.org/licenses/old-licenses/gpl-2.0.en.html. Notwithstanding these rights and obligations, the User acknowledges that redistribution of the provided stable patches or changelogs outside of the explicit obligations under the GPL to User's customers will result in termination of access to **future** updates of grsecurity stable patches and changelogs.

*See* First Amended Complaint ("FAC")  ¶18, emphasis in original.

There is no dispute that section 6 of the GPL states, in part:

> Each time you redistribute the Program (or any work based on the Program), the recipient automatically receives a license from the original licensor to copy, distribute or modify the Program subject to these terms and conditions. You may not impose any further restrictions on the recipients' exercise of the rights granted herein.

*See* FAC ¶ 14.

There is no dispute that Plaintiff releases its patches under the trade name of Grsecurity and releases the software under the GPL. *See* FAC ¶¶ 12, 13, and 15. There is no dispute that Perens, on July 10, 2017, at or about 8:11 a.m. (pacific time), updated his blog post. See FAC ¶33; Also see FAC Exhibit 10.  There is also no dispute that in the updated blog post, Perens published the following statements:

> By operating under their policy of terminating customer relations upon distribution of their GPL-licensed software, Open Source Security Inc., the owner of Grsecurity, creates an expectation that the customer's business will be damaged by losing access to support and later versions of the product, if that customer exercises their re-distribution right under the GPL license. Grsecurity's Stable Patch Access Agreement adds a term to the GPL prohibiting distribution or creating a penalty for distribution. GPL section 6 specifically prohibits any addition of terms. Thus, the GPL license, which allows Grsecurity to create its derivative work of the Linux kernel, terminates, and the copyright of the Linux Kernel is infringed. The GPL does not apply when Grsecurity first ships the work to the customer, and thus the customer has paid for an unlicensed infringing derivative work of the Linux kernel developers with all rights reserved. The contract from the Linux kernel developers to both Grsecurity and the customer which is inherent in the GPL is breached.
> As a customer, it's my opinion that you would be subject to both contributory infringement and breach of contract by employing this product in conjunction with the Linux kernel under the no-redistribution policy currently employed by Grsecurity.

*See* FAC Exhibit 2; *Also see* FAC ¶48.

There is no dispute that these statements were widely disseminated and read by the open source community, at large. *See* FAC ¶¶ 65 – 67. There is also no dispute that the Posting was reasonably understood by the reader to mean that Plaintiff was in violation of the GPL and that thus by its trade of Grsecurity was subjecting its customers to legal liability; therefore, its customers should avoid doing business with Plaintiff. *See generally* Defendant's Exhibit A, Perens' motion to dismiss and special motion to strike (ECF No. 11-2).

There is no dispute that Perens is an expert in open source matters and has a thorough understanding of the law as it relates to open source matters. *See* FAC ¶¶ 33 – 40.  There is also no dispute that Perens has admitted that Plaintiff's Access Agreement does not violate the GPL. *See* FAC ¶¶44 – 45. Further, there are no evidentiary issues of Perens' statements above being admitted into evidence, since Perens, via his attorney, has admitted that the cited statements were made by him. *See* Decl. Drummond- Hansen, ¶ 2, (ECF No. 11-1).

There is also no dispute that Perens failed to use reasonable care to determine the truth or falsity of the above presented statements of the updated July 10, 2017 blog post. This is clear since:

(a)     Perens initially published the blog post on June 28, 2017, without even seeing the subscription agreement, claiming that he had "several reliable sources ..." that Plaintiff had introduced terms in the Access Agreement that resulted in the Grsecurity product violating the GPL. *See* FAC ¶ 42; *Also see* FAC, Ex. 1.

(b)  On July 9, at or about 4:58 p.m. Perens was provided a web-link to the Access Agreement via a slashdot.org user. *See* FAC ¶ 44. *Also see* Defendant's Ex. A, page 11 (ECF No. 11-2).

(c)  On July 9, 2017, at or about 5:09 p.m., Perens acknowledged that the Access Agreement was not in violation of the GPL, stating "[t]he problem isn't with the text [of the Access Agreement]. It's with what else they have told their customers. It doesn't even have to be in writing. I have witnesses." *See* FAC ¶ 45.

(d) On July 10, at or about 8:11 a.m., Perens deleted all statements from his blog post relating to "reliable sources" (or witnesses) that could confirm Plaintiff was adding terms that violated the GPL, but instead explicitly stated, "Grsecurity's Stable Patch Access Agreement adds a term to the GPL prohibiting distribution or creating a penalty for distribution. GPL section 6 specifically prohibits any addition of terms." *See* FAC, Ex. 2; FAC ¶48.

(e) Further, Perens is an expert in open source matters and cannot be held to the standard of an ordinary prudent person of the open source community, but has to be held to a standard of an expert in open source matters as it relates to the law.

Notwithstanding the above, this Court should take judicial notice to the following:

*(i) Customers are not restricted in their ability to redistribute the Grsecurity product and exercise their rights under the GPL, if they opt to do so.*

Perens knew or should have known that Plaintiff is not restricting the redistribution rights of any party, as its customers can opt to not receive future versions of the software and exercise their redistribution rights under the GPL.

*(ii) Each version of Grsecurity is released under its own license.*

Perens knew or should have known that each GPL license pertains to only software released using such license; each update or version is technically a new software which needs to be released under a license of its own. Perens knew or should have known that there is no term or condition within the GPL that even remotely suggests to the contrary.

*(iii) Plaintiff is also a licensee of the Linux kernel code under the GPL and has the freedom to distribute each version of its software at its discretion.*

The GPL, in part states:

> When we speak of free software, we are referring to freedom, not price. Our General Public Licenses are designed to make sure that **you have the freedom to distribute copies of free software (and charge for this service if you wish)**, that you receive source code or can get it if you want it, that you can change the software or use pieces of it in new free

programs; and that you know you can do these things.
See FAC ¶19, (emphasis added).

Also, it is undisputed that "a trader or manufacturer ...[that] carries on an entirely private business, and can sell to whom he pleases; ... he may cease to do any business whenever his choice lies in that direction... ." *United States v. Trans-Missouri Freight Association,* 166 U.S. 290, 320-21 (1897). Further, "[a] manufacturer of course generally has a right to deal, or refuse to deal, with whomever it likes, as long as it does so independently." *Monsanto Co. V. Spray-Rite Service Corp.* 465 U.S. 752, 761 (1984).

Since Plaintiff is a licensee of the Linux kernel code under the GPL and modifies the kernel code via *patches* (in the form of Grsecurity), the GPL provides Plaintiff **"the freedom to distribute copies of free software (and charge for this service if you wish)."** Since each version of Grsecurity is distributed under an explicit GPL license, Plaintiff has the freedom to distribute copies of the kernel code software, at its discretion. Thus, the GPL provides Plaintiff the freedom to distribute each version of its Grsecurity product at its discretion and choose its redistribution without violating the GPL.

Needless to say, such an interpretation has to be deemed reasonable since Plaintiff is only restricting itself from choosing with whom it will do future business, and "has a right to deal, or refuse to deal, with whomever it likes, as long as it does so independently."  Plaintiff's customers also have a right to deal or refuse to deal with whomever they like, and customers can opt to not receive future versions of Grsecurity from Plaintiff and are thus free to exercise their rights (redistribute, modify, share, etc.) the Grsecurity product, as provided in the GPL. Therefore, based on existing case law, Plaintiff cannot legally be deemed in violation of the GPL.

*(iv) Statement(s) that the Access Agreement of the Grsecurity product is in violation of the GPL, in the updated blog post, is defamatory on its face.*

However, as Perens stated in his (now withdrawn) motion to dismiss and special motion to strike, this Court does not need to rule on whether Plaintiff's Access Agreement is in violation of the GPL. The issue of defamation per se for this motion of partial summary judgment is limited to the updated blog post in which Perens imputed that the Access Agreement violates the GPL. However, by

his own admission, Perens had admitted that the Access Agreement did not violate the GPL. Therefore, the publication of the statement(s) in the updated blog post should be deemed defamatory on its face.

## IV. CONCLUSION

For the reasons set forth above, Perens' statements in the updated blog post are false and defamatory imputing that Plaintiff's Grsecurity product is in violation of the GPL, or was subjecting Plaintiff's customers to legal liability. Such statements have a natural tendency to injure the reputations of all those associated with the Grsecurity product. It is thus libelous per se, and this Court should enter judgment accordingly. A hearing on damages arising from such injury should be held in the damages phase of this proceeding upon the resolution of the remaining counts. At that time, Plaintiffs will reiterate their claim for punitive damages since Defendants' libel was done intentionally and with callous disregard for the injury that it inflicted.

Dated this 11th October, 2017.

Respectfully Submitted,

CHHABRA LAW FIRM, PC

/s/*Rohit Chhabra*
Rohit Chhabra
Attorney for Plaintiffs
Open Source Security, Inc. & Bradley Spengler