MELODY DRUMMOND HANSEN (S.B. #278786)
mdrummondhansen@omm.com
HEATHER J. MEEKER (S.B. #172148)
hmeeker@omm.com
O'MELVENY & MYERS LLP
2765 Sand Hill Road
Menlo Park, California 94025-7019
Telephone:     +1 650 473 2600
Facsimile:     +1 650 473 2601

CARA L. GAGLIANO (S.B. #308639)
cgagliano@omm.com
Two Embarcadero Center
28th Floor
San Francisco, California 94111-3823
Telephone:     +1 415 984 8700
Facsimile:     +1 415 984 8701

Attorneys for Defendant
Bruce Perens

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO

| | |
|---|---|
| OPEN SOURCE SECURITY, INC., and BRADLEY SPENGLER,<br><br>Plaintiffs,<br><br>v.<br><br>BRUCE PERENS, and Does 1-50,<br><br>Defendants. | Case No. 3:17-cv-04002-LB<br><br>**DEFENDANT BRUCE PERENS'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE THE FIRST AMENDED COMPLAINT PURSUANT TO THE CALIFORNIA ANTI-SLAPP STATUTE, CODE OF CIV. PROC. SEC. 425.16, AND MOTION TO DISMISS THE FIRST AMENDED COMPLAINT WITH PREJUDICE PURSUANT TO FED. R. CIV. P. 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date:  December 14, 2017<br>Time:  9:30 a.m.<br>Location:  Courtroom C, 15th Floor<br>Judge:  Hon. Laurel Beeler |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 14, 2017 at 9:30 a.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Laurel Beeler, Magistrate Judge of the United States District Court for the Northern District of California (Courtroom C, 15th Floor), located at 450 Golden Gate Avenue, San Francisco, California 94102, defendant Bruce Perens will and hereby does move to dismiss the First Amended Complaint filed on October 2, 2017 (ECF No. 18) by plaintiffs Open Source Security, Inc. ("OSS") and Bradley Spengler on the grounds that it fails to state a claim for relief pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant also moves to strike all claims from Plaintiffs' First Amended Complaint pursuant to California Code of Civil Procedure Section 425.16 on the grounds that those claims arise out of protected activity and that Plaintiffs cannot meet their burden of showing a reasonable probability of success on the merits.

This Motion is based upon this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities in support thereof and all materials cited within the Memorandum, including the Declaration of Melody Drummond Hansen and exhibits attached thereto, and Defendant's Request for Judicial Notice and exhibits attached thereto; the pleadings, documents, and records on file with the Court in this action; the reply memorandum defendant intends to file; and any further argument the Court might allow.

Dated: October 31, 2017

MELODY DRUMMOND HANSEN
HEATHER J. MEEKER
CARA L. GAGLIANO
O'MELVENY & MYERS LLP


By:   */s/ Melody Drummond Hansen*
               Melody Drummond Hansen
Attorneys for Defendant
Bruce Perens

**TABLE OF CONTENTS**

|   |   | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | FACTS | 3 |
| | A. Open Source Software and the GPL | 3 |
| | B. Open Source Security, Inc. and the Grsecurity Agreement | 4 |
| | C. Mr. Perens's Opinions and Public Engagement | 5 |
| III. | PROCEDURAL HISTORY | 6 |
| IV. | APPLICABLE LEGAL STANDARDS | 7 |
| | A. Special Motion to Strike Pursuant to California's Anti-SLAPP Statute, Cal. Civ. Proc. Code § 425.16 | 7 |
| | B. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) | 8 |
| V. | PLAINTIFFS' FIRST AMENDED COMPLAINT SHOULD BE STRICKEN AS A STRATEGIC LAWSUIT AGAINST PUBLIC PARTICIPATION. | 9 |
| | A. Plaintiffs' Claims Target Conduct Protected by the Anti-SLAPP Statute. | 9 |
| | B. Plaintiffs Cannot Establish a Reasonable Probability of Prevailing on the Merits of Their Claims. | 13 |
| VI. | PLAINTIFFS' FIRST AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED. | 13 |
| | A. OSS Fails to State a Claim for Defamation *Per Se* or *Per Quod*. | 14 |
| |    1. Mr. Perens's Commentary on the Grsecurity Agreement Neither States nor Implies a Provably False Assertion of Fact. | 14 |
| |       a. OSS's Claims Are Based on Statements of Opinion, Not Statements of Fact. | 15 |
| |       b. Mr. Perens Fully and Accurately Disclosed the Factual Basis for His Opinions. | 17 |
| |    2. OSS Does Not Plausibly Allege That Mr. Perens Was Negligent as to the Alleged Falsity of His Statements. | 18 |
| | B. Mr. Spengler Fails to State a Claim for False Light Invasion of Privacy. | 21 |
| | C. Neither Plaintiff States a Claim for Intentional Interference with Prospective Economic Advantage | 22 |
| VII. | CONCLUSION | 24 |

**Cases**

*Albrecht v. Lund,*
845 F.2d 193, 195–96 (9th Cir.), *amended,* 856 F.2d 111 (9th Cir. 1988) ............................ 24

*Amaretto Ranch Breedables, LLC v. Ozimals, Inc.,*
No. CV 10-5696 CRB, 2013 WL 3460707 (N.D. Cal. July 9, 2013) ................................ 15, 23

*Artifex Software, Inc. v. Hancom, Inc.,*
No. 16-cv-06982-JSC, 2017 WL 1477373 (N.D. Cal. Apr. 25, 2017) ................................ 3, 16

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ........................................................................................................... 8

*Averill v. Superior Court,*
42 Cal. App. 4th 1170 (1996) ......................................................................................... 12

*Baker v. L.A. Herald Exam'r,*
42 Cal. 3d 254 (1986) ...................................................................................................... 14

*Balistreri v. Pacifica Police Dep't,*
901 F.2d 696 (9th Cir. 1988) ............................................................................................ 8

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ............................................................................................................ 8

*Bhambra v. True,*
No. C 09-4685 CRB, 2010 WL 1758895 (N.D. Cal. Apr. 30, 2010) .................................... 13

*Blatty v. N.Y. Times Co.,*
42 Cal. 3d 1033 (1986) .................................................................................................... 22

*Brown v. Kelly Broad. Co.,*
48 Cal. 3d 711 (1989) ...................................................................................................... 19

*Carney v. Santa Cruz Women Against Rape,*
221 Cal. App. 3d 1009 (1990) ......................................................................................... 18

*Cole v. Sunnyvale,*
No. C-08-05017 RMW, 2010 WL 532428 (N.D. Cal. Feb. 9, 2010) ................................... 10

*Contemporary Servs. Corp. v. Staff Pro Inc.,*
152 Cal. App. 4th 1043 (2007) ....................................................................................... 23

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.,*
11 Cal. 4th 376 (1995) .................................................................................................... 23

*Dowling v. Zimmerman,*
85 Cal. App. 4th 1400 (2001) ........................................................................................... 7

*Eisenberg v. Alameda Newspapers, Inc.*,
   74 Cal. App. 4th 1359 (1999) ................................................. 22

*Franklin v. Dynamic Details, Inc.*,
   116 Cal. App. 4th 375 (2004) ................................... 15, 17, 18

*Freecycle Network, Inc. v. Oey*,
   505 F.3d 898 (9th Cir. 2007) .............................................. 16

*Gardner v. Martino*,
   563 F.3d 981 (9th Cir. 2009) ............................................. 22

*Graham-Sult v. Clainos*,
   756 F.3d 724 (9th Cir. 2014) ............................................. 24

*Harkonen v. Fleming*,
   880 F. Supp. 2d 1071 (N.D. Cal. 2012) ........................... 22

*Hecimovich v. Encinal Sch. Parent Teacher Org.*,
   203 Cal. App. 4th 450 (2012) ........................................... 18

*In re Circuit Breaker Litig.*,
   984 F. Supp. 1267 (C.D. Cal. 1997) ................................ 23

*Jacobsen v. Katzer*,
   535 F.3d 1373 (2008) ................................................ 3, 4, 16

*Kapellas v. Kofman*,
   1 Cal. 3d 20 (1969) ..................................................... 21, 22

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) .............................................. 6

*Makaeff v. Trump Univ., LLC*,
   715 F.3d 254 (9th Cir. 2013) ............................................. 11

*Maloney v. T3Media, Inc.*,
   853 F.3d 1004 (9th Cir. 2017) ............................................. 9

*Maloney v. T3Media, Inc.*,
   94 F. Supp. 3d 1128 (C.D. Cal. 2015) .............................. 9

*Navellier v. Sletten*,
   29 Cal. 4th 82 (2002) ........................................................ 8

*New Show Studios LLC v. Needle*,
   No. 2:14-CV-01250-CAS-MRWx, 2014 WL 12495640 (C.D. Cal. Dec. 29,
   2014) ................................................................................ 11, 23

*Nygard, Inc. v. Uusi-Kerttula,*
    159 Cal. App. 4th 1027 (2008) ................................................................. 9, 15

*Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin,*
    418 U.S. 264 (1974) ..................................................................................... 14

*Partington v. Bugliosi,*
    56 F.3d 1147 (9th Cir. 1995) ...................................................................... 17

*Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.,*
    946 F. Supp. 2d 957 (N.D. Cal. 2013), *aff'd,* 609 F. App'x 497 (9th Cir. 2015) .............. 11, 22

*Reader's Digest Ass'n v. Superior Court,*
    37 Cal. 3d 244 (1984) ................................................................................. 18

*Robinson v. Alameda Cty.,*
    875 F. Supp. 2d 1029 (N.D. Cal. 2012) ..................................................... 13

*Rodriguez v. Panayiotou,*
    314 F.3d 979 (9th Cir. 2002).......................................................................16

*Rodriguez v. Sony Comput. Entm't Am., LLC,*
    801 F.3d 1045 (9th Cir. 2015) .................................................................... 12

*Rogers v. Home Shopping Network, Inc.,*
    57 F. Supp. 2d 973 (C.D. Cal. 1999).......................................................... 8

*Royal Primo Corp. v. Whitewater W. Indus., Ltd,*
    No. 15-CV-04391-JCS, 2016 WL 4080177 (N.D. Cal. July 29, 2016) ................... 12

*Seelig v. Infinity Broad. Corp.,*
    97 Cal. App. 4th 798 (2002) ................................................................. 10, 12

*Simmons v. Allstate Ins. Co.,*
    92 Cal. App. 4th 1068 (2001) .................................................................... 12

*Solano v. Playgirl, Inc.,*
    292 F.3d 1078 (9th Cir. 2002).....................................................................21

*Sole Energy Co. v. Petrominerals Corp.,*
    128 Cal. App. 4th 212 (2005) ..................................................................... 23

*Standing Comm. on Discipline of U.S. Dist. Court for Cent. Dist. of Cal. v. Yagman,*
    55 F.3d 1430 (9th Cir. 1995)....................................................................... 17

*Tamkin v. CBS Broad., Inc.,*
    193 Cal. App. 4th 133 (2011) ...................................................................... 9

*Theme Promotions, Inc. v. News Am. FSI*,
    35 F. App'x 463 (9th Cir. 2002) ........................................ 15

*Thomas v. Fry's Elecs., Inc.*,
    400 F.3d 1206 (9th Cir. 2005) ........................................ 24

*U.S. ex rel Newsham v. Lockheed Missiles & Space Co.*,
    190 F.3d 963 (9th Cir. 1999) ........................................ 7

*Verizon Del., Inc. v. Covad Commc'ns Co.*,
    377 F.3d 1081 (9th Cir. 2004) ........................................ 12

*Versata Software, Inc. v. Ameriprise Fin., Inc.*,
    No. A–14–CA–12–SS, 2014 WL 950065 (W.D. Tex. Mar. 11, 2014) .............. 3, 16

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ........................................ 13

*Von Brimer v. Whirlpool Corp.*,
    536 F.2d 838 (9th Cir. 1976) ........................................ 23

*Wallace v. Free Software Found., Inc.*,
    No. 1:05-CV-0618-JDT-TAB, 2006 WL 2038644 (S.D. Ind. Mar. 20, 2006) .......... 3

*Wallace v. Int'l Bus. Machines Corp.*,
    467 F.3d 1104 (7th Cir. 2006) ........................................ 4

*Westport Ins. Corp. v. Vasquez, Estrada & Conway LLP*,
    No. 15-CV-05789-JST, 2016 WL 1394360 (N.D. Cal. Apr. 8, 2016) ............... 23

*Wilbanks v. Wolk*,
    121 Cal. App. 4th 883 (2004) ........................................ 11

*Wong v. Tai Jing*,
    189 Cal. App. 4th 1354 (2010) ........................................ 9

*XimpleWare, Inc. v. Versata Software, Inc.*,
    No. 5:13-cv-05161-PSG, 2014 WL 2080850 (N.D. Cal. May 16, 2014) ............. 10

*Z.F. ex rel. M.A.F. v. Ripon Unified School District*,
    No. 10-CV-00523-TLN-CKD, 2017 WL 1198492 (E.D. Cal. Mar. 31, 2017) ......... 18

**Statutes**

Cal. Civ. Proc. Code § 425.16(a) ........................................ 7

Cal. Civ. Proc. Code § 425.16(b)(1) ........................................ 7

Cal. Civ. Proc. Code § 425.16(e) ................................................................. 7

Cal. Civ. Proc. Code § 425.16(e)(3)........................................................... 7, 8

**Other Authorities**

Cal. Civ. Jury Instructions 1704................................................................ 18

Cal. Civ. Jury Instructions 1705................................................................ 18

**Rules**

Fed. R. Civ. P. 12(b)(6)............................................................................. 8

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.  INTRODUCTION

OSS brings this suit to discourage Bruce Perense from freely expressing his opinions and in an attempt to "win" a public debate about whether Plaintiffs' restrictions on software distribution violate the GPL Open Source license agreement.  Plaintiffs cannot possibly prevail on their claims because they target unactionable, legally protected opinions rather than statements of fact that may be proven false.  While maintaining that Mr. Perens opinions regarding OSS's violation of the GPL *were* false at the time they were made, Plaintiffs at the same time ask the Court to *make* them false by deciding that OSS has not violated the GPL.  Such a decision regarding the GPL would be an advisory opinion, and even if the Court decided such an issue, it could not retroactively render Mr. Perens's July 2017 opinions false.

The GNU General Public License, or GPL, was created to promote the open-source development of software products.  It is designed to make sure that those who receive software under the GPL have the freedom to distribute copies and modifications of such software, among other rights.  To that end, the GPL prohibits placing additional restrictions on the rights granted to redistribute software.  Plaintiff Open Source Security, Inc.'s security patch Grsecurity for the Linux Operating System purports to be licensed under the GPL but is subject to a user agreement that threatens to penalize users who exercise their redistribution rights.

Mr. Perens, a computer programmer and advocate for open source software licensing, expressed opinions on his blog that criticized Open Source Security's non-redistribution policies.  Specifically, Mr. Perens offered opinions about potential risks those who purchase Open Source Security's products could face because, under his interpretation, Open Source Security's user agreement breaches the GPL and terminates the license, leading to a risk of breach of contract and copyright infringement claims.  Mr. Perens expressed special concern about placing such restrictions on security patches because the efficient detection of software vulnerabilities is an important benefit of Open Source software.  Mr. Perens offered his opinions in the public interest, explained the basis for the opinions, and encouraged readers to discuss any concerns with a licensed attorney.  Interested members of the public considered and debated his opinions in

internet discussion forums.  Mr. Perens joined in the public discussion, further explaining his views.

Rather than engaging in those discussions or otherwise publicly explaining why it disagrees with Mr. Perens, Open Source Security—and now also its CEO, Bradley Spengler—brought this lawsuit to "win" the debate with a court order.  While Open Source Security and Mr. Spengler do not like Mr. Perens's opinions, those opinions are protected speech under the First Amendment, the California Constitution, and California's anti-SLAPP statute.  Open Source Security sued Mr. Perens to bully him (and others like him) into not expressing constitutionally protected opinions regarding its business practices.  After Mr. Perens filed his initial anti-SLAPP motion challenging each claim of the Original Complaint, Mr. Spengler joined the fray himself to prop up Open Source Security's clearly legally deficient "false light" claim rather than dropping the claim as OSS should, and adding window dressing to OSS's intentional interference claim.

Abusive lawsuits like this one are the reason why the California legislature enacted an anti-SLAPP (anti-Strategic Lawsuit Against Public Participation) statute.  The anti-SLAPP statute was designed to stop the abusive behaviors of those like Open Source Security and Bradley Spengler who would use the courts to threaten others' valid exercise of their free speech rights.  The anti-SLAPP statute accomplishes these goals by providing for early dismissal of such suits along with a mandatory award of attorneys' fees.  Here, Open Source Security and Bradley Spengler attack Mr. Perens's free speech rights by suing him merely for publicly expressing his opinions.  This is not a meritorious lawsuit to address actual harm; it is a paradigmatic example of a "strategic lawsuit against public participation" that is covered by the anti-SLAPP statute.

Because Open Source Security's and Mr. Spengler claims fall within the scope of the anti-SLAPP statute, to avoid having their claims stricken, each plaintiff must demonstrate a reasonable probability of success on the merits.  They cannot do so.  Open Source Security's claims for defamation *per se* and defamation *per quod* fail because the accused statements are opinions that neither state nor imply "provably false assertions of fact" as required under California law and separately because Open Source Security fails to plausibly allege that Mr. Perens was negligent.  Mr. Spengler's false light claim fails because his claim is merely duplicative of OSS's baseless

defamation claims.  Plaintiffs' claims for intentional interference with prospective economic

advantage likewise fail because they duplicate the defamation claims and also because they fail to

identify any independently wrongful conduct by Mr. Perens.  Mr. Spengler's intentional

interference claim fails for the additional reason that the alleged expected economic benefits

would legally accrue to OSS, not Mr. Spengler individually.

For these reasons, the Court should dismiss Plaintiffs' claims pursuant to Federal Rule of

Civil Procedure 12(b)(6) and strike them pursuant to the California anti-SLAPP statute.

## II.    FACTS[1]

### A.    Open Source Software and the GPL

"Open Source" software is software "whose code is made freely available to all users,

allowing the public to access and modify the code." *Versata Software, Inc. v. Ameriprise Fin.,*

*Inc.*, No. A–14–CA–12–SS, 2014 WL 950065 (W.D. Tex. Mar. 11, 2014).  These conditions are

maintained through open source licensing terms. The most common open source license is the

GNU General Public License, or GPL.  *See* RFJN Ex. 3 at 14.  As a court in this district has

recognized, the GPL's goal is to "promote the open-source development of software products."

*Artifex Software, Inc. v. Hancom, Inc.*, No. 16-cv-06982-JSC, 2017 WL 1477373, at *1 (N.D.

Cal. Apr. 25, 2017).  Courts and government policy-makers alike recognize that Open Source

licensing "serves to advance the arts and sciences in a manner and at a pace that few could have

imagined just a few decades ago." *See, e.g.*, *Jacobsen v. Katzer*, 535 F.3d 1373, 1378 (2008);

*Wallace v. Free Software Found., Inc.*, No. 1:05-CV-0618-JDT-TAB, 2006 WL 2038644, at *3

(S.D. Ind. Mar. 20, 2006); *see also* RFJN Ex. 1 at 2.  One of the most important public benefits of

Open Source licensing is that it facilitates improvements to both the performance and security of

the licensed software.  When software source code is freely distributed,  "[i]mprovement to a

product can come rapidly and free of charge from an expert not even known to the copyright

---

[1] The following "facts" are based on Plaintiff's factual allegations (which Mr. Perens assumes to
be true only for purposes of this combined motion), documents cited in the Complaint, and other
publicly available materials that provide background for the dispute.  While the materials beyond
the complaint and its incorporated documents are not necessary to resolve Mr. Perens's motions,
the court may take judicial notice of them to the extent it deems appropriate.  These materials are
attached to the concurrently filed Request for Judicial Notice ("RFJN") as Exhibits 1–3.

holder." *Jacobsen*, 535 F.3d. at 1379. As the United States Department of Defense has recognized, "the continuous and broad peer-review enabled by publicly available source code supports software reliability and security efforts through the identification and elimination of defects that might otherwise go unrecognized by a more limited core development team." RFJN Ex. 2 at 4. *See also* RFJN Ex. 1 at 2. In contrast, limiting source code availability "inhibit[s] the ability of third parties to respond to vulnerabilities." RFJN Ex. 3 at 7.

### B. Open Source Security, Inc. and the Grsecurity Agreement

Plaintiff Bradley Spengler is the CEO and sole shareholder of Plaintiff Open Source Security, Inc. ("OSS"), a software company that provides security patch software for the Linux Operating System under the brand name Grsecurity. *See* FAC at ¶¶ 3, 12. As courts have recognized, Linux is a "prominent example of free, open-source software" and is "maintained by a large open-source community." *Wallace v. Int'l Bus. Machines Corp.*, 467 F.3d 1104, 1106 (7th Cir. 2006). The Grsecurity software uses licensed work of the Linux kernel and is governed by the GPL version 2 ("GPLv2"). *See* FAC ¶¶ 12–13. Consistent with the GPL's goal of promoting the open-source development of software products, the GPLv2 prohibits those who distribute software subject to the GPL from placing further restrictions on recipients' rights. GPLv2 section 6 provides in part:

> Each time you redistribute the Program (or any work based on the Program), the recipient automatically receives a license from the original licensor to copy, distribute or modify the Program subject to these terms and conditions. You may not impose any further restrictions on the recipients' exercise of the rights granted herein.

*See* FAC ¶ 14 & Ex. 3 at 3 (ECF No. 18-1 at 10). The preamble to the GPLv2 further clarifies the meaning of section 6's "no further restrictions" provision, explaining that the license forbids both "deny[ing] [licensees] these rights" and "ask[ing] [licensees] to surrender" them. FAC Ex. 3 at 1. OSS, however, distributes its Grsecurity software subject to an agreement that threatens to penalize recipients if they exercise their rights under the GPLv2 to freely redistribute the software. *See* FAC ¶¶ 17–18 & Ex. 4 at 1 (ECF No. 18-1 at 15). Namely, the Grsecurity agreement purports to terminate access to future security updates for users if they redistribute the

Grsecurity software except where explicitly required by the GPL. The agreement states:

> the User acknowledges that ***redistribution of the provided stable patches or changelogs*** outside of the explicit obligations under the GPL to User's customers ***will result in termination of access*** to **future** updates of grsecurity stable patches and changelogs.

*See* FAC Ex. 4 at 1 (final emphasis in original).

### C.  Mr. Perens's Opinions and Public Engagement

Defendant Bruce Perens is an individual computer programmer and one of the founders and supporters of the Open Source software movement. Mr. Perens maintains a blog at www.perens.com. *See* FAC ¶ 1. As part of discussion in the Open Source community about the non-redistribution clause of the Grsecurity agreement, Mr. Perens posted a blog entry expressing his opinion that the non-redistribution clause violates section 6 of the GPLv2, rendering the Grsecurity software infringing, and that Grsecurity customers may consequently be at risk for legal liability themselves. FAC Ex. 1 (ECF No. 18-1 at 2–3), Ex. 2 (ECF No. 18-1 at 5–6).

In the blog post, Mr. Perens also presented the key premises on which he based his opinions:

- that the Grsecurity patch "is inseparable from Linux and can not work without it,"
- that the Grsecurity patch "must be under the GPL version 2 license, or a license compatible with the GPL and with terms no more restrictive than the GPL,"]
- that Grsecurity's "customers are warned that if they redistribute the Grsecurity patch, as would be their right under the GPL, that they will be assessed a *penalty:* they will no longer be allowed to be customers, and will not be granted access to any further versions of Grsecurity," and
- that "GPL section 6 specifically prohibits any addition of terms."

FAC Exs. 1, 2. Mr. Perens also stated in his blog post that he is not an attorney. *See* FAC Ex. 1 at 2, Ex. 2 at 2.

After Mr. Perens published his blog post, a third party shared a link to and summary of the blog on the website Slashdot. Declaration of Melody Drummond Hansen ("Drummond Hansen

Decl.") Ex. A at 1.[2]  Readers of the website proceeded to engage in a robust discussion in the public comments section on that page, commenting on and debating not only the specific issue of whether the Grsecurity agreement complies with the GPLv2, but also a wide range of related subjects, including best practices for improving the security of the Linux kernel (*see id.* at 3–5), whether the GPL promotes or hinders innovation (*see id.* at 38–40), and whether the GPL is best viewed as guaranteeing freedoms or imposing restrictions (*see id.* at 73–84).  Mr. Perens joined the conversation, further explaining the basis for his opinions.  *See generally id.*

### III.    PROCEDURAL HISTORY

On July 17, 2017, OSS filed this lawsuit, asserting claims of defamation *per se*, defamation *per quod*, false light invasion of privacy, and intentional interference with prospective economic advantage.  All four claims in the Original Complaint were predicated on the opinions stated in Mr. Perens's blog post.  *See* Compl. ¶¶ 42–75.  On September 18, Mr. Perens moved to strike the Complaint under California's anti-SLAPP statute or, in the alternative, to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 11, "First Combined Motion" or "FCM.")  Mr. Perens's motion argued, *inter alia*, that OSS's claims arose from conduct protected by California's anti-SLAPP law; that OSS's defamation claims were based on non-actionable statements of opinion; that OSS's false light and intentional interference claims were duplicative of its defamation claims; that corporate entities cannot sue for false light invasion of privacy under California law; and that OSS's factual allegations were legally deficient.

On October 2, Plaintiffs filed the First Amended Complaint, which asserted the same claims as the Original Complaint but added 12 pages of allegations, substituted Mr. Spengler for OSS on the false light claim, and added an intentional interference claim by Mr. Spengler.  Plaintiffs also filed a purported opposition to Mr. Perens's pending motions, which relied on the

---

[2] Exhibit A to the Drummond Hansen Declaration is a website printout of the Slashdot discussion thread referenced at paragraphs 40, 43–45, 49–50, 66–68, 93–96, 107, and 111 of the FAC.  Consideration of the complete discussion thread is proper under the doctrine of incorporation by reference.  *See Knievel v. ESPN*, 393 F.3d 1068, 1076–77 (9th Cir. 2005) (considering website content accompanying allegedly defamatory photograph and caption where only photograph and caption were attached to complaint).

allegations of the First Amended Complaint rather than defending the Original Complaint. (ECF No. 20, "Opp'n to FCM.")  On October 10, Mr. Perens informed the Court that he understood his pending motions (directed to the Original Complaint) to have been procedurally mooted by the superseding First Amended Complaint and stated his intent to file motions to dismiss and to strike Plaintiffs' amended complaint.  (ECF No. 21.)  On October 11, before Mr. Perens had responded to the First Amended Complaint—and in fact just one hour after the parties had stipulated to extend Mr. Perens's deadline to respond until October 31 (ECF No. 23)—OSS filed a motion for partial summary judgment on its claim of defamation per se.  (ECF No. 24, "MPSJ.")

Mr. Perens now timely brings this special motion to strike under California's anti-SLAPP statute and motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  Mr. Perens also concurrently files his Opposition to OSS's Motion for Partial Summary Judgment.

## IV.    APPLICABLE LEGAL STANDARDS

### A.    Special Motion to Strike Pursuant to California's Anti-SLAPP Statute, Cal. Civ. Proc. Code § 425.16

One purpose of California's anti-SLAPP statute is to encourage "continued participation in matters of public significance" and to combat lawsuits that "chill the valid exercise of the constitutional right[] of freedom of speech" through "abuse of the judicial process."  Cal. Civ. Proc. Code § 425.16(a).  Accordingly, a plaintiff's claims arising from "any act" done "in furtherance of" a defendant's free speech rights "in connection with a public issue" may be stricken under the anti-SLAPP statute.  *Id.* § 425.16(b)(1).  Courts, including federal courts sitting in diversity, must apply and construe the anti-SLAPP statute broadly to protect the rights of defendants.  *Id.* § 425.16(a); *see also Dowling v. Zimmerman,* 85 Cal. App. 4th 1400, 1425 (2001) (noting the statute is meant to provide "a swift and effective remedy to SLAPP suit defendants"); *U.S. ex rel Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 972 (9th Cir. 1999) (applying anti-SLAPP statute in diversity case because of its "important [and] substantive" legal protections).

Adjudicating an anti-SLAPP motion is a two-step process.  First, a court must determine whether the defendant has shown that the claims arise from activity protected by the anti-SLAPP

statute.  *See Navellier v. Sletten*, 29 Cal. 4th 82, 88 (2002); Cal. Civ. Proc. Code § 425.16(a), (e).

One category of protected conduct relevant here is "written statement[s]" that are made in "a

public forum in connection with an issue of public interest."  § 425.16(e)(3).  Second, if the

defendant meets that burden, the plaintiff must demonstrate a probability of prevailing on the

merits of its claims.  *See id.*  In federal court diversity actions, a plaintiff's burden at this second

stage depends on the nature of the defendant's challenge.  If the challenge is based on legal

defects on the face of the pleadings, the court's analysis is analogous to that on a Rule 12(b)(6)

motion to dismiss.  *Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973, 982 (C.D. Cal.

1999).  If the challenge is based on a lack of evidence to substantiate the plaintiff's claims, the

court's analysis is analogous to that on a motion for summary judgment under Rule 56.  *See id.* at

982–83.  Here, Mr. Perens moves to strike Plaintiff's claims based on legal defects evident on the

face of the First Amended Complaint, and thus the same standard applies for Mr. Perens's anti-

SLAPP motion as for his motion to dismiss under Rule 12(b)(6).[3]

## B.    Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

To survive a Rule 12(b)(6) motion, Plaintiff must state a cognizable legal theory and

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 12(b)(6); *Balistreri v. Pacifica Police Dep't*,

901 F.2d 696, 699 (9th Cir. 1988).  A claim has "facial plausibility" only when the plaintiff

"pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).  Although a

court deciding a Rule 12(b)(6) motion must assume the truth of well-pleaded facts, a court need

not accept legal conclusions characterized as factual assertions. *Id.* at 678–79.  As the Supreme

Court has held, "[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice" to support a claim. *Id.* at 678.

---

[3]  Plaintiffs' claims would fail under either standard, and Mr. Perens reserves his right to
supplement his anti-SLAPP motion should it become appropriate for the Court to undertake a
Rule 56 analysis.

DEFENDANT'S 2ND ANTI-SLAPP
MOTION & MOTION TO DISMISS FAC
3:17-CV-04002-LB

## V. PLAINTIFFS' FIRST AMENDED COMPLAINT SHOULD BE STRICKEN AS A STRATEGIC LAWSUIT AGAINST PUBLIC PARTICIPATION.

### A. Plaintiffs' Claims Target Conduct Protected by the Anti-SLAPP Statute.

The anti-SLAPP statute applies to all four of Plaintiffs' claims, at least because all four are based on protected "written statement[s]" made in "a public forum in connection with an issue of public interest." Cal. Civ. Proc. Code § 425.16(e)(3).

First, Mr. Perens's statements are written statements made in a public forum. The statements at issue appear in a written blog post on Mr. Perens's website and in a comments section on Slashdot.org, both of which are websites accessible to the public at large. Statements that appear on websites accessible to the public at large are "made in . . . a public forum" under the anti-SLAPP statute. *See, e.g.*, *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1009 n.3 (9th Cir. 2017); *Wong v. Tai Jing*, 189 Cal. App. 4th 1354, 1366 (2010) (collecting cases). Websites are public fora even where a defendant has total control over the content. In *Maloney*, for instance, the Ninth Circuit affirmed a district court opinion that held that "[e]ven though Defendant controls the content of [the accused website] with no ability for members of the public to express their viewpoint, the website is part of the internet at-large, and Defendant's posts were made in a public forum." *See Maloney v. T3Media, Inc.*, 94 F. Supp. 3d 1128, 1134 (C.D. Cal. 2015); *see also* 853 F.3d 1004 (affirming decision).

Mr. Perens's statements also concern an "issue of public interest." An "issue of public interest" includes "*any issue in which the public is interested.*" *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042 (2008) (emphasis in original). For instance, in *Tamkin v. CBS Broad., Inc.*, 193 Cal. App. 4th 133 (2011), the court of appeal concluded that the creation and broadcast of an episode of the TV show *CSI* was a matter of "public interest" because "the public was demonstrably interested," as evidenced by "the posting of the casting synopses on various Web sites and the ratings for the episode." *Id.* at 143. Here, the public similarly was demonstrably interested in the issues raised by Mr. Perens's blog post. By the time the Original Complaint was filed, an editor at the website Slashdot had posted a link to Mr. Perens's blog post after receiving a tip from a reader, *see* Drummond Hansen Decl. Ex. A at 1, and the topic had

generated a discussion spanning at least 470 comments.  *See* Compl. Ex. E at 1–2 (ECF No. 1-1 at 17–18) (four comments visible, notation reading "1 hidden comment," and notation reading "Get 465 More Comments").[4]  Furthermore, exhibits attached to the First Amended Complaint show that the Open Source community's interest in these issues pre-dates the posting of Mr. Perens's blog.  For example, Exhibits 5 through 7 reference debate over the legitimacy and ethics of similar tactics used by another company to discourage or penalize redistribution.

The response that Mr. Perens's blog post received on Slashdot also demonstrates that Mr. Perens's expression of his opinions furthered the anti-SLAPP law's goal of promoting participation in public debate.  *See Seelig v. Infinity Broad. Corp.*, 97 Cal. App. 4th 798, 808 (2002) (recognizing "encourag[ing] participation . . . in vigorous public debate" as a goal of the anti-SLAPP statute).  As can readily be seen in the internet discussion forum, many commenters agreed with Mr. Perens, while others did not.  Commenters asked questions about certain aspects of Mr. Perens's conclusions, and they tested his legal theories by applying them to hypothetical situations.  Commenters engaged with Mr. Perens and with one another about their respective positions.  *See generally* Drummond Hansen Decl. Ex. A.  Mr. Perens's blog post promoted exactly the type of public participation that the anti-SLAPP law aims to protect.

That Mr. Perens's blog post sparked so much public discussion and interest should be unsurprising to those familiar with the GPL.  The GPL is the most common Open Source license in the world.  *See* RFJN Ex. 3 at 14; *see also XimpleWare, Inc. v. Versata Software, Inc.*, No. 5:13-cv-05161-PSG, 2014 WL 2080850, at *1 (N.D. Cal. May 16, 2014) (referencing the "the millions of lines of source code licensed in this country and around the world" under the GPLv2).  And the Linux kernel is widely used, with the United States Department of Defense being just one of its many users.  RFJN Ex. 3 at 8, 9.  One of the key benefits of Open Source software is that the "collaborative atmosphere" of Open Source software communities "can make it easier to

---

[4] Exhibit E to the Complaint is a capture of the same online discussion thread shown in Exhibit A to the Drummond Hansen Declaration, except that it displays only comments posted by Mr. Perens. *Cf. Cole v. Sunnyvale*, No. C-08-05017 RMW, 2010 WL 532428, at *3–4 (N.D. Cal. Feb. 9, 2010) (considering letter attached to original complaint but merely referenced in operative complaint on motion to dismiss).

DEFENDANT'S 2ND ANTI-SLAPP
MOTION & MOTION TO DISMISS FAC
3:17-CV-04002-LB

conduct software peer review and security testing, to reuse existing solutions, and to share technical knowledge." *See id.* Ex. 1 at 2; *see also* Facts, Section II, *supra*. Therefore, Plaintiffs' methods of discouraging redistribution (and thus also examination) of Linux security patches were naturally of interest to many.

Mr. Perens's blog post also clearly relates to "an issue of public interest" because it provides warning to consumers about risks they may face if they purchase and use Plaintiff's product. Courts regularly hold that such "consumer protection information" constitutes protected speech in connection with an issue of public interest. *See, e.g.*, *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 262 (9th Cir. 2013) (internet postings accusing plaintiff of fraudulent and deceptive business practices were protected); *Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 890, 898–901 (2004) (website cautioning consumers about doing business with plaintiff and alleging that plaintiff was "unethical" and "provided incompetent advice" was protected); *Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 967–69 (N.D. Cal. 2013) (posting on website "Ripoff Reports" warning of negative customers experiences qualified for protection under first anti-SLAPP prong despite being wholly fabricated), *aff'd,* 609 F. App'x 497 (9th Cir. 2015).

Courts are especially likely to find that criticisms of a plaintiff's business practices are a matter of public interest if a large number of people potentially will be affected by the plaintiff's conduct. *See Wilbanks*, 121 Cal. App. 4th at 898; *New Show Studios LLC v. Needle*, No. 2:14-CV-01250-CAS-MRWx, 2014 WL 12495640 (C.D. Cal. Dec. 29, 2014). In *New Show Studios*, for instance, the plaintiffs unsuccessfully argued that the defendants' statements criticizing plaintiff's business practices did not relate to a matter of public interest because they concerned only a "small, specific audience—New Show's clients." 2014 WL 12495640 at *10. The court rejected that argument, in part because it was undermined by "plaintiffs' own admission" that "New Show has thousands of clients and potential clients." *Id.* OSS's Original Complaint, as Mr. Perens's first anti-SLAPP motion noted, similarly alleged that Mr. Perens's blog post was seen and read by "**hundreds, if not thousands**, of consumers and prospective clients of Plaintiff, as well as by professional colleagues and business partners." *See* Compl. ¶ 36 (emphasis added);

FMC at 10.  Now, in a transparent attempt to evade application of the anti-SLAPP statute, Plaintiffs have amended this allegation to state that the blog post was seen and read by "**at least tens** of existing Consumers and potential clients, and at least hundreds, if not thousands of professional colleagues and business partners."  *See* FAC ¶ 69 (emphasis added).  But even if the Court were to ignore this maneuvering by Plaintiffs (which it should not),[5] the number of existing customers and potential clients, and the "hundreds, if not thousands" of colleagues and business partners likewise demonstrate a public interested in the subject of whether the Grsecurity product is GPL-compliant, especially if they are also involved in the Open Source community. Furthermore, users of the Grsecurity product are not the only ones whose legal rights may be affected by Plaintiffs' conduct.  Plaintiffs' conduct necessarily affects the large community of software developers who have made copyrightable contributions to the Linux kernel.

California courts hold that the anti-SLAPP statute must be "construed broadly" to "encourage participation by all segments of our society in vigorous public debate related to issues of public interest."  *Seelig*, 97 Cal. App. 4th at 808; *see also Averill v. Superior Court*, 42 Cal. App. 4th 1170, 1175–76 (1996) (giving § 425.16(e) broad application in light of its purposes). Mr. Perens's statements warning of potential legal risks associated with the terms of the Grsecurity agreement constitute written statements made in a "public forum" in connection with "an issue of public interest," and were by Plaintiff's own admission distributed to an interested public.  Because Plaintiffs' claims target conduct protected by the anti-SLAPP statute, the first prong of the anti-SLAPP analysis is met.

---

[5] California courts prohibit this type of amendment in SLAPP suits, refusing to let plaintiffs "go back to the drawing board with a second opportunity to disguise the vexatious nature of the suit through more artful pleading."  *Simmons v. Allstate Ins. Co.*, 92 Cal. App. 4th 1068, 1073 (2001). While federal courts apply more lenient amendment standards than state courts do in the anti-SLAPP context, *see, e.g.*, *Verizon Del., Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004), that does not mean they must ignore manipulative litigation tactics.  *See, e.g.*, *Rodriguez v. Sony Comput. Entm't Am., LLC*, 801 F.3d 1045, 1054 (9th Cir. 2015) (comparing allegations in original and amended complaint and rejecting "attempt to thwart the statutory language by artfully pleading" allegation previously fatal to claim); *see also Royal Primo Corp. v. Whitewater W. Indus., Ltd*, No. 15-CV-04391-JCS, 2016 WL 4080177, at *6 (N.D. Cal. July 29, 2016) ("The principle that a court may look to prior pleadings in determining the plausibility of an amended complaint is well established.").

**B. Plaintiffs Cannot Establish a Reasonable Probability of Prevailing on the Merits of Their Claims.**

Plaintiffs cannot meet their burden under the second prong of the anti-SLAPP analysis to establish a reasonable probability of prevailing on the merits, because Plaintiffs fail to state any legally cognizable claim that is plausible on its face, as shown by Mr. Perens's Rule 12(b)(6) motion, below. A successful Rule 12(b)(6) motion demonstrates that a plaintiff cannot meet its burden under the second anti-SLAPP prong. For example, in *Robinson v. Alameda Cty.*, 875 F. Supp. 2d 1029 (N.D. Cal. 2012), the court determined that separately analyzing the second anti-SLAPP prong was unnecessary after having already ruled in the defendant's favor on a concurrently filed Rule 12(b)(6) motion. *Id.* at 1050. As the court explained, a successful motion to dismiss amply demonstrates that the plaintiff "cannot show probability of success on the merits" of the dismissed claims. *Id.* Likewise, in *Vess v. Ciba-Geigy Corp. USA*, the Ninth Circuit held that its affirmance of the district court's Rule 12(b)(6) dismissal meant that the plaintiff could not demonstrate a probability of prevailing on his claim and therefore also affirmed the district court's grant of the concurrently filed anti-SLAPP motion. 317 F.3d 1097, 1110 (9th Cir. 2003). *See also Bhambra v. True*, No. C 09-4685 CRB, 2010 WL 1758895, at *2 (N.D. Cal. Apr. 30, 2010) (holding that plaintiff whose claim has been dismissed with prejudice under Rule 12(b)(6) "has by definition failed").

The Court should therefore strike all of Plaintiffs' claims pursuant to the California anti-SLAPP statute because Mr. Perens's speech is protected under the statute and because Plaintiffs' claims fail for the reasons stated in Mr. Perens's Motion to Dismiss in Section VI, below.

**VI. PLAINTIFFS' FIRST AMENDED COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.[6]**

All four claims of the First Amended Complaint fail as a matter of law for exactly the same fundamental reason that all four claims of the Original Complaint were destined to fail as a matter of law. Plaintiffs' entire case is built on their insistence that the non-redistribution clause's

---

[6] While Mr. Perens's motion to dismiss demonstrates that his anti-SLAPP motion should be granted, the Court also should dismiss the Complaint regardless of whether it holds that the anti-SLAPP statute applies. Each of Plaintiffs' claims fail as a matter of law.

inclusion in the Grsecurity agreement does not breach the "no further restrictions" provision of the GPLv2—neither provision having ever been examined by a court of law, as far as Mr. Perens and his counsel can tell—and that to disagree with that conclusion is to make an objectively false assertion of fact. But opinions about undecided questions of law cannot constitute defamation unless they falsely imply the existence of additional, undisclosed facts. OSS has identified no such false implications. Because each of Plaintiffs' claims stands and falls on whether OSS's defamation claims are viable, and for the additional, independent reasons discussed in the following sections, the Court should dismiss and strike Plaintiffs' First Amended Complaint in its entirety.

### A.     OSS Fails to State a Claim for Defamation *Per Se* or *Per Quod*.

Mr. Perens moved to dismiss both defamation claims in the Original Complaint because they were based on expressions of opinion that neither state nor imply provably false assertions of fact and because OSS failed to plausibly allege that Mr. Perens was negligent. In the First Amended Complaint, OSS's defamation claims are based on precisely the same opinion—that the Grsecurity agreement's non-redistribution provision violates the GPLv2—and OSS still fails to plausibly allege any negligence by Mr. Perens. Both claims should be dismissed.

### 1.     Mr. Perens's Commentary on the Grsecurity Agreement Neither States nor Implies a Provably False Assertion of Fact.

OSS alleges that Mr. Perens is liable for defamation based on several statements that either assert or imply Mr. Perens's belief that the Grsecurity agreement violates the GPLv2, which is not an opinion that OSS shares. But OSS's disagreement with Mr. Perens does not make his statements actionable, and defamation law is not intended to be a vehicle for deciding the winner of a public debate. The "*sine qua non*" of recovery for defamation—whether *per se* or *per quod*—is the "existence of a falsehood." *Baker v. L.A. Herald Exam'r*, 42 Cal. 3d 254, 259 (1986) (quoting *Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 283 (1974)). Mr. Perens's stated opinions about how the law might apply to the Grsecurity agreement do not "expressly or impliedly assert a fact that is susceptible to being proved false"

and therefore are not actionable as defamation. *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 730 (9th Cir. 1999); *Nygard*, 159 Cal. App. 4th at 1048.

### a. OSS's Claims Are Based on Statements of Opinion, Not Statements of Fact.

A conclusion that certain conduct infringes a copyright or breaches a contract is an interpretation of the law applied to a set of facts—not simply "a fact" that can be proven true or false. California courts routinely recognize the importance of this distinction. In one widely cited opinion, *Franklin v. Dynamic Details, Inc.*, a California court concluded that emails accusing plaintiffs of infringing third-party copyrights and breaching a nondisclosure agreement "expressed [the defendant's] opinions because they purported to apply copyright and contract law to facts." 116 Cal. App. 4th 375, 378–81 (2004). Likewise, in *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, No. CV 10-5696 CRB, 2013 WL 3460707 (N.D. Cal. July 9, 2013), the Northern District, citing *Franklin*, held that statements in defendant's blog post that defendant's works were "protected by copyright" and that plaintiff "infringed on the intellectual property" of defendant "expressed [defendant's] opinions" and "purported to apply [defendant's] understanding of copyright law as applied to the facts." *Id.* at *5 (granting summary judgment to defendant on defamation claim). Similarly, in the false advertising context, the Ninth Circuit held in *Theme Promotions, Inc. v. News America FSI*, that "[o]pinions about and interpretations of" contractual provisions do not assert "facts" as required for a claim of false advertising. 35 F. App'x 463, 469 (9th Cir. 2002). Just as in *Franklin*, the allegedly defamatory statements here consist of interpretations of copyright law and contract law as applied to a set of facts (the GPLv2 and the Grsecurity agreement's non-redistribution clause) and are therefore opinions.

"[A] clear and unambiguous ruling from a court or agency of competent jurisdiction" is a minimum prerequisite for a non-lawyer's purported interpretation of the law to be treated as anything other than a statement of opinion.[7] *Coastal Abstract*, 173 F.3d at 731. In *Coastal*

---

[7] Although the existence of a clear and unambiguous ruling on point is necessary to make Mr. Perens's legal conclusions actionable, it would not be sufficient. If such a ruling did exist, Mr. Perens would of course be permitted to express disagreement with its reasoning without exposing himself to a defamation claim, for example. *See Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 905 n.13 (9th Cir. 2007) ("Even if TFN unambiguously obtains trademark rights . . . Oey would

*Abstract*, for instance, the court held that the defendant's implied assertion that the plaintiff was violating state licensing regulations constituted an opinion regarding interpretation of the law—not an actionable statement of fact—for defamation and false advertising purposes, because no court or agency had determined whether the regulation applied to conduct like the plaintiff's. *Id.* at 731–32. Similarly, in *Freecycle Network, Inc. v. Oey*, 505 F.3d 898 (9th Cir. 2007), the court considered a so-called "trademark disparagement" claim predicated on a defendant's online statement that the plaintiff "lacked trademark rights in 'freecycle' because it was a generic term," and held that, because there had been "no formal determination" of the plaintiff's trademark rights, the defendant's statement "[could not] be considered a false statement of fact." *Id.* at 901, 904–05. *See also Rodriguez v. Panayiotou*, 314 F.3d 979, 986 (9th Cir. 2002) (holding that layperson's implied allegations of entrapment constituted his "interpretation of the law" and were not actionable as defamation).

OSS cannot point to any judicial determination that clearly and unambiguously forecloses Mr. Perens's position. Indeed, the undersigned is aware of *no* judicial opinion construing the "no further restrictions" condition of GPLv2 section 6.[8] By contrast, courts *have* held that violating Open Source license provisions may constitute a breach of contract and subject a party to liability for copyright infringement. *See, e.g.*, *Artifex Software, Inc. v. Hancom, Inc.*, No. 16-cv-06982-JSC, 2017 WL 4005508 (N.D. Cal. Sept. 12, 2017); *Jacobsen v. Katzer*, 535 F.3d 1373 (Fed. Cir. 2008); *Versata Software, Inc. v. Ameriprise Fin., Inc.*, No. A-14-CA-12-SS, 2014 WL 950065 (W.D. Tex. Mar. 11, 2014). OSS unconvincingly tries to overcome this obstacle by turning the *Coastal Abstract* rule on its head, alleging in a conclusory fashion that there is no case law that endorses Mr. Perens's position. *See* FAC ¶¶ 53–56. But that is not the *Coastal Abstract* test. An absence of case law does not turn opinions into facts.

---

remain free to argue that TFN should not have been granted the trademark or that the public would be better served with the mark in the public domain.").

[8] An order entered in this District just last month appears to be the only judicial opinion available on either Westlaw or Lexis to even mention section 6 of the GPLv2. *See Artifex Software, Inc. v. Hancom, Inc.*, No. 16-cv-06982-JSC, 2017 WL 4005508, at *1, *5 (N.D. Cal. Sept. 12, 2017). That opinion focused on a different portion of section 6.

DEFENDANT'S 2ND ANTI-SLAPP
MOTION & MOTION TO DISMISS FAC
3:17-CV-04002-LB

Importantly, this Court need not—and should not—decide whether it agrees with Mr. Perens's interpretations of the GPLv2 and the Grsecurity agreement or with his opinions about how copyright and contract law would apply to them. For the purposes of Mr. Perens's motions, the fact that no other court has clearly and unambiguously answered these questions is dispositive. *See, e.g.*, *Coastal Abstract*, 173 F.3d at 732; *Franklin*, 116 Cal. App. 4th at 388 (noting that under *Coastal Abstract* analysis, court does not "determin[e] the truth or reasonableness of [a defendant's] opinions"). Even if the Court *were* to perform that analysis and decide that the non-redistribution clause does *not* violate the GPLv2, that determination could not retroactively transform Mr. Perens's statements of opinion into false factual assertions. *See, e.g., Coastal Abstract*, 173 F.3d at 732 (explaining statement would remain non-actionable even in event of subsequent determination of legal question, because correct application of law was "not knowable" when statement was made).

### b. Mr. Perens Fully and Accurately Disclosed the Factual Basis for His Opinions.

Because Mr. Perens fully and accurately disclosed the facts he considered in forming his opinions, OSS's claims fail as a matter of law. "A statement of opinion based on fully disclosed facts can be punished *only* if the stated facts are themselves false and demeaning," because such statements are unlikely to be construed as "insinuating the existence of additional, undisclosed facts." *Standing Comm. on Discipline of U.S. Dist. Court for Cent. Dist. of Cal. v. Yagman*, 55 F.3d 1430, 1439 (9th Cir. 1995) (emphasis added). Instead, readers will understand such stated opinions to be "the author's interpretation of the facts presented," and readers "are free to accept or reject" that opinion "based on their own independent evaluation of the facts." *Id.*; *see also Partington v. Bugliosi*, 56 F.3d 1147, 1156–57 (9th Cir. 1995).

In *Franklin v. Dynamic Details*, the court concluded that the defendant's statements of opinion about the plaintiffs' liability for copyright infringement and breach of contract were non-actionable in part because the emails containing the accused statements "fully disclosed provably true facts on which the opinions were based." 116 Cal. App. 4th at 378. More specifically, the accused emails provided a copy of an email sent by plaintiff, directed the reader to a website

DEFENDANT'S 2ND ANTI-SLAPP
MOTION & MOTION TO DISMISS FAC
3:17-CV-04002-LB

containing the allegedly infringing material, and explained why the author believed the material was infringing. *Id.* at 388. Likewise, in *Z.F. ex rel. M.A.F. v. Ripon Unified School District*, the court concluded that statements on the counterdefendant's website accusing the counterplaintiff of "illegal" and "discriminatory conduct" were "protected opinion" because the website also included a link to the counterdefendant's complaint in the action, which allowed website visitors to "read the complaint and determine for themselves" whether they believed the counterdefendant's conduct to be "illegal and discriminatory." *See* No. 10-CV-00523-TLN-CKD, 2017 WL 1198492, at *6 (E.D. Cal. Mar. 31, 2017) . Similarly, here, Mr. Perens identified the Grsecurity product's use of the Linux kernel source code (which is subject to GPLv2), provisions of the GPLv2, and certain terms under which OSS provides the Grsecurity patches as forming the basis for his opinions. *See* FAC Exs. 1, 2; *see also* "Facts" *supra*. After Mr. Perens obtained a copy of the Grsecurity agreement, he added a link to the full text of the agreement to his blog post. *See* FAC Ex. 10 at 3, line 88 (ECF No. 18-1 at 47).

OSS does not dispute such underlying facts but instead disputes Mr. Perens's opinions regarding legal interpretations and opinions regarding the risks related to those facts. OSS's defamation claims therefore cannot succeed and should be dismissed.

### 2. OSS Does Not Plausibly Allege That Mr. Perens Was Negligent as to the Alleged Falsity of His Statements.

Even if OSS could allege that Mr. Perens made any provably false statements, OSS's defamation claims would nonetheless fail because OSS has not plausibly pled that Mr. Perens acted negligently or with actual malice. At a minimum, a plaintiff alleging defamation must establish that the defendant was negligent as to the truth or falsity of the statements at issue. *See Carney v. Santa Cruz Women Against Rape*, 221 Cal. App. 3d 1009, 1015–17 (1990); *Hecimovich v. Encinal Sch. Parent Teacher Org.*, 203 Cal. App. 4th 450, 470 (2012); Cal. Civ. Jury Instructions 1704, 1705. If the plaintiff is a public official or public figure, the threshold for liability is higher, and the plaintiff must demonstrate that the defendant acted with actual malice—*i.e.*, with knowledge that the accused statements were false or with reckless disregard for their truth. *Reader's Digest Ass'n v. Superior Court*, 37 Cal. 3d 244, 256 (1984). In addition,

where the statements at issue involve a matter of public concern, even a private-figure plaintiff must establish actual malice to recover presumed or punitive damages. *Brown v. Kelly Broad. Co.*, 48 Cal. 3d 711, 747 (1989).

In this case, there is no need to determine whether the heightened "actual malice" standard applies, because OSS has not plausibly alleged *any* degree of fault. Instead, OSS's attempts to plead the fault element of its claims only reinforce those claims' futility. The allegations that appear to be directed at establishing that Mr. Perens either knowingly or negligently made false statements regarding the Grsecurity product can be divided into roughly three groups:

In the first group are allegations that seem to assume that all Open Source experts should have identical opinions and that those opinions should agree with Plaintiffs' views. OSS quotes from two 2011 blog posts and a 2011 online article in which Bradley Kuhn, currently President of the Software Freedom Conservancy, expressed the opinion that another company's business model—which OSS alleges to be similar to its own—complies with the GPL. [9] FAC ¶¶ 23–27. But Mr. Kuhn's opinions have no bearing on what Mr. Perens "knew or should have known" about whether the Grsecurity agreement violates the GPLv2. At most, these quotes show that Mr. Kuhn and Mr. Perens have both publicly shared opinions about GPL compliance, and that the issue is a matter of public debate.

In the second group are allegations based on misreading (perhaps purposefully) an exchange between Mr. Perens and an anonymous Slashdot commenter. On July 9, as part of the online conversation about the issues raised in Mr. Perens's blog post, a commenter wrote:

> I've had a look over their agreement here [grsecurity.net], and there is nothing to prevent redistribution of a patch under the terms and conditions of the GPLv2. It states that if it [sic] a patch is distributed *outside of the terms of the GPLv2,* then access to *further patches in the future* (not the patch provided) will be denied, on a works for hire basis.

*See* FAC ¶ 44 (emphases and first bracketed text in original). Ten minutes later, in response, Mr. Perens stated:

---

[9] Even Plaintiffs apparently recognize Mr. *Kuhn's* interpretations of the GPL as statements of opinion. See FAC ¶ 26 ("Mr. Kuhn has further opined . . . .").

> The problem isn't with the text there. It's with what else they have told their customers. It doesn't even have to be in writing.
>
> I have witnesses. If there was ever a case, obviously the prosecution would have to depose people to make this point. I am not actually planning on a case, though. I think this warning will have the desired effect.

*See* FAC ¶ 45. OSS seizes on Mr. Perens's statement that "[t]he problem isn't with the text" as an "admission" that the text of the Grsecurity agreement complies with the GPLv2. *See* FAC ¶¶ 48, 50, 58, 60, 72. But as can readily be seen from context, including how quickly Mr. Perens responded to the commenter, Mr. Perens was merely responding to the commenter's characterization that the agreement did not prohibit redistribution and to the commenter's characterization of the language of the agreement, which was misstated. For example, the commenter stated that "there is nothing to prevent redistribution of a patch under the terms and conditions of the GPLv2" and that the limitation applied if a patch is distributed "*outside of the terms of the GPLv2*." The Grsecurity restriction however, applied if there was any distribution by a user that was not explicitly required by the GPL. *See, e.g.,* FAC Ex. 4 at 1 (stating that the non-redistribution clause is triggered by redistribution "outside of the explicit obligations under the GPL to User's customers"). Also, because Mr. Perens was familiar with claims that OSS nevertheless was placing restrictions on users, his response to the commenter emphasized that OSS could violate the GPL regardless of whether OSS's restrictions were in the agreement's text or are told to their customers—the restrictions did not have to be in writing. After Mr. Perens reviewed the text of the Grsecurity agreement, moreover, it confirmed his understanding that OSS *was* placing such restrictions on customers, and he updated his blog the next morning accordingly. When all of Mr. Perens's statements are considered in context, it is readily apparent that Mr. Perens *maintained* that OSS's practices violated the GPL—he never "admitted" that the agreement did not violate the GPL, as Plaintiffs contend.

Finally, in the third group are allegations that essentially assume that because Mr. Perens reached what Plaintiffs believe is the "wrong" conclusion, he must have been negligent. *See* FAC ¶¶ 53–56 (alleging that Mr. Perens is not aware of any case law supporting his conclusions), 63 (alleging failure to investigate). But negligence is an element that OSS must establish *in addition*

*to* falsity—one cannot just flow from the other. Especially telling is OSS's allegation that Mr. Perens "did not ascertain, or attempted [sic] to ascertain, the true facts" before publishing the accused statements. *See* FAC ¶ 63. OSS does not elaborate on what "true facts" Mr. Perens failed to ascertain. OSS disagrees with Mr. Perens's characterizations of the effect of the non-redistribution clause, but it does not dispute that Mr. Perens accurately reported the literal contents of the Grsecurity agreement. Nor does OSS dispute that Mr. Perens accurately described the Grsecurity software, the Grsecurity distribution model, the license that governs the Grsecurity software, and the terms of the GPLv2. The *only* dispute is over the legal question of whether the non-redistribution clause would violate the GPLv2, a matter of opinion and not a provably false statement. With no existing judicial determination on point (much less one that Mr. Perens was aware of), *there was no factual reference* Mr. Perens could have looked to that would have demonstrated that Grsecurity complied with GPLv2. To the contrary, Plaintiffs want this Court to decide that issue as a matter of first impression.

As the foregoing demonstrates, even if the Court were to now decide that the Grsecurity agreement fully complies with the GPLv2, Mr. Perens was not and could not have been negligent in reaching the conclusions stated in his blog and on Slashdot. OSS's defamation claims therefore must be dismissed and stricken.

### B.     Mr. Spengler Fails to State a Claim for False Light Invasion of Privacy.

Mr. Perens moved to dismiss and strike the false light invasion of privacy claim asserted by OSS in the Original Complaint for two independent reasons: because corporate entities cannot sue for invasion of privacy under California common law and because the claim was no more than a rebranded version of OSS's futile defamation claims. Rather than dropping the defective claim, the First Amended Complaint has swapped in Mr. Spengler for the corporate entity that he controls. But Mr. Spengler's false light claim fares no better on substance than his company's did.

False light's elements are nearly identical to those of defamation. *See Solano v. Playgirl, Inc.*, 292 F.3d 1078, 1082 (9th Cir. 2002); *see also Kapellas v. Kofman*, 1 Cal. 3d 20, 35 n.16 (1969). Courts applying California law therefore recognize that when a false light claim is

brought alongside a defamation claim based on the same statements, the false light claim is "essentially superfluous" and "stands or falls on whether it meets the same requirements as the defamation cause of action." *Harkonen v. Fleming*, 880 F. Supp. 2d 1071, 1082 (N.D. Cal. 2012) (quoting *Eisenberg v. Alameda Newspapers, Inc.*, 74 Cal. App. 4th 1359, 1385 n.13 (1999)); *see also Kapellas*, 1 Cal. 3d at 35 n.16. Because Mr. Spengler's false light claim is predicated on the same allegedly "false" statements of opinion as OSS's meritless defamation claims, his false light claim fails for the same reasons the defamation claims do and should be dismissed and stricken.

### C. Neither Plaintiff States a Claim for Intentional Interference with Prospective Economic Advantage.

Mr. Perens moved to dismiss and strike the intentional interference claim asserted by OSS in the Original Complaint both because it was a rehash of OSS's defamation claims under a different name and because OSS alleged scarcely any facts to support the elements of the tort. In the First Amended Complaint, Mr. Spengler has joined OSS in asserting intentional interference and some further details have been alleged, but the claim's continued dependence on OSS's defamation claims guarantees its futility.

To ensure that plaintiffs do not use creative pleading to avoid the First Amendment protections of defamation law, a court may—and should—analyze a claim for intentional interference that is based on alleged injurious falsehoods as if it were a defamation claim. *Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 977 (N.D. Cal. 2013), *aff'd,* 609 F. App'x 497 (9th Cir. 2015) (citing *Blatty v. N.Y. Times Co.*, 42 Cal. 3d 1033, 1042 (1986)); *see also Gardner v. Martino*, 563 F.3d 981, 992 (9th Cir. 2009). Plaintiffs' intentional interference claim is predicated entirely on the allegedly defamatory blog post and therefore must be dismissed for the reasons discussed in Section VI.A, *supra*.

OSS's lack of a viable defamation claim also leaves Plaintiffs unable to plead that Mr. Perens's conduct was "wrongful by some legal measure other than the fact of interference itself," as is required to state a claim for intentional interference with prospective economic advantage under California law. *See Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 393

(1995). An act is not "independently wrongful" merely because the defendant acted with an improper motive. Instead, an act is independently wrongful if it is unlawful, meaning "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1158–59 (2003). "A plaintiff may rely on a separate claim for relief, such as fraud, as the basis for an 'independently wrongful act, but only if it is adequately pled.'" *Westport Ins. Corp. v. Vasquez, Estrada & Conway LLP*, No. 15-CV-05789-JST, 2016 WL 1394360, at *10 (N.D. Cal. Apr. 8, 2016) (quoting *UMG Recordings*, 117 F. Supp. 3d at 1117). The allegedly wrongful conduct that forms the basis of Plaintiffs' intentional interference claim here is the same conduct underlying OSS's claims for defamation. *See* FAC ¶¶ 112–113. Because OSS's defamation claims fail, so must Plaintiffs' claim for intentional interference. *See, e.g., Contemporary Servs. Corp. v. Staff Pro Inc.*, 152 Cal. App. 4th 1043, 1060 (2007) (granting anti-SLAPP motion as to intentional interference claim based on same conduct as defamation claims); *New Show Studios*, 2014 WL 12495640, at *19 (same); *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, No. CV 10-5696 CRB, 2013 WL 3460707, *7 (N.D. Cal. July 9, 2013) (granting summary judgment in favor of defendant on intentional interference claim); *In re Circuit Breaker Litig.*, 984 F. Supp. 1267, 1283 (C.D. Cal. 1997) (same).

Finally, Mr. Spengler's intentional interference claim fails for the separate reason that he has not alleged the existence of any relationship between *himself* and a third party, as opposed to relying on relationships between OSS and a third party. *See Sole Energy Co. v. Petrominerals Corp.*, 128 Cal. App. 4th 212, 241 (2005) (identifying "an economic relationship between **the plaintiff** and a third party" as essential element of intentional interference claim (emphasis added)). The plain language of the Grsecurity agreement establishes that Grsecurity customers contract with OSS, not Mr. Spengler. *See* FAC Ex. 4. Because it is those relationships that Plaintiffs allege interference with, *see* FAC ¶¶ 109–117, Mr. Spengler has no basis for recovery. *See Von Brimer v. Whirlpool Corp.*, 536 F.2d 838, 846–47 (9th Cir. 1976) (holding that majority

shareholder could not maintain intentional interference claim based on wrong against corporation, regardless of individual harm).

**VII.    CONCLUSION**

Mr. Perens respectfully requests that the Court grant his motion to dismiss Plaintiffs' First Amended Complaint pursuant to Rule 12(b)(6) and to strike the claims alleged therein pursuant to California's anti-SLAPP statute.  Because Plaintiffs have now twice asserted the same claims based on protected opinions that are non-actionable as a matter of law, the Court should not grant Plaintiffs leave to file a second amended complaint.  *Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir.), *amended,* 856 F.2d 111 (9th Cir. 1988) (holding that district court properly denied leave to amend claims for which misrepresentation was an essential element, because statement that defendant "believed an adverse jury verdict was a distinct possibility" was an opinion that could not be a misrepresentation).  Furthermore, Mr. Perens requests that the Court issue an order requiring Plaintiffs to pay the reasonable attorneys' fees and costs he incurred in obtaining dismissal of Plaintiffs' baseless lawsuit—including, but not limited to, all fees and costs incurred in responding to the Original Complaint, responding to the First Amended Complaint, and opposing OSS's Motion for Partial Summary Judgment—according to proof on a subsequent noticed motion.  *See Thomas v. Fry's Elecs., Inc.*, 400 F.3d 1206, 1206-07 (9th Cir. 2005) (affirming application of anti-SLAPP statute's mandatory fees provision in federal court); *Graham-Sult v. Clainos*, 756 F.3d 724, 752 (9th Cir. 2014) (finding no abuse of discretion where district court included time spent on motion to dismiss, reply, other filings, document review, and preparing initial disclosures in anti-SLAPP fees calculation).

///

///

///

///

///

///

///

Dated: October 31, 2017

MELODY DRUMMOND HANSEN
HEATHER J. MEEKER
CARA L. GAGLIANO
O'MELVENY & MYERS LLP


By:   */s/ Melody Drummond Hansen*
                      Melody Drummond Hansen
Attorneys for Defendant
Bruce Perens