MELODY DRUMMOND HANSEN (S.B. #278786)
mdrummondhansen@omm.com
HEATHER J. MEEKER (S.B. #172148)
hmeeker@omm.com
O'MELVENY & MYERS LLP
2765 Sand Hill Road
Menlo Park, California 94025-7019
Telephone: +1 650 473 2600
Facsimile: +1 650 473 2601

CARA L. GAGLIANO (S.B. #308639)
cgagliano@omm.com
Two Embarcadero Center
28th Floor
San Francisco, California 94111-3823
Telephone: +1 415 984 8700
Facsimile: +1 415 984 8701

Attorneys for Defendant
Bruce Perens

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO

| | |
|---|---|
| OPEN SOURCE SECURITY, INC., and BRADLEY SPENGLER,<br><br>Plaintiffs,<br><br>v.<br><br>BRUCE PERENS, and Does 1-50,<br><br>Defendants. | Case No. 3:17-cv-04002-LB<br><br>**DECLARATION OF BRUCE PERENS IN SUPPORT OF DEFENDANT'S OPPOSITION TO OPEN SOURCE SECURITY, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Hearing Date: December 14, 2017<br>Time: 9:30 a.m.<br>Location: Courtroom C, 15th Floor<br>Judge: Hon. Laurel Beeler |

## DECLARATION OF BRUCE PERENS

I, Bruce Perens, declare as follows:

1. I am an individual and a named defendant in this action. I submit this Declaration in support of my Opposition to Open Source Security, Inc.'s Motion for Partial Summary Judgment. Except as stated otherwise, I have personal knowledge and am informed of the facts stated herein and, if called to testify, I could and would testify completely hereto.

2. The GNU General Public License, or GPL, was created to promote the open-source development of software products. The GPL is the most widely used license in the world. The purpose of the GPL is to ensure that licensees have the freedom to copy, distribute, and modify free software, subject only to minimal restrictions that reinforce others' rights to enjoy the same freedoms. Section 6 of the GPLv2 expressly prohibits imposing "further restrictions" on the rights granted to software recipients by the license.

3. Issues relating to license compliance and enforcement are frequent subjects of controversy and debate in the Open Source community. Discussion of these issues often takes place online, *e.g.*, on public email lists, in online discussion forums, and through blogs. In my experience, these debates often implicate fundamental philosophical differences among community members with respect to the purpose, values, and limitations of Open Source licensing.

4. Enforcement of Open Source licenses can also pose logistical difficulties, in part because of the number of stakeholders involved. In the case of the Linux operating system kernel, there are approximately 1,000 active software developers at any time. These are not the same developers all of the time, and thus many thousands of developers have contributed code to Linux. Many of the developers are individuals working on their own time, while others are employed by companies or organizations.

5. I am a public speaker and a frequent advocate of the Open Source community. I also maintain a personal blog at www.perens.com, where I post about issues affecting the Open Source community and various other topics.

6. I first learned of Grsecurity's redistribution policy from a message that was posted to Open Source-related email lists I subscribe to. The subject line of that message was "Why does no one care that Brad Spengler of GRSecurity is blatantly violating the intention of the rightsholders to the Linux Kernel?" Other members of those email lists responded to the message with their opinions.

7. On June 28, 2017, I posted a blog entry about my interpretation of the policy on my personal website. That blog post relied on reports from third parties about the policy, as well as my knowledge of the GPLv2 and Open Source software and my understanding of copyright and contract law.

8. I expressed the opinions at issue in this case because I believed (and still believe) that Open Source Security, Inc. ("OSS") violates the GPLv2 by threatening to penalize customers who exercise their rights to freely distribute Open Source software. For example, the Grsecurity Stable Patch Access Agreement states in part: "[T]he User acknowledges that redistribution of the provided stable patches or changelogs outside of the explicit obligations under the GPL to User's customers will result in termination of access to future updates of grsecurity stable patches and changelogs" (emphasis omitted). In my opinion, this places restrictions on Grsecurity customers' "freedom to distribute copies of free software" (*see* GPLv2, Preamble) because it creates negative consequences if they exercise the rights guaranteed to them under the GPLv2.

9. On or around July 9, someone shared a link to and summary of my blog post on the website Slashdot. In the comments section below that summary, readers discussed my blog post and issues that it raised. I joined that conversation, answering questions, elaborating on my opinions, and engaging with commenters who disagreed.

10. One of the comments, which was posted on July 9 at 4:58 p.m. according to the timestamp shown, stated in part:

> I've had a look over their agreement here [grsecurity.net], and there is nothing to prevent redistribution of a patch under the terms and conditions of the GPLv2. It states that if it a patch is distributed *outside of the terms of the GPLv2*, then access to *further patches in the future* (not the patch provided) will be denied, on a works for hire basis.

(emphasis and bracketed text in original). The word "here" included an embedded hyperlink to the full text of the Grsecurity Stable Patch Access Agreement, but I did not realize that fact when I first read the comment. At that point, I had not yet seen the Stable Patch Access Agreement firsthand. I understood the commenter's summary to be stating that the written agreement did not prevent redistribution of a patch under the terms and conditions of the GPL. I also understood the commenter to be stating that the Grsecurity agreement purported to terminate access only in situations where the user redistributed software outside of the terms of the GPL, or in a way that violated the GPLv2. I understood from the email lists that OSS was in fact placing restrictions on its customers' ability to redistribute software. My understanding of the GPLv2 is that the "further restrictions" provision applies regardless of whether the restriction is formally written into an agreement or communicated in some other way. I therefore responded to the commenter ten minutes later, expressing my opinion that the problem was what OSS was telling its customers, regardless of whatever text might be in the Grsecurity agreement. Restrictions do not have to be in writing. I also informed the commenter that I was aware of people who could confirm that OSS was communicating additional restrictions to its customers.

11. I did not state or imply that the non-redistribution clause included in the Grsecurity Stable Patch Access Agreement complies with the GPLv2.

12. Later that evening, when I reviewed the text of the Stable Patch Access Agreement for myself, I determined that the Agreement did in fact include a written term that imposed restrictions consistent with the reports I had read. I then updated my blog post to reflect my opinions about the written agreement itself and provided a link to the agreement.

13. I disagree with OSS's assertion, found on page 8 of OSS's brief, that each version of Grsecurity "is technically a new software which needs to be released under a license of its own." Because the Grsecurity patches are inseparable from the Linux kernel and cannot function without it, my understanding is that they would be considered "derivative works" that OSS has no independent rights in under copyright law.

14. I also disagree that the Grsecurity agreement's non-redistribution clause can be

1. accurately characterized as an "optional incentive," as OSS contends on the first page of its
2. brief. I believe this is inconsistent with the language of the Stable Patch Access agreement,
3. which states that redistribution "will result in termination of access" to future updates
4. suggesting that a user would have future access *unless* the user exercises its redistribution rights.
5. In my opinion, this clearly frames the clause as a restriction on users' redistribution rights and a
6. penalty if users exercise such rights. My interpretation that the Grsecurity agreement violates the
7. GPL also is further supported by the preamble of the GPLv2, which expressly says that the
8. license is meant to forbid "ask[ing]" users "to surrender the rights" the GPLv2 guarantees.

10. I declare under penalty of perjury under the laws of the United States that the foregoing is
11. true and correct, and that this declaration was executed this 31th day of October 2017 in
12. REDDING, California.

By: _/s/ Bruce Perens_
Bruce Perens