1   CHHABRA LAW FIRM, PC
    ROHIT CHHABRA (SBN 278798)
    Email: rohit@thelawfirm.io
2   257 Castro Street Suite 104
    Mountain View, CA  94041
3   Telephone: (650) 564-7929

4   **Attorney for Plaintiffs**
    Open Source Security Inc. and
5   Bradley Spengler

6

7                        **UNITED STATES DISTRICT COURT**
8                      **NORTHERN DISTRICT OF CALIFORNIA**
                          **SAN FRANCISCO DIVISION**
9

10   OPEN SOURCE SECURITY INC. and          )   Case No.: 3:17-cv-04002-LB
     BRADLEY SPENGLER                        )
11                                           )
                                             )   **Opposition to Defendant Bruce Perens'**
12                          Plaintiffs,      )   **Second Motion to Dismiss pursuant to Fed.**
                                             )   **R. Civ. P. 12(b)(6) And Second Special**
13        v.                                 )   **Motion to Strike pursuant to CA. Code of**
                                             )   **Civ. P. § 425.16. and Bradley Spengler's**
14   BRUCE PERENS, and Does 1-50,            )   **Decl. In Support to Opposition to Perens'**
                                             )   **Second Motion to Dismiss and Second**
15                          Defendants.      )   **Special Motion to Strike**
                                             )
16                                           )
                                             )
17                                           )   Hearing Date: December 14, 2017
                                             )   Time: 9:30 a.m.
18                                           )   Location: Courtroom C, 15th Floor
                                             )   Judge: Hon. Laurel Beeler
19   ────────────────────────────────────

20

21

22

23

24

25

26

27                                                              3:17-CV-04002-LB

28   PLAINTIFF'S OPPOSITION TO DEFENDANT PERENS' SECOND MOTION TO DISMISS AND SECOND SPECIAL MOTION
     TO STRIKE

1

2

3

**Table of Contents**

**I.       INTRODUCTION** ........................................................................................................**1**

**II.      FACTS** ......................................................................................................................**4**

**III.     ARGUMENTS** .........................................................................................................**9**

1. A Special Motion to Strike is inappropriate without giving Plaintiff the Opportunity to conduct discovery ..................................................................................................................... 9

2. Defendants' defamatory statements are not protected conduct ............................................ 11

3. Opposition to Motion to Dismiss under Fed. R. Civ. P. 12 (b) (6)/ Special Motion to Strike ........... 15

    (i) Defamation per se and per Quod ......................................................................... 15

        (A). Plaintiff OSS Is NOT A Public Figure or a Limited Purpose Figure ................... 15

        (B) Perens Made False Statements of Fact Which Were Not Privileged ..................... 16

        (C) Even if the subject matter of Perens' blog post were of public interest, Perens' anti-SLAPP motion cannot be granted ................................................................... 17

    (ii) False Light ................................................................................................ 24

    (iii) Intentional Interference with Prospective Economic Advantage ......................................... 24

**IV.     CONCLUSION** ........................................................................................................**25**

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANT PERENS'SECOND MOTION TO DISMISS AND SECOND SPECIAL MOTION TO STRIKE

**Cases**

*AMPEX Corp. v. Cargle*, 128 Cal.App.4th 1569, 1576 (2005)..........................................- 16 -

*Bosley Medical Institute, Inc. v. Kremer*, 403 F.3d 672, 682 (9th Cir. 2005). ...................- 11 -

*Coastal Abstract Serv, Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725 (9th Cir. 1999) .......- 17 -

*Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 343 (1974)...............................................- 15 -

*Global Telemedia Intern., Inc. v. Doe 1*, 132 F.Supp.2d 1261, 1267-68 (C.D. Cal. 2001) ...............- 16 -

*Hailstone v. Martinez*, 169 Cal. App. 4th 728, 736 (citing *Weinberg supra*, at pp. 1132-1133) .......- 13 -

*Jacobsen v. Katzer* 535 F. 3d 1373 (2008) ................................................................- 5 -, - 19 -

*Kahn v. Bower*, 232 Cal.App.3d 1599, 1607, 284 Cal.Rptr. 244, 248 (1991) ...................- 17 -

*Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001)................................- 10 -

*Milkovich v. Lorain Journal Co.*, 487 U. S. 1, 19 (1990).......................................- 16 -, - 20 -

*Moyer v. Amador Valley Joint Union High Sch. Dist.*, 225 Cal.App.3d 720, 723 (1990). ...............- 16 -

*Overhill Farms, Inc. v. Lopez* 190 Cal.App.4th 1248, 1267 (2010)....................................- 25 -

*PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 858 (9th Cir. 2007)...........................- 14 -

*Rivero v. American Federation of State, County and Municipal Employees*, 105 Cal.App.4th 913, 920
(2003). ................................................................................................- 12 -

*Rivero*, 105 Cal.App.4th at 924 ..............................................................- 13 -

*Rodriguez v. Panayiotou*, 314 F.3d 979, 985 (9th Cir. 2002) ........................................- 16 -

*Rodriguez v. Sony Comput. Entm't Am., LLC*, 801 F.3d 1045 (2015).................................- 14 -

*Rogers v. Home Shopping Network, Inc.*, 57 F.Supp.2d 973 ..........................................- 10 -

*Semiconductor Equipment And Materials International, Inc. V. The Peer Group*, No. C 15-cv-00866-
YGR, at *14 (N.D. Cal. September 18, 2015)...............................................- 10 -

*Weinberg v. Feisel*, 110 Cal. App 4th 1122, 1132 (2003)................................................- 12 -

PLAINTIFF'S OPPOSITION TO DEFENDANT PERENS'SECOND MOTION TO DISMISS AND SECOND SPECIAL MOTION
TO STRIKE

1

*Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 905 (2004). .............................................- 10 -, - 19 -

2

## Statutes

3

Cal. Code Civ. Proc. § 425.16(e)(1)-(4). ................................................................. -13-

4

## Rules

5

Fed. R. Civ. P. 12(b)(6) ............................................................................... -15 -

6

Fed. R. Civ. P. 15 .................................................................................-14 -, -15-

7

## Treatises

8

Restatement Second of Torts, section 652E ......................................................... -19 -

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

3:17-CV-04002-LB

28

PLAINTIFF'S OPPOSITION TO DEFENDANT PERENS' SECOND MOTION TO DISMISS AND SECOND SPECIAL MOTION TO STRIKE

# I. INTRODUCTION

Open source software is computer software that is made available with source code that can be modified, used, or shared under certain defined terms and conditions. One such license is the GNU General Public License version 2 ("GPL") which defines redistribution rights to any software released under the license. The Linux kernel code is released under the GPL.  Plaintiff Open Source Security Inc. (OSS) is a small private company located in Pennsylvania and develops software code that fixes security vulnerabilities in the Linux kernel code (a concept commonly referred to as *patching* or providing *patches*). OSS releases the *patches*, in source code form (that is, in the form of code written in a programming language), under the GPL, to approximately 45 of its customers via a Stable Patch Access Agreement ("Access Agreement"). In the Access Agreement, OSS's 45 customers are unequivocally informed that they have all the rights under the GPL for the current *patches* being released.  However, OSS further offers an, optional, *incentive* to not redistribute the patches outside the boundaries defined in the Access Agreement if they wish to utilize its server resources and receive continued access to future versions of the *patches.* If Plaintiffs' customers wish to, they are free to redistribute the patches in their possession – Plaintiffs can choose not to distribute future releases to any customer since the GPL does not grant an inherent right to future releases.

The GPL in its preamble provides the licensee the "freedom to distribute free software (and charge for it as a service if you wish to)... ." As stated in the preamble of the GPL, software released under the license is considered "free software," that is, <u>freedom to distribute</u>, and developers are free to charge for such distribution as a service, if they wish to.

Plaintiffs, as licensees of the GPL, incorporate Linux kernel code into their *patches*. Thus, as a licensee of the Linux kernel code, Plaintiffs are also granted the freedom to distribute their modifications or additions to the Linux kernel code, under the GPL.  Further, since freedom to

PLAINTIFF'S OPPOSITION TO DEFENDANT PERENS'SECOND MOTION TO DISMISS AND SECOND SPECIAL MOTION TO STRIKE

distribute code equates to distributing (or not distributing) code without any consequences, it would be antithetical to conclude the GPL can exclude Plaintiffs' "freedom to distribute," their own software as they may have chosen to do so.  Further, since each version or update is technically new software, that is a separate *patch* having new code of unaccounted man-hours of work by Plaintiffs, and is released independently under the GPL[1], Plaintiffs are explicitly granted, under the GPL, the freedom to distribute each version, at their discretion.  Defendant Bruce Perens ("Defendant" or "Perens" ) is a famous and well-regarded, personality in the open source community. Defendant is also respected as an expert in open source matters and has published 24 books on the subject. Reasonably, the open source community, including Plaintiffs, have no reason to doubt Defendant's knowledge or expertise in the subject matter.

This action began due to a blog post that was initially published on June 28, 2017, and further updated on July 10.  The underlying *premise* of both publications was that the GPL "explicitly prohibits the addition of terms such as [those provided by the Access Agreement]."  Based on such a premise, Defendant stated that Plaintiffs' redistribution clause of the Access Agreement was, *as a matter of fact*, violating the GPL, and thus *patches* were a product of unlicensed work. Based on such an assertion, Defendant expressed his strong opinion stating that Plaintiff's customers were subjecting themselves to potential legal liability under copyright and/or contract law from the creators of the Linux kernel.  However, Defendant, as an expert in open source matters, being well versed with the law, knew or reasonably should have known that the Access Agreement, in part, only enforces Plaintiff's freedom to distribute free software as they wish to – a right explicitly granted to Plaintiffs

---

[1] The GPL cannot and does not force Plaintiffs to provide updated patches and is valid for the software released under it. Each time new code is written or new/ updated features are provided, it becomes new version software, and is released under a new GPL license. Per the GPL, any person can modify the patches to provide new/updated features and release or sell it as their own.

PLAINTIFF'S OPPOSITION TO DEFENDANT PERENS'SECOND MOTION TO DISMISS AND SECOND SPECIAL MOTION TO STRIKE

by the GPL (as a licensee of the Linux kernel code). Defendant knew or should have known, that the Access Agreement does not prevent or restrict a user from exercising their right of redistributing the *patches*, but only defines conditions upon which Plaintiffs are willing to offer their customers access to their server and Internet resources, and exercise their freedom to distribute future software – a condition beyond the scope of the GPL of the current version of the patches released to Plaintiffs' customers. Further, based on Perens' own admission publishing a blog post was "more effective than writing to [Plaintiff]," despite the fact that he had not seen the Access Agreement prior to publishing his statements –  demonstrating a lack of interest in the truth.[2]

        Indeed, Perens admitted that Plaintiffs' Access Agreement was not violating the GPL. On July 9, 2017, at or about 5:09 p.m., prior to updating the blog post, Perens, responding to a commenter on slashdot.org, admitted that "*[t]he problem isn't with the text [of the Access Agreement]. It's with what else they have told their customers. It doesn't even have to be in writing. I have witnesses.*" Despite admitting that the Access Agreement was not in violation of the GPL, on July 10, 2017, at or about 8:15 a.m., Perens updated the blog post and explicitly published that the Access Agreement violated the GPL.  Perens now contends his statements were mere "opinions" and that no court has ever ruled on his assertions, so there can be no liability under a claim of action under defamation. However, such contentions are erroneous.  First, Perens' own position as a crusader and a subject matter expert regarding legality of open source matters makes it reasonable that a layperson would understand such assertions as being based on a fact, since they were made by someone with specialized knowledge in the industry.  Second, clearly Perens wanted Plaintiffs' customers to rely on his assertions as reflecting the truth. Third, a statement of opinion may be actionable if it implies the allegation of undisclosed

---

[2] Perens has stated under penalty of perjury that the he reviewed the Access Agreement on July 9, 2017, 11 days after the original publication of the blog post.

PLAINTIFF'S OPPOSITION TO DEFENDANT PERENS' SECOND MOTION TO DISMISS AND SECOND SPECIAL MOTION TO STRIKE

1    defamatory facts as the basis for the opinion. Fourth, the facts implied by Perens, that Plaintiffs are in

2    violation of the GPL, as a whole are provably false based on known decades old common law

3    principles of contract law and copyright law, but in the very least based on Perens' own admission.

4         Therefore, by using false facts and abusing his reputation in the community, Perens published

5    libelous statements about Plaintiffs.

6                                        **II. FACTS[3]**

7         The GPL is an open source licensing agreement which limits certain rights of the author of the

8    software. *See, generally,* First Amended Complaint ("FAC"), Ex. 3. The GPL, in part provides: When

9    we speak of free software, we are referring to freedom, not price. Our General Public Licenses are

10   designed to **make sure that you have the freedom to distribute copies of free software** (and charge

11   for this **service** if you wish),  ... ." *See* FAC ¶19 (emphasis added).  Further, section 6 of the GPL, in

12   part states, no one may impose any further restrictions on the recipients' exercise of the rights granted

13   herein. *See* FAC ¶ 14. Specifically, the GPL states "[t]his License applies to any program or other

14   work which contains a notice placed by the copyright holder saying it may be distributed under the

15   terms of this General Public License." *See* FAC Ex. 3, Section 0.  The GPL does not, implicitly or

16   explicitly, extend to future versions that may or may not be created or released by the software

17   developer. *See* FAC, Ex. 3.

18        Bruce Perens is a well-known personality in the open source community. *See* FAC ¶  33. He is

19   known for being "one of the founders of the Open Source movement in software, and was the person

20   to announce 'Open Source' to the world". *Id.*  He created the Open Source Definition, the set of legal

21   requirements for Open Source licensing which still stands today." *Id.*  Perens has represented himself

22   as an expert for the plaintiff in prominent open source cases like *Jacobsen v. Katzer* 535 F. 3d 1373

---

[3] Plaintiff request the Court to take Judicial Notice to these facts as it deems appropriate.

PLAINTIFF'S OPPOSITION TO DEFENDANT PERENS'SECOND MOTION TO DISMISS AND SECOND SPECIAL MOTION
TO STRIKE

(2008). *See* FAC ¶ 34. He has also worked as a case strategy consultant for Google's outside counsel in the district court case of *Oracle v. Google*. *See* FAC ¶ 35. Although not an attorney, Perens has taught Continuing Legal Education classes to attorneys in many states and was a keynote speaker at a Silicon Valley event attracting over 250 attorneys." *See* FAC ¶ ¶ 36 -37.  Perens has also published more than 24 books on open source software, all but one have been profitable and "several still sell well more than a decade after publication." *See* FAC ¶ 38.  Perens is also very well versed with the law.  During his discussions with a commenter on slashdot.org, Perens has stated that he has "won against folks who were admitted to the supreme court ... ." *See* FAC ¶ 40.

Plaintiff Open Source Security ("OSS") is a small private corporation located in the State of Pennsylvania. *See* FAC ¶ 2. Plaintiff Bradley Spengler ("Spengler") is the CEO and lone share-holder of OSS. *See* FAC ¶ 3; *See* Declaration of Bradley Spengler ("Spengler Decl.")  ¶1. Plaintiff offers software code, in the form of source code ("Patches"), for the Linux kernel providing security fixes, under the trade name, Grsecurity® to 45 of its customers, at the time the blog posts were published. *See* FAC ¶ 12. Grsecurity® is released under the GPL. *See* FAC ¶ 13. Plaintiff does not advertise its services to anyone other than having Internet presence via its website, http://www.grsecurity.net. *See* Spengler Decl. ¶ 3.  Spengler has not undertaken any voluntary affirmative action through which he has attempted to seek to influence the resolution of any public issue related to the GPL. *See* Spengler Decl. ¶4.

At or about September 2015, Plaintiff established an Access Agreement with its customers who are primarily private businesses. *See* Spengler Decl. ¶5. As of June 28, 2017, Plaintiff only had approximately 45 customers receiving its *patches*. *See* Spengler Decl. ¶6. Further, OSS provides its services to a niche segment within the open source community. *See* Spengler Decl. ¶11.

The Access Agreement states, in part that the customer has all the rights and obligations granted by GPL, and that OSS reserves the right to terminate access to **future** updates if the software is distributed outside of the explicit obligations under the GPL. *See* FAC, Ex. 4, (emphasis in original).

The Access Agreement, by itself only controls access to the servers and resources under the dominion and control of Plaintiffs and distributes the Patches, as a service. *See* FAC ¶21.  The Access Agreement does not govern any right granted to Plaintiff's customers under the GPL; customers are free to distribute the Patches if they desire to do so. *See* FAC ¶22. If a customer does not require Plaintiffs' service, they are free to modify, host, copy, redistribute, and even charge for their services using the Patches in their possession, since such a right is granted within the GPL. *See* Spengler Decl.¶ 7. Plaintiff does not engage in a discriminatory practice under any State or Federal law or regulation. *See* Spengler Decl. 8. The Access Agreement further states, in part, "... we reserve the right to revoke access to the stable patches and changelogs at any time for any reason." *See* FAC  Ex. 4.

On June 28, 2017, Perens published a blog post on his website, www.perens.com, based on his understanding from several sources, OSS was implicitly or explicitly in violation of the GPL, and by continuing to use its Grsecurity product, OSS' customers were subjecting themselves to liability. *See* FAC ¶42. On July 9, 2017, at or about 2:10 p.m.,  Perens' blog post was partially reproduced, and linked, on slashdot.org, a website well known by programmers and software developers in the Open Source community, having an Internet traffic of approximately 3.2 million unique visitors each month. *See* FAC  ¶¶ 43, 66, and 67.  On July 9, 2017, at or about 4:58 p.m., an anonymous reader commented on the slashdot.org posting:

> I've had a look over their agreement here [link to the subscription agreement on grsecurity.net], and **there is nothing to prevent redistribution of a patch under the terms and conditions of the GPLv2.** It states that if it a patch is distributed outside of the terms of the GPLv2, then access to further patches in the future (not the patch provided) will be denied ... .

1  *See* FAC ¶ 44 (emphasis added).

2      On July 9, 2017, at or about 5:09 pm, Perens responded to the above comment, stating:

3          **The problem isn't with the text there**. **It's with what else they have
4          told their customers.** It doesn't even have to be in writing. *I have
          witnesses. ... .*
5  *See* FAC ¶ 45 (emphasis and *italics* added).

6      However, on July 10, 2017, at or about 8:11 a.m., Perens updated the blog post, and explicitly

7  asserting that OSS was in violation of the GPL and by continuing to use its Grsecurity product, OSS'

8  customers were subjecting themselves to liability; Perens however removed all references that

9  suggested he had witnesses . *See* FAC ¶¶ 42 and 47.

10     Collectively, in both the original blog post, its revision, and comments on slashdot.org,

11  Defendant made the following defamatory statements. *See* FAC ¶ 49. Perens, being aware that

12  "publicity [is] a tool" available to him, did not bother discussing his disagreement with Plaintiffs about

13  their business practices. *See* FAC ¶¶68 and 72.  Exploiting his position as an expert in open source

14  matters, Perens published statements about Plaintiffs' business practices and attempted to dissuade

15  Plaintiffs' customers from doing business with Plaintiffs, while having absolutely no valid proof or

16  case law that supported his contention. *See* FAC ¶¶ 33 – 40, 53 – 56, and Perens Decl. ¶¶ 5 – 10 (ECF

17  No. 32-3). *See also* Defendant's Second Anti-SLAPP Motion & Motion to Dismiss FAC at p. 16, *ll.*

18  13-15, and fn. 8 (ECF No. 30).  Clearly, Perens wanted Plaintiffs' customers to rely on his assertions

19  as reflecting the truth. *See also* Perens Decl. (ECF No. 32-3).  Further, laypersons understood such

20  assertions as being based on a fact, since they were made by someone with specialized knowledge in

21  the industry. *Generally see,*  Defendant's Second Anti-SLAPP Motion & Motion to Dismiss FAC, Ex.

22  A (ECF No. 30-2). Perens was at least negligent and did not attempt to ascertain the truthfulness and

23  veracity of the statements identified above, or knew the statements were false or had serious doubts

24  about the truthfulness of such statements, or was just not interested in the truth. *See* e.g., FAC ¶¶ 57,

PLAINTIFF'S OPPOSITION TO DEFENDANT PERENS'SECOND MOTION TO DISMISS AND SECOND SPECIAL MOTION
TO STRIKE

59, 60, 62, 63, 68,72, 81, 82, 99, and 117; *Also see* FAC ¶¶ 44-45, 48 and 49 (Perens admitting his statements were false, and despite that updating the blog post and publishing that the Access Agreement was violating the GPL).  Furthermore, Perens published the original blog post without contacting Plaintiffs or even having access to the Access Agreement. See FAC ¶¶ 68, 72, Perens Decl. ¶¶ 10, 12 (ECF No. 32-3).  Further, Defendants do not have any "reliable sources" or "witnesses" that can provide any evidence or testimonial facts that can support a showing of a violation of the GPLv2 by Plaintiffs. *See* FAC ¶¶ 46, 49, 59, Perens Decl. ¶¶ 6 – 7 (ECF No. 32-3). To the contrary, Plaintiffs have never conveyed any verbal statements regarding its Access Agreement or its redistribution policies to anyone. *See* Spengler Decl. ¶ 9.

Spengler is the sole-shareholder of OSS, Spengler's name is often associated when OSS is discussed in the open source community. *See* FAC, Ex. 9 and 11 (title/ subject stating Spengler along with OSS). Defendant discussed the contents of the Postings with readers of Slashdot, attempting to convince them that the statements in the Postings were an accurate analysis of the law and publicized his postings. *See* Defendant's Second Anti-SLAPP Motion & Motion to Dismiss FAC, Ex. A (ECF No. 30-2); *Also see* FAC ¶ 68. Plaintiff Spengler, by association, became a subject of discussion in numerous posts on Slashdot. *See* FAC ¶¶ 94-96. The false light created was highly offensive to a reasonable person in Spengler's position since the blog posts attempted to destroy his reputation and the reputation of his services, and sought to cause Spengler to lose his ability to continue his business. *See* FAC ¶ 97.

The statements in the blog posts have caused OSS extraordinary damages, including loss of potential customers and loss of good will. See FAC ¶ 73. As a direct or proximate cause of the publications, over 35 potential business customers have not signed the Access Agreement. *See* FAC ¶74. Further, at least four existing Customers have terminated business relations with Plaintiffs. *See*

PLAINTIFF'S OPPOSITION TO DEFENDANT PERENS'SECOND MOTION TO DISMISS AND SECOND SPECIAL MOTION TO STRIKE

FAC ¶75.  Further, prior to the publication of the blog posts, OSS was in the process of hiring a full-time software engineer to further enhance the security features in the Grsecurity® product. The employee was expected to start working on the Grsecurity® product in September 2017.  However, as a direct or proximate cause of the Postings, OSS had to implement a hiring freeze and divert its resources towards legal fees and unexpected costs of litigation. The hiring freeze has harmed OSS at a time when it was geared towards expanding its business operation. *See* FAC ¶ 76.  The publication of the blog posts also caused OSS to incur the extraneous expense to hire an independent contractor to monitor and counteract the negative publicity resulting due to the publications which has further caused an expense of $6,300. *See* FAC ¶ 77.  As a proximate result of the Postings, Plaintiffs have suffered loss of business and professional reputation. See FAC ¶¶ 84, 85, 87, 97, 102, 103, 105, and 111. Due to the blog posts OSS has suffered general and special damages, including, without limitation, lost revenue and profits as a function of damage to Plaintiff's business reputation; diminution in the pecuniary value of Plaintiff's goodwill, administrative costs in connection with Plaintiff's efforts to monitor and counteract the negative publicity, and other pecuniary harm. *See* FAC ¶¶  73 – 77 and 85 – 87.

Further, Spengler was also mentally distressed by the blog posts and comments and the negative publicity it generated towards his ability to do business and loss of reputation in the community that he had to seek psychological help for the emotional distress. *See* FAC ¶ 100; *Also see* Spengler Decl. ¶ 10.

## III. ARGUMENT

### 1. A special motion to strike pursuant to California's anti-SLAPP statute, alleging Plaintiff's lack of demonstrative evidence is inappropriate.

PLAINTIFF'S OPPOSITION TO DEFENDANT PERENS'SECOND MOTION TO DISMISS AND SECOND SPECIAL MOTION TO STRIKE

A court in the Northern District of California has stated that, " ... the Ninth Circuit requires a party opposing an anti-SLAPP motion be afforded the same right of discovery as a party opposing summary judgment under Rules 56(f) and (g), [citing *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001)] (reversing district court's granting of certain defendants' anti-SLAPP motions and remanding to the district court to, in part, permit discovery where information "in the defendants' exclusive control" may have been "highly probative to [plaintiff's] burden"); [citing *Rogers v. Home Shopping Network, Inc.*, 57 F.Supp.2d 973, 982] ("Because the discovery-limiting aspects of § 425.16(f) and (g) collide with the discovery allowing aspects of Rule 56, these aspects of subsections (f) and (g) cannot apply in federal court"). *Semiconductor Equipment And Materials International, Inc. V. The Peer Group,* No. C 15-cv-00866-YGR, at *14 (N.D. Cal. September 18, 2015).

Furthermore,  California courts have also stated, "[s]tatutes such as section 425.16, therefore, are construed to require the lower court to consider the challenged plaintiff's affidavits for the purpose of determining whether sufficient evidence has been presented to demonstrate a prima facie case and, "`[i]n making this judgment, the trial court's consideration of the defendant's opposing affidavits does not permit a weighing of them against plaintiff's supporting evidence, but only a determination that they do not, as a matter of law, defeat that evidence.' [Citation.] 'A motion to strike under section 425.16 is not a substitute for a motion for a demurrer or summary judgment' [Citation]. In resisting such a motion, the plaintiff need not produce evidence that he or she can recover on every possible point urged. It is enough that the plaintiff demonstrates that the suit is viable, so that the court should deny the special motion to strike and allow the case to go forward." *Wilbanks v. Wolk*, 121 Cal. App. 4th 883, 905 (2004). However, Perens, in arguments for his special motion to strike pursuant to California's anti-SLAPP statute, is attempting to hold Plaintiffs to a higher standard and expects Plaintiff to conclusively prove that Perens is liable for the alleged causes of action.

PLAINTIFF'S OPPOSITION TO DEFENDANT PERENS'SECOND MOTION TO DISMISS AND SECOND SPECIAL MOTION TO STRIKE

1  Plaintiffs submit a viable suit can be demonstrated as further discussed herein, including by the

2  allegations in the First Amended Complaint, and a prima facie case has been further established based

3  on affidavits. *See* FAC Ex. 12 and the attached Spengler Decl., Ex. 1.  Thus, Perens' special motion to

4  strike should be dismissed.[4]

5  **2. Defendants' defamatory statements are not protected conduct and are thus not subject to a**

6  **special motion to strike under the California anti-SLAPP statute.**

7  The California anti-SLAPP statute allows certain parties limited immunity from suit for

8  statements made in pursuit of their First Amendment rights. Neither the immunity nor its application

9  

10  is absolute and even its fairly liberal reach does not extend to Perens' defamatory and false statements

11  that the Plaintiffs' Grsecurity product violated the GPL and that Plaintiffs' customers were thus subject

12  liability. The statute protects only:

13  1. any written or oral statement or writing made before a legislative,
executive, or judicial proceeding, or any other official proceeding
14  authorized by law;
2. any written or oral statement or writing made in connection with an
15  issue under consideration or review by a legislative, executive, or judicial
body, or any other official proceeding authorized by law;
16  3. any written or oral statement or writing made in a place open to the
public or a public forum in connection with an issue of public interest; or
17  4. any other conduct in furtherance of the exercise of the constitutional
right of petition or the constitutional right of free speech in connection
18  with a public issue or an issue of public interest.

19  

20  Cal. Code Civ. Proc. § 425.16(e)(1)-(4).

21  

22  Perens holds the burden of proof to show that his defamatory statements were protected. *Bosley*

23  *Medical Institute, Inc. v. Kremer*, 403 F.3d 672, 682 (9th Cir. 2005). Perens cannot meet his burden

24  

25  _____
[4] However, if the Court determines that the Plaintiffs, for any claim, are unable to prove an allegation
26  due to lack of evidence, as contended by Perens, the Court should deem this anti-SLAPP motion as
prematurely filed, and sua sponte grant Plaintiff  a motion to continue Defendant's motion to dismiss
27  and special motion to strike pursuant to California's anti-SLAPP statute, for those respective claims.

- 11 -                                    3:17-CV-04002-LB

28  PLAINTIFF'S OPPOSITION TO DEFENDANT PERENS'SECOND MOTION TO DISMISS AND SECOND SPECIAL MOTION
TO STRIKE

because his false assertions of facts are not constitutionally protected free speech, as a matter of law. There is no credible evidence that Perens' defamatory statements were made before legislative, executive or judicial bodies. Further, his statements did not involve any issue of public interest, but were limited to Plaintiffs existing customers who were 45 private businesses at the time of the blog post(s) were published. Further Perens' statements were not made in anticipation of litigation.

Perens' Defamatory Statements Are Not An Issue Of Public Interest

Perens claims that simply because his blog post was linked to slashdot.org, and generated over 470 comments, the response by the public is conclusive that the matter was of public interest.  It is undeniable that Perens is well-known in the open source community. His opinions are also well respected in the community. Indeed,  when someone coins the term open source, creates the open source definition, writes 24 books on the subject matter, represents himself as an expert on the subject matter during appeal, and teaches continuing legal education to 250+ attorneys, such a person will be well respected and his views taken very seriously. Perens' blog post was specifically addressed to Plaintiffs' customers – which numbered 45 at the time of the publication of the defamatory statements.

Not all disputes are a matter of public interest for purposes of a special motion to strike. In order to be of —public interest, an issue must be one that —impacts a broad segment of society and/or that affects a community in a manner similar to that of a governmental entity. *Rivero v. American Federation of State, County and Municipal Employees*, 105 Cal.App.4th 913, 920 (2003).

Perens cannot turn his personal dissatisfaction with Plaintiffs' business practices or the Access Agreement into a public issue merely by abusing his fame and reputation and communicating it to a large number of people. *Weinberg v. Feisel*, 110 Cal. App 4th 1122, 1132 (2003).  "[P]ublic interest is not mere curiosity. Further, the matter should be something of concern to a substantial number of people. Accordingly, a matter of concern to the speaker and a relatively small, specific audience is not

PLAINTIFF'S OPPOSITION TO DEFENDANT PERENS'SECOND MOTION TO DISMISS AND SECOND SPECIAL MOTION TO STRIKE

a matter of public interest" ... Moreover, the focus of the speaker's conduct should be the public interest, not a private controversy. Finally, a defendant charged with defamation cannot, through his or her own conduct, create a defense by making the claimant a public figure. Otherwise private information is not turned into a matter of public interest simply by its communication to a large number of people. *Hailstone v. Martinez*, 169 Cal. App. 4th 728, 736 (citing *Weinberg supra*, at pp. 1132-1133).

The instant case is most like *Rivero, supra*. In that case, a janitorial supervisor at a public university sued a union for defamation after he was accused of bribery, nepotism, theft and extortion. The Union's anti-SLAPP motion alleged that the issue was one of public concern because it involved unlawful workplace activities which concerned the public and public policy, especially at a publicly financed institution. The court rejected this argument, finding that the dispute between the supervisor and the union simply did not rise to a matter of public interest. *Rivero*, 105 Cal.App.4th at 924.

In the instant matter, the title of Perens' blog post was, "Warning: Grsecurity: Potential contributory infringement and breach of contract risk for customers." In both the original blog post and its update revision, Perens began by communicating directly to his audience – the 45 customers of Plaintiffs. He stated, "It's my strong opinion that your company should avoid the Grsecurity product sold at grsecurity.net because it presents a contributory infringement and breach of contract risk."

In both the original blog post and its updated version, Perens continued by explaining Plaintiffs' business practice and then made conclusory statements that such practices violated the GPL, without any proof. Perens then continued discussing how Plaintiffs' clients were subjecting themselves to liability. It is also undisputed Perens wanted the target audience (that is, Plaintiff's customers) to believe his statements were true. Given that Plaintiff is well known in the open source community and

PLAINTIFF'S OPPOSITION TO DEFENDANT PERENS'SECOND MOTION TO DISMISS AND SECOND SPECIAL MOTION TO STRIKE

is known to be a subject matter expert in the industry, his statements were bound to attract public fascination and curiosity.

However, Perens attempts to portray his blog posts as a matter of public concern, when they were:

(i) not addressed to the open source community at large, but only to a niche segment within the open source community that considers using open source security based products not provided by the Linux kernel code developers;

(ii) were specifically addressed to Plaintiffs' approximately 45 customers and how they were subjecting themselves to liability by using the Grsecurity product; and

(iii) not related to an analysis of the current practices in the for-profit open source industry, when such practices have been going on for approximately two decades. *See* FAC ¶¶ 23 – 27.

Perens now resorts to conjecture and attempts to hold Plaintiffs against their genuine desire to clarify a previously ambiguously written statement that the blog posts were seen and read by hundreds, if not thousands of consumers and prospective clients, professional colleagues and business partners. See Original Complaint ¶ 36 *Cf.* FAC ¶69. However, this should be deemed as a non-issue since as Perens correctly notices amendments pursuant to Fed. R. Civ. P. 15 are to be construed broadly. Further, Plaintiffs early on, in good faith, corrected a previous allegation that had an ambiguous context, and did not attempt to thwart the statutory language by artfully pleading allegations that were fatal to a claim.[5]  Moreover, even if such ambiguous statement, amended in good faith, is held to be inconsistent with the original pleading, there is no rule to prevent such an action by Plaintiff, especially

---

[5] Plaintiffs note the cases cited by Perens do not apply to the instant matter, since in the instant matter Plaintiffs only clarify a previously submitted ambiguous statement, and not a contradictory statement, as referred to within the case cited by Perens. Specifically, in *Rodriguez v. Sony Comput. Entm't Am., LLC*, 801 F.3d 1045 (2015), Rodriguez had amended the complaint numerous times, later in the proceeding, with allegations that contradicted the previous stated allegation. *Id.* at 1054.

PLAINTIFF'S OPPOSITION TO DEFENDANT PERENS'SECOND MOTION TO DISMISS AND SECOND SPECIAL MOTION TO STRIKE

since the ambiguity was clarified pursuant to Fed. R. Civ. P. 15(a)(1), and that too, at a very early stage in the proceeding. *See PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 858 (9th Cir. 2007) (determining that even if the allegations in the first amended complaint were unfounded because they contradicted (in the district court's view) earlier allegations made in the original complaint, adjudication of claims on the merits was not permitted by Federal Rules of Civil Procedure at such an early stage in the proceedings).

Therefore, since the subject matter of the blog post was to inform Plaintiffs' 45 customers of their potential liability if they continued to use the Grsecurity® product, Perens abused his fame and invoked the curiosity of the public, none of them who were directly affected by Plaintiffs' business practices. Thus, these statements are not protected by sections 425.16(e)(3) and (4).

**3. Opposition to Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)/ Special motion under California's anti-SLAPP statute**

Even if Perens' statements are considered as a matter of public interest, Plaintiffs respectfully submit that they can sufficiently demonstrate a probability of prevailing on the merits of the claims.

**(i). Defamation per se and Per Quod[6]**

**(A) Plaintiff OSS Is Not A Public Figure Or A Limited Purpose Public Figure**

Public figures are entities which, —by reason of the notoriety of their achievements or the vigor and success with which they seek the public's attention, are properly classed as public figures. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 343 (1974). Plaintiff OSS is a small private corporation with one employee and currently three[7] part-time independent contractors. Spengler Decl. ¶ 2. Prior to the publication of the blog post(s), OSS has never sought the public attention and did not even

---

[6] Plaintiff OSS severally brings the action of defamation per se and defamation per quod. See FAC ¶¶ 78 – 90.

[7] At the initiation of this action, OSS employed four part-time independent contractors. See Spengler Decl. ¶ 2, at ECF No. 20-1.

PLAINTIFF'S OPPOSITION TO DEFENDANT PERENS'SECOND MOTION TO DISMISS AND SECOND SPECIAL MOTION TO STRIKE

advertise their services or their product, except for having Internet presence. Spengler Decl. ¶3. Plaintiffs are not limited purpose public figures either. A limited public figure is one who injects himself into a particular public controversy. *Gertz*, 418 U.S. at 351. In determining if a business is a limited purpose public figure the Fourth District Court of Appeal provided the necessary factors to consider: (1) if the company is publicly traded; (2) the number of investors and (3) whether the company has promoted or injected itself into the controversy by means of numerous press releases. *AMPEX Corp. v. Cargle*, 128 Cal.App.4th 1569, 1576 (2005). In this case, none of the *AMPEX* factors are met. (i) OSS is a small private incorporation. (ii) OSS has no investors, and (iii) OSS has not promoted or injected itself into the controversy, at issue, by means of any press release. In fact, even after Perens' defamatory publication, Spengler did not make any comments to the public about Perens' post, or attempted to defend OSS from Perens' allegations. Thus, OSS is not a limited public figure.

**(B) Perens Made False Statements Of Fact Which Were Not Privileged And Which Have A Natural Tendency To Cause Damages**

Perens' false statements of "opinion" are actionable because they are facts rather than opinions and admissible evidence shows they are demonstrably false.

Generally, statements of fact are actionable. *Global Telemedia Intern., Inc. v. Doe 1*, 132 F.Supp.2d 1261, 1267-68 (C.D. Cal. 2001). A defendant cannot hide behind a claim of —opinion when the statement in question – however phrased – states a provable (or disprovable) fact. *Rodriguez v. Panayiotou*, 314 F.3d 979, 985 (9th Cir. 2002); *Milkovich v. Lorain Journal Co.*, 487 U. S. 1, 19 (1990). The dispositive question is whether a reasonable fact finder could conclude that the relevant statements imply a provably false factual assertion. *Milkovich*, 497 U.S. at 19. The United States Supreme Court affirmed this rule in *Milkovich* when it stated, "[e]ven if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false statement of fact." *Id.* at 19-20. Thus, "a

PLAINTIFF'S OPPOSITION TO DEFENDANT PERENS'SECOND MOTION TO DISMISS AND SECOND SPECIAL MOTION TO STRIKE

false assertion of fact [can] be libelous even though couched in terms of opinion." *Moyer v. Amador Valley Joint Union High Sch. Dist.*, 225 Cal.App.3d 720, 723 (1990).

Firstly, Perens has admitted that the Access Agreement did not violate the GPL.[8] FAC ¶ 44-45. Therefore, his statements are demonstrably, by admission, false. Thus, Perens cannot avoid liability by simply claiming that his defamatory statements were "opinions" of a layperson. OSS includes all arguments presented in Plaintiff's partial motion for summary judgment (ECF Nos. 24 and 37), by reference. If the Court were to grant Plaintiffs' motion, no further analysis needs to be performed.

**(C) Even if the subject matter of Perens' blog post were of public interest, Perens' anti-SLAPP motion cannot be granted.**

Perens primarily relies on *Coastal Abstract Serv, Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725 (9th Cir. 1999). Perens contends that since no court has ruled on the compliance of any agreement similar to the Access Agreement, thus Perens' statements should be deemed as mere opinions. However, the facts of *Coastal Abstract,* can be distinguished from the present matter. There, plaintiff sued defendant, a lay person, for defamation, among others, since defendant had claimed that plaintiff did not have a business license in California, as required by statute. Plaintiff did not have a business license and the Ninth circuit noted, that "an opinion that does not convey a false factual implication is not defamatory under California law." (citing *Kahn v. Bower*, 232 Cal.App.3d 1599, 1607, 284 Cal.Rptr. 244, 248 (1991)).

Based on the above, the Court stated:

> Thus the statement that Coastal was operating illegally without a California license might present a triable claim **if in fact Coastal had a California license. There is no dispute, however, that Coastal had no California license** (and was not affiliated with a California licensee) at the time First American made the statement. The only claim of falsity concerns the statement or suggestion that California's statute applied to the activities of Coastal, which was (and apparently still is) a matter of opinion. As a matter of law, the statement that Coastal was

---

[8] This Court is requested to take Judicial Notice of FAC ¶¶ 44-45.

PLAINTIFF'S OPPOSITION TO DEFENDANT PERENS'SECOND MOTION TO DISMISS AND SECOND SPECIAL MOTION TO STRIKE

operating without the necessary license in California did not constitute
defamation.

*Coastal Abstract*, *supra*, at 733 (emphasis added).

Here, Perens has alleged that OSS is in violation of the GPL. This is disputed (unlike *Coastal* where the original premise was based on a truth –Coastal did not have a license in California).  Thus, as a matter of law, the statement that OSS is in violation of the GPL, constitutes defamation, since, unlike *Coastal*, there is no undisputed truth that can be used as a valid defense.  Perens further misinterprets *Coastal* as if defamation requires a conclusive law to prove or disprove every statement of fact. To the contrary, the *Coastal* court relied on an undisputed statement of fact, and the court decided not to interpret a statutory requirement since "the only claim of falsity concern[ed] the statement or suggestion that California's statute applied to the activities of Coastal."  *Id.*

Perens also relies on *Coastal's* analysis of the Lanham Act to attempt to evade liability under defamation. The *Coastal* Court concluded that "[s]tatements of opinion are not generally actionable under the Lanham Act." *Id.* at 731. There the court relied on "[a]bsent a clear and unambiguous ruling from a court or agency of competent jurisdiction, **statements by laypersons** that purport to interpret the meaning of a statute or regulation are opinion statements, and not statements of fact."  *Id.* at 731; citing *Dial A Car, Inc. v. Transportation, Inc.*, 82 F.3d 484, 488-89 (D.C.Cir. 1996*); Sandoz Pharmaceuticals Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 230-32 (3d Cir.1990) (emphasis added.) The subject matter of dispute in both *Dial A Car* and *Sandoz* was related to the Lanham Act, and the Coastal Court cited these courts to address an issue related to the Lanham Act itself, not the defamation aspect of the case. However, even if the *Coastal* court's analysis, as applied to the Lanham Act, were to be applied in a defamation matter, Perens cannot simply evade liability by now claiming that his statements were that of a layperson.  Here, it is undeniable that Perens has represented himself, and is by large known to the open source community, as an expert in disputes over the legality of open

PLAINTIFF'S OPPOSITION TO DEFENDANT PERENS'SECOND MOTION TO DISMISS AND SECOND SPECIAL MOTION
TO STRIKE

source matters, as he did in *Jacobsen v. Katzer*, *supra*. Further, Perens has written at least 23

successful books in open-source matters, taught continuing legal education to over 250 attorneys, and

is a professional who instructs engineers and produces clarity for attorneys in how to comply with legal

requirements related to computer software. Perens has further implied that his understanding of the law

is better than seasoned attorneys admitted to the US Supreme Court. Clearly, Perens cannot be held to

the same standard of a layperson and his "opinions" cannot be simply considered as that of a lay

person. Therefore, the *Coastal* test cannot apply for this reason as well.

California courts agree with Plaintiffs' analysis in the context of defamatory statements

published by a person having specialized knowledge in an industry. The facts of the instant matter are

very similar to that of *Wilbanks v. Wolk*, 121 Cal. App. 4th 883, *supra*. In *Wilbanks*, Gloria Wolk, a

consumer advocate and expert on viatical settlements (arrangements in which dying persons sell their

life insurance policies to investors to help pay for medical care and other expenses), posted negative

comments on her website about Plaintiff Wilbanks, a broker of such settlements. *Id.* at 833, 889.  Wolk

had written several books on viaticals, and acted as a consumer watchdog and an expert on issues

surrounding viatical settlements.  *Id.* at 889.  On her website, Wolk published the following related to

Wilbanks:

> Be very careful when dealing with this broker. Wilbanks and Assoc. is under
> investigation by the CA dept. of insurance. The complaint originated with a
> California viator who won a judgment against Wilbanks. How many others have
> been injured but didn't have the strength to do anything about it?
> The company is under investigation. Stay tuned for details.
> Wilbanks and Associates provided incompetent advice.
> Wilbanks and Associates is unethical.

*Id.* at 890, 901.

Plaintiff Wilbanks filed a complaint against Wolk for defamation and Wolk moved to strike

pursuant to California's anti-SLAPP statute in which the lower court granted Wolk's anti-SLAPP

motion. *Id.* at  890.  In reversing the grant of the anti-SLAPP motion, the Court of Appeal stated that

- 19 -                                           3:17-CV-04002-LB

PLAINTIFF'S OPPOSITION TO DEFENDANT PERENS'SECOND MOTION TO DISMISS AND SECOND SPECIAL MOTION
TO STRIKE

Wolk's publication suggested that Plaintiffs engaged in unethical or incompetent practices. *Id.* at 902.

The court held that such express or implied assertion of incompetent and unethical business practices

could not be viewed as statements of opinion. *Id.* at 902-03. Citing *Milkovich v. Lorain Journal Co.*,

487 U. S. 1, 19, *supra*, the court stated, "[e]ven if the speaker states the facts upon which he bases his

opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the

statement may still imply a false statement of fact." *Id.* at 903.

In support to her special motion to strike, Wolk submitted a declaration that she had been

informed by a viator who won a judgment in small claims against Wilbanks and that the viator had

filed a complaint with the State's department of insurance.  *Wilbanks*, supra, at 903. However, as the

court determined, Wilbanks was in fact not under active investigation (although a complaint had been

filed against him by a disgruntled viator), however Wolk had presented an assertion suggesting that

Wilbanks was in fact under investigation. *Id.* Wolk presented that her publication was "merely stating

the facts and drawing her own opinion from them." *Id.* However, the court stated:

> Wolk's own position as a crusader and watchdog to the industry also works
> against any argument that she was merely stating the facts and drawing her own
> opinion from them. An accusation that, if made by a layperson, might constitute
> opinion may be understood as being based on fact if made by someone with
> specialized knowledge of the industry. (*Slaughter v. Friedman* (1982) 32 Cal.3d
> 149.) Wolk here held herself out to have special knowledge resulting from
> extensive research into the viatical industry; i.e., she claimed to be a person who
> could recognize and identify unethical practices that the average person might not
> recognize. Wolk clearly expected readers to rely on her opinions as reflecting the
> truth.

*Id.* at 904.

Here, just like Wolks' publication, it is undisputed Perens published statements explicitly or

implicitly suggesting OSS was violating the GPL, and customers should avoid using its product or

subject itself to legal liability.   Further, just like Wolk, it is undisputed that Perens is a subject matter

on open source matters, has written numerous books on the matter, has provided 250+ attorneys with

PLAINTIFF'S OPPOSITION TO DEFENDANT PERENS'SECOND MOTION TO DISMISS AND SECOND SPECIAL MOTION
TO STRIKE

continuing legal education lectures, has represented himself as an expert in court and is an advocate of the open source community. Also, just like Wolk, there is no dispute that Perens has held out to have specialized knowledge in the open source community, and has clearly expected readers to rely on his opinions as reflecting the truth. *Also see* Perens Decl. ¶ 8 (ECF No. 32-3).

The court also held that Wolk did not check with plaintiffs before publishing the material and her refusal to discuss the matter with Wilbanks was viewed as a lack of interest in the truth, thus Wolk acted negligently or possibly with a reckless disregard for the truth. *Id.* at 906.

Similarly here, Perens did not check with Plaintiffs before publishing with material, Perens stated that publishing his blog posts was "more effective than writing to" Plaintiffs. *See* FAC ¶72. *Also see* Perens' Opposition to OSS' Motion for Partial Summary Judgment, Ex. 2, p. 10-11 (ECF No. 32-2). Further, Perens agrees that he is not aware of any case law which reasonably suggests that Plaintiffs may be in violation of the GPL. Thus, Perens either acted negligently or with reckless disregard of the truth.

The *Wilbanks* court further concluded, that the facts implied that the publication as a whole was provably false. *Id.* at 904. The court reasoned that despite the existence of a judgment against Wilbanks, he was never under active investigation and he could show that his business practices were in fact not unethical. *Id.* Since Perens statements cannot be considered as mere opinions, and being a subject matter expert he expected his readers to rely on his publication as the truth, OSS can demonstrate that the publication as whole is provably false. Specifically, OSS can demonstrate that there has been no initiation of any legal proceeding against them that can even remotely suggest a possibility that they have been in violation of the GPL. Spengler Decl. ¶12. Further, OSS is unaware if any of its customers have been contacted regarding possible contributory infringement or breach of contract by, or threatened of legal action by, anyone from the Linux kernel code developers. Spengler

PLAINTIFF'S OPPOSITION TO DEFENDANT PERENS'SECOND MOTION TO DISMISS AND SECOND SPECIAL MOTION TO STRIKE

Decl. ¶ 13. Furthermore, OSS can demonstrate and convince a fact finder, based on the explicit clauses of the GPL, that it has been in compliance of the laws of contract and copyright and can thus prove that Perens' assertion that OSS has been violating the GPL is unreasonable and not true.

A license agreement, by definition, can only apply to a product or service which is agreed upon – in other words, there needs to be an agreement. Since the GPL only governs the current "Program" under which it is released, reasonably, there can be no demand or expectation of a grant of right of a software that has not even been released. Furthermore, the GPL in its preamble provides the licensee the "freedom to distribute free software (and charge for it as a service if you wish to)... ." Since Plaintiffs are incorporating Linux kernel code into their *patches*, as a licensee of the Linux kernel, the freedom to distribute their modifications or additions to the Linux kernel code, is also granted to Plaintiffs under the GPLv2.  Since freedom to distribute code means to distribute (or not distribute code) without any consequences, Plaintiffs have the inherent right to not distribute code if they choose to do so. Further, since each version or update is technically new software and is released independently under the GPL, Plaintiffs are explicitly granted, under the GPL, the freedom to distribute each version, at their discretion. Thus, there can be no violation of the GPL. Finally, it is well known that a business can choose with whom it may do business and with it may not. However, Perens wants this Court to follow his absurd rationale and contradict common law principles worth of many decades of wisdom, if not centuries. Based on paragraphs 12 – 32 of the First Amended Complaint, Plaintiffs request this Court to take Judicial Notice that Plaintiffs are not in violation of the GPL.

However, for the purposes of this special motion to strike, even if the Court decides not to determine whether Plaintiffs were in compliance of the GPL, Perens' own admission that the Access

3:17-CV-04002-LB

1    Agreement does not violate the GPL provides proof that at the publications of his blog posts are

2    provably false, as explained further.

3    <u>"The problem isn't with the text there. It's with what else they have told their customers. It doesn't
     even have to be in writing."</u>

4          OSS contends the above stated paragraph by Perens, in response to a Slashdot.org commenter,

5    who provided Perens a link of the Access Agreement, demonstrates that Perens has admitted that the

6    Access Agreement did not violate the GPL. OSS contends that by "the text there" Perens meant the

7    text of the Access Agreement, since the Slashdot.org commenter had stated, "I've had a look over their

8    agreement <u>here</u> [grsecurity.net] ..." (underline in original indicating a web-link). OSS contends "there"

9    was a reference and reasonable response to "here." Furthermore, Perens continued "[i]t's with what

10   else they have told their customers," clearly suggesting that he agreed that the problem was not with

11   the Access Agreement, but with what OSS had told their customers. Reasonably, the paragraph when

12   considered as a whole suggests a strong finding that Perens agreed that the Access Agreement did not

13   violate the GPL. Yet, on July 10, 2017, Perens explicitly stated that the Access Agreement was in

14   violation of the GPL.

15
16        However, Perens has taken great measures to deny such a reasonable contention and his

17   inference, arguably, crosses the boundaries of logic and rational thinking.[9]  Although, Plaintiffs

18   contend their partial motion for summary judgment should be granted, even if the Court were to deny

19   such a motion, at the very least, a dispute of material fact has been identified, and a trier of fact may

20   very well find in favor of Plaintiffs. Further, it has already been alleged that Perens did not have any

21   reliable witnesses who could confirm that either the Access Agreement was in violation of the GPL or

22   that Plaintiffs had made verbal statements suggesting a violation of the GPL, and a trier of fact may

23   find in favor of Plaintiffs.

24
25
26
27
28

---

[9] See Perens' opposition to Plaintiff's motion for partial summary judgment (ECF No. 32).

PLAINTIFF'S OPPOSITION TO DEFENDANT PERENS'SECOND MOTION TO DISMISS AND SECOND SPECIAL MOTION
TO STRIKE

 **(ii) False Light**

The Restatement Second of Torts, section 652E provides:

> One who gives publicity to a matter concerning another that places the
> other before the public in a false light is subject to liability to the other for
> invasion of his privacy, if (a) the false light in which the other was placed
> would be highly offensive to a reasonable person, and (b) the actor had
> knowledge of or acted in reckless disregard as to the falsity of the
> publicized matter and the false light in which the other would be placed.

"California common law has generally followed Prosser's classification of privacy interests as embodied in the Restatement." *Hill v. National Collegiate Athletic Assn.* 7 Cal.4th 1, 24 (1994). "In order to be actionable, the false light in which the plaintiff is placed must be highly offensive to a reasonable person. Although it is not necessary that the plaintiff be defamed, publicity placing one in a highly offensive false light will in most cases be defamatory as well." *Fellows v. National Enquirer* 42 Cal.3d 234, 238–239 (1986).

Here, while Plaintiff OSS alleges defamation per se and defamation per quod, Plaintiff Spengler does not allege he has personally been defamed by the blog posts. However, since Spengler's name is generally associated with Plaintiff OSS, Spengler claims false light as an implication of the Postings resulting him in harm personally. Thus, the false light claims are <u>not</u> superfluous.

**(iii) Intentional Interference with Prospective Economic Advantage**

"[S]pecific intent is not a required element of the tort of interference with prospective economic advantage....[ A] plaintiff may alternately plead that the defendant knew that the interference was certain or substantially certain to occur as a result of its action." *Korea Supply Company V. Lockheed Martin Corp* 29 Cal.4th 1134, 1154 (Cal. 2003).  "Although varying language has been used to express this threshold requirement, the cases generally agree it must be reasonably probable that the prospective economic advantage would have been realized but for defendant's interference." *Youst, supra*, at p. 71. "[I]n the absence of other evidence, timing alone may be sufficient to prove causation. .

PLAINTIFF'S OPPOSITION TO DEFENDANT PERENS'SECOND MOTION TO DISMISS AND SECOND SPECIAL MOTION
TO STRIKE

. . Thus, . . . the real issue is whether, in the circumstances of the case, the proximity of the alleged cause and effect tends to demonstrate some relevant connection. If it does, then the issue is one for the fact finder to decide." *Overhill Farms, Inc. v. Lopez* 190 Cal.App.4th 1248, 1267 (2010).

Perens, in his original blog post claimed he had "several reliable witnesses." FAC ¶42. Moreover, Perens claimed "It's with what else they have told their customers. It doesn't even have to be in writing. I have witnesses. ..." FAC ¶45.  Clearly, Perens has asserted he has knowledge about an economic relationship, either with a present customer or potential customer who has enquired about the Access Agreement from Plaintiffs. While Plaintiffs allege Perens does not have such knowledge, based on Perens' own assertions, he knew about a relationship, that remains unknown to Plaintiffs. Further Plaintiffs have also alleged that 35 potential customers have not engaged in business with Plaintiffs since the publication of the defamatory statements. FAC ¶74. Furthermore, four existing customers ceased business relationships with Plaintiff after the publication of the defamatory statements.  FAC ¶ 75.  It is further alleged that it is reasonably probable that the prospective economic advantage would have been realized but for defendant's interference. FAC ¶ 111.

## IV. CONCLUSION

This Court should thus dismiss Perens Special Motion to Strike and Motion to Dismiss, and award Plaintiffs its attorney's fees for having to oppose this frivolous motion.

Date: November 21, 2017

Respectfully Submitted,

CHHABRA LAW FIRM, PC

s/*Rohit Chhabra*
Rohit Chhabra
Attorney for Plaintiffs
Open Source Security Inc. & Bradley Spengler

- 25 -                                    3:17-CV-04002-LB

PLAINTIFF'S OPPOSITION TO DEFENDANT PERENS'SECOND MOTION TO DISMISS AND SECOND SPECIAL MOTION TO STRIKE