# EXHIBIT A

MELODY DRUMMOND HANSEN (S.B. #278786)
mdrummondhansen@omm.com
HEATHER J. MEEKER (S.B. #172148)
hmeeker@omm.com
O'MELVENY & MYERS LLP
2765 Sand Hill Road
Menlo Park, California  94025-7019
Telephone:   +1 650 473 2600
Facsimile:   +1 650 473 2601

CARA L. GAGLIANO (S.B. #308639)
cgagliano@omm.com
Two Embarcadero Center
28th Floor
San Francisco, California 94111-3823
Telephone:   +1 415 984 8700
Facsimile:   +1 415 984 8701

Attorneys for Defendant
Bruce Perens

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO**

| | |
|---|---|
| OPEN SOURCE SECURITY, INC., and BRADLEY SPENGLER,<br><br>                    Plaintiffs,<br><br>        v.<br><br>BRUCE PERENS, and Does 1-50,<br><br>                    Defendants. | Case No. 3:17-cv-04002-LB<br><br>**DEFENDANT'S SURREPLY IN OPPOSITION TO OPEN SOURCE SECURITY, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Hearing Date:  December 14, 2017<br>Time:  9:30 a.m.<br>Location:  Courtroom C, 15th Floor<br>Judge:  Hon. Laurel Beeler |

1    Rather than demonstrating that Plaintiff OSS is entitled to partial summary judgment
2    based on undisputed facts, OSS's Reply incorrectly characterizes facts that clearly are disputed as
3    "undisputed."  The Reply then misinterprets Defendant Bruce Perens's comments and pads them
4    with speculation and imagined meaningful "silence" to reach OSS's desired conclusion: That the
5    "only" reasonable interpretation of Mr. Perens's comments is to take them as an "admission" that
6    the Grsecurity Agreement did not violate the GPL.  Mr. Perens files this Surreply to address
7    OSS's repeated misconstruals of his Slashdot comment of July 9, 2017 at 5:09 p.m. PDT and of
8    his October 31, 2017 Declaration.  To put OSS's conjectures to rest, Mr. Perens also submits a
9    Supplemental Declaration with two emails that definitively demonstrate that he did *not* receive
10   and review the Grsecurity Agreement before posting his July 9, 2017 comment, and that he was
11   *not* providing an opinion that the Agreement does not violate the GPL.  To the contrary, Mr.
12   Perens has consistently maintained that OSS's restraints on redistribution violate the GPL,
13   regardless of whether those restraints are in writing—which, as it turns out, they are.

14   OSS incorrectly asserted in its Motion for Partial Summary Judgment (ECF No. 24) that
15   Mr. Perens "admitted that Plaintiff's Access Agreement does not violate the GPL," based on a
16   comment posted by Mr. Perens on the Slashdot website.  MPSJ at 7; *see also id.* at 2–3, 9–10.
17   That comment, posted by Mr. Perens at approximately 5:09 p.m. PDT on July 9, 2017, responded
18   to another commenter's characterization of the Grsecurity Agreement and stated in part: "The
19   problem isn't with the text there.  It's with what else they have told their customers.  It doesn't
20   even have to be in writing."  *See* Oct. 31 Drummond Hansen Decl. Ex. A (ECF No. 32-1) at 11;
21   *see also* Oct. 31 Perens Decl. ¶ 10 (ECF No. 32-3).  As Mr. Perens explained in his October 31
22   Declaration, he was responding to the other commenter's characterization of the Grsecurity
23   Agreement about 10 minutes later, he had not read the Agreement at that time, and he did not
24   realize that the other commenter had included a link to the agreement.  *See* Oct. 31 Perens Decl.
25   ¶ 10.  Mr. Perens's point, which can be plainly understood, was that OSS's restrictions on
26   customers' redistribution of software would violate the GPL regardless of whether they were in
27   writing.  Mr. Perens was *not* providing a seal of approval that the Grsecurity Agreement did not
28   violate the GPL.  *See id.* ¶¶ 10–11.  As Mr. Perens later discovered, the OSS non-redistribution

1

DEFT'S SURREPLY IN OPP. TO MPSJ
3:17-CV-04002-LB

1   term in fact *was* in the Grsecurity Agreement itself, and he updated his post on the morning of
2   July 10 to state that opinion and provide a link to the Agreement.  *Id.* ¶ 12.
3          In its Reply, OSS again misconstrues Mr. Perens's statements, and incorrectly argues that
4   "Perens does not dispute that he responded to the commenter: 'The problem isn't with the text [of
5   the Grsecurity Agreement].'"  Reply at 7 (ECF No. 37).  OSS adds the bracketed text.  But Mr.
6   Perens *does* dispute that he was referring to the text of the Grsecurity Agreement as it is actually
7   written.  In fact, as Mr. Perens stated in his October 31 Declaration, he was responding to the
8   commenter's characterization of the agreement (time-stamped July 9, 2017 at 4:58 p.m.):

> [T]here is nothing to prevent redistribution of a patch under the terms and conditions of the GPLv2. It states that if it a patch is distributed *outside of the terms of the GPLv2*, then access to *further patches in the future* (not the patch provided) will be denied on a works for hire basis.

12  *See* Oct. 31 Perens Decl. ¶¶ 10–11; Nov. 22 Perens Decl. ¶¶ 3–4; *see also* Opp'n at 3;.  When Mr.
13  Perens stated "the problem isn't with the text there," he was referring to the text as relayed by the
14  commenter, *see* Oct. 31 Perens Decl. ¶ 10; Nov. __ Perens Decl. ¶ 4, not to "the text of the
15  Grsecurity Agreement," as OSS contends, Reply at 3–4.  As Mr. Perens stated in his October 31
16  declaration, he had not clicked on the embedded hyperlink in the July 9, 4:58 p.m. comment at the
17  time he posted his 5:09 p.m. comment, nor had he realized that the hyperlink existed.  Oct. 31
18  Perens Decl. ¶ 10; Nov. 22 Perens Decl. ¶ 3.
19          OSS also incorrectly asserts that Mr. Perens "does not dispute" that his response " '[t]he
20  problem isn't with the text there,' occurred after reading the Grsecurity agreement."  Reply at 3.
21  Mr. Perens does dispute this, as he stated in his October 31 Declaration that he had not read the
22  Agreement and did not realize the link existed at that time.  *See* Oct. 31 Perens Decl. ¶¶ 10, 12;
23  Opp'n at 3–4; Nov. 22 Perens Decl. ¶¶ 9–10.  To suggest that Mr. Perens *did* review the
24  Agreement first and *was* speaking about the Agreement's text, OSS makes much of Mr. Perens's
25  statement regarding when he "first" read the comment, arguing "the word 'first' signifies that
26  Perens probably read the comment a second time," that "Perens is silent about when was the
27  second time he read the post," and that his declaration "only suggests that Perens read the
28  commenter's post a second time during which he clicked on the hyperlink embedding the

Grsecurity Agreement under the word 'here.'" Reply at 3 (footnote omitted). OSS further argues that Mr. Perens "does not dispute or attempt to clarify what he meant by 'text' or 'there,'" then conjectures: "Reasonably only one conclusion can be drawn: '[T]here' is referring to the Grsecurity Agreement embedded in the web-link provided by 'here,' and 'text' is referring to the text of the Grsecurity agreement." Reply at 3 (alteration in original). Mr. Perens does dispute that "text" and "there" referred to the linked Agreement. This should have been clear from Mr. Perens's October 31 Declaration, which stated that he was responding to the other commenter's characterization of the Agreement (not to the Agreement itself), that he did not realize there was a link to the Agreement in the comment, and that he only reviewed the Agreement later, then updated his blog post to reflect his analysis of the Agreement and to link to the Agreement. *See* Oct. 31 Perens Decl. ¶ 10; *see also* Nov. 22 Perens Decl. ¶¶ 3–4, 6–8 & Exs. 1–3. To respond to OSS's assertions, however, Mr. Perens has now searched through his files and submits a Supplemental Declaration attaching two emails that demonstrate Mr. Perens had not received the Agreement before his post on July 9. In fact, Mr. Perens received the Agreement on the morning of July 10, and he responded that he "did not have the agreement before" and expressed surprise that OSS would put such restrictions in writing in its Agreement.[1] It cannot be reasonably disputed that Mr. Perens has consistently maintained that OSS's practices of restricting redistribution violated the GPL, nor can it be reasonably disputed that when Mr. Perens reviewed the Agreement it was his opinion that it violated the GPL.

OSS's misguided insistence that Mr. Perens has admitted to the falsity of his blog post, moreover, comprises over two thirds of its Reply. OSS's reply brief does *not* address the majority of the points raised in Mr. Perens's Opposition, including that OSS's motion relies on numerous conclusory and disputed assertions (*see* Opp'n to MPSJ at 5–6); that Mr. Perens's interpretations of the law are non-actionable opinions, not factual assertions (*see id.* at 6–7); and

---

[1] In his October 31 Declaration, Mr. Perens stated based on memory that he first reviewed the Grsecurity agreement later in the evening of July 9. *See* Oct. 31 Perens Decl. ¶ 12. Mr. Perens has since reviewed his emails and realized that he in fact received the Agreement the next morning, on July 10. *See* Nov. 22 Perens Decl. ¶ 5. This only strengthens Mr. Perens's point that he had not reviewed the Agreement at the time of his July 9 post and was responding to the other commenter's characterization of it.

that actually determining whether the Grsecurity agreement violates the GPLv2 would require significant factual development inappropriate for summary judgment (*see id.* at 9–10). Instead, OSS's Reply raises additional disputed assertions, which Mr. Perens's Supplemental Declaration demonstrates are factually wrong.

The Court should deny OSS's Motion for Partial Summary Judgment and instead grant Mr. Perens's motion to dismiss and special motion to strike under the California anti-SLAPP law.

Dated:  November 24, 2017

MELODY DRUMMOND HANSEN
HEATHER J. MEEKER
CARA L. GAGLIANO
O'MELVENY & MYERS LLP


By:  */s/ Melody Drummond Hansen*
　　　　Melody Drummond Hansen
Attorneys for Defendant Bruce Perens