1    MELODY DRUMMOND HANSEN (S.B. #278786)
     mdrummondhansen@omm.com
2    HEATHER J. MEEKER (S.B. #172148)
     hmeeker@omm.com
3    O'MELVENY & MYERS LLP
     2765 Sand Hill Road
4    Menlo Park, California  94025-7019
     Telephone:      +1 650 473 2600
5    Facsimile:      +1 650 473 2601

6    CARA L. GAGLIANO (S.B. #308639)
     cgagliano@omm.com
7    Two Embarcadero Center
     28th Floor
8    San Francisco, California 94111-3823
     Telephone:      +1 415 984 8700
9    Facsimile:      +1 415 984 8701

10   Attorneys for Defendant
     Bruce Perens

11

12               UNITED STATES DISTRICT COURT

13              NORTHERN DISTRICT OF CALIFORNIA

14                      SAN FRANCISCO

15

16   OPEN SOURCE SECURITY, INC., and      Case No. 3:17-cv-04002-LB
     BRADLEY SPENGLER,
                                          **DEFENDANT BRUCE PERENS'S**
17             Plaintiffs,                **REPLY MEMORANDUM OF POINTS**
                                          **AND AUTHORITIES IN SUPPORT OF**
18        v.                              **SPECIAL MOTION TO STRIKE THE**
                                          **FIRST AMENDED COMPLAINT**
19   BRUCE PERENS, and Does 1-50,         **PURSUANT TO THE CALIFORNIA**
                                          **ANTI-SLAPP STATUTE, CODE OF**
20             Defendants.                **CIV. PROC. SEC. 425.16, AND**
                                          **MOTION TO DISMISS THE FIRST**
21                                        **AMENDED COMPLAINT WITH**
                                          **PREJUDICE PURSUANT TO FED. R.**
22                                        **CIV. P. 12(b)(6)**

23

24                                        Hearing Date:  December 14, 2017
                                          Time:  9:30 a.m.
25                                        Location:  Courtroom C, 15th Floor
                                          Judge:  Hon. Laurel Beeler
26

27

28
                                          DEFENDANT'S REPLY ISO ANTI-SLAPP
                                          MOTION & MOTION TO DISMISS FAC
                                          3:17-CV-04002-LB

# TABLE OF CONTENTS

Page

I.     THE COURT SHOULD STRIKE THE COMPLAINT UNDER ANTI-SLAPP ............. 2

       A.     Plaintiffs' Claims Target Conduct Protected by the Anti-SLAPP Statute ............. 2

              1.     Plaintiffs Improperly Narrow the Definition of "Public Interest" ............. 2

              2.     Plaintiffs Ignore the Context of Mr. Perens's Statements ......................... 3

       B.     Plaintiffs Cannot Show a Reasonable Probability of Success ................................ 5

II.    THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS UNDER RULE
       12(B)(6) ................................................................................................................. 5

       A.     Plaintiff OSS Has Not Stated a Claim for Defamation *Per Se* or *Per Quod* .......... 5

              1.     Mr. Perens's Opinions Do Not State or Imply Provably False
                     Statements of Fact ...................................................................................... 6

                     a.     Mr. Perens's statements cannot be retroactively rendered
                            false ................................................................................................. 6

                     b.     Plaintiffs ignore distinctions between legal interpretations
                            and underlying facts ........................................................................ 7

                     c.     Mr. Perens's expertise does not transform his opinions
                            about unsettled legal issues into provably false statements of
                            fact .................................................................................................. 9

                     d.     Plaintiffs' "admission" theory is unreasonable and irrelevant ...... 10

              2.     OSS Has Not Plausibly Pled That Mr. Perens Acted Negligently or
                     with Actual Malice ..................................................................................... 12

       B.     Plaintiff Spengler Does Not State a Claim for False Light Invasion of
              Privacy ............................................................................................................... 13

       C.     Plaintiffs Do Not State a Claim for Intentional Interference with
              Prospective Economic Advantage ..................................................................... 14

III.   THE COURT SHOULD NOT DELAY RULING ON MR. PERENS'S MOTIONS
       TO ALLOW PLAINTIFFS DISCOVERY ................................................................ 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agnir v. Gryphon Sols., LLC*,
  No. 12-CV-04470-LHK, 2013 WL 4082974 (N.D. Cal. Aug. 9, 2013) .................................. 15

*Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*,
  No. CV 10-5696 CRB, 2013 WL 3460707 (N.D. Cal. July 9, 2013) ........................................ 8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................................. 13

*Carney v. Santa Cruz Women Against Rape*,
  221 Cal. App. 3d 1009 (Cal. Ct. App. 1990) ........................................................................... 5

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
  173 F.3d 725 (9th Cir. 1999) ........................................................................................... 5, 6, 7, 9

*Contemp. Servs. Corp. v. Staff Pro Inc.*,
  152 Cal. App. 4th 1043 (2007) ............................................................................................... 14

*Franklin v. Dynamic Details, Inc.*,
  116 Cal. App. 4th 375 (2004) .................................................................................................. 8

*Freecycle Network, Inc. v. Oey*,
  505 F.3d 898 (2007) ................................................................................................................. 11

*Gilbert v. Sykes*,
  147 Cal. App. 4th 13 (2007) ..................................................................................................... 3

*Harkonen v. Fleming*,
  880 F. Supp. 2d 1071 (N.D. Cal. 2012) ............................................................................. 5, 13

*Jensen v. Hewlett-Packard Co.*,
  14 Cal. App. 4th 958 (1993) .................................................................................................... 12

*Metabolife Int'l, Inc. v. Wornick*,
  264 F.3d 832 (9th Cir. 2001) ................................................................................................... 15

*Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*,
  948 F. Supp. 2d 538 (D. Md. 2013) .......................................................................................... 9

*New Show Studios LLC v. Needle*,
  No. 2:14-cv-01250-CAS-MRWx, 2014 WL 12495640 (C.D. Cal. Dec. 29,
  2014) .................................................................................................................................... 4, 14

*Nygard, Inc. v. Uusi-Kerttula*,
  159 Cal. App. 4th 1027 (2008) .................................................................................................. 2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Paradise Hills Assocs. v. Procel*,
   235 Cal. App. 3d 1528 (1991)......................................................................2, 3

*Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*,
   946 F. Supp. 2d 957 (N.D. Cal. 2013), *aff'd*, 609 F. App'x 497 (9th Cir. 2015) .................3, 14

*Price v. Stossel*,
   590 F. Supp. 2d 1262 (C.D. Cal. 2008) ......................................................15

*Resolute Forest Prod., Inc. v. Greenpeace Int'l*,
   No. 17-CV-02824-JST, 2017 WL 4618676 (N.D. Cal. Oct. 16, 2017) ......................15

*Rivero v. American Federation of State, County and Municipal Employees*,
   105 Cal. App. 4th 913 (2003) ..................................................................3, 4

*Rodriguez v. Panayiotou*,
   314 F.3d 979 (9th Cir. 2002)....................................................................6

*Rogers v. Home Shopping Network, Inc.*,
   57 F.Supp.2d 973 (C.D. Cal 1999).............................................................15

*Rutman Wine Co. v. E. & J. Gallo Winery*,
   829 F.2d 729 (9th Cir. 1987)....................................................................14

*Seelig v. Infinity Broad. Corp.*,
   97 Cal. App. 4th 798 (2002) ...................................................................2

*Semiconductor Equipment and Materials Intern'l, Inc. v. The Peer Group*,
   No. C 15-cv-00866-YGR (N.D. Cal. September 18, 2015).....................................15

*Tamkin v. CBS Broad., Inc.*,
   193 Cal. App. 4th 133 (2011) .................................................................2

*Theme Promotions, Inc. v. News America FSI*,
   35 F. App'x 463 (9th Cir. 2002) ..............................................................8

*Von Brimer v. Whirlpool Corp.*,
   536 F.2d 838 (9th Cir. 1976)...................................................................14

*Weinberg v. Feisel*,
   110 Cal. App. 4th 1122 (2003) .................................................................4

*Wilbanks v. Wolk*,
   121 Cal. App. 4th 883 (2004) ...............................................................3, 4, 9

*Z.F. v. Ripon Unified Sch. Dist.*,
   482 F. App'x 239 (9th Cir. 2012) .............................................................15

1    Bruce Perens, a recognized expert on Open Source issues who regularly comments on

2  Open Source matters on his public blog and elsewhere, expressed opinions on his blog and the

3  Slashdot website that Plaintiff OSS's policy of penalizing its customers for redistributing

4  Grsecurity software violates Open Source requirements. Mr. Perens warned that such restrictions

5  may subject OSS's customers to liability for copyright infringement and breach of contract. Mr.

6  Perens clearly expressed his opinions *as opinions* in public forums where the topic already was a

7  matter of public concern, and interested members of the public in turn posted hundreds of

8  comments debating the issue. While Plaintiffs OSS and Bradley Spengler are free to disagree with

9  Mr. Perens's opinions, they may not sue him to silence his speech or to "win" a public debate.

10  Instead, as Mr. Perens showed in his motions, his written statements in public forums about a

11  matter of public interest are protected from intimidation-by-lawsuit under California's anti-

12  SLAPP law. In response, Plaintiffs do not dispute that Mr. Perens made written statements in a

13  public forum. Plaintiffs seek to limit the "public interest" to narrow circumstances, contrary to

14  law requiring that the "public interest" must be broadly construed to protect speech and that

15  consumer warnings are specifically protected. Plaintiffs also ignore the context of Mr. Perens's

16  comments, which demonstrates broader public interest in the topic.

17    Because Mr. Perens's opinions are protected under anti-SLAPP, the burden shifts to

18  Plaintiffs to show a likelihood of prevailing on the merits. As Mr. Perens showed in his motions,

19  Plaintiffs cannot do so because the Complaint targets opinions on unsettled legal questions—not

20  provably false statements of fact. In response, Plaintiffs ask the Court to issue an advisory opinion

21  holding that the Grsecurity Agreement does not violate the GPL. But no decision in this case

22  could retroactively render Mr. Perens's June and July opinions false. Plaintiffs further

23  misconstrue the law, conflating opinions regarding potential legal outcomes with underlying facts

24  and incorrectly suggesting that Mr. Perens's expertise transforms his opinions into factual

25  statements. Plaintiffs then twist Mr. Perens's words to conjure an "admission" that OSS's

26  restrictions do not violate the GPL. That understanding of Mr. Perens's comment is contrary to

27  the facts, and in any case such an "admission" could not change his opinions into verifiable facts.

28    The Complaint therefore should be stricken and dismissed.

DEFENDANT'S REPLY ISO ANTI-SLAPP
MOTION & MOTION TO DISMISS FAC
3:17-CV-04002-LB

1   I.      **THE COURT SHOULD STRIKE THE COMPLAINT UNDER ANTI-SLAPP**

2           A.      **Plaintiffs' Claims Target Conduct Protected by the Anti-SLAPP Statute**

3           Mr. Perens demonstrated that Plaintiffs' claims target conduct protected under the anti-

4   SLAPP statute, specifically, written statements made in a public forum—publicly accessible

5   websites—in connection with an issue of public interest. *See, e.g.,* Mot. at 9–11. Whether the

6   Gresecurity Agreement's non-redistribution clause violates the GPL was demonstrably of interest

7   to the public who posted hundreds of comments debating the topic, and such restrictions implicate

8   the rights and interests of many individuals. Furthermore, Mr. Perens's opinions included

9   consumer warnings, which are specifically protected under the anti-SLAPP law. *See id.*

10          In response, Plaintiffs do not dispute that Mr. Perens's challenged opinions are written

11  statements made in a public forum. Plaintiffs argue that Mr. Perens's opinions did not concern an

12  issue of public interest because of the allegedly small audience to which the opinions were

13  purportedly addressed and because of the subject -matter involved. But the law requires the

14  "public interest" to be "construed broadly" to encourage participation by all segments of society

15  in vigorous public debate. *See* Mot. at 12; *Seelig v. Infinity Broad. Corp.*, 97 Cal. App. 4th 798,

16  808 (2002). Plaintiffs misread the caselaw to limit the "public interest" to only issues which

17  "impact[] a broad segment of society" or which "affect[] a community in a manner similar to that

18  of a governmental entity," and overly constrain those categories contrary to the law, including

19  cases cited by Plaintiffs. Plaintiffs also ignore the context of Mr. Perens's statements to

20  artificially limit the nature of Mr. Perens's concerns and the size of the interested public.

21                  1.      **Plaintiffs Improperly Narrow the Definition of "Public Interest"**

22          The anti-SLAPP statute must be "construed broadly," including the definition of "public

23  interest." *See* Mot. at 12; *Seelig*, 97 Cal. App. 4th at 808. The public interest includes "*any issue

24  in which the public is interested.*" *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1042

25  (2008). Courts have widely interpreted the public interest to include diverse topics, such as the

26  creation and broadcast of a TV episode (*Tamkin v. CBS Broad., Inc.*, 193 Cal. App. 4th 133

27  (2011)), quality of workmanship on homes in a subdivision (*Paradise Hills Assocs. v. Procel*, 235

28

1    Cal. App. 3d 1528 (1991)), and the results of a single individual's plastic surgery (*Gilbert v.*

2    *Sykes*, 147 Cal. App. 4th 13 (2007)).

3          Ignoring the statutory directive and the caselaw, Plaintiffs argue that the public interest is

4    limited to only where an issue "impacts a broad segment of society" and/or "affects a community

5    in a manner similar to that of a governmental entity," citing *Rivero v. American Federation of*

6    *State, County & Municipal Employees*, 105 Cal. App. 4th 913, 920 (2003). Opp. at 12. But *Rivero*

7    did not define these categories as exhaustive and instead recited other categories, including

8    statements that concerned "a person or entity in the public eye," "conduct that could directly

9    affect a large number of people beyond the direct participants," or "a topic of widespread, public

10   interest." 105 Cal. App. 4th at 920–24. *Wilbanks v. Wolk*, another case Plaintiffs cite, further held

11   that while *Rivero* recited some of the "most commonly articulated definitions," those categories

12   were not exclusive, explicitly holding that a defendant's comments that fell outside *Rivero's*

13   articulated definitions still were made in connection with the "public interest." *See* 121 Cal. App.

14   4th 883, 898 (2004).

15         *Wilbanks* specifically concluded that consumer warnings—like those in Mr. Perens's

16   comments—involve issues of public interest. *See id.* at 898–901; *see also* Mot. at 11. Plaintiffs

17   argue that consumer warnings in a "niche" market, where the number of affected consumers is

18   small, are not protected. *See* Opp. at 14. Courts hold otherwise. In *Paradise Hills*, for example,

19   the court held that consumer warnings directed at potential buyers of homes in a subdivision of

20   109 homes related to a matter of public interest. 235 Cal. App. 3d at 1544–45. In *Piping Rock*

21   *Partners, Inc. v. David Lerner Assocs., Inc*., the court rejected plaintiffs' similar arguments that

22   posts did not concern a matter in the public interest because "too few consumers were interested

23   in the matter," holding that consumer warnings fall within the public interest. 946 F. Supp. 2d 957

24   (N.D. Cal. 2013), 969 n.6., *aff'd*, 609 F. App'x 497 (9th Cir. 2015).

25                    **2.      Plaintiffs Ignore the Context of Mr. Perens's Statements**

26         Plaintiffs also discount the significant public interest in Mr. Perens's comments by

27   ignoring the context in which they were made. Mr. Perens made comments on his own blog,

28   which concerns matters regarding Open Source generally, and joined a debate that already was

DEFENDANT'S REPLY ISO ANTI-SLAPP
MOTION & MOTION TO DISMISS FAC
3:17-CV-04002-LB

1   ongoing on the Slashdot website, where interested members of the public posted over 400

2   comments debating thorny substantive issues associated with the GPL—demonstrating the

3   significant public interest associated with the topic. *See* Mot. at 9–10. Plaintiffs likewise ignore

4   the wide-reaching implications that redistribution restrictions pose for the collaborative

5   atmosphere the Open Source project seeks to foster in serving a broad public. *See* Mot. at 10–11.

6   Although consumer warnings addressed solely to Plaintiffs' 45 customers would suffice under

7   California law to establish public interest, *see supra*, Plaintiffs' complaint itself acknowledges

8   that more than these 45 customers are interested in Mr. Perens's commentary. *See* FAC ¶ 69

9   (alleging posts were read by hundreds or thousands of potential customers and professional

10  colleagues). Also, contrary to Plaintiffs' arguments, this case is not like *Rivero* (Opp. at 13). In

11  *Rivero*, the court found that union newsletters accusing a janitorial supervisor of bribery, theft,

12  and nepotism did not concern an issue of public interest because they related solely to a private

13  dispute between the supervisor and the eight employees who worked with him. *See* 105 Cal. App.

14  4th at 924. *Weinberg v. Feisel*, 110 Cal. App. 4th 1122 (2003), similarly involved unilateral

15  accusations of criminal misconduct by one disgruntled coin collector against another, to which

16  there was no evidence of actual public response. Here, by contrast, Mr. Perens's opinions involve

17  consumer warnings regarding an issue that could affect the rights of current and potential

18  consumers, as well as the many contributors to the Linux kernel and other Open Source projects,

19  and the public was demonstrably interested. *Weinberg* and *Rivero* also have been distinguished by

20  other cases, particularly where consumer warnings are at issue. *See, e.g., New Show Studios LLC*

21  *v. Needle*, No. 2:14-cv-01250-CAS-MRWx, 2014 WL 12495640, at *10 (C.D. Cal. Dec. 29,

22  2014) and *Wilbanks*, 121 Cal. App. 4th at 900 n.6.

23       Plaintiffs reject the clear evidence of public interest, arguing that Mr. Perens cannot create

24  an issue of public interest merely by communicating his concerns to a large number of people.

25  Opp. at 12. But this is not what Mr. Perens argues, and Mr. Perens did not create the interest in

26  OSS's practices. Instead, Mr. Perens responded to an ongoing debate in the Open Source

27  community about the propriety of OSS's non-redistribution policy and similar restrictions. *See*

28  FAC Exs. 5–7; Mot. at 10–11. Indeed, Mr. Perens published his June 28, 2017 blog post in

DEFENDANT'S REPLY ISO ANTI-SLAPP
MOTION & MOTION TO DISMISS FAC
3:17-CV-04002-LB

1   response to one such conversation on a public email list. *See* FAC Exs. 9, 11. Plaintiffs also

2   suggests that Mr. Perens did not explicitly tie his blog post to a broader public debate (Opp. at

3   14), but this ignores that readers' responses on Slashdot demonstrate that they treated it as such,

4   engaging with Mr. Perens and each other regarding this wider issue. *See* Mot. at 10. As Plaintiffs

5   note, Mr. Perens is a public expert on Open Source matters (*e.g.,* Opp. at 12–13, 15), yet they

6   ignore that his opinions about the Grsecurity Agreement were made in contexts where he

7   regularly discusses broader Open Source topics of interest to the public.

8       When "public interest" is broadly construed and the context is fully considered, as they

9   must be, Mr. Perens's statements were made in connection with a matter "public interest."

10      **B.      Plaintiffs Cannot Show a Reasonable Probability of Success**

11      Because the anti-SLAPP statute applies to Plaintiffs' claims, the burden shifts to Plaintiffs

12  to demonstrate a probability of prevailing, which requires a showing that the complaint is legally

13  sufficient and is supported by a prima facie showing of facts sufficient to sustain a favorable

14  judgment. *Harkonen v. Fleming*, 880 F. Supp. 2d 1071, 1078 (N.D. Cal. 2012). Plaintiffs have not

15  done so and cannot. To the contrary, all of Plaintiffs' claims fail as a matter of law under the anti-

16  SLAPP statute and Rule 12. *See* Mot. at 13–24; section II, *infra*.

17  **II.     THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS UNDER RULE 12(B)(6)**

18      **A.      Plaintiff OSS Has Not Stated a Claim for Defamation *Per Se* or *Per Quod***

19      As Mr. Perens showed, a publication cannot give rise to a claim for defamation unless it

20  states or implies a provably false assertion of fact, and such falsity must have been "knowable to

21  the parties" at the time of publication. Mot. at 14–15, 17; *see also Coastal Abstract Serv., Inc. v.*

22  *First Am. Title Ins. Co.*, 173 F.3d 725, 730, 732 (9th Cir. 1999). Defamation plaintiffs also must

23  plausibly allege fault. Mot. at 18; *see also Carney v. Santa Cruz Women Against Rape*, 221 Cal.

24  App. 3d 1009, 1015 (1990). Plaintiffs cannot meet these standards and therefore misconstrue the

25  law, then manufacture an "admission" that never occurred and in any case could not transform

26  Mr. Perens's opinions into actionable statements of facts.

27

28

DEFENDANT'S REPLY ISO ANTI-SLAPP
MOTION & MOTION TO DISMISS FAC
3:17-CV-04002-LB

1

### 1.   Mr. Perens's Opinions Do Not State or Imply Provably False Statements of Fact

2

3    Mr. Perens showed that his opinions about how the law might apply to OSS's non-

4   redistribution clause are not provably false statements of fact, and that he also did not imply any

5   false facts. *See* Mot. at 15–18. Plaintiffs in fact allege that the same opinions that the Grsecurity

6   Agreement violates the GPL constitute both the accused false statement of fact and the implied

7   false facts. Plaintiffs do not rebut those showings. Instead, Plaintiffs misconstrue the law to

8   suggest that the Court can now retroactively render Mr. Perens's statements false, that opinions

9   regarding the legal implications of Plaintiffs' restrictions are themselves statements of fact, and

10   that Mr. Perens's expertise can transform his opinions into facts. Plaintiffs also imagine an

11   "admission" that never occurred and in any case could not make Plaintiffs' claims meritorious.

### a.   Mr. Perens's statements cannot be retroactively rendered false

12    Plaintiffs argue that Mr. Perens's opinions in June and July are "facts" that can be proven

13   false by asking the Court to *now* decide as a matter of first impression that the Grsecurity

14   Agreement does not violate GPL. For example, Plaintiffs argue they could "convince a fact

15   finder" that OSS "has been in compliance of the laws of contract and copyright"—while

16   simultaneously asking the Court to take judicial notice of that same undecided issue. Opp. at 22.

17   But even if the Court or a jury were to decide now that the Agreement does not violate the GPL,

18   that could not *retroactively* make Mr. Perens's opinions false or turn them into actionable

19   statements of fact. *See* Mot. at 17. Plaintiffs must show falsity "knowable to the parties" at the

20   time of publication. *Coastal Abstract*, 173 F.3d at 732. And where an accused statement involves

21   an interpretation of law, courts have required at a minimum that an authoritative ruling exists that

22   unambiguously resolves the legal issue *before* the accused statements were made to suggest such

23   statements were false. *See id*.[1] As Mr. Perens showed, Plaintiffs do not identify in the FAC any

24   court decision that held that OSS's non-redistribution clause complies with the GPLv2. Mot. at

25

26   _____
   [1] Plaintiffs are wrong that the rule applies only to Lanham Act claims. *See* Opp. at 18. In *Coastal Abstract*, the court applied the rule to determine that the statement at issue was an opinion for purposes of both the Lanham Act and the defamation analyses. *See* 173 F.3d at 731–32.

27   Regardless, subsequent binding Ninth Circuit precedent reaffirmed the rule's application to defamation actions. *See Rodriguez v. Panayiotou*, 314 F.3d 979, 986 (9th Cir. 2002).

28

DEFENDANT'S REPLY ISO ANTI-SLAPP
MOTION & MOTION TO DISMISS FAC
3:17-CV-04002-LB

16. Nor do Plaintiffs identify such precedent in their opposition. Instead, Plaintiffs suggest that Mr. Perens's statements may be proven false if there is no case holding that Plaintiffs *have* violated GPL, arguing that they are "not aware of any case law which reasonably suggests that Plaintiffs may be in violation of the GPL," that no third party has initiated legal action that suggests that OSS has violated the GPL, and that OSS is not aware of any threatened legal action by Linux developers against OSS's customers. *See, e.g.,* Opp. at 22. But these assertions ignore the rule that a *contrary* holding must exist at the time of the accused opinions. And Plaintiffs demonstrate that this is an unsettled legal question by asking the Court to decide *in this case* that the Grsecurity Agreement does not violate the GPL—an opinion that would be merely advisory because (as Plaintiffs' arguments acknowledge) they are not aware of any legal action against OSS or its customers regarding violation of the GPL.

### b. Plaintiffs ignore distinctions between legal interpretations and underlying facts

Plaintiffs also misapply *Coastal Abstract* by ignoring that legal interpretations are different from underlying facts. For instance, Plaintiffs mischaracterize Mr. Perens's motions as arguing *Coastal Abstract* held "defamation requires a conclusive law to prove or disprove every statement of fact," based on Plaintiffs' assumption that Mr. Perens's legal interpretations are indeed statements of fact. *See* Opp. at 18. *Coastal Abstract* and its progeny instead establish that legal interpretations are *opinions*, not facts, in the absence of a "clear and unambiguous ruling from a court or agency of competent jurisdiction." 173 F.3d at 731; Mot. at 15–16.

As Plaintiffs acknowledge, "an opinion that does not convey a false factual implication is not defamatory under California law." *See* Opp. at 17 (quoting *Coastal Abstract*, 173 F.3d at 732). But Plaintiffs contend Mr. Perens's opinions are actionable only because they allegedly falsely state or imply that the Grsecurity Agreement violates the GPL. *See, e.g.,* Opp. at 4 ("[T]he facts implied by Perens, that Plaintiffs are in violation of the GPL, as a whole are provably false . . . ."). Plaintiffs then argue that unlike in *Coastal Abstract*, "where the original premise was based on a truth –Coastal did not have a license in California," in the present case "there is no undisputed truth that can be used as a valid defense." Opp. at 17–18. This argument confuses the

DEFENDANT'S REPLY ISO ANTI-SLAPP
MOTION & MOTION TO DISMISS FAC
3:17-CV-04002-LB

legal interpretations and underlying facts at issue in *Coastal Abstract* and in this case. The

following table provides an illustration:

|  | **Undisputed Factual Content** | **Accused Opinion About Application of Law to Facts** |
|---|---|---|
| **Statements in *Coastal Abstract*** | Coastal Abstract's lack of a California escrow license | Coastal Abstract's conduct violated California law |
| **Mr. Perens's Statements** | The Grsecurity product is subject to the GPLv2; wording of the provisions of the GPLv2; OSS's policy on redistribution of the Grsecurity software | OSS's policy on redistribution violates the GPLv2 and may expose OSS's customers to liability for copyright infringement and breach of contract |

Mr. Perens's opinion that OSS's redistribution policy violates the GPL (and thereby exposes

customers to liability)—like the *Coastal Abstract* defendant's opinion that Coastal Abstract was

operating unlawfully—*is* based on undisputed factual content: here, the Grsecurity product's use

of the Linux kernel (subject to the GPLv2); wording of the provisions of the GPLv2; and the

terms of OSS's stated policy on redistribution of the Grsecurity software. *See* Mot. at 18.

Plaintiffs simply disagree with Mr. Perens's interpretation that OSS's restrictions violate GPL.

Furthermore, Plaintiffs completely ignore other cases discussed in Mr. Perens's motions

that held that legal interpretations are opinions rather than facts. *See* Mot. at 15. For example, in

*Franklin v. Dynamic Details, Inc.*, the court concluded that accusations that plaintiffs had

infringed third-party copyrights and breached a nondisclosure agreement "expressed [the

defendant's] opinions because they purported to apply copyright and contract law to facts." 116

Cal. App. 4th 375, 378–81 (2004). Similarly, in *Amaretto Ranch Breedables, LLC v. Ozimals,

Inc.*, statements that Amaretto was infringing copyrights allegedly owned by the Ozimals were

opinions applying defendant's understanding of copyright law to facts about the parties' products.

No. CV 10-5696 CRB, 2013 WL 3460707, at *1–2, *5 (N.D. Cal. July 9, 2013). And in *Theme

Promotions, Inc. v. News America FSI*, the Ninth Circuit held that a defendant had not stated

"facts" in offering opinions about certain contractual provisions, including an assertion that the

provisions prohibited contracting parties from entering certain arrangements. 35 F. App'x 463,

469 (9th Cir. 2002). Here too, Mr. Perens's statements are opinions—not provably false facts.

DEFENDANT'S REPLY ISO ANTI-SLAPP
MOTION & MOTION TO DISMISS FAC
3:17-CV-04002-LB

1

   **c.     Mr. Perens's expertise does not transform his opinions about
            unsettled legal issues into provably false statements of fact**

2

3       Plaintiffs further argue that *Coastal Abstract* does not apply to people like Mr. Perens,

4    who have "specialized knowledge in an industry."[2]  While *Coastal Abstract* referred to

5    "laypersons," its reasoning turned on the conclusion that the correct legal application of a

6    licensing statute "was not knowable" absent an authoritative ruling—not on a distinction between

7    laypersons and experts.[3]  *See, e.g.,* 173 F.3d at 731–32. The correct legal interpretation of the

8    GPL as applied to the Grsecurity Agreement was likewise unknowable at the time of Mr. Perens's

9    statements. While Mr. Perens's expertise may help him reach an informed *opinion* about whether

10   the Grsecurity Agreement would be found to violate the GPL, it still is only an opinion, especially

     absent a clear court ruling issued before he offered it.

11      Plaintiffs aim to justify their "expert knowledge" theory by relying on *Wilbanks v. Wolk*,

12   but the comparison is inapt. *See* Opp. at 19–21. *Wilbanks* did not involve issues of legal

13   interpretation or other unknowable "facts." Instead, it hinged on circumstances not present here.

14   Wolk stated that Wilbanks & Associates had "provided incompetent advice" and was "unethical,"

15   without identifying her basis for either conclusion, and Wolk misleadingly "omitted significant

16   facts" that would have provided important context. *See Wilbanks*, 121 Cal. App. 4th at 901, 903.

17   The court reasoned that Wolk's expertise might increase the likelihood that readers would infer

18   the existence of a legitimate but undisclosed factual basis for Wolk's assertions. *See id.* at 902–

19   04. By contrast, here, Mr. Perens disclosed the factual bases for his opinions. *See* Mot. at 17–18.

20   Plaintiffs' conclusory assertion that Mr. Perens "clearly expected readers to rely on his opinions

21   as reflecting the truth" likewise does not hold up to scrutiny. *See* Opp. at 7, 21. On the contrary,

22   Mr. Perens stated that his opinions were opinions, and he cautioned readers that he is not an

23

24   _____

     [2] While Mr. Perens does not dispute that he is an expert on issues related to Open Source
25   licensing, he does not agree that OSS accurately represents his qualifications. For example, Mr.
     Perens does not take credit for having "written at least 23 successful books in open-source
26   matters." Opp. at 19. Mr. Perens served as an editor for a multiple-author series.
     [3] Indeed, the undersigned was unable to locate *any* case in which *Coastal Abstract* was deemed
27   inapplicable on this basis. In contrast, at least one court has applied *Coastal Abstract* to materials
     written by attorneys. *See Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 948 F.
28   Supp. 2d 538, 546, 553–54 (D. Md. 2013).

                                                          DEFENDANT'S REPLY ISO ANTI-SLAPP
                                                          MOTION & MOTION TO DISMISS FAC
                                                          3:17-CV-04002-LB

1    attorney and encouraged them to seek attorney input. FAC Exs. 1, 2.

2          Plaintiffs also confusingly contend that "laypersons understood [Mr. Perens's] assertions

3    as being based on a fact, since they were made by someone with specialized knowledge in the

4    industry." Opp. at 7. To support this statement, Plaintiffs merely point to the full 137-page

5    Slashdot thread. *See id.*; Drummond Hansen Decl. Ex. A. That thread, however, shows that

6    readers saw Mr. Perens's comments for what they are: one opinion out of many on a matter of

7    ongoing debate. *See* Mot. at 10. Indeed, in response to one commenter expressing agreement with

8    Mr. Perens's opinion, another commenter intuited *Coastal Abstract*: "That's a good theory, but

9    unless you test it in court it remains just that, a theory." Drummond Hansen Decl. Ex. A at 19–20.

10   Mr. Perens's opinions, moreover, were based on disclosed facts regarding OSS's restrictions and

11   the requirements of the GPL. *See supra.*

12                    **d.    Plaintiffs' "admission" theory is unreasonable and irrelevant**

13         Unable to point to any judicial determination that support Plaintiffs' position, Plaintiffs

14   continue to insist that Mr. Perens "admitted" the falsity of his own opinions—a contention that is

15   neither reasonable nor relevant. *See* Opp. at 17, 22–23. First, Plaintiffs' interpretation is patently

16   unreasonable when Mr. Perens's comment is viewed in context. Mr. Perens has consistently

17   maintained that Plaintiffs' non-redistribution policy violates the GPL. Mr. Perens based that

18   opinion on others' reports about OSS's restrictions, then he updated his opinion after reading the

19   text of the Grsecurity Agreement, which confirmed that the information Mr. Perens received from

20   third-party sources about the non-redistribution policy was accurate. *Compare* FAC Ex. 1 *with*

21   Ex. 2. Indeed, Plaintiffs have acknowledged this consistency, stating in their opposition that

22   "[t]he underlying *premise* of both publications was that the GPL 'explicitly prohibits the addition

23   of terms such as [those provided by the Access Agreement].'" Opp. at 2 (emphasis and alteration

24   in original). Yet Plaintiffs persist in pressing a theory that over the course of eleven minutes at

25   most, Mr. Perens:

26         •    read the anonymous poster's July 9, 4:58 p.m. comment;

27         •    followed the embedded hyperlink to the Grsecurity Agreement;

28         •    reviewed the Agreement;

DEFENDANT'S REPLY ISO ANTI-SLAPP
MOTION & MOTION TO DISMISS FAC
3:17-CV-04002-LB

1   • decided that the text of the Agreement does *not* violate the GPLv2 (despite that

2      text being consistent with the reported restrictions that had led Mr. Perens to

3      conclude Plaintiffs' non-redistribution policy *does* violates the GPLv2); and

4   • posted his July 9, 5:09 p.m. comment stating: "The problem isn't with the text

5      there. It's with what else they have told their customers. It doesn't even have to be

6      in writing."

7   *See* Drummond Hansen Decl. Ex. A at 11. Then, inexplicably, Mr. Perens changed his mind back

8   before the next morning to opine that the Grsecurity Agreement *does* violate the GPL, and

9   updated his blog to include a link to the Agreement and to cite the non-redistribution provision.

10  Plaintiffs' theory grows even more implausible upon review of other comments posted by Mr.

11  Perens in the same discussion thread. For instance, at 7:26 p.m. on July 9, Mr. Perens posted:

12      Let's say you warn someone in advance that you will harm their business by

13      withdrawing their support and removing them from your customer list, should they
       exercise their right which is granted to them under the GPL. That's adding a term.

14  *Id.* at 16. As can readily be seen, Mr. Perens simply updated his consistent opinion after receiving

15  a copy of the Grsecurity Agreement, which contained terms consistent with the reports he had

16  received. *See id.* at 61 (July 10, 11:45 a.m. post reflecting receipt of Agreement that morning); *id.*

17  at 129 (July 9, 8:53 p.m. post relating to reliance on third-party sources and July 10, 12:30 p.m.

18  post mentioning receipt of agreement).[4]

19      Even if the Court were to credit Plaintiffs' tortured interpretation of Mr. Perens's

20  comment, that would not turn Mr. Perens's nonactionable statements of opinion into actionable

21  statements of fact, much less render them objectively false. The Ninth Circuit's opinion in

22  *Freecycle Network, Inc. v. Oey*, 505 F.3d 898 (2007), is instructive. There, the plaintiff (TFN)

23  sued Oey, a former member, for stating that "TFN lacked rights in 'freecycle' because it was a

24  generic term" and for "encourag[ing] others to use the term in its generic sense" and to write

25  letters opposing registration of "freecycle" as a trademark. *Id.* at 901. The district court granted

26  ────────────────────────────

27  [4] Plaintiffs also accuse Mr. Perens's explanations of having "crosse[d] the boundaries of logic and
    rational thinking." Opp. at 23. But Plaintiffs' conjecture cannot support their claims. When Mr.

28  Perens received and reviewed the Agreement and the meaning of his statements cannot
    reasonably be questioned in light of the evidence and the consistency of Mr. Perens's opinions.

1   TFN a preliminary injunction, focusing on Oey's previous support of TFN's registration efforts—

2   in fact, it was on Oey's advice that TFN ramped up its efforts to develop trademark rights in the

3   term "freecycle." *Id.* at 900–01, 905. Oey also drafted a "strict usage policy" for TFN meant to

4   prevent use of the term "freecycle" other than as a trademark. *Id.* at 901. The Ninth Circuit

5   vacated the injunction, citing *Coastal Abstract*[5] and reasoning that Oey's prior position on TFN's

6   trademark rights "[did] not render his subsequent statements 'false'" because "Oey is entitled to

7   change his mind." *Id.* at 904–05. The Court also explained, "Until it is definitively established

8   that TFN holds a trademark in the term 'freecycle,' it cannot be false to contend that it does not."

9   *Id.* at 905. To the extent that Plaintiffs argue that the timing of Mr. Perens's "admission" relative

10  to his updates to his blog post indicates bad faith, moreover (*see* Opp. at 7–8), that also would

11  have no legal significance. Even if a statement of opinion is "objectively unjustified or made in

12  bad faith," it still cannot give rise to a defamation claim without implying false and defamatory

13  statements of fact. *See Jensen v. Hewlett-Packard Co.*, 14 Cal. App. 4th 958, 971 (1993).

14              **2.      OSS Has Not Plausibly Pled That Mr. Perens Acted Negligently or
                          with Actual Malice**

15

16          Mr. Perens demonstrated that Plaintiffs have not plausibly pled any degree of fault, and

17  Plaintiffs' attempts only reinforce their claims' futility. Mot. at 19. Plaintiffs' opposition

18  apparently abandons one theory—that Mr. Perens should not have disagreed with another Open

19  Source expert (*see* Mot. at 19; FAC ¶¶ 23–27)—and suggests a new theory or two—*e.g.*, that Mr.

20  Perens should have contacted Plaintiffs before publishing his blog post (*see* Opp. at 8, 21). But

21  effectively, Plaintiffs repeat the same arguments that Mr. Perens dismantled in his opening brief.

22          First, Plaintiffs appear to argue that the "admission" they have manufactured is relevant to

23  both the falsity *and* fault elements of their claims. *See* Opp. at 3, 7–8, 22–23. In reality, it is

24  relevant to neither for the same reasons discussed in section II.A.1.D, *supra. See also* Mot. at 20.

25          Second, Plaintiffs improperly treat disagreement as an indication of fault. As Mr. Perens's

26  motions explained, fault and falsity are two independent requirements, and Plaintiffs' belief that

27  ───────────────

28  [5] Despite Oey's apparent specialized knowledge, the court also described him as a layperson for
    purposes of applying *Coastal Abstract. See id.* at 904.

1    Mr. Perens's opinions are wrong does not raise an inference that Mr. Perens acted negligently or

2    with malice in forming his opinions. Mot. at 20–21. Plaintiffs' opposition continues to employ the

3    same flawed logic without responding to Mr. Perens's argument. For example, Plaintiffs make

4    conclusory assertions, such as that Mr. Perens "knew or should have known, that the Access

5    Agreement does not prevent or restrict a user from exercising their right of redistributing the

6    *patches*" or "knew or reasonably should have known that the Access Agreement, in part, only

7    enforces Plaintiff's freedom to distribute free software as they wish to." *See* Opp. at 2–3. These

8    are not factual allegations, and the Court need not accept them as true. *See Ashcroft v. Iqbal*, 556

9    U.S. 662, 678–79 (2009). Neither referring to Mr. Perens as an expert nor framing Plaintiffs'

10   legal conclusions as concerning the "evidence" available to Mr. Perens changes the analysis. *See,*

11   *e.g.*, Opp. at 7 (arguing that Mr. Perens had "no valid proof or case law that supported his

12   contention"); *id.* at 8 ("Defendants do not have any 'reliable sources' or 'witnesses' that can

13   provide any evidence or testimonial facts that can support a showing of a violation of the GPLv2

14   by Plaintiffs.").

15        Finally, Plaintiffs contend that Mr. Perens did not adequately investigate the "truth" of his

16   statements before publishing them. *See, e.g.*, Opp. at 3, 7–8, 21. But as Mr. Perens explained,

17   there was no "truth" to investigate because his opinions concern unsettled application of law, and

18   Plaintiffs identify no facts that Mr. Perens has gotten wrong. Mot. at 21.

19        **B.      Plaintiff Spengler Does Not State a Claim for False Light Invasion of Privacy**

20        Mr. Perens showed that because Mr. Spengler's false light claim is predicated on the same

21   allegedly "false" statements of opinion as OSS's meritless defamation claims, his false light claim

22   fails for the same reasons as the defamation claims. Mot. at 21–22; *see also Harkonen v. Fleming*,

23   880 F. Supp. 2d 1071, 1082 (N.D. Cal. 2012). In response, Plaintiffs assert that Mr. Spengler

24   claims false light "as an implication of" Mr. Perens's blog posts resulting in harm to him

25   personally (Opp. at 24), apparently contending that Mr. Spengler was harmed because he

26   "became a subject of discussion in numerous posts on Slashdot." *Id.* at 8. While Plaintiffs argue

27   that "[t]he false light created was highly offensive" (*id.*), they do not clarify what that false light

28   was. The false light claim therefore should be dismissed and stricken.

DEFENDANT'S REPLY ISO ANTI-SLAPP
MOTION & MOTION TO DISMISS FAC
3:17-CV-04002-LB

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## C.     Plaintiffs Do Not State a Claim for Intentional Interference with Prospective Economic Advantage

As Mr. Perens showed, Plaintiffs' intentional interference claim necessarily fails because the defamation claims fail. Mot. at 22–24. First, because Plaintiffs' intentional interference claim is based on alleged injurious falsehoods, the Court should analyze it as if it were a defamation claim. Mot. at 22; *see also Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 977 (N.D. Cal. 2013), *aff'd,* 609 F. App'x 497 (9th Cir. 2015). Second, Plaintiffs' only basis to plead that Mr. Perens's conduct was independently wrongful is their failed defamation claims. Mot. at 22–23; *see also Contemp. Servs. Corp. v. Staff Pro Inc.*, 152 Cal. App. 4th 1043, 1060 (2007); *New Show Studios*, 2014 WL 12495640, at *19. Mr. Perens also showed that Mr. Spengler's claim additionally fails because he does not allege interference with any economic relationship to which he is a party. Mot. at 23–24; *see also Von Brimer v. Whirlpool Corp.*, 536 F.2d 838, 846–47 (9th Cir. 1976) (majority shareholder could not maintain intentional interference claim based on wrong against corporation). Plaintiffs' opposition does not respond to, let alone rebut, any of these showings. Their intentional interference claim should therefore be dismissed and stricken.

## III.    THE COURT SHOULD NOT DELAY RULING ON MR. PERENS'S MOTIONS TO ALLOW PLAINTIFFS DISCOVERY

After filing two complaints and a motion for partial summary judgment, in which OSS claimed that there are no factual disputes that would preclude summary judgment on OSS's defamation *per se* claim, Plaintiffs suggest that they can avoid dismissal if the Court delays ruling on Mr. Perens's motions until *after* Plaintiffs take discovery. *See* Opp. at 10–11 & n.4.

Whether in response to a Rule 12 motion to dismiss or an anti-SLAPP motion to strike, however, plaintiffs are not entitled to discovery to cure legally deficient complaints. Instead, "the purpose of F.R.Civ.P. 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery." *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) (affirming dismissal of complaint under 12(b)(6) and denying discovery). Similarly, where an anti-SLAPP motion is based on legal deficiencies, plaintiffs have no basis to demand discovery before a court rules on the motion. For example, in

14

1   *Resolute Forest Products, Inc. v. Greenpeace International*, the court granted the defendant's

2   12(b)(6) and anti-SLAPP motions, holding that the plaintiff's defamation claims failed as a matter

3   of law to support actual malice and that the accused statements constituted non-actionable

4   opinions. No. 17-CV-02824-JST, 2017 WL 4618676, at *9, *14 (N.D. Cal. Oct. 16, 2017). The

5   court rejected plaintiff's argument that it was entitled to discovery, holding that discovery would

6   not alter the legal insufficiency of the complaint. *Id.* at *14-15; *see also Agnir v. Gryphon Sols.,*

7   *LLC*, No. 12-CV-04470-LHK, 2013 WL 4082974, at *16 (N.D. Cal. Aug. 9, 2013) (granting

8   defendant's motion to dismiss and strike under anti-SLAPP, and denying discovery). Here, Mr.

9   Perens's motions challenge the legal sufficiency of the FAC (*see, e.g.,* Mot. at 8:11-14), and

10   Plaintiffs are not entitled to discovery before the Court decides the motions.

11      Cases cited by Plaintiffs, by contrast, related to motions challenging factual deficiencies

12   addressed under a Rule 56 standard. *See* Opp'n at 10 (citing *Metabolife Int'l, Inc. v. Wornick*, 264

13   F.3d 832, 846-47 (9th Cir. 2001) and *Rogers v. Home Shopping Network, Inc.*, 57 F.Supp.2d 973,

14   985 (C.D. Cal 1999)). The Rule 56 standard is inapplicable where a motion is decided based on

15   legal deficiencies. *See Z.F. v. Ripon Unified Sch. Dist.*, 482 F. App'x 239, 240 (9th Cir. 2012).

16      Plaintiffs also do not identify any discovery that would alter the Court's decision on Mr.

17   Perens's motions, providing another conclusive basis to deny Plaintiffs' request. In

18   *Semiconductor Equipment & Materials International, Inc. v. The Peer Group,* for example, the

19   court held discovery was not warranted before the court decided an anti-SLAPP motion because

20   the plaintiff "did not show how any discovery it sought would have been material to establishing

21   its claim was meritorious" and instead presented "nothing more than rank speculation and

22   conjecture." No. 15-cv-00866-YGR, 2015 WL 5535806, at *14 (N.D. Cal. Sept. 18, 2015). In the

23   defamation context, courts have specifically denied a plaintiff's motion for discovery regarding a

24   defendant's alleged bad faith because such intent "lacks any relevance to the court's

25   determination of whether the statement is capable of a defamatory meaning or whether the

26   statement is, in fact, false." *See Price v. Stossel*, 590 F. Supp. 2d 1262, 1271 (C.D. Cal. 2008).

27      Because Mr. Perens challenges the legal sufficiency of Plaintiffs' claims, and Plaintiffs

28   identify no needed discovery, the Court should not delay deciding Mr. Perens's motions.

DEFENDANT'S REPLY ISO ANTI-SLAPP
MOTION & MOTION TO DISMISS FAC
3:17-CV-04002-LB

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  November 30, 2017

MELODY DRUMMOND HANSEN
HEATHER J. MEEKER
CARA L. GAGLIANO
O'MELVENY & MYERS LLP


By:     */s/ Melody Drummond Hansen*
                Melody Drummond Hansen
Attorneys for Defendant
Bruce Perens

DEFENDANT'S REPLY ISO ANTI-SLAPP
MOTION & MOTION TO DISMISS FAC
3:17-CV-04002-LB