1  MELODY DRUMMOND HANSEN (S.B. #278786)
   mdrummondhansen@omm.com
2  HEATHER J. MEEKER (S.B. #172148)
   hmeeker@omm.com
3  O'MELVENY & MYERS LLP
   2765 Sand Hill Road
4  Menlo Park, California  94025-7019
   Telephone:    +1 650 473 2600
5  Facsimile:     +1 650 473 2601

6  CARA L. GAGLIANO (S.B. #308639)
   cgagliano@omm.com
7  Two Embarcadero Center
   28th Floor
8  San Francisco, California 94111-3823
   Telephone:    +1 415 984 8700
9  Facsimile:     +1 415 984 8701

10 Attorneys for Defendant
   Bruce Perens
11

12               **UNITED STATES DISTRICT COURT**

13             **NORTHERN DISTRICT OF CALIFORNIA**

14                     **SAN FRANCISCO**

15
   OPEN SOURCE SECURITY, INC., and          Case No. 3:17-cv-04002-LB
16 BRADLEY SPENGLER,
                                            **DEFENDANT BRUCE PERENS'S**
17              Plaintiffs,                  **RESPONSE MEMORANDUM TO**
                                            **PLAINTIFFS' SUPPLEMENTAL**
18        v.                                 **POINTS AND AUTHORITIES IN**
                                            **OPPOSITION TO DEFENDANT'S**
19 BRUCE PERENS, and Does 1-50,              **MOTION TO DISMISS AND SPECIAL**
                                            **MOTION TO STRIKE**
20              Defendants.

21
                                            Hearing Date:  December 14, 2017
22                                          Time:  9:30 a.m.
                                            Location:  Courtroom C, 15th Floor
23                                          Judge:  Hon. Laurel Beeler

24

25

26

27

28
                                            DEFENDANT'S RESPONSE MEMO TO
                                            PLAINTIFF'S SUPPLEMENTAL BRIEFING
                                            3:17-CV-04002-LB

1        After multiple rounds of briefing over three months, Plaintiffs now seek to file a

2 Supplemental Memorandum because on December 11, "Plaintiff[s'] counsel was finally able to

3 find a relevant case." Mot. (ECF. No. 45) at 1:10. Contrary to Plaintiffs' assertions, though,

4 *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688 (2007)[1] does not address a

5 "very similar fact pattern" (*Id.* at 1:9, 17) or a "very similar issue" (Supp. Br. (ECF No. 45-1) at

6 1:2) to this case.

7        The defendant in *Overstock* was Gradient Analytics, a firm that provided analytical

8 reports on publicly traded companies to large institutional investors who subscribed to the

9 service, some of whom paid tens of thousands of dollars for the reports. 151 Cal. App. 4th at

10 693–94. While Gradient advertised its reports as "independent and objective," *id.* at 710,

11 Gradient actually allowed certain customers to commission negative reports on companies,

12 including where those customers planned to "short" the stock of the companies (*i.e.*, sell the stock

13 with the hope of buying it back at a lower price after the stock price falls). *Id.* at 694–95.

14 Gradient customer Rocker Partners commissioned such negative reports regarding Overstock

15 (whose stock Rocker planned to short), *id.* at 696–97, and Gradient wrote several negative reports

16 about Overstock at Rocker's request, giving the company a "D" or an "F" rating and listing

17 Overstock in multiple "greatest concerns" listings. *Id.* at 697, 703. Rocker discussed the reports

18 with Gradient in advance of publication and suggested changes that would emphasize negative

19 aspects, add negative facts, or suggest a more negative perspective than in the drafts, and

20 Gradient obliged those requests without disclosing Rocker's participation in the reports. *Id.* at

21 696–97, 710, 714. Gradient published false statements in biased reports in collusion with Rocker

22 to drive down the price of Overstock's stock, and succeeded in that goal. *Id.* at 698, 710–11, 718.

23 In this case, Mr. Perens, a private individual, published his opinions as *opinions* on his blog and

24 the Slashdot public forum as part of a public debate about whether OSS's restrictions (and similar

25

26

---

27 [1] *Overstock* is not new—it is a decade old and cites *Wilbanks v. Wolk,* 121 Cal. App. 4th 883
(2004), precedent first cited in Defendant's first anti-SLAPP motion and motion to dismiss on
28 September 18, 2017. (*See* ECF No. 11 at 9-10.)

DEFENDANT'S RESPONSE MEMO TO
PLAINTIFF'S SUPPLEMENTAL BRIEFING
3:17-CV-04002-LB

1   provisions) violate Open Source obligations under the GPL—an unsettled question of law.  There

2   simply is no similarity between the cases.

3          Attempting to force this case to match *Overstock*, Plaintiffs wholly ignore the facts and

4   reasoning there.  For example, Plaintiffs focus narrowly on Gradient's statement that Overstock's

5   policies "violate[d] the intent (if not the form) of GAAP" (Generally Accepted Accounting

6   Principles), arguing that there is similarity between the GPL and GAAP.  *See* Supp. Br. at 1, 3.

7   *Overstock,* however, did not turn on Gradient's statement regarding violations of GAAP alone but

8   instead on the many express and implied statements of fact the court found "objectively verifiable

9   and provably false," including that "Overstock's accounting violated GAAP, *with the implication*

10  *that* Overstock falsified its financials to mislead investors." 151 Cal. App. 4th at 706 (emphasis

11  added).  Other examples included assertions that "Overstock was 'cooking the books' and

12  manipulating accounting procedures to boost the price of its stock"; Overstock overstated its

13  sales; Overstock's change in revenue recognition was implemented in an effort to drive revenues

14  and share price up; Overstock's CFO resigned because of the revenue recognition model;

15  Overstock was not taking on general inventory risk; the primary causes for returns were causes

16  other than buyer's remorse; and the company did little more than provide a software interface for

17  the majority of returns.  *See id.* at 702–04.  Not only were these provably false factual assertions,

18  Overstock presented evidence that they were false.  *See id.* 702–04, 706–08.  Plaintiffs ignore that

19  the accused statements here, unlike those in *Overstock*, involve interpretations of unsettled

20  matters of law, which at a minimum require a "clear and unambiguous" ruling from a court or

21  regulatory agency to be actionable statements of fact.  *See Coastal Abstract Serv., Inc. v. First*

22  *Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999).

23         Plaintiffs likewise ignore holdings in cases much more analogous to this one, which

24  involved statements—including statements published in blog posts—opining that plaintiffs had

25  engaged in copyright infringement or breaches of contract.  *See, e.g., Franklin v. Dynamic*

26  *Details, Inc*., 116 Cal. App. 4th 375 (2004); *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*,

27  No. CV 10-5696 CRB, 2013 WL 3460707 (N.D. Cal. July 9, 2013), *Freecycle Network Inc. v.*

28  *Oey*, 505 F.3d 898 (9th Cir. 2007).  Those cases applied the *Coastal Abstract* rule to hold that

1  such statements are nonactionable opinions, and all three of the above examples were cited in Mr.

2  Perens's motions.  *See id.* and Mot. (ECF No. 30) at 15.  Plaintiffs have never so much as

3  acknowledged the existence of those cases, let alone respond to them.

4       Plaintiffs also take *Overstock*'s words out of context to argue "Gradient also held itself out

5  to its subscribers as having specialized knowledge" and "its readers relied on its opinions [as]

6  reflecting the truth about Overstock."  Supp. Br. at 2.  But Plaintiffs ignore the very different

7  nature of the reports provided by Gradient, which were presented as "independent and objective"

8  when in fact they were biased and commissioned by a third party who was shorting Overstock's

9  stock.  Indeed, in finding Gradient's statements actionable, the *Overstock* court distinguished

10  commentary from another case where the context forewarned the reader that what followed was

11  "one person's opinion."  151 Cal. App. 4th at 705.  No matter how informed Mr. Perens may be,

12  his opinions still are "one person's opinion" and were presented as such.

13       Plaintiffs then suggest a new theory: that Mr. Perens's statements are actionable because

14  he states that Plaintiffs violate the GPL "with the implication that Plaintiffs have engaged in

15  unethical business practices which would risk liability on Plaintiffs customers or have engaged at

16  least in conduct, characteristics, or a condition that was incompatible with the proper exercise of

17  their lawful business, trade, or profession."  Supp. Br. at 2.  Despite Plaintiffs' convoluted new

18  wording, Plaintiffs do not explain how Mr. Perens's opinions imply any business practice beyond

19  OSS's undisputed policy on redistribution.

20       Plaintiffs also suggest that *Overstock* somehow newly supports that Mr. Perens had

21  "serious doubts" regarding the truth of his publication, but they merely rehash previous theories

22  that Mr. Perens "admitted" the Grsecurity Agreement does not violate the GPL and that there

23  cannot be witnesses regarding OSS's restrictions.  Supp. Br. at 4.  These theories were debunked

24  by previous briefing.  *See, e.g.,* Reply at 10–11; Surreply re MPSJ at 1–3.  And while Plaintiffs

25  suggest without explanation that *Overstock* supports their intentional interference claim (Supp.

26  Br. at 4), that claim fails for the same reasons as the defamation claims.  *See, e.g.,* Mot. at 22–23.

27       For these reasons, Plaintiffs have not demonstrated that they have a probability of success

28  on the merits of their claims, and their claims should be stricken and dismissed.

DEFENDANT'S RESPONSE MEMO TO
PLAINTIFF'S SUPPLEMENTAL BRIEFING
3:17-CV-04002-LB

1    Dated:  December 13, 2017              MELODY DRUMMOND HANSEN
                                            HEATHER J. MEEKER
2                                           CARA L. GAGLIANO
                                            O'MELVENY & MYERS LLP
3

4                                           By:    /s/ Melody Drummond Hansen
                                                     Melody Drummond Hansen
5                                           Attorneys for Defendant
                                            Bruce Perens
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28