CHHABRA LAW FIRM, PC
ROHIT CHHABRA (SBN 278798)
Email: rohit@thelawfirm.io
257 Castro Street Suite 104
Mountain View, CA 94041
Telephone: (650) 564-7929

**Attorney for Plaintiffs**
Open Source Security Inc. &
Bradley Spengler

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| OPEN SOURCE SECURITY INC. and BRADLEY SPENGLER<br><br>                Plaintiff,<br><br>v.<br><br>BRUCE PERENS, and Does 1-50,<br><br>              Defendants. | Case No.: 3:17-cv-04002-LB<br><br>**PLAINTIFFS' NOTICE OF APPEAL AND REPRESENTATION STATEMENT**<br><br>**APPEAL FROM FINAL JUDGMENT**<br><br><br>Location: Courtroom C, 15th Floor<br>Judge: Hon. Laurel Beeler |

PLAINTIFFS' NOTICE OF APPEAL AND REPRESENTATION STATEMENT

## NOTICE OF APPEAL – FROM FINAL JUDGMENT

**NOTICE IS HEREBY GIVEN** that Open Source Security Inc. and Bradley Spengler, plaintiffs in the above-named case, hereby appeal to the United States Court of Appeals for the Ninth Circuit from final judgment in favor of Defendant Bruce Perens entered in this action on the **24th day of January, 2018** (ECF No. 58), attached hereto as Exhibit A, pursuant to the Court's order granting Defendant Perens's Motion to dismiss pursuant to Fed. R. Civ. P. 12 (b)(6), dated December 21, 2017 (ECF No. 53), attached hereto as Exhibit B.

Plaintiffs' Representation Statement is attached to this Notice as required by Ninth Circuit Rule 3-2(b).

Date: February 5, 2018

Respectfully Submitted,

CHHABRA LAW FIRM, PC

s/*Rohit Chhabra*
Rohit Chhabra
Attorney for Plaintiffs
Open Source Security Inc. & Bradley Spengler

# REPRESENTATION STATEMENT

The undersigned represents Plaintiffs-Appellants Open Source Security Inc. and Bradley Spengler. Pursuant to Rule 12(b) of the Federal Rules of Appellate Procedure and Circuit Rule 3-2(b), Plaintiffs-Appellants submit this Representation Statement. The following list identifies all parties to the action, as known at this time, and it identifies their respective counsel by name, firm, address, telephone number, and e-mail, where appropriate.

| PARTIES | COUNSEL OF RECORD |
|---|---|
| PLAINTIFFS-APPALLANTS<br><br>OPEN SOURCE SECURITY INC. and BRADLEY SPENGLER | CHHABRA LAW FIRM, PC<br>ROHIT CHHABRA (SBN 278798)<br>257 Castro Street Suite 104<br>Mountain View, CA 94041<br>Telephone: (650) 564-7929<br>Email: rohit@thelawfirm.io |
| DEFENDANTS-APPELLEES<br><br>BRUCE PERENS | MELODY N DRUMMOND HANSEN<br>mdrummondhansen@omm.com<br>HEATHER JANINE MEEKER<br>hmeeker@omm.com<br>O'MELVENY AND MYERS LLP<br>2765 Sand Hill Road<br>Menlo Park, CA 94025<br>Telephone: +1 650 473 2600<br><br>CARA LORRAINE GAGLIANO<br>O MELVENY AND MYERS LLP<br>cgagliano@omm.com<br>2 Embarcadero Center<br>28th Floor<br>San Francisco, CA 94111<br>Telephone: +1 415 984 8700 |

Respectfully Submitted,

*s/Rohit Chhabra*
Rohit Chhabra

-2-

3:17-CV-04002-LB

PLAINTIFFS' NOTICE OF APPEAL AND REPRESENTATION STATEMENT

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

|  |  |
|---|---|
| OPEN SOURCE SECURITY INC. and BRADLEY SPENGLER | ) Case No.: 3:17-cv-04002-LB ) ) ) **CERTIFICATE OF SERVICE** |
| Plaintiff, | ) ) |
| v. | ) ) |
| BRUCE PERENS, and Does 1-50, | ) ) |
| Defendants. | ) ) ) |

**IT IS HEREBY CERTIFIED THAT:**

I, the undersigned, am a citizen of the United States and am at least eighteen years of age. My business address is 257 Castro Street Suite 140 Mountain View California, 94041.

I am not a party to the above-entitled action. I have caused service of:

**PLAINTIFFS' NOTICE OF APPEAL AND REPRESENTATION STATEMENT**
**APPEAL FROM FINAL JUDGMENT**

on the other party by electronically filing the foregoing with the Clerk of the U. S. Dist. Court using its CM/ECF System, which electronically notifies Defendant Bruce Perens and his counsel of record, as follows:

| | |
|---|---|
| MELODY N DRUMMOND HANSEN mdrummondhansen@omm.com HEATHER JANINE MEEKER hmeeker@omm.com, bruce@perens.com 2765 Sand Hill Road Menlo Park, CA 94025 Telephone: +1 650 473 2600 | CARA LORRAINE GAGLIANO cgagliano@omm.com 2 Embarcadero Center 28th Floor San Francisco, CA 94111 Telephone: +1 415 984 8700 |

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 5, 2018

s/*Rohit Chhabra*

Rohit Chhabra
Attorney for Plaintiffs

# EXHIBIT A

1
2
3
4
5
6
7
8           UNITED STATES DISTRICT COURT
9        NORTHERN DISTRICT OF CALIFORNIA
10             San Francisco Division

11 OPEN SOURCE SECURITY, INC., et al.,     Case No. 17-cv-04002-LB

12          Plaintiffs,

13       v.                    **JUDGMENT**

14 BRUCE PERENS,

15          Defendant.

16

17     On December 21, 2017, the court granted the defendant's motion to dismiss under Federal

18 Rule of Civil Procedure 12(b)(6) and granted the plaintiffs leave to file an amended complaint.[1]

19 On January 18, 2018, the plaintiffs filed notice that they did not intend to file an amended

20 complaint[2] and requested that the court enter judgment and dismiss the complaint with prejudice.[3]

21 Pursuant to Federal Rule of Civil Procedure 58, the court hereby ENTERS judgment in favor of

22 the defendant and against the plaintiffs, and dismisses the case with prejudice.

23
24
25
26

27 [1] Order – ECF No. 53.

    [2] Notice – ECF No. 55.

28 [3] Ex Parte Application – ECF No. 57.

United States District Court
Northern District of California

1   The court directs the Clerk of Court to close the file in this matter.

2   **IT IS SO ORDERED.**

3   Dated: January 24, 2018

4

5   LAUREL BEELER
    United States Magistrate Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT B

1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         NORTHERN DISTRICT OF CALIFORNIA

10                              San Francisco Division

11   OPEN SOURCE SECURITY, INC. and           Case No. 17-cv-04002-LB
     BRADLEY SPENGLER,
12                                             **ORDER (1) GRANTING**
                    Plaintiffs,                **DEFENDANT'S MOTION TO**
13                                             **DISMISS, (2) DENYING**
            v.                                 **DEFENDANT'S MOTION TO STRIKE**
14                                             **WITHOUT PREJUDICE, AND (3)**
                                               **DENYING PLAINTIFFS' SUMMARY-**
15   BRUCE PERENS and Does 1–50,               **JUDGMENT MOTION**

                    Defendants.                Re: ECF Nos. 24, 30
16

17

18                                **INTRODUCTION**

19         This is a defamation lawsuit. The plaintiffs — Open Source Security ("OSS") and its CEO

20   Bradley Spangler — make security software (called "patches") to fix security vulnerabilities in the

21   open-source Linux Operating System.[1] Open-source software like Linux is free software that

22   anyone can modify, use, and share. The Linux software here is released under an open-source

23   license that prevents users like OSS from imposing additional restrictions if they redistribute the

24   software.[2] The defendant Bruce Perens — who is a respected programmer known for his founding

25   of the Open Source Initiative — criticized OSS's business model for distributing its security

26   ───────────────────

27   [1] First Amended Complaint ("FAC") – ECF No. 18 at 2 (¶¶ 2–3). Record citations are to material in
     the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top
     of documents.

28   [2] *Id.* at 4 (¶¶ 13–14).

United States District Court
Northern District of California

patches on the ground that it violated the open-source license and thus potentially subjected users to liability for copyright infringement or breach of contract.[3] The plaintiffs make four defamation-related claims against Mr. Perens: (1) OSS for defamation *per se* (libel) and defamation *pro quod* (libel) (claims one and two); (2) Mr. Spengler for false light (claim three); and (3) both plaintiffs for intentional interference with prospective economic relations.[4]

Mr. Perens moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and also moves to strike the complaint (and to secure an award of attorney's fees and costs) under California Code of Civil Procedure section 425.16, the state's Strategic Lawsuits Against Public Participation ("SLAPP") law.[5] He argues that his statements are protected free speech, and the court thus should strike the complaint under the Anti-SLAPP statute, and he moves to dismiss on the ground that the plaintiffs did not plead plausible claims.[6] The plaintiffs separately move for summary judgment on the defamation *per se* claim.[7] The court holds that Mr. Perens's statements are opinions that are not actionable libel, dismisses the complaint with leave to amend, denies the anti-SLAPP motion without prejudice, and denies the motion for summary judgment.

**STATEMENT**

**1.  Parties and Jurisdictional Facts[8]**

The plaintiffs are OSS and its CEO and sole shareholder, Bradley Spengler.[9] Their security software for the Linux Operating System is called "Grsecurity."[10] Mr. Spengler resides in

---

[3] *Id.* at 9 (¶ 42), 12 (¶ 48).

[4] *See generally id.*

[5] Mot. – ECF No. 30.

[6] *Id.* at 15–30.

[7] Mot. – ECF No. 24.

[8] The parties consented to the undersigned's jurisdiction. Consents – ECF Nos. 4, 13.

[9] FAC – ECF No. 18 at 2 (¶ 1).

[10] *Id.* at 4 (¶ 12).

United States District Court
Northern District of California

Pennsylvania, and OSS is a Pennsylvania corporation with its principal place of business in Pennsylvania.[11]

Mr. Perens "is one of the founders of the Open Source movement in software."[12] He "created the Open Source Definition, the set of legal requirements for Open Source licensing which still stands today."[13] He is the author of the blog posts criticizing OSS's distribution of its Grsecurity security patch.[14] He resides in Berkeley, California.

The plaintiffs claim $2 million in damages from Mr. Perens's statements about their distribution of the Grsecurity patch.[15]

The court has diversity jurisdiction under 28 U.S.C. § 1332(a)(1).

## 2.  Open Source Security's Grsecurity Software and the GNU General Public License

OSS's security patch is distributed under the trade name Grsecurity and uses "licensed work of the Linux Operating System kernel that is released" under an open-source license called the GNU General Public License, version 2 (variously, "General Public License","GPL", or GPLv2).[16] Section 6 of the General Public License forbids users who redistribute the Linux kernel from restricting its use:

> Each time you redistribute the Program (or any work based on the Program), the recipient automatically receives a license from the original licensor to copy, distribute or modify the Program subject to these terms and conditions. You may not impose any further restrictions on the recipients' exercise of the rights granted herein.[17]

---

[11] *Id.* at 2 (¶¶ 2–3).

[12] *Id.* at 8 (¶ 33).

[13] *Id.*

[14] *Id.* at 2 (¶ 1).

[15] *Id.* at 21–22.

[16] *Id.* at 2 (¶¶ 2–3).

[17] *Id.*

United States District Court
Northern District of California

### 3.   Grsecurity's Access Agreement

Open Source Security sells its product to customers pursuant to a user access agreement called the "Stable Patch Access Agreement."[18] The Access Agreement contains the following provision about redistribution:

> "The User has all rights and obligations granted by grsecurity's software license, version 2 of the GNU GPL. These rights and obligations are listed at http://www.gnu.org/licenses/old-licenses/gpl-2.0.en.html. Notwithstanding these rights and obligations, the User acknowledges that redistribution of the provided stable patches or changelogs outside of the explicit obligations under the GPL to User's customers will result in termination of access to future updates of grsecurity stable patches and changelogs."[19]

Thus, if a user redistributes the Grsecurity patch, OSS will terminate the users' access to future updates of the patches.

OSS alleges that this business model does not violate the GNU General Public License, which has the following provision:

> When we speak of free software, we are referring to freedom, not price. Our General Public Licenses are designed to make sure that **you have the freedom to distribute copies of free software** (and charge for this **service** if you wish)**,** that you receive source code or can get it if you want it, that you can change the software or use pieces of it in new free programs; and that you know you can do these things.[20]

To support its allegation that its User Agreement does not violate the General Public License, OSS identifies another open-source software company called Red Hat, which is listed on the New York Stock exchange and "employ[s] similar policies, limiting its services if a user exercises its right to redistribution, under the GPLv2, since at least 2003."[21] OSS identifies the following blog posts about Red Hat:

> 24.  On March 5, 2011, Bradley Kuhn, GPL expert, and President of the Software Freedom Conservancy, wrote a blog post about Red Hat's business practices:

---

[18] FAC – ECF No. 18 at 5 (¶ 17); Stable Patch Access Agreement, Ex. 4 – ECF No. 18-1 at 15–16.

[19] *Id.* (emphasis in original); Stable Patch Access Agreement, Ex. 4. – ECF No. 18-1 at 15–16.

[20] FAC – ECF No. 18 at 5 (¶ 18 (emphasis in the original)).

[21] *Id.* at 6 (¶ 6).

United States District Court
Northern District of California

I do have strong, negative opinions about the [Red Hat Enterprise Linux] business model; I have long called it the "if you like copyleft, your money is no good here" business model. It's a GPL-compliant business model merely because the GPL is silent on whether or not you must keep someone as your customer. **Red Hat tells [Red Hat Enterprise Linux] customers that if they chose to engage in their rights under GPL, then their support contract will be canceled.** I've often pointed out (although this may be the first time publicly on the Internet) that **Red Hat found a bright line of GPL compliance, walked right up to it**, and were the first to stake out a business model right on the line.

(emphasis added [in complaint]).

25.  As reported by journalist Sam Varghese of ITwire news on March 11, 2011, Red Hat has in its terms and conditions placed "on its customers - anyone who redistributes its GPL-ed code will lose support from the company." When Sam Varghese asked Bradley Kuhn about Red Hat's distribution limitation, Kuhn stated:

To my knowledge, Red Hat is in compliance with GPLv2 and GPLv3 on all their distributions and business models.

. . .

The question comes down to whether or not telling someone "your money's no good here, I don't want to provide services to you anymore" is a "further restriction". **I'm not persuaded that it's a "further restriction".** I agree it's an unfortunate consequence, but if we interpreted the GPL to say that you were required to keep someone as a customer no matter what they did, that would be an unreasonable interpretation.

(emphasis added [in complaint]).

26.  Mr. Kuhn has further opined:

Now, I'm talking [] about the letter of the license. The spirit of the license is something different. GPL exists (in part) to promote collaboration, and if you make it difficult for those receiving your distributions to easily share and improve the work with a larger community, it's still a fail (in a moral sense), but not a failure to comply with the GPL.

(emphasis added).

27.  Mr. Kuhn stated that Red Hat had been employing such business practices since at least 2003. Mr. Kuhn further clarified Red Hat's business model has been consistent for over a decade.[22]

---

[22] *Id.* at 6–7 (¶¶ 24–27) (footnotes omitted) (emphasis, ellipses, and parentheticals in the original).

**4. Mr. Perens's Blog Posts**

On June 28, 2017, Mr. Perens published a blog post on his personal website,

www.perens.com.[23] The complaint excerpts the post:

> **Warning: Grsecurity: Potential contributory infringement and breach of contract risk for customers**
>
> It's my strong opinion that your company should avoid the Grsecurity product sold at grsecurity.net because it presents a contributory infringement and breach of contract risk.
>
> . . .
>
> Currently, Grsecurity is a commercial product and is distributed only to paying customers. My understanding from several reliable sources is that customers are verbally or otherwise warned that if they redistribute the Grsecurity patch, as would be their right under the GPL, that they will be assessed a penalty: they will no longer be allowed to be customers, and will not be granted access to any further versions of Grsecurity. GPL version 2 section 6 explicitly prohibits the addition of terms such as this redistribution prohibition.
>
> It is my opinion that this punitive action for performance of what should be a right granted under the GPL is infringing of the copyright upon the Linux kernel and breaches the contract inherent in the GPL.
>
> As a customer, it's my opinion that you would be subject to contributory infringement by employing this product under the no-redistribution policy currently employed by Grsecurity.
>
> . . .
>
> In the public interest, I am willing to discuss this issue with companies and their legal counsel, under NDA, without charge.
>
> I am an intellectual property and technology specialist who advises attorneys, not an attorney. This is my opinion and is offered as advice to your attorney. Please show this to him or her.[24]

On July 9, 2017, Slashdot.org — a website well known in the open-source community — republished a portion of the original blog post.[25] An anonymous user commented on the post,

---

[23] *Id.* at 2 (¶ 4), 9 (¶ 41).

[24] *Id.* at 9–10 (¶ 42) (bolding and ellipses in the original).

[25] *Id.* at 10 (¶ 43).

linked to the Grsecurity Access Agreement, and said that the Grsecurity Access Agreement did not violate the General Public License:[26]

> I've had a look over their agreement here [grsecurity.net], and there is nothing to prevent redistribution of a patch under the terms and conditions of the GPLv2. It states that if a patch is distributed *outside the terms of the GPLv2*, then access to *further patches in the future* (not the patch provided) will be denied, on a works for hire basis.

> I honestly don't think you've got all your ducks lined up here, and yes, I realise who I'm saying it to and how the hordes here will descend upon me.[27]

Mr. Perens responded to the comment:

> The problem isn't with the text there. It's with what else they have told their customers. It doesn't even have to be in writing.

> I have witnesses. If there was ever a case, obviously the prosecution would have to depose people to make this point. I am not actually planning on a case, though. I think this warning will have the desired effect.[28]

The plaintiffs allege that "there are no witnesses who can reasonably provide evidence that would suggest a violation of the [General Public License] by the Grsecurity product."[29]

On July 10, 2017, Mr. Perens updated the blog post about Grsecurity:[30]

> **Warning: Grsecurity: Potential contributory infringement and breach of contract risk for customers**

> It's my strong opinion that your company should avoid the Grsecurity product sold at grsecurity.net because it presents a contributory infringement and breach of contract risk.

> . . . Under their Stable Patch Access Agreement, customers are warned that if they redistribute the Grsecurity patch, as would be their right under the GPL, that they will be assessed a penalty: they will no longer be allowed to be customers, and will not be granted access to any further versions of Grsecurity. GPL version 2 section 6 explicitly prohibits the addition of terms such as this redistribution prohibition.

> . . .

---

[26] *Id.* (¶ 44).

[27] *Id.* at 10–11 (¶ 44).

[28] *Id.* at 11 (¶ 45).

[29] *Id.* (¶ 46).

[30] *Id.* at 11–12 (¶¶ 47–48).

United States District Court
Northern District of California

Grsecurity's Stable Patch Access Agreement adds a term to the GPL prohibiting distribution or creating a penalty for distribution. GPL section 6 specifically prohibits any addition of terms. Thus, the GPL license, which allows Grsecurity to create its derivative work of the Linux kernel, terminates, and the copyright of the Linux Kernel is infringed. The GPL does not apply when Grsecurity first ships the work to the customer, and thus the customer has paid for an unlicensed infringing derivative work of the Linux kernel developers with all rights reserved. The contract from the Linux kernel developers to both Grsecurity and the customer which is inherent in the GPL is breached.

As a customer, it's my opinion that you would be subject to both contributory infringement and breach of contract by employing this product in conjunction with the Linux kernel under the no-redistribution policy currently employed by Grsecurity.[31]

. . .

In the public interest, I am willing to discuss this issue with companies and their legal counsel, under NDA, without charge. I am an intellectual property and technology specialist who advises attorneys, not an attorney. This is my opinion and is offered as advice to your attorney. Please show this to him or her.[32]

The plaintiffs allege that the statements in the updated blog post are false because "the Access Agreement does not violate the [General Public License]"[33] and they are "not aware of any legal authority holding" or "remotely suggesting" that Open Source violated the terms of the General Public License.[34]

## 5. Procedural Posture

The plaintiffs bring four claims in the operative first amended complaint: (1) defamation *per se* (libel); (2) defamation *per quod* (libel); (3) false light; and (4) intentional interference with prospective relations.[35] Open Source brings claims one and two, Mr. Spengler brings claim three, and both plaintiffs bring claim four.[36] The defendants move under Rule 12(b)(6) to dismiss the first amended complaint and move to strike and for an award of attorney's fees under California's

---

[31] *Id.* (¶ 48).

[32] *Id.* at 9–10 (¶ 42).

[33] *Id.* at 13 (¶ 49).

[34] *Id.* at 14 (¶¶ 53–54).

[35] *Id.* at 17–20.

[36] *Id.* at 17–20.

Anti-SLAPP statute, California Code of Civil Procedure section 425.16.[37] The plaintiffs move for summary judgment on claim one for defamation *per se*.[38]

## GENERAL LEGAL STANDARDS

### 1. Rule 12(b)(6)

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level . . . ." *Id.* (internal citations omitted).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, accepted as true, "'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). If a court dismisses a complaint, it should give leave to amend unless the "the pleading

---

[37] Mot. – ECF No. 30.

[38] Mot. – ECF No. 24.

1    could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal.*

2    *Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

3

4    **2. California's Anti-SLAPP Statute**

5        Section 425.16 of the California Code of Civil Procedure is called the anti-SLAPP statute

6    because it allows a defendant to gain early dismissal of causes of action that are designed

7    primarily to chill the exercise of First Amendment rights. *Siam v. Kizilbash*, 130 Cal. App. 4th

8    1563, 1568 (2005). Section 425.16(b)(1) provides:

9
         A cause of action against a person arising from any act of that person in furtherance

10         of the person's right of petition or free speech under the United States Constitution
         or the California Constitution in connection with a public issue shall be subject to a
         special motion to strike, unless the court determines that there is a probability that

11         the plaintiff will prevail on the claim.

12    And section 425.16(e) provides that acts "in furtherance of" these rights include:

13         (1) any written or oral statement or writing made before a legislative, executive, or
         judicial proceeding, or any other official proceeding authorized by law;
14

15         (2) any written or oral statement or writing made in connection with an issue under
         consideration or review by a legislative, executive, or judicial body, or any other
         official proceeding authorized by law;
16

17         (3) any written or oral statement or writing made in a place open to the public or a
         public forum in connection with an issue of public interest; or

18         (4) any other conduct in furtherance of the exercise of the constitutional right of
         petition or the constitutional right of free speech in connection with a public issue or
19         an issue of public interest.

20       California's anti-SLAPP statute applies to state claims in federal court. *Thomas v. Fry's*

21    *Elecs., Inc.*, 400 F.3d 1206, 1206–07 (9th Cir. 2005). In ruling on an anti-SLAPP motion, the trial

22    court engages in a two-step process. *Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53,

23    67 (2002). First, the court decides whether the defendant has made a threshold showing that the

24    challenged cause of action arises from acts in furtherance of the defendant's right of petition or

25    free speech under the United States or California constitutions in connection with a public issue.

26    *Id.* Second, "[i]f the court finds such a showing has been made, it then determines whether the

27    plaintiff has demonstrated a probability of prevailing on the claim." *Id.* The claim is subject to

28   

1  dismissal only when the defendant shows that the claim is based on protected conduct and the

2  plaintiff fails to show a probability of success on that claim. *Navellier v. Sletten*, 29 Cal. 4th 82,

3  88–89 (2002).

4      For the first part of the test, a defendant must make a *prima facie* showing that the claim

5  "arises from" its conduct "in furtherance of" its exercise of free speech or petition rights as defined

6  in § 425.16(e). *Equilon*, 29 Cal. 4th at 61. "For purposes of the anti-SLAPP statute, a cause of

7  action 'arises from' conduct that it is 'based on.'" *Graham-Suit v. Clainos*, 756 F.3d 724, 735 (9th

8  Cir. 2013) (citing *Copenbarger v. Morris Cerullo World Evangelism*, 215 Cal. App. 4th 1237,

9  1244–45 (2013)). Thus, a court must ask what activities form the basis for each of a plaintiff's

10  causes of action. *Id.* The court then must ask whether those activities are "protected" and thereby

11  bring the cause of action within the scope of the anti-SLAPP statute. *Id.* (citing *Wallace v.*

12  *McCubbin*, 196 Cal. App. 4th 1169, 1182–84 (2011)).

13      For the second part of the test, the burden then shifts to the plaintiff to establish as a matter of

14  law that no such protection exists. *Governor Gray Davis Comm. v. Am. Taxpayers Alliance*, 102

15  Cal. App. 4th 449, 456 (2002). To establish a probability of prevailing, a plaintiff must

16  demonstrate that the complaint is legally sufficient and supported by a sufficient prima facie

17  showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is

18  credited. *Premier Med. Mgmt. Systems, Inc. v. California Ins. Guar. Ass'n*, 136 Cal. App. 4th

19  464, 476 (2006). The plaintiff also must present evidence to overcome any privilege or defense to

20  the claim that has been raised. *Flatley v. Mauro*, 39 Cal. 4th 299, 323 (2006).

21      In any action subject to the anti-SLAPP statute, "a prevailing defendant on a special motion to

22  strike shall be entitled to recover his or her attorney's fees and costs." Cal. Code Civ. P. §

23  425.16(c); *Verizon Delaware v. Covad Comms.*, 377 F.3d 1081, 1091 (9th Cir. 2004).

24      In state court, a defendant may file an anti-SLAPP motion within 60 days "after service of the

25  complaint" or an amended complaint, whichever is operative, "or, in the court's discretion, at any

26  later time upon terms it deems proper." Cal. Civ. Code § 425.16(f). In federal court, federal

27  procedures apply. If a defendant's anti-SLAPP motion challenges the legal sufficiency of the

28

United States District Court
Northern District of California

plaintiff's complaint, then federal pleading standards apply — including granting the plaintiff leave to amend. *Verizon Delaware*, 377 F.3d at 1091; *Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973, 982–83 (C.D. Cal. 1999). If a motion to strike is based on a plaintiff's alleged failure of proof, then the court treats the motion as a motion under Rule 56. *Rogers*, 57 F. Supp. 2d at 983.

Mr. Perens attacks the sufficiency of the pleadings, and thus the Rule 12(b)(6) standard applies.

### 3.   Summary Judgment

The court must grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The party moving for summary judgment has the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence supporting its claims or defenses. *Nissan Fire & Marine*, 210 F.3d at 1103. In ruling on a motion for summary judgment, inferences drawn from the underlying facts are viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### ANALYSIS

### 1.   Defendant's Motion to Dismiss and Motion to Strike

The claims are all based on Mr. Perens's blog posts and are predicated on the plaintiffs' allegations that the blog posts are defamation and libel.[39] The court holds that Mr. Perens's blog

---

[39] FAC – ECF No. 18 at 17– 21.

United States District Court
Northern District of California

1    posts are opinions and are not plausibly defamation. The court dismisses the complaint with leave

2    to amend and denies the anti-SLAPP motion without prejudice.

3        Libel in California law is a form of defamation. Cal Civ. Code § 44. More fully, libel "is a

4    false and unprivileged publication by writing, printing, picture, effigy, or other fixed

5    representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or

6    which causes him to be shunned or avoided, or which has a tendency to injure him in his

7    occupation." Cal. Civ. Code § 45; *see generally, e.g.*, *Gilbert v. Sykes*, 147 Cal. App. 4th 13, 27

8    (2007); *Smith v. Maldonado*, 72 Cal. App. 4th 637, 645–47 (1999). The elements of a claim for

9    libel and defamation under California law are (1) an intentional publication, (2) that is false, (3)

10   defamatory, and (4) unprivileged, and (5) that has a natural tendency to injure or that causes

11   special damage. *Taus v. Loftus*, 40 Cal. 4th 683, 720 (2007) (defamation); *see eAdGear, Inc. v. Liu*,

12   No. 11-CV-5398-JCS, 2012 WL 2367805, *14 (N.D. Cal. June 21, 2012), *report and*

13   *recommendation adopted*, 2012 WL 4005454 (N.D. Cal. Sept. 11, 2012) (libel; citing *Maldonado*,

14   72 Cal. App. 4th at 645). "Publication, which may be written or oral, is defined as a

15   communication to some third person who understands both the defamatory meaning of the

16   statement and its application to the person to whom reference is made." *Ringler Assocs. Inc. v.*

17   *Md. Cas. Co.*, 80 Cal. App. 4th 1165, 1179 (2000) (citing *Cunningham v. Simpson*, 1 Cal. 3d 301,

18   306 (1969)); *see eAdGear*, 2012 WL 2367805, *14 (libel; quoting *Maldonado*, 72 Cal. App. 4th at

19   645). "If a defamatory meaning appears from the language itself without the necessity of

20   explanation or the pleading of extrinsic facts, there is libel *per se*." *Palm Springs Tennis Club v.*

21   *Rangel*, 73 Cal. App. 4th 1, 5 (1999). If "the defamatory meaning would appear only to readers

22   who might be able to recognize it through some knowledge of specific facts . . . not discernable

23   from the face of the publication," then the libel is *per quod*. *Id.* at 6; *see also* Cal. Civ. Code § 45a

24   (distinguishing between "libel on its face" and "[d]efamatory language not libelous on its face").

25       Statements of opinion generally are not actionable. *Coastal Abstract Serv., Inc. v. First Am.*

26   *Title Ins. Co.* 173 F.3d 725, 730–31 (9th Cir. 1999). "California defamation law requires that the

27   offending statement 'expressly or impliedly assert a fact that is susceptible to being proved false,'

28   

United States District Court
Northern District of California

1   and must be able reasonably to be 'interpreted as stating actual facts.'" *Id.* at 730 (citing *Weller v.*

2   *Am. Broad. Cos.*, 232 Cal. App. 3d 991, 1001 (1991)).

3       The plaintiffs allege that Mr. Perens's blog posts were defamatory because they falsely state

4   that the Grsecurity Access Agreement violates the General Public License. Mr. Perens counters,

5   and the court agrees, that the blog posts are opinions about a disputed legal issue, are not false

6   assertions of fact, and thus are not actionable libel. *Id.* at 731–32.

7       In *Costal Abstract*, Coastal sued First American Title for defamation under California law and

8   false representation of fact under the Lanham Act based on First American's statement that

9   Coastal — an escrow agent — had no license to engage in business as an escrow agent in

10  California (a true fact) and was required to have that license under Cal. Bus. & Prof. Code section

11  17200 in connection with refinancing California property. *Id.* at 731. The parties disputed whether

12  Coastal's activities fell within § 17200. *Id.* The court first analyzed the statement under the

13  Lanham Act and concluded: "[a]bsent a clear and unambiguous ruling from a court or agency of

14  competent jurisdiction, statements by laypersons that purport to interpret the meaning of a statute

15  or regulation are opinion statements, and not statements of fact." *Id.* at 731 (citations omitted). "In

16  the present case, the correct application of § 17200 was not knowable to the parties at the time

17  First American made the licensure statement. Thus, even if a California court ultimately concludes

18  that § 17200 does not require that a company in Coastal's position obtain an escrow license, the

19  licensure statement as a matter of law could not give rise to a Lanham Act claim." *Id.* at 732. The

20  opinion statement also was not defamatory under California law because "the only claim of falsity

21  concerns the statement or suggestion that California's statute applied to the activities of Coastal,

22  which was (and apparently still is) a matter of opinion." *Id.*

23      Similarly, Mr. Perens — who is not a lawyer — voiced an opinion about whether the

24  Grsecurity Access Agreement violated the General Public License. No court has addressed the

25  legal issue. Thus, his "opinion" is not a "fact" that can be proven provably false and thus is not

26  actionable as defamation. *Franklin v. Dynamic Details, Inc.*, 116 Cal. App. 4th 375, 378–81

27  (2004) (defendant's emails — that the plaintiff infringed the third-party copyrights and breached a

United States District Court
Northern District of California

nondisclosure agreement — were not actionable as libel; they merely "expressed [the defendant's] understanding because they purported to apply copyright and contract law to facts"); *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, No. CV 10-5696-CRB, 2013 WL 3460707, at *5 (N.D. Cal. July 9, 2013) (defendant's blog posts — that the plaintiffs infringed the defendant's copyrights — was not actionable because the post was an opinion that expressed the defendant's understanding of copyright law).

The plaintiffs make several arguments in opposition to this conclusion.

First, they distinguish *Coastal* on the ground that Coastal undisputedly had no California license. They contend that by contrast here, it is false that the Access Agreement violates the General Public License.[40] But the issue in *Coastal* was whether Coastal's unlicensed status under the California Finance Code meant that it was operating unlawfully under California Business and Professions Code section 17200. 173 F.3d at 731–32. Like *Coastal*, the issue here is a disputed opinion about whether undisputed facts (*Coastal*: no license; here: the Agreement) violate the law (*Coastal*: section 17200; here: copyright infringement and breach of contract).

Second, the plaintiffs contend that *Coastal*'s protections extend to laypersons and not subject-matter experts like Mr. Perens.[41] But the decision in *Coastal* turned on the conclusion that the correct application of the licensing statute was a matter of opinion and did not rest on a distinction between a layperson and an expert. *Id.* The plaintiffs' citation to *Wilbanks v. Wolk*, 121 Cal. App. 4th 883 (2004), does not change this conclusion. The *Wilbanks* defendant was a former insurance agent who acted as an expert on issues surrounding viatical settlements, which allow dying persons to sell their life-insurance policy to investors for a percentage of the death benefits and thereby obtain funds from the investors. 121 Cal. App. 4th at 889. The plaintiff was a California viatical-settlements broker. *Id.* The defendant posted a statement on her website that (1) consumers should be "very careful" in dealing with the broker, (2) the California Department of Insurance was investigating the broker following a judgment against it in a lawsuit and the

---

[40] Opp. – ECF No. 38 at 21–29.

[41] *Id.* at 22–25.

judgment-debtor's subsequent complaint to the Department, and (3) the broker "provided incompetent advice . . . [and] is unethical." *Id.* at 890. The broker sued for defamation and unfair business practices; the trial court granted the defendant's anti-SLAPP motion to strike the defamation claim. The Court of Appeal reversed because the statement was misleading. *Id.* at 903.

The website statement omitted "significant facts," including the nature of the viator's judgment (small-claims court) and subsequent complaint to the Department of Insurance and the fact that the Department investigates every case. *Id.* The statement implied that the investigation supported her conclusions of incompetence and unethical acts when the actual facts showed only that a disgruntled viator contacted the Department. *Id.* at 903–04. As an expert, her statement could be construed "as asserting as fact that plaintiffs had engaged in specific wrongful conduct leading to a judgment and an investigation, and that plaintiffs engaged in incompetent and unethical business practices, taking advantage of persons unable to defend themselves." *Id.* at 904. The implied facts also were provably false. *Id.* The defamation claim thus survived.

By contrast, Mr. Perens's opinion rests on facts that he disclosed: the Access Agreement. There is no suggestion of undisclosed facts that raise a concern about reliance on an expert's opinion. *Wilbanks* thus is distinguishable.

Third, the plaintiffs assert that Mr. Perens "admitted that the Access Agreement did not violate the GPL" when he replied to an anonymous user's comment on the Slashdot.org republication of his post.[42] The anonymous user linked to the Grsecurity Access Agreement and commented that it did not violate the General Public License, and Mr. Perens replied eleven minutes later: "The problem isn't with the text [of the Access Agreement]. It's with what else they have told their customers. It doesn't even have to be in writing. I have witnesses."[43] This is not an admission. As Mr. Perens argues, he made other comments that day, updated his blog post the next day to discuss the Access Agreement, and reiterated his opinion that the Grsecurity product posed a risk of

---

[42] *Id.* at 26–27.

[43] FAC at 11 (¶ 45); Opp. – ECF No. 38 at 21.

1

2

3

4

5

6

contributory copyright infringement and breach of contract.[44] Even if he did change his opinion, it remains an opinion about an unsettled legal dispute. *Freecycle Network, Inc. v. Oey*, 505 F.3d 898, 904–05 (9th Cir. 2007) (the defendant's conflicting positions on whether "freecycle" was a term that could be trademarked were not false statements and instead were opinion; the defendant was "entitled to change his mind. Until it is definitively established that [the plaintiff] holds a trademark in the term 'freecycle,' it cannot be false to contend that it does not.")

7

8

9

10

11

12

13

14

In sum, the plaintiffs do not plausibly plead a claim for defamation. The false-light claim thus necessarily fails; it "'is in substance equivalent to . . . [a] libel claim, and should meet the same requirements of the libel claim. . . .'" *Briscoe v. Reade's Digest Ass'n*, 4 Cal. 3d 529, 543 (1971), *overruled on other grounds by Gates v. Discovery Comms.*, 34 Cal. 4th 679 (2004) (quoting *Kapellas v. Kofman*, 1 Cal. 3d 20, 35 n.16 (1969)). "When a false light claim is coupled with a defamation claim, the false-light claim is essentially superfluous, and stands or falls on whether it meets the same requirements as the defamation cause of action." *Eisenberg v. Alameda Newspapers, Inc.*, 74 Cal. App. 4th 1359, 1385 n. 13 (1999).

15

16

The final claim is intentional interference with prospective economic advantage through the alleged interference with the plaintiffs' relationship with its existing or potential customers.[45]

17

18

19

20

21

22

23

24

25

"In order to succeed on a claim for intentional interference with prospective economic advantage, a plaintiff must prove: (1) it had an economic relationship with a third party containing the probability of a future economic benefit; (2) defendant had knowledge of this relationship; (3) defendant committed intentional and unjustified acts designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) resulting damages." *Sidense Corp. v. Kilopass Technology Inc.*, No. C 11-04112-SI, 2012 WL 3545289, *13 (N.D. Cal., Aug. 16, 2012). The plaintiff must allege that the defendant performed an act that is "wrongful 'by some measure beyond the fact of the interference itself.'" *CRST Van Expedited, Inc. v. Werner Enters. Inc.*, 479 F.3d 1099, 1105 (9th Cir. 2007).

26

27

28

---

[44] Opp. – ECF No. 38 at 15; *see supra* Statement (text of updated blog post).

[45] FAC – ECF No. 18 at 21 (¶ 117).

The alleged unjustified acts are the non-actionable opinions. This claim — which alleges adverse consequences flowing from the non-actionable opinions — fails because the defamation claim fails. *See also Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 977 (N.D. Cal. 2013), *aff'd*, 609 F. App'x 497 (9th Cir. 2014).

Because the court dismisses the complaint with leave to amend, the court denies the anti-SLAPP motion to strike without prejudice. That said, the court has difficulty seeing how the present claims can elude California's anti-SLAPP statute. Mr. Perens's statements were made in a public forum and concern issues of public interest, and the plaintiffs have not shown a probability of prevailing on their claims. *See Equilon Enters.*, 29 Cal. 4th at 66. Were the pleadings to remain in their current form, the court would likely grant the anti-SLAPP motion. But federal amendment rules are liberal. Fed. R. Civ. P. 15(a). The court cannot say that the claims "could not possibly be cured by the allegation of other facts." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001).

## 2.  Plaintiffs' Motion for Summary Judgment

The court denies the plaintiffs' motion for summary-judgment on the claim of defamation *per se*. The statements are opinion that are not actionable defamation.

## 3.  Motion for Leave to File a Sur-Reply and Request for Judicial Notice

The court grants the defendant's motion to file a sur-reply.[46] It does not affect the outcome in this order. The court grants the unopposed request to take judicial notice.[47]

---

[46] Motion – ECF No. 40.

[47] Request for Judicial Notice – ECF No. 31.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

## CONCLUSION

The court dismisses the complaint with leave to amend, denies the anti-SLAPP motion without prejudice, and denies the motion for summary judgment. The plaintiffs must file any amended complaint by January 18, 2018.

This disposes of ECF Nos. 24, 30, and 40.

**IT IS SO ORDERED.**

Dated: December 21, 2017



LAUREL BEELER
United States Magistrate Judge