MELODY DRUMMOND HANSEN (S.B. #278786)
mdrummondhansen@omm.com
HEATHER J. MEEKER (S.B. #172148)
hmeeker@omm.com
O'MELVENY & MYERS LLP
2765 Sand Hill Road
Menlo Park, California  94025-7019
Telephone:     +1 650 473 2600
Facsimile:     +1 650 473 2601

CARA L. GAGLIANO (S.B. #308639)
cgagliano@omm.com
Two Embarcadero Center
28th Floor
San Francisco, California 94111-3823
Telephone:     +1 415 984 8700
Facsimile:     +1 415 984 8701

Attorneys for Defendant
Bruce Perens

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| OPEN SOURCE SECURITY, INC., and BRADLEY SPENGLER,<br><br>                    Plaintiffs,<br><br>          v.<br><br>BRUCE PERENS, and Does 1-50,<br><br>                    Defendants. | Case No. 3:17-cv-04002-LB<br><br>**DEFENDANT BRUCE PERENS'S MOTION FOR MANDATORY FEES AND COSTS UNDER CALIFORNIA'S ANTI-SLAPP LAW AND MEMORANDUM IN SUPPORT**<br><br>Judge: Hon. Laurel Beeler |

1  **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

2      **PLEASE TAKE NOTICE** that on March 29, 2018 at 9:30 a.m., or as soon thereafter as

3  the matter may be heard, in the Courtroom of the Honorable Laurel Beeler, Magistrate Judge of

4  the United States District Court for the Northern District of California (Courtroom C, 15th Floor),

5  located at 450 Golden Gate Avenue, San Francisco, California 94102, defendant Bruce Perens

6  will and hereby does move for a mandatory award of attorneys' fees and costs pursuant to

7  California's anti-SLAPP statute, California Code of Civil Procedure Section 425.16, because Mr.

8  Perens is the prevailing party in a strategic lawsuit against public participation.  Mr. Perens

9  respectfully requests an award of attorneys' fees and non-taxable costs incurred in responding to

10  the lawsuit.  Defendant also requests an award of fees and costs incurred in bringing this Motion

11  as permitted by law.  Mr. Perens's engaged in conferences with Plaintiffs' counsel pursuant to

12  L.R. 7-3, including a conference on February 7, 2018.

13      This Motion is based on this Notice of Motion and Motion, the attached Memorandum of

14  Points and Authorities in support thereof and all materials cited within the Memorandum,

15  including the Declaration of Melody Drummond Hansen and exhibits attached thereto, the other

16  pleadings and papers on file in this action, and any further evidence or argument the Court might

17  consider as appropriate.

18
19  Dated:  February 7, 2018

20                                        MELODY DRUMMOND HANSEN
                                          HEATHER J. MEEKER
21                                        CARA L. GAGLIANO
                                          O'MELVENY & MYERS LLP
22

23                                        By:    *Melody Drummond Hansen*
24                                                Melody Drummond Hansen
                                          Attorneys for Defendant Bruce Perens
25

26

27

28

DEFENDANT'S MOT. AND MEM. FOR
ANTI-SLAPP FEES & COSTS
CASE NO. 3:17-CV-04002-LB

# TABLE OF CONTENTS

**Page**

I.      BACKGROUND ........................................................................................................ 2

II.     AN AWARD OF FEES TO MR. PERENS IS MANDATORY BECAUSE MR.
        PERENS IS A PREVAILING PARTY UNDER THE ANTI-SLAPP LAW .................... 5

III.    THE COURT SHOULD AWARD THE MAJORITY OF FEES AND COSTS
        INCURRED IN DEFENDING THIS LITIGATION ...................................................... 8

IV.     MR. PERENS REQUESTS REASONABLE FEES INCURRED IN DEFENDING
        THIS LITIGATION. .................................................................................................. 8

        A.      Mr. Perens Seeks an Award Based on Hours Reasonably Expended in
                Defending the Case Considering Its Size and Complexity ..................................... 9

        B.      The Requested Hourly Rates Are Reasonable ....................................................... 13

        C.      The Alternative Fee Agreement Warrants Upward Adjustment of the
                Lodestar Figure .................................................................................................. 16

V.      THE REQUESTED COSTS ARE REASONABLE ...................................................... 18

VI.     CONCLUSION ......................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Art of Living Found. v. Does 1–10,*
  No 5:10-cv-05022-LHK, 2012 WL 1565281 (N.D. Cal. May 1, 2012) ....................7

*Banas v. Volcano Corp.,*
  47 F. Supp. 3d 957 (N.D. Cal. 2014) ...................................................15

*Berger v. Dobias,*
  No. B204631, 2009 WL 3088817 (Cal. Ct. App. Sept. 29, 2009)...........................18

*Blackwell v. Foley,*
  724 F. Supp. 2d 1068 (N.D. Cal. 2010) .................................................10

*Blum v. Stenson,*
  465 U.S. 886 (1984)....................................................................15

*Colony Cove Props., LLC v. City of Carson,*
  No. CV 14-3242 PSG, Dkt. 225 (C.D. Cal. Aug. 15, 2016)...................................15

*Ctr. for Biological Diversity v. Cty. of San Bernardino,*
  185 Cal. App. 4th 866 (2010) ..........................................................17

*Cuviello v. Feld Entm't, Inc.,*
  No. 13-CV-04951-BLF, 2015 WL 154197 (N.D. Cal. Jan. 12, 2015) ....................19

*Gardner v. Schwarzenegger,*
  No. A125000, 2010 WL 602534 (Cal. Ct. App. Feb. 22, 2010)........................16, 18

*Gonzalez v. City of Maywood,*
  729 F.3d 1196 (9th Cir. 2013)...........................................................9, 13

*Graham v. DaimlerChrysler Corp.,*
  34 Cal. 4th 553 (2004) .................................................................16

*Graham-Sult v. Clainos,*
  756 F.3d 724 (9th Cir. 2014)...........................................................8, 9, 19

*Horsford v. Bd. of Trs. of Cal. State Univ.,*
  132 Cal. App. 4th 359 (2005) ..........................................................17

*Ketchum v. Moses,*
  24 Cal. 4th 1122 (2001) .......................................................... *passim*

*Logtale, Ltd. v. IKOR, Inc.,*
  No. 11-CV-05452-EDL, 2016 WL 7743405 (N.D. Cal. Oct. 14, 2016)................15

1

2

**TABLE OF AUTHORITIES**
(continued)

Page(s)

3

4

*Mahach-Watkins v. Depee*,
   No. C 05-1143 SI, 2009 WL 3401281 (N.D. Cal. Oct. 20, 2009) ...........................................19

5

*Maloney v. T3Media, Inc.*,
   No. CV 14-05048-AB ...............................................................................................9, 12, 13

6

7

*Mangold v. Cal. Pub. Utils. Comm'n*,
   67 F.3d 1470 (9th Cir. 1995)..............................................................................................17

8

9

*Moreno v. City of Sacramento*,
   534 F.3d 1106 (9th Cir. 2008)............................................................................................10

10

*Pac. Gas & Elec. Co. v. SEIU Local 24/7*,
   No. C 10–05288 ..................................................................................................................13

11

12

*Perkins v. Mobile Housing Bd.*,
   847 F.2d 735 (11th Cir. 1988)............................................................................................10

13

14

*Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*,
   No. 12-CV-04634-SI, 2015 WL 4932248 (N.D. Cal. Aug. 18, 2015)...............................10, 11

15

*Prison Legal News v. Schwarzenegger*,
   608 F.3d 446 (9th Cir. 2010)..............................................................................................13

16

17

18

19

*Samson v. NAMA Holdings, LLC*,
   No. CV 0901433 MMM (PJWx), 2009 WL 10672765 (C.D. Cal. Aug. 10,
   2009),
   *disapproved of on other grounds by Drenckhahn v. Costco Wholesale Corp.*,
   No. 2:08-CV-01408-JHN-SS, 2012 WL 12952720 (C.D. Cal. May 4, 2012)........................15

20

*Serrano v. Unruh*,
   32 Cal. 3d 621 (1982) ........................................................................................................12

21

22

*Shubin v. Farinelli Fine Antiques Corp.*,
   No. C 15–01401 LB, 2015 WL 3464443 (N.D. Cal. May 29, 2015) (Beeler, J.).......................7

23

24

*Smith v. Payne*,
   No. C 12–01732 DMR, 2013 WL 1615850 (N.D. Cal. Apr. 15, 2013)....................................7

25

*Stanford Daily v. Zurcher*,
   64 F.R.D. 680 (N.D. Cal. 1974).....................................................................................16, 18

26

27

*Thomas v. Fry's Elecs., Inc.*,
   400 F.3d 1206 (9th Cir. 2005).............................................................................................5

28

DEFENDANT'S MOT. AND MEM. FOR
ANTI-SLAPP FEES & COSTS
CASE NO. 3:17-CV-04002-LB

1

2

**TABLE OF AUTHORITIES**
(continued)

Page(s)

3

4

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ..................................................................................7

5

*Wanland v. Law Offices of Mastagni, Holstedt & Chiurazzi*,
    141 Cal.App.4th 15 (2006) .......................................................................................8

6

7

8

*Wynn v. Chanos*,
    No. 14-CV-04329-WHO, 2015 WL 3832561 (N.D. Cal. June 19, 2015), *aff'd*,
    685 F. App'x 578 (9th Cir. 2017) ...............................................................11, 13, 15

9

*Xu v. Yamanaka*,
    No. 13-CV-3240 YGR, 2014 WL 3840105 (N.D. Cal. Aug. 1, 2014) ......................7

10

**STATUTES**

11

Cal. Civ. Proc. Code § 425.16(a) ......................................................................................5

12

Cal. Civ. Proc. Code § 425.16(c)(1).........................................................................1, 5, 18

13

**OTHER AUTHORITIES**

14

15

John Leubsdorf, *The Contingency Factor in Attorney Fee Awards*, 90 Yale L.J.
    473 (1981) ..............................................................................................................17

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S MOT. AND MEM. FOR
ANTI-SLAPP FEES & COSTS
CASE NO. 3:17-CV-04002-LB

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs Open Source Security, Inc. and Bradley Spengler sued Defendant Bruce Perens to bully him from expressing his opinions that Plaintiffs' business practices violate Open Source licensing conditions and to discourage others from expressing the same opinions.  Rather than allowing the public to judge Plaintiffs' contrary opinions through public debate, Plaintiffs tried to "win" the argument on this unsettled legal issue by suing him.  But the parties' disagreement is one that should have remained in the court of public opinion.  As this Court held, Plaintiffs' claims are inactionable because Mr. Perens's statements were opinions and not plausibly defamation.  On January 24, 2018, the Court entered a final judgment of dismissal with prejudice as to all of Plaintiffs' claims.

Mr. Perens now moves to recover mandatory attorneys' fees and costs under California's anti-SLAPP law, Cal. Civ. Proc. Code § 425.16(c)(1).  Under that provision, a prevailing defendant in an anti-SLAPP case "shall be entitled" to his reasonable attorneys' fees and costs.  This mandatory fee-shifting plays a critical role in furthering the goals of the anti-SLAPP law to protect freedom of expression from being chilled via lawsuit, by deterring the filing of baseless SLAPP suits and facilitating the retention of competent defense counsel who can properly defend cases targeting public participation and enable defendants to resist attempts to silence them.

Plaintiffs concede that Mr. Perens is the prevailing party and his anti-SLAPP motion should be granted.  Mr. Perens also showed through his previous motions that Plaintiffs' claims targeted Mr. Perens's free speech activity on matters of public concern protected by the anti-SLAPP law, as the Court acknowledged in its December 21, 2017 Order.  And because the Court found each of Plaintiffs' claims inactionable and subsequently entered a judgment of dismissal with prejudice, Plaintiffs cannot demonstrate a likelihood of prevailing on the merits.  Because each one of Plaintiffs' dismissed claims was predicated on the same protected free speech activity, all attorneys' fees and expenses accrued defending Mr. Peresn in the anti-SLAPP litigation are therefore recoverable.

While the amount of attorneys fees sought by Mr. Perens are significant the hours expended are warranted based on the nature and complexity of the case, and the rates are

1    reasonable based on the experience and quality of the counsel needed to defend against Plaintiffs'

2    claims.  Courts have previously found similar rates (including O'Melveny rates) reasonable.

3        The stakes in this case were high:  Plaintiffs sought over $3 million in damages from Mr.

4    Perens, an individual, and they sought to enjoin him from continuing to express his opinions on

5    Open Source matters where Mr. Perens holds expertise.  Throughout the course of this suit,

6    Plaintiffs also attacked Mr. Perens's integrity and character by accusing him of intentionally or

7    recklessly making false statements on a subject within his professional expertise.  Faced with

8    these serious claims, Mr. Perens understandably turned to Heather Meeker, an Open Source

9    licensing expert with whom Mr. Perens has a long-standing professional relationship, and her

10   colleagues at O'Melveny & Myers LLP, a top litigation firm with substantial defamation and anti-

11   SLAPP experience, and experience in Open Source.  O'Melveny assumed risk in this litigation as

12   well.  Although Mr. Perens could not afford the firm's standard rates, O'Melveny believed in the

13   importance of his case and agreed to enter into an alternative fee arrangement under which Mr.

14   Perens would pay a small discounted flat fee, and the firm risked that it would not be fully

15   compensated for its work unless it successfully defeated Plaintiffs' claims and demonstrated that

16   the claims were subject to anti-SLAPP.

17       Plaintiffs also contributed to the number of hours and total fees incurred by their litigation

18   tactics.  After Mr. Perens filed his first motion to dismiss and strike, showing that Plaintiffs'

19   claims were fundamentally flawed, Plaintiffs could have allowed the Court to decide whether

20   there was a legal basis for Plaintiffs to proceed.  Instead, Plaintiffs filed another complaint that

21   did not address the core deficiencies but added more facts and theories to address, followed by

22   multiple unnecessary and procedurally unusual filings.

23       Mr. Perens therefore seeks the full amount of fees and costs incurred under the fee

24   arrangement in this case, as set forth below.

25   **I.    BACKGROUND**

26       Plaintiff OSS filed this lawsuit on July 17, 2017, asserting four causes of action because it

27   disagreed with Mr. Perens's opinions expressed on his blog, personal website, and on another

28   website, Slashdot.  (ECF No. 1, Compl., at ¶¶ 42–75.)  Plaintiffs targeted Mr. Perens's opinions

1  that OSS distributes its security patch software under policies that restricted further distribution,

2  in violation of section 6 of the GPLv2 Open Source license and thereby exposed customers to risk

3  for breach of contract and copyright infringement.  Compl. ¶¶ 21–23.  GPLv2 section 6 is a

4  provision that has never been construed by a court of law and that has been a topic of public

5  debate in the Open Source community and elsewhere.  On September 18, Mr. Perens moved to

6  strike the Complaint under California's anti-SLAPP statute and to dismiss the Complaint under

7  Federal Rule of Civil Procedure 12(b)(6) because OSS's claims targeted conduct protected by

8  California's anti-SLAPP law; OSS's defamation claims were based on non-actionable statements

9  of opinion; OSS's false light and intentional interference claims were duplicative of its

10 defamation claims; corporate entities cannot sue for false light invasion of privacy under

11 California law; and certain OSS factual allegations were legally deficient.  (ECF No. 11, First

12 Anti-SLAPP Mot., at 7–22.)  Plaintiffs then filed a First Amended Complaint (ECF No. 18, FAC)

13 that asserted the same fundamentally flawed claims as the original Complaint but added 12 pages

14 of factual allegations and theories, and substituted Mr. Spengler for OSS to fix the false light

15 claim and included Mr. Spengler on the tortious interference claim.  Despite Plaintiffs' failures to

16 remedy the fundamental flaws in the original complaint, Mr. Perens then was required to prepare

17 a new motion under anti-SLAPP statute and Rule 12(b)(6) to address Plaintiffs' new allegations

18 and therefore filed a withdrawal of the original motion as mooot.  (*See* ECF No. 21, Def's Notice

19 of Withdrawal of Mot.; *see also* ECF No. 30, Second Anti-SLAPP Mot.)

20      Just nine days after amending the complaint, and before Mr. Perens filed his second anti-

21 SLAPP motion, OSS filed a motion for partial summary judgment on one plaintiff and one claim

22 and noticed it before Mr. Perens's motion would be heard.  (ECF No. 24, MPSJ.)  Plaintiffs then

23 refused to defer briefing on that partial summary judgment motion until after Mr. Perens's

24 dispositive motions had been resolved, maintaining that judicial economy would be best served

25 by proceeding on the partial summary judgment motion first.  (ECF No. 26, Mot. to Continue, at

26 2.)  As a result, Mr. Perens was required to prepare a summary judgment opposition and for a

27 summary judgment hearing before the Court could address the fundamental flaws in Plaintiffs'

28

DEFENDANT'S MOT. AND MEM. FOR
ANTI-SLAPP FEES & COSTS
CASE NO. 3:17-CV-04002-LB

1  claims.  Plaintiffs' counsel later admitted that the partial summary judgment motion was a tactic

2  to elicit declarations from Mr. Perens.  (*See* Dec. 14, 2017 Hr'g Tr. at 6:25–7:4.)

3      Plaintiffs continued to make the litigation more complicated and more burdensome at

4  every turn.  For example, OSS's Reply in support of its Motion for Partial Summary Judgment

5  contorted Mr. Perens's words into a purported "admission" of allegedly material facts.  (ECF No.

6  37, Reply ISO MPSJ, at 2–5.)  When Mr. Perens explained to OSS how it had misconstrued his

7  statements and provided supporting documentation, OSS opposed Mr. Perens's request to present

8  that information to the Court, even going so far as to accuse Mr. Perens of perjury.  (ECF No. 42,

9  Opp'n to Mot. for Leave, at 4.)  In connection with Mr. Perens's Second Anti-SLAPP motion,

10 Plaintiffs then submitted supplemental briefing of their own to discuss a ten-year-old case that

11 Plaintiffs contended was the one case relevant to the merits of Plaintiffs' claims, even though

12 Plaintiffs failed to cite it in any of their four previous briefs on the merits.  (*See* ECF Nos. 45, 45-

13 1; *see also* ECF Nos. 20, 24, 37, 38.)  Plaintiffs filed that brief two days before the hearing on the

14 parties' motions (*see* ECF No. 45 (filed Dec. 12, 2017) *and* ECF No. 48 (hearing held Dec. 14,

15 2017), again forcing Mr. Perens to respond.

16     Following a combined hearing on the parties' motions, the Court granted Mr. Perens's

17 motion to dismiss and denied Mr. Perens's anti-SLAPP without prejudice.  (ECF No. 53, Order

18 (1) Granting Defendant's Motion to Dismiss, (2) Denying Defendant's Motion to Strike Without

19 Prejudice, and (3) Denying Plaintiffs' Summary-Judgment Motion.)  The Court explained that

20 Plaintiffs' defamation claims failed as a matter of law because the accused statements were

21 "opinions that are not actionable libel," and that Plaintiffs' failure on their defamation claims

22 necessarily entailed failure on their claims for false light and intentional interference.  (Order at 2,

23 17–18.)  As to Mr. Perens's anti-SLAPP motion, the Court explained that it was denied "without

24 prejudice" because Plaintiffs' were given leave to amend their claims in light of the "liberal"

25 federal amendment rules.  (*Id.* at 18.)  Nonetheless, the Court agreed that Mr. Perens had

26 demonstrated that his statements were "made in a public forum and concern issues of public

27 interest" and found that Plaintiffs "ha[d] not shown a probability of prevailing on their claims."

28 (*Id.*)  The Court also noted that it had "difficulty seeing how" Plaintiffs' claims could "elude

4

DEFENDANT'S MOT. AND MEM. FOR
ANTI-SLAPP FEES & COSTS
CASE NO. 3:17-CV-04002-LB

1   California's anti-SLAPP statute" and that the Court "would likely grant the anti-SLAPP motion"

2   "[w]ere the pleadings to remain in their current form."  (*Id.*)

3       Plaintiffs did not submit their claims in any other form, because they could not fix their

4   fundamental flaws.  Instead, Plaintiffs asked the Court to enter a final judgment of dismissal with

5   prejudice and conceded that Mr. Perens "should be deemed the prevailing party for the purposes

6   of awarding attorneys' fees and costs pursuant to California's anti-SLAPP statute, pursuant to the

7   Court's December 21, 2017 Order." (ECF No. 57, Request for Final Judgment, at 2.)   On January

8   24, 2018, the Court entered judgment "in favor of the defendant and against the plaintiffs" and

9   dismissed the case with prejudice.  (ECF No. 58, Judgment.)  On February 5, 2018, Plaintiffs

10  filed a notice of appeal with the Ninth Circuit.  (ECF No. 59.)  Mr. Perens now timely files this

11  motion for mandatory fees under California's anti-SLAPP statute.

12  **II.**    **AN AWARD OF FEES TO MR. PERENS IS MANDATORY BECAUSE MR.**
        **PERENS IS A PREVAILING PARTY UNDER THE ANTI-SLAPP LAW.**
13

14      An award of fees to Mr. Perens is mandatory under California's anti-SLAPP statute,

15  which provides that a prevailing defendant "shall be entitled" to recover his or her attorney's fees

16  and costs.  Cal. Civ. Proc. Code § 425.16(c)(1); *see also Thomas v. Fry's Elecs., Inc.*, 400 F.3d

17  1206, 1206–07 (9th Cir. 2005) (holding that anti-SLAPP fee-shifting applies in federal court).

18  California's anti-SLAPP statute aims to encourage participation in matters of public participation

19  and to address lawsuits that target valid exercise of constitutional rights, including freedom of

20  speech. *See* Cal. Civ. Proc. Code § 425.16(a).

21      Mandatory fee-shifting furthers the anti-SLAPP statute's purposes "by imposing the

22  litigation costs on the party seeking to 'chill the valid exercise of the constitutional right[] of

23  freedom of speech….'"  *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131 (2001) (quoting Cal. Civ.

24  Proc. Code §425.16(a)).  Mandatory fee-shifting also encourages private representation in SLAPP

25  cases, protecting the public interest in public participation including situations when a SLAPP

26  defendant is unable to afford fees or the lack of potential monetary damages precludes a standard

27  contingency fee arrangement.  *Id.*  And the statute's purposes are served by fee-shifting here.

28  Plaintiffs sued Mr. Perens because, as the Court acknowledged, he "voiced an opinion" on his

DEFENDANT'S MOT. AND MEM. FOR
ANTI-SLAPP FEES & COSTS
CASE NO. 3:17-CV-04002-LB

1   blog about an unsettled legal issue, *see* Order at 14, and Plaintiffs have sought more than $3

2   million in damages from Mr. Perens personally.  FAC at 21.  Plaintiffs also attacked Mr. Perens's

3   personal and professional integrity in the lawsuit.  (*See, e.g.,* Opp'n to Mot. for Leave at 4.)  The

4   mandatory fees provision also encouraged private representation in this case because it allowed

5   Mr. Perens to retain quality experienced counsel by entering into an alternative fee arrangement.

6   *See* Drummond Hansen Decl., ¶ 28.

7        It is undisputed that Mr. Perens is a prevailing party for anti-SLAPP fee-shifting purposes.

8   Plaintiffs agree that Mr. Perens "should be deemed the prevailing party for the purposes of

9   awarding attorneys' fees and costs," and they proposed his anti-SLAPP motion should be granted.

10  (*See* Request for Final Judgment at 2, 3.)  As the Court held, the claims Plaintiffs advanced had

11  no legal merit.  (*See* Order at 17, 18.)

12       Mr. Perens also clearly is a prevailing party under the two-step analysis that applies to

13  anti-SLAPP motions.  As Mr. Perens showed in his anti-SLAPP motion, (1) Plaintiffs' claims

14  targeted activity protected by the anti-SLAPP statute—namely, the publication of written

15  statements in a public forum in connection with an issue of public interest, and (2) Plaintiffs

16  cannot demonstrate a probability of prevailing on the merits.  (*See* Second Anti-SLAPP Mot. at

17  9–13.)  While the Court denied Mr. Perens's anti-SLAPP motion without prejudice to allow

18  Plaintiffs leave to amend, the Court, in considering Mr. Perens' anti-SLAPP motion, found that

19  "Mr. Perens's statements were made in a public forum and concern issues of public interest."

20  (Order at 18.)  As Mr. Perens's anti-SLAPP motion demonstrated, his blog posts were statements

21  made in a public forum, and they were made in connection with an issue of public interest,

22  involving the most common Open Source license in the world and the right of redistribution

23  under that license, which goes to the very heart of the Open Source project.  (*See* Second Anti-

24  SLAPP Mot. at 9–12.)  Moreover, Plaintiffs cannot demonstrate a probability of prevailing on the

25  merits.  As the Court has held, Plaintiffs' claims are directed toward inactionable statements of

26  opinion.  (Order at 12–13.)  While the Court allowed Plaintiffs leave to amend because federal

27  pleading standards are lenient (Order at 18), Plaintiffs could not amend their claims to make them

28  meritorious, and Plaintiffs' claims now have been dismissed with prejudice.  (*See* Judgment.)  An

DEFENDANT'S MOT. AND MEM. FOR
ANTI-SLAPP FEES & COSTS
CASE NO. 3:17-CV-04002-LB

order dismissing a claim with prejudice establishes that the claim fails as a matter of law; Plaintiffs therefore cannot meet their burden of demonstrating a probability of prevailing on the merits.  *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1110 (9th Cir. 2003) (holding that affirmance of Rule 12(b)(6) dismissal meant plaintiff could not demonstrate probability of prevailing under anti-SLAPP standard).

Nor does the Court's previous denial of Mr. Perens's anti-SLAPP motion without prejudice change the analysis.  The Court, moreover, only denied Mr. Perens's anti-SLAPP without prejudice to allow Plaintiffs an opportunity to amend, acknowledging that it was "difficult[]" to see how the pleadings could "elude" application of the anti-SLAPP law.  (Order at 18.)  As this Court has recognized, where an anti-SLAPP motion is denied without prejudice, the moving party must still be allowed to bring its anti-SLAPP attorney's fees motion after judgment is entered.  *See Shubin v. Farinelli Fine Antiques Corp.*, No. C 15–01401 LB, 2015 WL 3464443, at *4 (N.D. Cal. May 29, 2015) (Beeler, J.); *Art of Living Found. v. Does 1–10*, No 5:10-cv-05022-LHK, 2012 WL 1565281, at *24–25 (N.D. Cal. May 1, 2012).  In *Shubin*, this Court dismissed a counterclaim without prejudice under Rule 12(b)(6), permitting the counterplaintiffs to seek leave to file amended counterclaims if they learned of new facts or evidence.  2015 WL 3464443, at *4.  Because of the possibility that counterplaintiffs would be able to amend their claim, the Court denied counterdefendants' anti-SLAPP motion as premature.  *Id.*  The Court explained, however, that counterdefendants would be entitled to file an anti-SLAPP attorneys' fees motion at the conclusion of the litigation after entry of judgment.  *Id.*  Just as it did in *Shubin*, the Court declined to grant Mr. Perens's anti-SLAPP motion because it could not conclusively state that Plaintiffs could not state a meritorious claim.  *Compare id. with* Order at 18.  Because the litigation is now concluded and a final judgment has been entered in Mr. Perens's favor, he may now recover his fees and costs.[1]

---

[1] Plaintiffs' appeal should not delay determination of the fee motion.  Ruling on Mr. Perens's fees motion now "promotes judicial economy by allowing any appeal of the fee award to be consolidated with [Plaintiffs'] merits appeal."  *Smith v. Payne*, No. C 12–01732 DMR, 2013 WL 1615850, at *2 (N.D. Cal. Apr. 15, 2013); *Xu v. Yamanaka*, No. 13-CV-3240 YGR, 2014 WL 3840105, at *5 (N.D. Cal. Aug. 1, 2014).

1

2

### III.  THE COURT SHOULD AWARD THE MAJORITY OF FEES AND COSTS INCURRED IN DEFENDING THIS LITIGATION.

3

The anti-SLAPP statute is intended to compensate a prevailing defendant "for expenses

4

incurred in extracting herself from" a SLAPP suit, and the fee-shifting provision is "broadly

5

construed" to permit recovery.  *Graham-Sult v. Clainos*, 756 F.3d 724, 752 (9th Cir. 2014)

6

(quoting *Wanland v. Law Offices of Mastagni, Holstedt & Chiurazzi,* 141 Cal.App.4th 15, 22

7

(2006)).  If the entire lawsuit is subject to the anti-SLAPP motion, then all reasonable attorneys'

8

fees and expenses incurred in litigating it are recoverable.  *See id.*  In *Graham-Sult*, for instance,

9

the Ninth Circuit affirmed an award of anti-SLAPP attorneys' fees for time spent on document

10

review, initial disclosures, and miscellaneous filings.  *Id.*  The court explained that all of these

11

fees were incurred "in responding to a lawsuit the district court found to be baseless," and that the

12

purposes of the anti-SLAPP law were best served by deeming all such fees recoverable.  *Id.*  In

13

keeping with that interest in providing full compensation to prevailing defendants, an anti-SLAPP

14

fee award should also include "fees on fees"—*i.e.*, fees incurred in litigating the fees motion.  *See*

15

*Ketchum*, 24 Cal.4th at 1141–42 (establishing availability of fees on fees in anti-SLAPP context).

16

All Plaintiffs' claims targeted the same protected conduct by Mr. Perens, and all

17

Plaintiffs' claims were properly dismissed with prejudice.  (*See* Order at 17–18; Judgment.)

18

Because Plaintiffs' entire lawsuit was subject to Mr. Perens's anti-SLAPP motion, Mr. Perens's

19

attorneys' fees in defending this litigation—including fees not specifically incurred in preparation

20

of Mr. Perens's anti-SLAPP motion--must be granted.[2]  Accordingly, Mr. Perens's attorney's fees

21

associated with defending this lawsuit are subject to the anti-SLAPP mandatory fee provision,

22

and the only question is how much should be recovered.

### IV.  MR. PERENS REQUESTS REASONABLE FEES INCURRED IN DEFENDING THIS LITIGATION.

23

24

25

Because an award of attorney's fees is mandatory under the anti-SLAPP law, the only task

26

that remains for the Court is to determine Mr. Perens's reasonable fees.

27

28

[2] Mr. Perens, however, does not seek recovery from Plaintiffs for fees incurred in preparing Mr. Perens's concurrently filed sanctions motion against Plaintiffs' counsel.

Mr. Perens requests reasonable fees calculated under the lodestar adjustment method established by anti-SLAPP and other fee recovery cases. *See, e.g., Ketchum*, 24 Cal. 4th at 1131–32, 1136 (describing lodestar adjustment method and holding it applicable to anti-SLAPP cases); *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). Under the lodestar adjustment method, a court first determines the "lodestar figure" by multiplying counsel's reasonable hourly rate by the number of hours reasonably expended on the litigation. *Ketchum*, 24 Cal. 4th at 1131–32. Fee awards calculated using this method are "presumptively reasonable." *Gonzalez*, 729 F.3d at 1208–09, regardless of the overall size of the resulting award, see *Graham-Sult*, 756 F.3d at 751–52; *Maloney v. T3Media, Inc.*, No. CV 14-05048-AB VBKX, 2015 WL 3879634, at *10 (C.D. Cal. May 27, 2015) ("[A] fee award is not unreasonable simply because it involves a lot of money."). Where the lodestar figure does not take into account some relevant aspect of the litigation, however, the court may adjust the award accordingly. *Ketchum*, 24 Cal. 4th at 1132.

Mr. Perens seeks an award of $667,665.25 in fees. That figure consists of a lodestar figure of $478,977.50—based on 833.9 hours reasonably expended on this litigation multiplied by his attorneys' customary hourly rates, which are in line with prevailing market rates for comparable work performed by attorneys of comparable quality—and a $188,687.75 success fee provided for in the alternative fee arrangement Mr. Perens entered with his counsel.[3]

### A.   Mr. Perens Seeks an Award Based on Hours Reasonably Expended in Defending the Case Considering Its Size and Complexity.

Mr. Perens seeks to recover fees for 833.9 hours his counsel has dedicated to litigating this case to date, based on contemporaneously created billing records. *See* Drummond Hansen Decl. ¶¶ 20–27 & Exs. A–C . Of those hours, 137.9 were expended preparing Mr. Perens's initial motion to dismiss and strike. The remaining 696 hours were spent preparing another motion to dismiss and strike to address Plaintiffs' amended complaint, responding to Plaintiffs' motion for

---

[3] In his reply brief, Mr. Perens will supplement this motion with additional fees and costs incurred in connection with this motion—all of which are recoverable. *See Ketchum*, 24 Cal. 4th at 1141 (fees recoverable under SLAPP statute include "those necessary to establish and defend the fee claim").

partial summary judgment and other filings, preparing for the Court's combined summary judgment and motion to dismiss hearing, and handling case management.  A breakdown is provided below:

| Task | Hours | Fees Incurred |
|---|---|---|
| First Anti-SLAPP Motion | 137.9 | $83,606.50 |
| Second Anti-SLAPP Motion | 77.6 | $43,669.50 |
| Second Anti-SLAPP Reply | 109.5 | $60,803.50 |
| Response to Plaintiffs' Supplemental Brief in Opposition to Anti-SLAPP Motion | 19.6 | $10,798.50 |
| Opposition to Motion for Partial Summary Judgment | 87.5 | $49,813.00 |
| Surreply to Motion for Partial Summary Judgment | 29.2 | $17,477.00 |
| Combined Hearing on Anti-SLAPP Motion, Motion to Dismiss, and Motion for Partial Summary Judgment | 141.6 | $77,925.50 |
| Case Management | 86.9 | $50,462.50 |
| Settlement | 12.3 | $7,961.50 |
| Motion for Attorneys' Fees Under Anti-SLAPP Law | 131.8 | $76,602.00 |
| **Total** | 833.9 | $478,977.50 |

As a general matter, a district court "should defer to the winning lawyer's professional judgment" as to how many attorney hours the case required.  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).  To deny compensation, "it must appear that the time claimed is obviously and convincingly excessive under the circumstances." *Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1081 (N.D. Cal. 2010) (quoting *Perkins v. Mobile Housing Bd.*, 847 F.2d 735, 738 (11th Cir. 1988)).

The hours expended by Mr. Perens's counsel, moreover, are reasonable in light of the nature and complexity of this litigation.  *Cf. Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, No. 12-CV-04634-SI, 2015 WL 4932248, at *5 (N.D. Cal. Aug. 18, 2015).  In *Piping Rock*, for example, the court found that 217 hours of legal work related to an anti-SLAPP motion was reasonable, in part because "most anti-SLAPP motions . . . tend to present complex issues." *Id.*

The court noted that the motion in that case was no exception, given that it involved " roughly a dozen defamatory statements, three causes of action, and complex issues of law—such as whether certain websites constitute a 'public forum.'" *Id.* Here, the First Amended Complaint included a non-exhaustive list of nine allegedly defamatory statements (FAC ¶ 49), asserted four causes of action (FAC at 1), and involved complex legal issues, including the public forum issue noted in *Piping Rock*, the public interest in the interpretation and enforcement of Open Source software licenses, and the significance (if any) of Mr. Perens's expertise and of his alleged "admission" on the fact-versus-opinion analysis (*see* Second Anti-SLAPP Mot. at 9–13). Furthermore, Plaintiffs sought to recover over $3 million in damages from Mr. Perens—a vast amount for an individual defendant. (*See* FAC at 21.) Plaintiffs' allegations also threatened Mr. Perens's personal and professional reputation, as defamation claims inevitably carry significant reputational risks for defendants. *Cf. Wynn v. Chanos*, No. 14-CV-04329-WHO, 2015 WL 3832561, at *3 (N.D. Cal. June 19, 2015) (finding it "especially" reasonable to retain two law firms in defamation SLAPP suit given that "an individual's personal reputation [was] at stake"), *aff'd*, 685 F. App'x 578 (9th Cir. 2017). Here, Plaintiffs' defamation claims were directed to Mr. Perens's professional expertise (FAC ¶¶ 33-69), and Plaintiffs also attacked Mr. Peres personally, suggesting without any basis that Mr. Perens had "admitted" that his opinions were false and had "resorted to perjury" when he sought to correct Plaintiffs' misinterpretation. (*See, e.g.,* Reply ISO MPSJ at 2–5; ECF No. 42, Opp'n to Mot. for Leave to File Surreply, at 4.) Given the seriousness of the accusations, Mr. Perens's counsel properly invested appropriate time in defending Mr. Perens against them.

The amount of hours required, moreover, were driven by Plaintiffs' own litigation tactics in filing unnecessary and combative filings. For example, after Mr. Perens filed his first anti-SLAPP motion, only $83,606.50 in fees had been incurred. Rather than allowing the Court to efficiently consider the parties' fundamental dispute regarding the inactionability of  Plaintiffs' claims, however, Plaintiffs filed an amended complaint adding new facts and a new party but otherwise failing to correct the fundamental legal deficiencies of Plaintiffs' claims. Mr. Perens thus had to prepare and file a new motion to dismiss and anti-SLAPP motion addressing new

1  facts added by the First Amended Complaint.  And before Mr. Perens could file another anti-

2  SLAPP motion and notice it for a new hearing date, Plaintiff OSS filed a motion for partial

3  summary judgment.  The motion for partial summary judgment could not plausibly resolve any

4  disputed issues, but Plaintiffs nevertheless insisted the parties fully brief the summary judgment

5  issues before the Court determined whether Plaintiffs had even plausibly stated a claim.  Mr.

6  Perens's counsel was thus forced to prepare an opposition (and ultimately a surreply) regarding

7  summary judgment before Mr. Perens's motion to dismiss and anti-SLAPP was heard, as well as

8  to prepare to argue the motion at the same time as Mr. Perens's Second Anti-SLAPP Motion.

9  (*See* ECF No. 28, Stip. Request re Revised Schedule.)  A party "cannot litigate tenaciously and

10  then be heard to complain about the time necessarily spent by [an opposing party] in response."

11  *Serrano v. Unruh*, 32 Cal. 3d 621, 638 (1982) (internal quotation marks omitted).  In *Serrano*, the

12  Court held that fees on fees were recoverable under California Code of Civil Procedure section

13  1021.5, reasoning that the length of the fee litigation "truly lies in [the opposing party's hands"

14  and a contrary rule "would permit the fee to vary with the nature of the opposition."  *Id.* at 638–

15  39.  As another distraction, Plaintiffs filed a supplemental brief two days before the hearing on

16  Mr. Perens's anti-SLAPP motion (ECF No. 45, Mot. for Leave to File Supp. MPA), causing Mr.

17  Perens's counsel to devote additional time and resources responding to Plaintiffs' last-minute

18  arguments.  Plaintiffs cannot now complain about any minimal inefficiencies stemming from their

19  own behavior of filing last minute motions.  *See Maloney*, 2015 WL 3879634, at *7 (rejecting

20  objection to number of hours spent preparing opposition to "what was, in effect, an *ex parte*

21  application" requiring rushed opposition).  The case also was complex in that Plaintiffs' briefing

22  sometimes presented a shotgun approach that failed to connect factual allegations to the legal

23  elements they supposedly supported, and Plaintiffs theories shifted over the course of briefing.

24  (*See, e.g.,* MPSJ at 5–9; Plaintiffs' Opposition to Motion to Dismiss (ECF. No. 38, Opp'n to

25  MTD, at 24.)  Defense counsel's efforts to tease out and coherently articulate Plaintiffs'

26  arguments further increased the amount of time needed to effectively respond to them.  Given the

27  stakes at issue in the litigation, Mr. Perens's counsel appropriately evaluated and addressed each

28  argument Plaintiffs raised.  *See Maloney*, 2015 WL 3879634 at *10 & n.6 (finding that requested

1 rates and hours, though high, were "reasonable under the circumstances" and stating courts

2 "cannot ignore the stakes of the lawsuit in assessing whether the cost of defending it was

3 reasonable").

4       Mr. Perens's counsel hours are also supported by counsel's efforts to staff this matter

5 appropriately and delegate most work to junior associates with lower billable rates.  Courts

6 consider staffing decisions in determining whether hours are reasonable.  In *Wynn v. Chanos*, for

7 instance, the court found the attorney hours billed excessive in part because three partners

8 generated nearly half of those hours.  2015 WL 3832561, at *5.  Here, by contrast, the vast

9 majority of the attorney hours requested (82%) were billed by junior associates.  Drummond

10 Hansen Decl. Exs. A-B.  Initially, only one associate was staffed on the matter.  When it became

11 appropriate to add associates to address Plaintiffs' amended complaint, motion for summary

12 judgment, and later filings, Mr. Perens's counsel added two first-year associates, who bill at some

13 of the lowest attorney rates in the firm.  Drummond Hansen Decl. ¶ 19.  The partner with the

14 highest billing rate, on the other hand, generated only .01% percent of the hours billed.

15 Drummond Hansen Decl. Exs. A-B.

16       Mr. Perens's counsel exercised billing judgment and voluntarily omitted hours actually

17 expended on the litigation from this fees application.  Drummond Hansen Decl. ¶ 26.  Based on

18 this, deference is especially appropriate.  *See Pac. Gas & Elec. Co. v. SEIU Local 24/7*, No. C

19 10–05288 SBA (LB), 2012 WL 4120255, at *6 (N.D. Cal. May 25, 2012) (Beeler, J.).

20       The hours expended by Mr. Perens's counsel therefore are reasonable.

21       **B.**      **The Requested Hourly Rates Are Reasonable.**

22       The requested fee award is based on the 2017 and 2018 standard hourly rates of Mr.

23 Perens's counsel at O'Melveny.  *See* Drummond Hansen Decl. Exs. A-B (providing full rate

24 details).  Those rates are reasonable in light of the rates charged for work of similar complexity

25 performed by attorneys of comparable skill, experience, and reputation in the Bay Area.

26 Declaration of Paul Covey ("Covey Decl.") ¶¶ 7–8; *see also Gonzalez*, 729 F.3d at 1206 (stating

27 standard); *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454–55 (9th Cir. 2010) (relevant

28 market for rate determination is the district in which the court sits).

13

1    Mr. Perens is represented by attorneys from O'Melveny.  O'Melveny is widely

2  acknowledged as a top law firm, both nationally and within the Bay Area, and is recognized for

3  its expertise in complex litigation in both state and federal court.  Drummond Hansen Decl. ¶ 7.

4  Mr. Perens retained O'Melveny to defend him in this high-stakes litigation because of his

5  longstanding professional relationship with O'Melveny partner Heather Meeker, as well as

6  O'Melveny's depth of experience with, and resources to handle, federal court litigation and the

7  issues raised by this case in particular, such as defamation law and Open Source licensing

8  provisions.  *See* Drummond Hansen Decl. ¶¶ 7, 10.  The attorneys staffed on this matter

9  contributed significant experience and value.  As an internationally-known expert on open source

10  licensing with over 20 years of legal experience, Ms. Meeker's expertise in Open Source matters

11  enabled her to provide valuable insight into the flaws in Plaintiffs' allegations and the public

12  interest in Mr. Perens's opinions.  *See* Drummond Hansen Decl. ¶ 10.  O'Melveny partner

13  Melody Drummond Hansen is an accomplished civil litigator with experience in defamation and

14  Open Source matters.  *See* Drummond Hansen Decl. ¶ 9.  And O'Melveny associate Cara

15  Gagliano has placed a special focus on First Amendment issues—including in the anti-SLAPP

16  and defamation contexts—both in her work at O'Melveny and in her law school internships and

17  coursework.  *See* Drummond Hansen Decl. ¶ 11.  First-year associates Marissa Rhoades and Eric

18  Ormsby likewise contributed experience and skills appropriate to their level and were

19  appropriately leveraged in later stages of the case.  *See* Drummond Hansen Decl. ¶¶ 7-19 for

20  more information about Mr. Perens's legal team.

21    The hourly rates requested for O'Melveny attorneys and legal support staff reflect their

22  standard rates charged to litigation clients.  Covey Decl. ¶¶ 7–8.  These hourly rates sought are

23  reasonable in light of the hourly rates used for lodestar calculations in other cases.  Courts in

24  California have recognized that O'Melveny's rates are reasonable under a lodestar analysis. For

25  example, the Central District of California recently approved 2013 through 2016 billing rates for

26  several other O'Melveny attorneys—which ranged from $870 to $975 for partners, $415 to $655

27  for associates, and $225 to $285 for support staff—and noted that "[c]ourts have recognized that

28  fees charged at large, national firms may exceed those of smaller, local firms."  *Colony Cove*

DEFENDANT'S MOT. AND MEM. FOR
ANTI-SLAPP FEES & COSTS
CASE NO. 3:17-CV-04002-LB

1    *Props., LLC v. City of Carson*, No. CV 14-3242 PSG (PJWx), Dkt. 225, at *11 (C.D. Cal. Aug.

2    15, 2016).  Furthermore, courts within the Northern District have approved hourly rates of up to

3    $1095 for partners, and $770 for associates.  *See, e.g.*, *Wynn*, 2015 WL 3832561, at *2 (approving

4    Arnold & Porter's hourly rates of up to $1085 for partners and $671 for associates in anti-SLAPP

5    case); *Banas v. Volcano Corp.*, 47 F. Supp. 3d 957, 965 (N.D. Cal. 2014) (approving Cooley's

6    hourly rates of $355 to $1,095 for associates and partners); *Logtale, Ltd. v. IKOR, Inc.*, No. 11-

7    CV-05452-EDL, 2016 WL 7743405, at *2 (N.D. Cal. Oct. 14, 2016) (citing Valeo Partners list of

8    sample rates from 2016, describing hourly rates for partners of up to $1,300 and associates up to

9    $770).

10        These rates are also comparable to those charged for similar work by other firms in the

11   Bay Area with similar reputation and ability.[4]   Covey Decl. ¶¶ 7–8.  Market survey data from

12   sources such as PricewaterhouseCoopers and Citibank demonstrate that the billing rates for these

13   attorneys and paralegals fall toward the midpoint of rates for other large firms in the Bay Area.

14   *See id.*

15        The rates also are reasonable based on the quality of the representation.  *See Blum v.*

16   *Stenson*, 465 U.S. 886, 899 (1984).  Here, Mr. Perens's counsel achieved a dismissal of all four

17   claims, with prejudice.  *See* ECF No. 58.  Furthermore, the Court's order granting Mr. Perens's

18   motion to dismiss relied on the reasoning and case law argued by Mr. Perens.  *Compare* ECF No.

19   53 at 14–18 *with* ECF No. 30 at 14–24.   The Court also agreed with Mr. Perens's arguments

20   regarding the applicability of the anti-SLAPP statute, despite allowing Plaintiffs an opportunity to

21   amend their complaint.  *See* ECF No. 53 at 18.

22        Based on the skill and expertise of defense counsel, comparable rates in the Bay Area, and

23

24   ───────────────
     [4] The survey data provided by these market research firms are proprietary and confidential, and

25   the terms of our agreements with the market data sources do not provide us with permission to
     file such survey data results or market data with the Court.  Courts have relied on declarations

26   from individuals within a law firm responsible for setting billing rates attesting to this data,
     without providing it, in determining that attorneys' rates are reasonable. *See, e.g. Samson v.*

27   *NAMA Holdings, LLC*, No. CV 0901433 MMM (PJWx), 2009 WL 10672765, at *5 (C.D. Cal.
     Aug. 10, 2009), *disapproved of on other grounds by Drenckhahn v. Costco Wholesale Corp.*, No.

28   2:08-CV-01408-JHN-SS, 2012 WL 12952720 (C.D. Cal. May 4, 2018).

                                                    DEFENDANT'S MOT. AND MEM. FOR
                                                    ANTI-SLAPP FEES & COSTS
                                                    CASE NO. 3:17-CV-04002-LB

1   the quality of the representation Mr. Perens received, the Court should find that the rates

2   requested by Mr. Perens were reasonable.

3       **C.    The Alternative Fee Agreement Warrants Upward Adjustment of the**
        **Lodestar Figure**

4

5       One of the most common reasons for applying an upward adjustment is the use of an

6   alternative fee arrangement, such as a contingent fee and/or a fixed (flat) fee. *See Graham v.*

7   *DaimlerChrysler Corp.*, 34 Cal. 4th 553, 579 (2004); *see also Gardner v. Schwarzenegger*, No.

8   A125000, 2010 WL 602534, at *4–6 (Cal. Ct. App. Feb. 22, 2010); *Stanford Daily v. Zurcher*, 64

9   F.R.D. 680, 685–86 (N.D. Cal. 1974).  Contingent-risk enhancements serve the important purpose

10  of "bring[ing] the financial incentives for attorneys enforcing important constitutional rights, such

11  as those protected under the anti-SLAPP provision, into line with incentives they have to

12  undertake claims for which they are paid on a fee-for-services basis." *Ketchum*, 24 Cal. 4th at

13  1132.

14      The terms of Mr. Perens's engagement provide for an alternative fee arrangement with a

15  low fixed cost to Mr. Perens for litigation of the anti-SLAPP and motion to dismiss, and a success

16  fee to O'Melveny for success on anti-SLAPP and dismissal.  Because Mr. Perens would not have

17  qualified for pro bono representation but nor could he afford to pay O'Melveny's standard hourly

18  rates, O'Melveny agreed to prepare and litigate his anti-SLAPP motion using an alternative fee

19  arrangement.  Covey Decl. ¶ 9.  Under the agreement, if Mr. Perens did not prevail on his anti-

20  SLAPP motion, he would pay only a substantially discounted flat fee for O'Melveny's

21  representation in that phase of the case. *Id.*  Success on the anti-SLAPP motion, on the other

22  hand, would entitle O'Melveny to a success fee of 50% to recover 1.5 times standard rates. *Id.*

23  O'Melveny thus bore the risk that it would be unable to recover fees beyond the significantly

24  discounted amount that the agreement obligated Mr. Perens to pay regardless of outcome.[5]  Also,

25

26  _____

27  [5] This also provides yet another reason for the court to credit defense counsel's judgment
    regarding the hours reasonably required to litigate this case. *See Stanford Daily*, 64 F.R.D. at 683
    (noting that attorneys litigating case for flat fee "had incentive to minimize rather than maximize

28  the amount of time spent on the case").

DEFENDANT'S MOT. AND MEM. FOR
ANTI-SLAPP FEES & COSTS
CASE NO. 3:17-CV-04002-LB

1  because O'Melveny would not recover fees if Mr. Perens did not prevail, O'Melveny had an

2  incentive to only perform work that is necessary under the circumstances of the case.

3        The California Supreme Court recognizes the important policy rationales for awarding

4  contingent-risk enhancements, both generally and in anti-SLAPP cases in particular.  *See, e.g.,*

5  *Ketchum v. Moses*, 24 Cal. 4th 1122 (2001).  The goal of fee awards based on the lodestar

6  adjustment method is to fully compensate counsel for the value of their work.  *Id.* at 1133.  But an

7  attorney "who both bears the risk of not being paid and provides legal services is not receiving the

8  fair market value of his work" if he is paid only for the second of these functions."  *Id.* (quoting

9  John Leubsdorf, *The Contingency Factor in Attorney Fee Awards*, 90 Yale L.J. 473, 480 (1981)).

10  A lodestar figure that is based on prevailing non-contingent hourly rates should therefore be

11  increased to reflect the greater fair market value of the representation, and courts regularly order

12  and uphold such awards.  *See, e.g., id.* at 1132; *Horsford v. Bd. of Trs. of Cal. State Univ.*, 132

13  Cal. App. 4th 359, 394–95 (2005); *Ctr. for Biological Diversity v. Cty. of San Bernardino*,  185

14  Cal. App. 4th 866, 899–900 (2010).  Because a fee award that does not account for contingent

15  risk will not capture the full market value of the representation, contingent-risk enhancements are

16  also critical to encouraging competent private representation for litigants of modest means in

17  cases—like this one—"involving enforcement of constitutional rights, but little or no damages."

18  *See Ketchum*, 24 Cal. 4th. at 1132–33, 1136.  That is especially true in the anti-SLAPP context,

19  where the fee applicant is in a defensive position and thus has no prospect of a damages award.[6]

20  *See id.* at 1131, 1136–37.

21        A contingency multiplier may be appropriate even where some amount of payment is

22  guaranteed.  In one California anti-SLAPP case, for instance, defense counsel agreed to accept a

23  $20,000 advance for work on the anti-SLAPP motion (and any appeal should it be denied) but to

24

---

25  [6] Similarly, *Ketchum* expressly rejected federal limits on contingency multipliers in part because
the structure of the anti-SLAPP fee-shifting provisions makes fee enhancements highly unlikely

26  to incentivize unmeritorious claims.  *See id.* at 1136–37.  When federal courts adjudicate fee
motions under California's anti-SLAPP law, *Ketchum*, not federal law, controls.  *See Mangold v.*

27  *Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478–79 (9th Cir. 1995) (holding that law governing fee
calculations is substantive for *Erie* purposes and affirming use of contingency multiplier that

28  federal law would prohibit).

DEFENDANT'S MOT. AND MEM. FOR
ANTI-SLAPP FEES & COSTS
CASE NO. 3:17-CV-04002-LB

1   otherwise represent the defendant on a contingency basis of a multiplier for fees that may be

2   recovered.  *See Berger v. Dobias*, No. B204631, 2009 WL 3088817, at *8 (Cal. Ct. App. Sept. 29,

3   2009).  There, the court of appeal upheld the trial court's decision to apply a 2.0 multiplier to the

4   contingent portion of the fee award.  *See id.* at *8–10.  In other words, the trial court made its

5   lodestar calculation, subtracted $20,000, multiplied by 2, and then added the $20,000 back in, for

6   a total of $92,337.25 in fees.  *Id.* at *8.  The appellate court concluded that "the use of the

7   multiplier properly compensated [counsel] for the large contingent risk he undertook," as well as

8   the exceptional quality of the work performed.  *Id.* at *10.  Likewise, in *Gardner v.*

9   *Schwarzenegger*, an appellate court affirmed the application of a 1.75 multiplier that was based

10  solely on contingent risk, even though one of the firms to benefit from the award actually

11  undertook the representation on a discounted hourly rate.  *See* 2010 WL 602534, at *4–6.  And in

12  *Stanford Daily v. Zurcher*, the court enhanced the lodestar calculation based on the "contingent

13  nature" of the fee where the representation was subject to the client's agreement to pay "$5,000

14  plus whatever funds they could raise from interested third parties."  *See* 64 F.R.D. at 685–86.

15       Mr. Perens's requested enhancement is reasonable under this case law.  Also, Mr. Perens

16  does not seek for the 1.5 multiplier to be applied to the $25,000 portion of the lodestar amount

17  that he agreed to pay counsel regardless of the outcome of his anti-SLAPP motion.  Nor does he

18  ask for the multiplier's application to the "fees on fees" portion of the lodestar amount ($76,602),

19  in recognition of the mandatory nature of anti-SLAPP fee-shifting.  The Court should therefore

20  award the success fee and compensate O'Melveny for its contingent risk, by apply the requested

21  1.5 multiplier to the remainder of the lodestar, in keeping with the legal principles and policy

22  concerns outlined in *Ketchum*.

23       Mr. Perens requests that O'Melveny therefore be awarded an additional $188,687.75 for

24  the success fee.

25  **V.    THE REQUESTED COSTS ARE REASONABLE**

26       As the prevailing party, Mr. Perens also is entitled to recoup the costs of the lawsuit under

27  the anti-SLAPP law.  *See* Cal. Civ. Proc. Code § 425.16(c)(1).  Because the anti-SLAPP statute is

28  "intended to compensate a defendant for the expense of responding to a SLAPP suit," courts

DEFENDANT'S MOT. AND MEM. FOR
ANTI-SLAPP FEES & COSTS
CASE NO. 3:17-CV-04002-LB

1   construe the mandatory fees and costs provision broadly to "[reimburse] the prevailing defendant

2   for expenses incurred in extracting herself from a baseless lawsuit."  *Graham-Sult*, 756 F.3d at

3   75.  The Northern District has recognized that non-taxable costs may be awarded in anti-SLAPP

4   cases.  *See Cuviello v. Feld Entm't, Inc.*, No. 13-CV-04951-BLF, 2015 WL 154197, at *5 (N.D.

5   Cal. Jan. 12, 2015) (awarding costs incurred for travel and making chambers copies of

6   documents).

7        Here, Mr. Perens has incurred a total of $ 2,403.12 in non-taxable costs in connection with

8   this litigation, including court filing costs and copying, scanning, and document-processing costs.

9   Drummond Hansen Decl., ¶ 29.  Courts have held that such costs are recoverable as non-taxable

10   costs.  *See, e.g.*, *Mahach-Watkins v. Depee*, No. C 05-1143 SI, 2009 WL 3401281, at *2 (N.D.

11   Cal. Oct. 20, 2009) (awarding non-taxable costs for meals, copying and courier services, mailing,

12   fax, and legal services).  Detailed records are attached listing each cost.  Drummond Hansen

13   Decl., Ex. D.

14   **VI.    CONCLUSION**

15        California's Anti-SLAPP statute mandates the grant of attorneys' fees and costs in order

16   to deter lawsuits filed to quell first amendment rights and to ensure defendants are able to obtain

17   competent representation.  Defendants brought this suit to "win" a public debate and bully Mr.

18   Perens--and others like him--from stating opinions they did not like.  As the prevailing party to

19   this SLAPP suit, Mr. Perens should be awarded his reasonable attorneys' fees and costs described

20   in this Motion and the supporting declarations and exhibits, and a success fee for winning the

21   motion.  Mr. Perens's therefore respectfully requests that the Court enter a total award of

22   $ 667,665.25 for mandatory fees and costs.

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

DEFENDANT'S MOT. AND MEM. FOR
ANTI-SLAPP FEES & COSTS
CASE NO. 3:17-CV-04002-LB

1    Dated:  February 7, 2018

2                                                                    MELODY DRUMMOND HANSEN
                                                                     HEATHER J. MEEKER
3                                                                    CARA L. GAGLIANO
                                                                     O'MELVENY & MYERS LLP
4

5
                                                                     By:    *Melody Drummond Hansen*
6                                                                           Melody Drummond Hansen
                                                                     Attorneys for Defendant Bruce Perens
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S MOT. AND MEM. FOR
ANTI-SLAPP FEES & COSTS
CASE NO. 3:17-CV-04002-LB