MELODY DRUMMOND HANSEN (S.B. #278786)
mdrummondhansen@omm.com
HEATHER J. MEEKER (S.B. #172148)
hmeeker@omm.com
O'MELVENY & MYERS LLP
2765 Sand Hill Road
Menlo Park, California  94025-7019
Telephone:    +1 650 473 2600
Facsimile:    +1 650 473 2601

CARA L. GAGLIANO (S.B. #308639)
cgagliano@omm.com
Two Embarcadero Center
28th Floor
San Francisco, California 94111-3823
Telephone:    +1 415 984 8700
Facsimile:    +1 415 984 8701

Attorneys for Defendant
Bruce Perens

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO

| | |
|---|---|
| OPEN SOURCE SECURITY, INC., <br><br> Plaintiff, <br><br> v. <br><br> BRUCE PERENS, and Does 1-50, <br><br> Defendants. | Case No. 3:17-cv-04002-LB <br><br> **DECLARATION OF PAUL COVEY IN SUPPORT OF DEFENDANT BRUCE PERENS'S MOTION FOR MANDATORY FEES AND COSTS UNDER CALIFORNIA'S ANTI-SLAPP STATUTE** |

## DECLARATION OF PAUL COVEY

I, Paul Covey, hereby declare as follows:

1. I am the Managing Director for Strategic Pricing & Analytics at O'Melveny & Myers LLP, with an office located at Two Embarcadero Center, 28th Floor, San Francisco, California 94111. O'Melveny is counsel for Defendant Bruce Perens in this action. I submit this declaration in support of Mr. Perens's Motion for Mandatory Attorneys' Fees and Costs Under California's Anti-SLAPP Statute. I have personal knowledge and am informed of the facts stated herein and, if called to testify, could and would testify completely hereto.

2. I have worked at O'Melveny since 1995 serving as the Manager of Litigation Support, a Senior Project Manager in Information Technology, a Special Projects Administrator, the Director of Practice Management for Transactions and Tax, and as a Managing Director for Practice Management supporting the Litigation department. I have served in my current role since 2012.

3. Before joining O'Melveny, I served as a Network Specialist and the Manager of Litigation Support for Sheppard, Mullin, Richter & Hampton.

4. I have extensive experience in law firm economics, financial analysis, and reporting. I helped introduce profitability metrics and reporting to the firm in 1999 and have led the development and implementation of successive generations of financial management tools. I also assist with analyzing alternative fee arrangements for potential approval by O'Melveny, and I personally assisted with the approval of the alternative fee arrangement in this case.

5. O'Melveny strives to offer rates that reflect the value of services offered and that also are competitive in our relevant markets. In benchmarking our rate structure, O'Melveny analyzes market survey data from sources such as PricewaterhouseCoopers and Citibank, as well as client feedback. Our goal is to arrive at a rate structure that will enable our firm to remain competitive with rates charged by our peers and to attract and retain legal talent of the highest caliber.

6. In my role at the Firm, I am responsible for assuring that the billing rates the Firm charges for the time of its attorneys in its various offices are fair, reasonable, and commensurate

with the billing rates being charged by comparable firms, both in the Bay Area and nationally. In this capacity, I have personally reviewed and analyzed market survey data from sources such as PricewaterhouseCoopers and Citibank, as well as client feedback, in helping the Firm set our billing rates.

7. I have reviewed the billing rates for the following timekeepers on the above-captioned matter: Heather Meeker (partner), Melody Drummond Hansen (partner), Cara Gagliano (associate), Eric Ormsby (associate), Marissa Rhoades (associate), Diana Diaz (paralegal), and Jillisia Santillana (project assistant). Based on my experience, I can confirm that their rates are fair, reasonable, and commensurate with the rates charged by law firms of comparable quality and prestige in the Bay Area and nationally. Indeed, the rates at which the firm's attorneys and paralegals bill are shown to fall toward the midpoint of rates for other large firms in the Bay Area.

8. I also have reviewed market survey data that we have from sources such as PricewaterhouseCoopers and Citibank and have confirmed that the rates charged for this matter fall toward the midpoint of rates for other large firms in the Bay Area: Ms. Drummond Hansen's rates fall below the median range for partners; Ms. Meeker's rates fall below the upper end of the median range; Ms. Gagliano's rates fall below the upper end of the median range for a third-year associate; Ms. Rhoades's and Mr. Ormsby's rates are in lock-step with the median rates charged for first-year associates; Ms. Diaz's rates fall below the upper end of the median range for a paralegal; and Ms. Santillana's rates fall below the median range for a legal assistant. The survey data provided by the market research firms are proprietary and confidential, and the terms of our agreements with the market data sources do not provide us with permission to file such survey data results or market data with this declaration.

9. I also am familiar with the alternative fee arrangement in this case. O'Melveny considered that Mr. Perens is an individual who would not typically be able to afford to pay our fees but also would not necessarily qualify for pro bono representation. We believed that Mr. Perens deserved a vigorous defense. The firm, however, had to consider the risk that the firm may not be compensated the fair market value of the anticipated work. Under our alternative fee arrangement with Mr. Perens, we agreed that Mr. Perens would pay a discounted fixed fee of

$25,000 for our representation on the anti-SLAPP and motion to dismiss, but that if Mr. Perens was successful in his motions, O'Melveny would be entitled to recover its fees incurred at the firm's standard rates and would receive a success fee of an additional 50% of those standard rates (150% of standard fees, minus the $25,000 discounted fee). The success fee was meant to compensate the firm for the risks it took on with the representation. For example, while the anti-SLAPP law allows for a recovery of fees for a successful defendant, it was possible that Mr. Perens would not be successful and O'Melveny would only be compensated the $25,000. The potential for the additional recovery beyond standard rates compensated for the risk O'Melveny undertook, in that it may not be able to recover fees beyond the significantly discounted amount of $25,000. This allowed us to approve the representation of Mr. Perens in this case. The firm regularly enters into risk-sharing arrangements with our clients that make some or all of our fees contingent on achieving a specified outcome. In all cases, we structure these arrangements such that our potential success fees are commensurate to the amount of fees at risk. The 50% premium being sought in this case is in line with the success fee premiums sought in other cases with similar amounts of risk.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that this declaration was executed this 7 day of February 2018 in San Francisco, California.

By: /s/ Paul Covey
Paul Covey
Of O'Melveny & Myers LLP