1  CHHABRA LAW FIRM, PC
   ROHIT CHHABRA (SBN 278798)
   Email: rohit@thelawfirm.io
2  257 Castro Street Suite 104
   Mountain View, CA  94041
3  Telephone: (650) 564-7929

4  **Attorney for Plaintiffs**
   Open Source Security Inc. &
5  Bradley Spengler

6

7                    **UNITED STATES DISTRICT COURT**
8                  **NORTHERN DISTRICT OF CALIFORNIA**
                       **SAN FRANCISCO DIVISION**
9

10  OPEN SOURCE SECURITY INC. and          Case No.: 3:17-cv-04002-LB
11  BRADLEY SPENGLER

12                          Plaintiff,       **PLAINTIFFS' OPPOSITION TO**
                                             **DEFENDENT'S MOTION FOR**
13     v.                                    **ATTORNEY'S FEES PURSUANT TO**
                                             **CALIFORNIA CODE OF CIVIL**
14  BRUCE PERENS, and Does 1-50,            **PROCEDURE § 425.16(C);**
                                             **DECLARATION OF ROHIT CHHABRA**
15                          Defendants.      **IN SUPPORT THEREOF; AND**
                                             **DECLARATION OF FEE EXPERT**
16                                           **WITNESS WILLIAM NORMAN IN**
                                             **SUPPORT THEROF.**
17

18                                           Hearing Date: March 29, 2018
                                             Time: 9:30 a.m.
19                                           Location: Courtroom C, 15th Floor
                                             Judge: Hon. Laurel Beeler
20  _____

21

22

23  REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED – PURSUANT TO
24  COURT ORDER

25

26

27                                                              3:17-CV-04002-LB

28  PLAINTIFF'S OPPOSITION TO DEFENDANT PERENS' SECOND MOTION TO DISMISS AND SECOND SPECIAL MOTION
    TO STRIKE

1

2

**Table of Contents**

3

**I.      INTRODUCTION AND BACKGROUND** ...................................................................**1**

4

5

**II.     THE COSTS AND FEES DEFENDANTS REQUEST IN THEIR EXPENSE REPORT
ARE UNREASONABLE, EXCESSIVE, AND UNNECESSARY** ........................................**7**

6

A. A SUBSTANTIAL PORTION OF THE FEES AND COSTS SUBMITTED BY DEFENDANT IS
NOT RECOVERABLE UNDER § 425.16(C)................................................................... 8

7

B. 48% OF THE TIMEKEEPING RECORDS HAVE "DOCTORED" FEES AND/OR HOURS
CLAIMS AND CANNOT BE CONSIDERED AS A RELIABLE SOURCE; NEITHER CAN ANY
DECLARATION BE CONSIDERED RELIABLE THAT IS BASED ON THE ERRONEOUS
TIMEKEEPING RECORDS  .............................................................................................. 9

8

9

C. THE TIMEKEEPING RECORDS HAVE AMBIGUOUS OR INCOMPLETE INFORMATION ... 12

10

D.  DUPLICATIVE, EXCESSIVE, IRRELEVANT AND INEFFICIENT PRACTICES ..................... 13

11

E. MOTION DRAFTING: TIME SPENT DRAFTING, REVISING, CONFERRING AND
RESEARCHING THE MOTIONS WAS EXCESSIVE ............................................................ 14

12

F. HOURLY FEES CLAIMED ARE UNREASONABLE ............................................................ 15

13

G. NO SUBSTANTIAL FEE CLAIMS SINCE 2018 ARE WARRANTED ....................................... 19

14

H. ACCORDING TO NINTH CIRCUIT LAW SUCCESS FEE AGREEMENTS PROVIDING
MULTIPLIERS ON FEE SHIFTING CASES ARE NOT ALLOWED............................................. 19

15

I. NO COURT HAS EVER GRANTED AN AWARD THAT IS REMOTELY SIMILAR TO THE
AMOUNT REQUESTED BY DEFENDANTS......................................................................... 22

16

J. CALCULATION OF REASONABLE FEE ........................................................................ 24

17

18

**III.    CONCLUSION** ........................................................................................................**24**

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO DEFENDENT'S MOTION FOR ATTORNEY'S FEES PURSUANT TO
CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16(C)

**Cases**

. *Gonzalez v. City of Maywood*, 729 F.3d 1196.................................................................... 26

. *International Longshoremen's Warehousemen's Union v. Los Angeles Export Terminal, Inc* ........... 17

*Bernardo v. Planned Parenthood Federation of America*, 115 Cal. App. 4th 322 ............................ 23

*Blum v. Stenson*, 465 U.S. 886 ............................................................................................. 16

*Braden v. BH Fin. Servs., Inc.*, No. C 13-02287 CRB, 2014 WL 892897 ............................... 18

*Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973 ............................................................... 16

*Chalmers v. City of Los Angeles*, 796 F.2d 1205 ............................................................... 16

*City of Burlington v. Dague*, 120 L. Ed. 2d 449 ............................................................... 21

*Clejan v. Reisman*, 5 Cal. App. 3d 224 ............................................................................. 16

*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman,* 47 Cal. App. 4th 777 ............................... 25

*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman,* 47 Cal. App. 4th 777, 785 ......................... 8

*Dowling v. Zimmerman*, 85 Cal. App. 4th 1400 ............................................................... 24

*Flight Attendants v. Zipes*, 491 U.S. 754 ......................................................................... 21

*Gates v. Deukmejian*, 987 F.2d 1392 ............................................................................. 21

*Henry v. Bank of Am. Corp.*, No. C 09-0628 RS, 2010 WL 3324890 ............................... 18

*Hensley v. Eckerhart*, 461 U.S. 424 ............................................................................. 8

*In re HPL Technologies, Inc. Securities Litigation*, 366 F. Supp. 2d 912 ............................... 18

*Kashian v. Harriman*, 98 Cal. App. 4th 892 ............................................................... 24

*Ketchum v. Moses*, 24 Cal. 4th 1122, ............................................................................. 8

*LOOP AI LABS INC. v. Gatti*, Dist. Court, 5-cv-00798-HSG ............................................... 17

*Loop AI Labs Inc. v. Gatti*, Dist. Court, Case No. 15-cv-00798-HSG ............................... 8

*Macias v. Hartwell*, 55 Cal. App. 4th 669 ............................................................................. 8

PLAINTIFFS' OPPOSITION TO DEFENDENT'S MOTION FOR ATTORNEY'S FEES PURSUANT TO
CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16(C)

*Martino v. Denevi*, 182 Cal. App. 3d 553 ............................................................. 10

*Maughan v. Google Technology, Inc*., 143 Cal.App.4th 1242 ................................... 7

*Minichino v. First California Realty*, No. C-11-5185 EMC, 2012 WL 6554401 ................... 8

*Paul for Council v. Hanyecz*, 85 Cal.App.4th 1356 ................................................. 9

*Pecot v. Wong*, Case No. A13956 ........................................................................ 7

*PLCM Group, Inc v. Drexler*, 22 Cal. 4th 1084 ..................................................... 16

*Rosenaur v. Scherer*, 88 Cal. App. 4th 26 ............................................................. 24

*Schroeder v. Irvine City Council*, 97 Cal. App. 4th 174 .......................................... 24

See *Northon v. Rule*, 637 F.3d 937 ....................................................................... 7

*Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.*, 106 Cal. App. 4th 1219 ... 23

*Wilkerson v. Sullivan*, 99 Cal. App. 4th 443 ......................................................... 10

PLAINTIFFS' OPPOSITION TO DEFENDENT'S MOTION FOR ATTORNEY'S FEES PURSUANT TO
CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16(C)

## I.        <u>INTRODUCTION AND BACKGROUND</u>

Plaintiffs are a small business with one employee and three contractors providing a computer security product to a niche market of approximately 40 customers.  Unlike Defendant, Plaintiffs did not have the means to afford a *dream team* of five attorneys and two support staff from a 5-star law firm, and had to resort to hiring a small law firm with one attorney. Ex. 1, Declaration of Rohit Chhabra (Chhabra Decl.) ¶3. Specifically, Plaintiffs were charged a reasonable hourly rate of $350/hour since this matter did not relate to any complex issues of Intellectual Property law. Chhabra Decl. ¶¶4, 7.  If the Court were to grant Defendant's ridiculous and outrageous fee demands for a relatively simple matter, it would not only be unjustified but would perhaps also fulfill the ultimate objective of Defendant's blog post – to have "the desired effect"[1] of hurting Plaintiffs' business. <u>No complex legal question was presented in this matter; specifically no issue related to intellectual property was presented or argued</u>

Based on the Court's December 21, 2017 Order, Plaintiffs agreed that Defendant is the prevailing party for the anti-SLAPP motion and statutorily is entitled a reasonable attorneys' fee award. However, Defendant attempts to justify his outrageous fee demand claims and the hiring of a multi-million dollar law firm with specialization in intellectual property law, by stating that the underlying matter in this case was related to a complex legal issue involving intellectual property law. **Defendant's contention is patently incorrect.** The underlying premise of Plaintiffs arguments was based on a relatively simple legal argument whether, based on existing case law and American Jurisprudence, Plaintiffs could be held in violation of the GNU General Public License (GPL), and whether Defendant's statements based on his reputation could be considered as offering lay person opinion. *See* First Amended Complaint (FAC) ¶¶ 30 – 32, 49 (alleging that **all** the statements are false

---

[1] *See* FAC ¶ 45

3:17-CV-04002-LB

PLAINTIFFS' OPPOSITION TO DEFENDENT'S MOTION FOR ATTORNEY'S FEES PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16(C)

because Plaintiffs' Access Agreement did not violate the GPL based on the principle that Plaintiffs had

a right to choose their future business patrons); Plaintiffs never presented any argument related to any

issue of intellectual property law. *See generally*, Motion for partial summ. judgment (ECF No. 24);

Opposition to anti-SLAPP motion (ECF No. 38). Defendant incorrectly states that the FAC asserted

complex legal issues. To the contrary, Plaintiffs claimed all nine statements presented by Defendant

were false "**because** the Access Agreement does not violate the GPLv2". FAC ¶49 (emphasis added).

Furthermore, neither did this Court find any complex legal issues to make its determination in this

matter. *See* Order Dated Dec. 21. 2017 (ECF No. 53). Plaintiffs' counsel retained Attorneys' fee expert

witness William Norman, to provide a fair and unbiased evaluation in this matter. Chhabra Decl.¶ 9.

No sealed information was provided to Mr. Norman. *Id.* Neither Plaintiffs, nor Plaintiffs' counsel, or

its agents or representatives asked Mr. Norman to modify or revise his assessment. Ex. 2, Declaration

of Fee Expert Witness William Norman (Norman Decl.) ¶ 2; Chhabra Decl.¶ 9.  Mr. Norman has 47

years of experience, has handled several complex business litigation matters, including approximately

15 anti-SLAPP matters; he has also appeared as an attorneys' fee expert on several occasions. Norman

Decl. ¶1. A true and correct copy of Mr. Norman's publicly available experience and professional

biography is attached hereto as Ex. 3.[2]

      Mr. Norman also agrees with Plaintiffs' contention that nothing in this matter required a huge

law firm with attorneys specializing in Intellectual Property matters; there was no need to hire an

intellectual property based legal team with their exorbitant hourly rates. Norman Decl. ¶ 6. However,

despite that, Defendant under seal submits Detailed Billing Entries (ECF No. 67 (Hansen Decl.),  Ex.

C) (Timekeeper Records) and demands $478,977.50 in attorneys' fees and an additional award of

$188,687. 75 as a "success fee." Decl. Hansen ¶4.  Not only does the demanded fee show inefficient

---

[2] available at: http://www.cwclaw.com/attorneys/attorneyBio.aspx?name=WilliamNorman

3:17-CV-04002-LB

PLAINTIFFS' OPPOSITION TO DEFENDENT'S MOTION FOR ATTORNEY'S FEES PURSUANT TO CALIFORNIA
CODE OF CIVIL PROCEDURE § 425.16(C)

management, Defendant mistakes and forgets the legislative purpose of Code of Civil Procedure § 425.16(C) is to entitle recovery of reasonable attorneys' fees and costs, and not to unjustly enrich his counsels with outrageous and unfettered attorneys' fees or unconscionable alternative fee agreements like "success fees." Both are unreasonable and appalling by any standard for determining attorney's fees and costs in this matter. Norman Decl. ¶ 7, 10.

Exorbitant and unreasonable hourly attorney billing rates

Defendant also seeks recovery of fees based on hourly fee charges that exceed by hundreds of dollars per hour the average billing rates charged in the relevant legal community.  Not only is Defendant's *dream team* overstaffed, their billing rates claimed can only be considered reasonable in ones' dream! Notably, all three associates who worked on this matter **were admitted in California in 2017**; two claimed "associates" **were not even attorneys (in any jurisdiction)** until December 2, 2017 – that is, 12 days before the Dec. 14 hearing in this matter. Chhabra Decl. ¶ 10.  It is patently unreasonable to bill out a paralegal at ▓▓▓▓, two non-attorney "interns" at ▓▓▓▓ (for less than a month, ignoring December holidays, and then interestingly enough increasing their hourly rates to ▓▓▓) , a first year associate from ▓▓▓▓ in 2017 to ▓▓▓▓ in 2018, and two partners each billed at ▓▓ and ▓▓▓▓, and ▓▓ and ▓▓▓/hour for 2017 and 2018 respectively. It is astonishing that even Defendant's paralegal has a claimed hourly billable higher that Plaintiffs' counsel; this is completely unheard of, even in matters involving complex intellectual property (patent) related issues.  This further becomes extremely outrageous since Plaintiffs never argued any complex legal question in this matter related to a complex intellectual property issue. It is also problematic that Defendant argues that he needed to hire a multi-million dollar intellectual law firm because Plaintiffs sought to recover 3 Million dollars in damages from an individual. This is incorrect. Complaints are routinely filed based on information and belief, and Plaintiffs sought a recovery of 3 Million dollars in damages from Defendant and Does 1 -50 (a total of 51 defendants). Since discovery was never

-3-

3:17-CV-04002-LB

initiated, Plaintiffs were never able to ascertain the correct number of defendants in this matter.

Specifically, Plaintiffs sought damages of "an amount *to be determined at trial*, but in excess of

$75,000 as to each defendant." FAC ¶ 86 (italics added). Thus, this also does not justify Defendant's

imprudent actions of hiring a multi-million dollar law firm with specialization in intellectual property

law.  Further, Plaintiffs also cannot be held responsible for Defendant's counsel's actions for

undertaking this non-intellectual property matter, when this matter could have easily been represented

by any non-intellectual property lawyer. *See* Norman Decl. ¶ 6.

Serious Mismanagement Concerns

    The unreasonableness and the inefficiency can also be recognized by Defendant's counsel's

having assigned seven different time billers to the matter, including two partners, two non-admitted

"associates" (legal interns) and a first year associate to the defense of this matter. As opined by

attorneys' fee expert, Mr. Norman, "[m]ore timekeepers, especially those duplicating other

timekeepers in the same levels, are extremely inefficient. Confusion, extra management time by the

team leader, and excess intra-office conferencing result in greater cost and they often compromise the

overall effort." Norman Decl. ¶ 7(b).

    Furthermore, given the fact that 82%[3] of the billable hours involved work performed by non-

admitted "interns" and a first year associate, the outrageous and absurd character of Defendant's

demands can be recognized by determining a per page attorneys' fee charged:

- 137. 9 hours for a *23 page* First Anti-SLAPP Motion plus accompanying one page
  declaration totaling $83,606.50 (**$3,463 per page**);

- 77.6 hours for a mostly duplicative *24 page* Second anti-SLAPP motion and
  accompanying one page declaration totaling $43,669.50 (**$1,746.78 per page**);

---

[3] See Def. Motion' for Attys' fees at 13:9

PLAINTIFFS' OPPOSITION TO DEFENDENT'S MOTION FOR ATTORNEY'S FEES PURSUANT TO CALIFORNIA
CODE OF CIVIL PROCEDURE § 425.16(C)

- 109.5 hours for a *15 page* reply for the Second anti-SLAPP totaling $60,803.50 (**$4,053 per page**);

- 19.6 hours for a *3 page* Response to Plaintiff's supplemental brief totaling $10,798.50 (**$3,599 per page**);

- 87.5 hours for a *10 page* opposition to partial summary judgment with one page declaration totaling $49, 813 (**$4,528 per page**);

- 29.2 hours for a *6 page* motions for Surreply and Surreply to partial summary judgment totaling $17,477  (**$2,912 per page**);

- 131.8 hours for a 19 page motion for attorneys' fees, a 7 page declaration, and a 28 page expense report (totaling *59 pages*) for $76,602 (**$1,298 per page).**

Other outrageous fees claimed by Defendant are:

- 141.6 hours for preparing for a Court hearing; needlessly involving excessive staff who played no active role in the hearing;

- 86.9 hours claimed by Defendant's counsel for case management; and

- 12.3 hours for three settlement communications via email (see Decl. Chhabra ¶ 11); and

- $188,167.75 unconscionable success fee that should be denied. Ninth Circuit law specifically prohibits success fee multipliers in statutory fee shifting awards, as discussed further herein.

Indeed, Defendant's lead counsel, Ms. Hansen, throughout her litigation career of more than a decade has successfully defended clients in defamation actions.[4] Decl. Hansen ¶ 9. Therefore, with

---

[4] An attorney who has defended defamation claims through the course of her decade long litigation career should reasonably know how to efficiently draft anti-SLAPP motions.

3:17-CV-04002-LB

PLAINTIFFS' OPPOSITION TO DEFENDENT'S MOTION FOR ATTORNEY'S FEES PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16(C)

more than a decade of experience defendant clients in defamation actions, she should have reasonably exercised proper judgment and should have steered her inexperienced interns and first year associate in a manner that would have significantly reduced the needless hours of research and reviews performed by all three junior unexperienced researchers and motion drafters.

Even Plaintiffs' counsel, with no prior experience in defamation cases (but otherwise not new to addressing complex litigation matters), has been significantly more efficient than Defendant's *dream team* by singlehandedly addressing this matter, without any support staff, and by billing Plaintiffs a total of $80,175, for the entirety of this matter, representing 229 billable hours. Chhabra Decl. ¶ 5. In fact, Plaintiffs' counsel has not billed Plaintiffs more than 40 hours (generally less) for any motion or pleading, illustrating that there was no need for significant research of any complex legal issue. Chhabra Decl. ¶ 7.

Therefore, **the question now presented to the Court is** – If Plaintiffs' counsel, with no prior experience in addressing defamation cases, was able to provide efficient representation to his clients, why couldn't Defendant's counsel do the same for handling a substantially similar amount of work? Arguably, had Plaintiffs' counsel employed interns and junior associates, the fee charged to Plaintiffs would have been further lowered. Clearly, Defendant has failed to provide substantial evidence justifying such egregious mismanagement that warrants ***8.5 times the amount Plaintiffs' were charged for handling the same work.***

Respectfully, there can be no reasonable justification. While Ms. Hansen has not claimed she has "significant experience" in handling defamation cases, a decade long career of defending defamation cases is nothing less than substantial and impressive; it is enough to provide efficient management skills. The Court should therefore consider her experience, the number of hours expended by Plaintiffs' counsel, declaration of fee expert, Mr. Norman, and the Court's own expertise and experience in addressing similar actions to determine a reasonable fee award. See *Maughan v. Google*

-6-

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEY'S FEES PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16(C)

*Technology, Inc.*, 143 Cal.App.4th 1242, 1248-1251, 1253 (2006) ("the court determining based on its own experience and expertise in handling complex civil cases, reduced a $112,288.63 anti-SLAPP fee claim to $23,000 by reducing the claimed hours on the SLAPP motion from over 200 hours to 50 hours and further considering the attorney's experience handling such matters.); *Pecot v. Wong*, Case No. A139566, at *3, (Cal. Court of Appeal, 1st Appellate Dist., 4th Div.,  Jan. 18, 2018) ____ WL ____ (unpublished) (affirming a reduction of anti-SLAPP fee claim for approximately 159 claimed hours to $20,000 by reducing the number of hours and determining a reasonable fee, based on the court's own expertise and experience and considering fee expert witness testimony).

Furthermore, as explained below, 48% of the detailed Timekeeping Records have substantial miscalculations, showing inconsistent billing practices, and cannot be considered as a reliable source of evidence. Thus, Defendant cannot satisfy his burden and establish that the claimed charges are reasonable.

In order to assist the Court, Plaintiffs undertook the mammoth project of providing a detailed analysis of the Timekeeping Records, calculations (including corrections of the 48% errors), and determining a reasonable fee award along with the basis thereof, as discussed further below.

## II.   THE COSTS AND FEES DEFENDANTS REQUEST IN THEIR EXPENSE REPORT ARE UNREASONABLE, EXCESSIVE, AND UNNECESSARY

State law governs attorney's fees awards based on state fee-shifting laws, like California's anti-SLAPP statute. See *Northon v. Rule*, 637 F.3d 937, 938 (9th Cir.2011). The Northern District has recognized that a prevailing defendant, under section 425.16(c), shall only be entitled to recover attorney's fees and costs that a court deems are reasonable. *Loop AI Labs Inc. v. Gatti*, Dist. Court, Case No. 15-cv-00798-HSG at *2 (N.D. Cal. May 9, 2016) (citing *Minichino v. First California Realty*, No. C-11-5185 EMC, 2012 WL 6554401, at *3 (N.D. Cal. Dec. 14, 2012)); *Robertson v.*

PLAINTIFFS' OPPOSITION TO DEFENDENT'S MOTION FOR ATTORNEY'S FEES PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16(C)

1   *Rodriguez*, 36 Cal. App. 4th 347,362 (1995); *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*, 47 Cal.

2   App. 4th 777, 785 (1996).

3          The proper method for calculating attorney's fees in California is the lodestar method. See

4   *Ketchum v. Moses*, 24 Cal. 4th 1122, 1136 (2001). In assessing attorney's fees under this method,

5   however, a Court must exclude those fees that are "excessive, redundant, [and] otherwise

6   unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *see also Serrano v Priest*, 20 Cal 3d 25,

7   48 (1997) (explaining that a court assessing attorney fees begins with a lodestar figure that is based on

8   the "careful compilation of the time spent and reasonable hourly compensation of each attorney ...

9   involved in the presentation of the case.")

10

11         Since the Court's "role is not merely to rubber stamp the defendant's request, but to ascertain

12  whether the amount sought is reasonable," *Robertson* at 361, any fee award must be established by

13  "substantial evidence" supporting the award. *Macias v. Hartwell*, 55 Cal. App. 4th 669, 676 (1997).

14  Therefore, the Court is "not bound by the amount sought by defendants and [has the] discretion to

15  award them a lesser sum." *Robertson* at 362. Because Defendant requests an award that is

16  unreasonable and excessive, Defendant's request for attorney's fees and costs must be substantially

17  reduced.

18

19  **A. A SUBSTANTIAL PORTION OF THE FEES AND COSTS SUBMITTED BY DEFENDANT
    IS NOT RECOVERABLE UNDER § 425.16(C)**

20         Defendant presumes that he only had the right to file an anti-SLAPP motion and that no other

21  motion could (or should) have been filed prior to the hearing of the anti-SLAPP motion. *See* Mot. Atty.

22  Fees' at 3-4.  However, Defendant fails to provide any case law that supports his contention.

23         The motion for partial summary judgment arose out of the facts based on statements made by

24  Defendant – prior to the filing of the anti-SLAPP motion(s).  Even if Defendant had not filed his anti-

25  SLAPP motion, Plaintiffs would have filed the motion for partial summary judgment based on the

26  Defendant's prior statement, since an issue of fact existed that reasonably questioned Defendant's

27

28                                                    -8-
                                                                                    3:17-CV-04002-LB
    PLAINTIFFS' OPPOSITION TO DEFENDENT'S MOTION FOR ATTORNEY'S FEES PURSUANT TO CALIFORNIA
    CODE OF CIVIL PROCEDURE § 425.16(C)

belief in the truth of his statements presented in the blog post. *See* Motion for Partial Summary Judgment ("MPSJ") (ECF No. 24). And since complaints are regularly filed on belief and information, these statements provided a showing that Defendant agreed with Plaintiffs, and thus there was no genuine issue of fact.  Indeed, Plaintiffs had an arguable legal theory and wanted to debate that matter first before the filing of the Second anti-SLAPP motion; had the Court agreed with Plaintiffs, there would have been no need to file the Second anti-SLAPP motion. *See* Norman Decl. ¶8.

California's Anti-SLAPP statute allows a movant to recover "only those fees and costs incurred in connection with the motion to strike, not the entire action." *Paul for Council v. Hanyecz*, 85 Cal.App.4th 1356 (2001). Plaintiffs, therefore, are not responsible to pay any fees that are applicable to non-SLAPP motion matters or both the anti-SLAPP motion and other aspects of the litigation.  The statute limits recovery to costs and fees that apply only to the motion to strike and this is clearly a rule of reason insofar as the purpose of an attorney's fees award under § 425. 16(c) is to compensate defendants for the additional cost of litigating the anti-SLAPP motion. Insofar, as research would have necessarily been performed were the anti-SLAPP motion never filed, Defendant should not be able to recover those fees as well. Nonetheless, Defendant attempts to subsume all research relevant to both the SLAPP motion and other aspects of the litigation even though that research would have needed to be performed regardless of whether the anti-SLAPP motion had been filed.

However, even if the Court were to disagree with Plaintiffs' contention, there was a substantial duplication in the arguments presented in the anti-SLAPP motion and MPSJ; attorneys' fees to file those additional motions should have been minimal. Norman Decl. ¶8.

**B. 48% OF THE TIMEKEEPING RECORDS HAVE "DOCTORED" FEES AND/OR HOURS CLAIMS AND CANNOT BE CONSIDERED AS A RELIABLE SOURCE; NEITHER CAN ANY DECLARATION BE CONSIDERED RELIABLE THAT IS BASED ON THE ERRONEOUS TIMEKEEPING RECORDS**

Attorneys are required to "maintain accurate records of work done and time spent in preparing each client's case" as "a detailed billing record gains the advantage of being able to evaluate the worth

-9-

PLAINTIFFS' OPPOSITION TO DEFENDENT'S MOTION FOR ATTORNEY'S FEES PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16(C)

of the services provided." *Martino v. Denevi*, 182 Cal. App. 3d 553, 558 (1986). Even though

testimony by any attorney regarding the number of hours worked is sufficient to justify that it is

appropriate to grant attorney's fees, the reasonable value of the services rendered is still at the

discretion of the Court. *Id.* at 558-59; see also *Wilkerson v. Sullivan*, 99 Cal. App. 4th 443, 448 (2002)

(explaining that "[t]he reasonableness of attorney fees is within the discretion of the trial court.")

      Although Defendant's counsel submits under declaration that the timekeeping records were

contemporaneously maintained (Def. Fee Motion, 9: 21 -23; Hansen Decl. ¶20 - 27), and personally

reviewed the records of fees and costs (Hansen Decl. ¶¶ 2, 26), approximately 48%[5] of the records

have incorrect mathematical calculations by either presenting exaggerated hours claimed with

substantially less fee listed, or by presenting exaggerated fees claimed for substantially less hours

listed. Decl. Chhabra ¶ 13.  With so many disparities one can reasonably infer that the Timekeeping

Records are "doctored" for the sole purpose of meeting the purported amount and hours being claimed.

Not only the number of hours and fees claimed for which Defendant seeks reimbursement is absurd,

with 48% records reflecting incorrect calculations, the truthfulness and veracity of the Timekeeping

Records, in its entirety, and any supporting Declaration therewith are justifiably questioned;[6] it is

respectfully submitted the Timekeeper Records cannot be considered as trustworthy evidence, and thus

any accompanying declaration relying on the Timekeeper Records should be stricken.

_____

[5] 240 out of 502 records, excluding records related to sanctions.

[6] But of course Defendant's counsel is going to claim the 48% inaccuracies were an administrative "mistake," even after submitting a declaration, under penalty of perjury, that she reviewed "each of the billing records."  However, it is improbable that a **700+ million** dollar law firm like O'Melveny would not even have the most primitive timekeeping software that can perform simple mathematical calculations. Furthermore, with seven resources working on this matter (out of which five are (now) attorneys), it is hard to believe this could be an "honest mistake." It can reasonably be inferred that Defendant's counsel **intentionally presented inaccurate data** (both in hours and time) to greatly exaggerate either the fee or hours claimed per task, while burying this data in a *7-point font* in an attempt to justify their unreasonable and outrageous fee claims.

PLAINTIFFS' OPPOSITION TO DEFENDENT'S MOTION FOR ATTORNEY'S FEES PURSUANT TO CALIFORNIA
CODE OF CIVIL PROCEDURE § 425.16(C)

Egregious examples of the claimed fee are:[7]

Excessive Fees Claimed in Timekeeping Records:

| Date | Timekeeper | Timekeeper hourly claimed rate | Hours claimed | Fees claimed |
|------|-----------|-------------------------------|---------------|--------------|
| ██████ | ████████ | ████ | ██ | ████ |
| ██████ | ██████████ | | | |
| ██████ | ████ | | | |
| ██████ | ██ | | | |
| ██████ | ██████ | | | |

The list goes on. See Chhabra Decl. Exs. 1-A to 1-L for more details.

Excessive Hours Claimed in Timekeeping Records:

| Date | Timekeeper | Timekeeper hourly claimed rate | Hours claimed | Fees claimed |
|------|-----------|-------------------------------|---------------|--------------|
| ████████ | ████ | ██ | ████████████ | ██ |
| | ██████ | | ████ | |
| ████████ | ████ | ██ | ████████████████ | ████ |
| ████ | ██ | | ██████████ | ████ |
| | ██████ | | ████████████ | |
| ██████████ | ██████ | ████ | ████████████████ | ████ |
| | | | ██████ | |

The list goes on. See Chhabra Decl. Exs. 1-A to 1-L for more details.

---

[7] Even after correcting the miscalculations, the mismanagement by Defendant's lead counsel can clearly be noted by the duplicative work and inefficiency performed by Defendant's *dream team*.

PLAINTIFFS' OPPOSITION TO DEFENDENT'S MOTION FOR ATTORNEY'S FEES PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16(C)

However, in good faith, Plaintiffs have corrected the claimed fees/ hours and summarized/ sorted them by "category," for the Court's convenience. *Id.*

Based on the corrected calculations Defendant's counsels' own timekeeping records indicate that the total inefficient and mismanaged hours they are in fact claiming is 642.3 hours, that is a reduction of 191.6 hours from the 833.9 hours claimed in Defendant's motion. Decl. Chhabra, Ex. 1-A. While Plaintiffs recognize that California does not require contemporaneously maintained records, and usually attorneys' declaration suffices for a fee motion, under the best evidence rule, any disparity and deviation in Defendant's counsel's declaration, from the contemporaneously maintained records, should be stricken out from such declaration.

Furthermore, with 48% errors, a question now exists as to the truthfulness and veracity of all the Timekeeping Records submitted by Defendant's counsels. Also, any attempt to provide "corrected" Timekeeping Records questions the premise of maintaining "contemporaneous" records and submitting them as proof.  Therefore, Defendant has failed to provide sufficient information to determine whether the time spent and billed for various activities was, or was not, reasonable. With 48% of the timekeeping record not matching their claimed fees, it is fair to conclude Defendant's counsels have not maintained proper records and thus Defendant's counsels have failed to establish by "substantial evidence" supporting the award claimed. *Macias v. Hartwell*, *supra*, at 676. On these grounds, this motion should be dismissed with prejudice; however, at the very least the contemporaneous Timekeeping Records, and Ms. Hansen's declaration cannot and should not be considered trustworthy and should be stricken from record.

## C. THE TIMEKEEPING RECORDS HAVE AMBIGUOUS OR INCOMPLETE INFORMATION

Furthermore, Defendant's Timekeeping Records are filled with incomplete and ambiguous information such that it is impossible to determine whether or not a particular expense is for purposes of the anti-SLAPP motion or training exercises for its junior associate and interns. The descriptions of

PLAINTIFFS' OPPOSITION TO DEFENDENT'S MOTION FOR ATTORNEY'S FEES PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16(C)

the Timekeeping Records do not provide any guidance whatsoever in determining whether a reasonable amount of time was spent on that activity. For most records, other than claiming that an activity for a motion was performed, there is no detail as to what specific portion of that activity was conducted. For example, there are numerous ambiguous expenses and duplicative entries related to:

a. 23 entries, excluding "sanctions" entries, related to "Conducting Legal Research" for a motion, "Conduct Additional Research," "Conduct Supplemental Research," and "Conduct related research" (and other variants) for a motion without providing anything more;

b. 107 entries, excluding "sanctions" entries, including conference, confer, or discussions, or additional conferences regarding a motion without providing more; and

c. 188 entries, excluding "sanctions" entries, related to revising or drafting a motion.

Decl. Chhabra ¶ 14.

Because the non-descript or ambiguous and duplicative billing expenses make it impossible to determine whether the time spent on those activities is reasonable, Plaintiffs cannot be obligated to pay for those expenses.

## D.  DUPLICATIVE, EXCESSIVE, IRRELEVANT AND INEFFICIENT PRACTICES

Counsels for Defendant are obligated to "make a good faith effort" to deduct from its Timekeeping Record and Expense Report all "hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434; *see also Ketchum*, 24 Cal. 4th at 1132 (holding that "'padding' in the form of inefficient or duplicative efforts is not subject to compensation.")  However, the record indicates Defendant's counsel has not done so. As illustrated numerous above, numerous duplicative and ambiguous records prevent reasonable time determinations.

However, 49 entries that do provide detailed research analysis performed. Decl. Chhabr Ex. 1-M. Those records highlight the duplication, inefficiency, and irrelevancy, which further reflects Ms.

PLAINTIFFS' OPPOSITION TO DEFENDENT'S MOTION FOR ATTORNEY'S FEES PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16(C)

Hansen's mismanagement in this matter (providing detailed objections on all the records). A few examples are:

    1. C. Gagliano conducted " ████████████████████████████ on 10/3/17 – 10/5/17 and claimed ████████████ hours. Furthermore, if Defendant claims the first record of 10/3, highlighted in red, was a genuine mathematical error (and should have instead been ██ hours to justify the claimed $ ████, then the total changes to ██ hours of "research" to determine ██████████████████████ on a pending anti-SLAPP motion.

    2. C. Gagliano spent ████████████ hours to " ██████████████████████████████ " on 1/27/18 – 1/29/18 claiming ████. Plaintiffs wonder what sort of " ████████████████████ " warranted ██ hours.

    3. M. Rhoades spent ████████████████████ only to discover L.R. 79-5, on 1/23/18. Also, the Court's well written webpage on sealing documents shows up as the first link on Google when searching for "e-file under seal northern district."

    These are just a few of the outrageous examples; a complete list of research activity (where details were provided in Timekeeping Records) and objections thereto are provided at Chhabra Decl. Ex. 1-A to 1-M.  In sum, just for "research" Defendant's *dream team* claimed (without corrections) hours: ████; Fee: ████████; and with corrected calculations, claimed: hours ████ fee: ██████████, for irrelevant, duplicative and/or inefficient research.  Decl. Chhabra Ex. 1-M.

    Plaintiffs cannot be held responsible for such inefficiencies.

## E. MOTION DRAFTING: TIME SPENT DRAFTING, REVISING, CONFERRING AND RESEARCHING THE MOTIONS WAS EXCESSIVE

    For the Court's convenience, Plaintiffs have compiled and sorted the Timekeeping records by motion, and also provided corrected calculations, where necessary, to illustrate the unreasonableness and exorbitant fees/hours claimed by Defendant in this matter along with a basis of objection. *See* Decl Chhabra Ex. 1-A through 1-M.



-14-

PLAINTIFFS' OPPOSITION TO DEFENDENT'S MOTION FOR ATTORNEY'S FEES PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16(C)

As can be observed, predominantly all entries state 'performing research', 'motion drafting', or 'conferences', and are repeated numerous times. Further, these entries have numerous errors, inconsistent billing calculations, and are irrelevant, duplicative, or simply show inefficiency. All objections are stated in the extreme right column of each entry.

Since no complex intellectual property claim was asserted, see FAC ¶ 49 (stating that all statements in Defendant's blog were false because Plaintiffs did not violate the GPL). Also see FAC ¶¶ 21, 22, 30 and 31 (explaining the basis of why Plaintiffs claimed that they did not violate the GPL). However, 33.3 hours were spent for researching this issue, without proper guidance to a first year associate. Defendant provides no justification why there has been extreme inefficiency, especially when no complex legal issue was presented.

In sum, since Ms. Hansen has over a decade of litigation experience and has handled several defamation matters (Decl. Hansen ¶ 9), she could have easily prevented such frivolous and needless research and actions. Plaintiffs cannot be held liable for a training school created by O'Melveny's attorneys.

## F. HOURLY FEES CLAIMED ARE UNREASONABLE

"In determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986) (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11). The relevant community for purposes of determining the prevailing market rate is generally the "forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).

In determining the reasonableness of Defendant's counsel's fees, this Court must weigh several factors including the attorney's skill required and employed in handling the matter, the attorney's learning, and the attorney's experience in the particular type of work. *Clejan v. Reisman*, 5 Cal. App.

-15-

PLAINTIFFS' OPPOSITION TO DEFENDENT'S MOTION FOR ATTORNEY'S FEES PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16(C)

3d 224, 241 (1970). The lodestar approach begins by multiplying "the numbers of hours <u>reasonably</u> <u>expended</u> [with the] <u>reasonable hourly rate</u>." *PLCM Group, Inc v. Drexler*, 22 Cal. 4th 1084, 1095 (2000) (emphasis added). In so doing, a court should use the prevailing rates of comparable private attorneys as the "touchstone" for determining a reasonable rate for an attorney. *International Longshoremen's Warehousemen's Union v. Los Angeles Export Terminal, Inc.*, 69 Cal. App. 4th 287, 303 (1999).

Notwithstanding Defendant's claims to the contrary, O'Melveny's hourly billing rate for its attorneys and support staff is outrageous. O'Melveny staffed this case with seven individuals representing six different billing rates ranging from ██████████████. All of these billing rates are in excess of the normal prevailing rate for attorneys practicing in San Francisco Bay Area, California, including Menlo Park and San Francisco and also exceeds the experience and similar expertise in this type of litigation. Norman Decl. ¶ ¶ 1, 2, and 7(a).

It is respectfully submitted, Defendant cannot provide any reasonable justification why intellectual property attorneys from a huge law firm were selected to represent him in this matter, and thus his counsel's fee should be adjusted accordingly.[8]

Mr. Norman has provided estimated maximum hourly rates based on the complexity in this matter ranging from $180 to $550 per hour. Norman Decl. ¶7(a). In fact, Mr. Norman's estimated hourly rates exceed those that have been approved and recognized by various courts discussing similar, if not more, complex legal issues, in the Northern District. *See LOOP AI LABS INC. v. Gatti, Dist. Court, 5-cv-00798-HSG (*finding that the requested hourly rates of $230 for associates having four years experience, $365 per hour for attorney with 16 years of experience in complex intellectual

---

[8] Plaintiffs' counsel, while primarily an intellectual property attorney, offered a discounted hourly rate to Plaintiffs in this matter (and has since maintained the same rate) as it was reasonably determined that this was not going to be an intellectual property related matter. See Chhabra Decl. __.

3:17-CV-04002-LB

PLAINTIFFS' OPPOSITION TO DEFENDENT'S MOTION FOR ATTORNEY'S FEES PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16(C)

property litigation matters, and $440 per hour for a partner with are reasonable are within the range of reasonable rates in the Northern District [of California]); citing *Henry v. Bank of Am. Corp.*, No. C 09-0628 RS, 2010 WL 3324890, at *3 (N.D. Cal. Aug. 23, 2010) (approving rates of $225 per hour for an associate and $515 per hour for the partner); *Minichino*, 2012 WL 6554401, at *5 (finding attorneys with nine and fourteen years of experience reasonably had billing rates ranging from $450-555); *Braden v. BH Fin. Servs., Inc.*, No. C 13-02287 CRB, 2014 WL 892897, at *6-7 (N.D. Cal. Mar. 4, 2014) (approving rates of $610 per hour for partners, and $310 per hour for managing attorney with over eight years of experience)).

Furthermore, even if this is considered as a complex matter, Mr. Norman's expert testimony as to the prevailing rate for a Bay area attorney are comparable to the Laffey Matrix, when adjusted to the Bay area, which are a widely recognized compilation of attorney and paralegal rate data which is regularly prepared and updated by the Civil Division of the United States Attorney's Office for the District of Columbia and used in fee shifting cases in complex litigation matters and frequently accepted by the Northern District. *See* https://www.justice.gov/usao-dc/file/796471/download (last visited March 7, 2018).[9]  As noted by former Chief Judge Walker of this Court, "adjusting the Laffey matrix figures upward by approximately 9% will yield rates appropriate for the Bay area" by using the locality pay differentials within the federal courts as a reference. *In re HPL Technologies, Inc. Securities Litigation*, 366 F. Supp. 2d 912, 922 (N.D. Cal. 2005) (determining the Laffey Matrix as a "well-established objective source for rates" and finding it adequate for a complex securities fraud class action).

In fact, as late as last month Chief Magistrate Judge Hon. Joseph C. Spero recognized the Laffey Matrix, adjusted to the Bay area as an accurate prevailing rate. *Lane Zhao v. SuminTsai*, 17-cv-

---

[9] A true and correct copy is attached hereto. Chhabra Decl. ¶ 15, Ex. 4

3:17-CV-04002-LB

PLAINTIFFS' OPPOSITION TO DEFENDENT'S MOTION FOR ATTORNEY'S FEES PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16(C)

07378-JCS (N.D. Cal, Feb. 2018); Also see *Brinker v. Normandin's* 14-cv-03007-EJD (HRL)  (N.D. Cal., Feb 2017); *Garcia v. Stanley*, 14-cv-01806-BLF, (N.D. Cal. March 2017) (finding an hourly rate of $500/hour in the San Francisco Bay area reasonable when the Laffey Matrix provides a reference range of from $608 to $747 per hour) (citing *In re HPL Technologies, Inc. Securities Litigation, supra*). Plaintiffs confirm, according to the locality pay differentials within the federal courts, Judge Walker's assessment of approximately 9% upwards differential for the Bay area remains correct as of today. Decl. Chhabra ¶ 16, Ex. 5, 6.

The following table shows the comparable rates between Mr. Norman's unbiased assessment and the adjusted Laffey Matrix.  Further, since a substantial amount of work in this matter was performed in 2017 (with the exception of the fees motion itself), using the Laffey Matrix of 2016-2017, provides an adequate reference point to determine the prevalent rate, even if this matter is considered as a complex legal matter:

| Experience | Per hour rates 2016-2017 (Laffey) | Per hour rates 2016-2017 (Laffey adjusted 9% for San Francisco Bay Area) | Mr. Norman's estimated hourly fee for this matter based on its complexity (See Norman Decl. 7(a)) |
|---|---|---|---|
| 21-30 years experience | $543 | $591 | $475 - $550 |
| 11-15 years experience | $465 | $507 | $425 - $450 |
| Less than 2 years experience | $291 | $317 | $230 - $240 |
| Less than 1 year experience | $240[10] | $261 | $210 - $215 |
| Law Clerk/ non-admitted | $157[11] | $171 | $180 - $195 |
| Paralegal | $157 | $171 | $190 - $220 |

[10] No data is provided for an associate with less than 1 year experience in the Laffey Matrix (for a complex litigation matter), but a good faith estimate is provided based on Mr. Norman's estimated maximum for a relatively simple matter.

[11] See Laffey Matrix fn.6, attorney not admitted to bar compensated at "Paralegals & Law Clerks" rate.

3:17-CV-04002-LB

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEY'S FEES PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16(C)

It should be noted that while the Laffey Matrix is generally considered as an average fee for complex litigation, Mr. Norman has not determined this matter to be a complex issue and thus his fee estimates are understandably lower than the rates displayed in the Laffey Matrix. Thus, Plaintiffs request this Court to consider Mr. Norman's hourly rate assessment as more accurate than the Laffey Matrix. Nonetheless, the above, provides substantial evidence that any attorney hourly rate determination higher than the adjusted Laffey Matrix in this matter should be considered as unwarranted.

## G. NO SUBSTANTIAL FEE CLAIMS SINCE 2018 ARE WARRANTED

Defendant's counsels claim to have substantially worked on this matter in 2018. Specifically, Defendant's counsels claim to have expended H. Meeker (███ hours); M. Hansen (███ hours); C. Gagliano (███ hours); E. Ormsby (███ hours); M. Rhoades (███ hours).   However, except for three terse email communications, Plaintiffs have not communicated with Defendant (except when directed by the Court on January 18, 2018). Chhabra Decl. ¶ 11. Thus, except for the fees motion the Court should strike any hours claimed by Defendant. Moreover, the demonstrated inefficiency and duplicative work performed by Defendant's counsels existed throughout this matter, and therefore the hours claimed are unjustified

## H. ACCORDING TO NINTH CIRCUIT LAW SUCCESS FEE AGREEMENTS PROVIDING MULTIPLIERS ON FEE SHIFTING CASES ARE NOT ALLOWED

In Federal Court, contingency multipliers are not allowed in fee shifting cases. *See Gates v. Deukmejian*, 987 F.2d 1392 (9th Cir. 1992). In *Gates*, the court, in declining to apply a multiplier on a contingency case in the fee shifting context stated:

In *Dague* the Supreme Court addressed whether, in determining an award of attorney's fees under section 7002(e) of the Solid Waste Disposal Act, 90 Stat. 2826, as amended 42 U.S.C. § 6972(e), or section 505(d) of the Federal Water Pollution Control Act, 86 Stat. 889, as amended, 33 U.S.C. § 1365(d), a court "may enhance the fee above the 'lodestar' amount in

-19-

3:17-CV-04002-LB

PLAINTIFFS' OPPOSITION TO DEFENDENT'S MOTION FOR ATTORNEY'S FEES PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16(C)

order to reflect the fact that the party's attorneys were retained on a contingent-fee [**31] basis and thus assumed the risk of receiving no payment at all for their services. *City of Burlington v. Dague*, 120 L. Ed. 2d 449, 112 S. Ct. 2638, 2639 (1992).

In its June 24, 1992 opinion in *Dague* the Court answered this query with a resounding "no," when it held "that enhancement for contingency is not permitted under the fee shifting statutes." *Id.* at 2643-44. Although the Solid Waste Disposal and Federal Water Pollution Control Acts and not § 1988 were at issue in *Dague*, the *Dague* Court expressly noted that the language of both of these sections "is similar to that of many other federal fee-shifting statutes, see, e.g., 42 U.S.C. §§ 1988, 2000e-5(k), 7604(d); our case law construing what is a 'reasonable' fee applies uniformly to all of them." *Id.* at 2641 (citing *Flight Attendants v. Zipes*, 491 U.S. 754, 758 n. 2, 105 L. Ed. 2d 639, 109 S. Ct. 2732 (1989)).

Given the Court's holding in *Dague*, it is clear that contingency multipliers are no longer permitted under § 1988. Thus, we reverse the portion of the district court's amended order awarding a 2.0 [**32] contingency multiplier in this case.

*Gates*, 987 F.2d at 1403.

Defendant, on the other hand cites no Ninth Circuit case law to justify his position. However, if this Court declines to apply Ninth Circuit law, which Plaintiffs believe would be an error, Plaintiffs acknowledge that in California superior courts "[a]n enhancement of the lodestar amount to reflect the contingency risk is "[o]ne of the most common fee enhancers … ." *Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553, 579 (2004).

"The purpose of a fee enhancement, or so-called multiplier, for contingent risk is to bring the financial incentives for attorneys enforcing important constitutional rights … into line with incentives they have to undertake claims for which they are paid on a fee-for-services basis." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001). Thus, as explained in *Ketchum*, the lodestar enhancement "is intended to approximate market-level compensation for such services, which typically includes a premium for the risk of nonpayment or delay in payment of attorney fees." *Id.* at p. 1138. However, here, the attorneys are not sole practitioners, in fact they had five attorneys with hourly rates ranging from ███, working on a simple Anti-SLAPP motion -- compared to Plaintiffs' lone lawyer with an hourly rate of $350.  Since the claimed hourly rates by Defendant's counsels are already approximately

-20-

3:17-CV-04002-LB

PLAINTIFFS' OPPOSITION TO DEFENDENT'S MOTION FOR ATTORNEY'S FEES PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16(C)

8.5 times above the market-level compensation, a contingency multiplier-based lodestar enhancement for a huge multi-million dollar law firm cannot be warranted.

Furthermore, Defendant states that he was given an alternative fee agreement with a low fixed cost for litigation of the anti-SLAPP motion. Fee motion, at 16:14.  The agreement specifically stated that in case the Court rendered a favorable decision, he would be awarded attorneys fee and a success fee of 1.5 times the standard rates. *Id.* 16:19- 21. If Defendant did not prevail he would have only been responsible for the substantially discounted fee for the representation. *Id.* Defendant then claims that his counsel bore the risk if the Court's ruling would have been unfavorable to him.

This circular argument is flawed. First, *Gates*, *supra*, does not allow a multiplier in matters involving fee shifting statutes in Federal Court. Given that the Ninth Circuit ruled that Anti-SLAPP motions apply in federal court, the federal standard for denying a multiplier under *Gates*, should apply.

Moreover, the contingent nature of the work was mitigated by the fact that there is a statutory right to recover attorneys' fees for this work. Thus, there was no risk. Even the agreement clarified that if the Court did not rule in Defendant's favor, he would have not paid anything over the fixed substantially low fixed cost. The purpose of the anti-SLAPP statute is to protect the client, not the attorney. Norman Decl. ¶10.

Defendant cannot have it both ways, he cannot argue on the one hand that it was outrageous for Plaintiffs to refuse to dismiss this case early on, or should have let the Court ruled on the initially filed motion, and this failure caused increased fees, while on the other hand, claim that this was a complex case requiring extensive attorney time utilizing five attorneys at exorbitant billing rates.

In any case, the Ninth Circuit law should apply, and the success fee multiplier should be denied.

3:17-CV-04002-LB

PLAINTIFFS' OPPOSITION TO DEFENDENT'S MOTION FOR ATTORNEY'S FEES PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16(C)

**I. NO COURT HAS EVER GRANTED AN AWARD THAT IS REMOTELY SIMILAR TO THE AMOUNT REQUESTED BY DEFENDANTS**

A review of reported decisions in California suggests that Defendants' request for attorney's fees and costs is facially unreasonable. These decisions indicate that movants are rarely granted more than $60,000 pursuant to the anti-SLAPP statute. Furthermore, these cases were just as complex, if not more so, than the current litigation. Below is a list of awards of attorney's fees and costs that have been deemed reasonable by the California Court of Appeal or the California Supreme Court since 2000:

• $77,835.25: *Bernardo v. Planned Parenthood Federation of America*, 115 Cal. App. 4th 322 (2004) (affirming award of reasonable attorney's fees to a national charitable organization annually serving over four million people in suit regarding controversial scientific and medical issues that were of public importance and required expert input, scientific data, and worldwide studies)

• $55,900: *Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.*, 106 Cal. App. 4th 1219 (2003) (lawsuit against a port district for breach of contract and numerous business tort claims based on alleged conspiracy to disrupt agreement to develop commercial property).

• $7,296.15: *Kashian v. Harriman*, 98 Cal. App. 4th 892 (2002) (lawsuit against an environmental organization and its attorney alleging causes of action for unfair competition and for defamation following newspaper's report on defendant lawyer's request that Attorney General conduct an investigation into the plaintiff's business dealings).

• $45,000: *Schroeder v. Irvine City Council*, 97 Cal. App. 4th 174 (2002) (lawsuit against the City of Irvine, its city council, and individual council members seeking injunctive and declaratory relief on the grounds that defendants' "Vote 2000" program was an illegal expenditure of public funds).

• $65,386.61: *Rosenaur v. Scherer*, 88 Cal. App. 4th 260 (2001) (affirming trial court's award of attorneys' fees for $65,386 in action for defamation and slander stemming from comments made during a bitterly fought local initiative campaign concerning the commercial development of real property).

PLAINTIFFS' OPPOSITION TO DEFENDENT'S MOTION FOR ATTORNEY'S FEES PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16(C)

• $9,300: *Dowling v. Zimmerman*, 85 Cal. App. 4th 1400 (2001) (reduction of attorney's fees from an original request of $61,862.50 in case stemming from numerous unlawful detainer actions, petitions for restraining orders, and a suit alleging almost a dozen causes of action).

•The only reported decision in which the court reported on the reasonableness of a fee award obtained by Defendants' counsel is *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman,* 47 Cal. App. 4th 777 (1996). In Dove Audio, the son of famed actress Audrey Hepburn hired the law firm of Rosenfeld, Meyer & Susman ("Rosenfeld") to contact other parties that had been bilked out of royalty payments in anticipation of filing a complaint with the Attorney General. *Id.* at 780. The plaintiff, Dove Audio, then sued the law firm for libel and interference with economic relationship. *Id.* Rosenfeld, represented by Defendants' counsel, then successfully demurred and was granted their motion to strike pursuant to § 425.16. *Id.* at 780-81. On appeal, Dove Audio challenged the award of attorney's fees in the amount of $28,296. *Id.* at 785. The court of appeal upheld the award on the grounds that although the award was "generous," the court's determination did not "exceed[] the bounds of reason." *Id.* (emphasis added). Here, Defendants' counsel's Expense Report absolutely exceeds the bounds of reason and exceeds its own request for fees and costs in Dove Audio. The decision in Dove Audio was more complex than the present litigation. Dove Audio involved multiple celebrities; understanding of the sophisticated way in which music royalties are calculated; due diligence in identifying, and communicating with, potential celebrity plaintiffs; correspondence with a governmental agency to initiate an investigation; and complex legal issues. *Id.* at 779-784. In the present case, however, Defendant predominantly argued the *Coastal Abstract* case (including his opposition to summary judgment), stating that this was a disputed legal issue.  If $28,296 were considered generous in *Dove Audio*, certainly a similar amount would be considered generous in this case as well.

However, Plaintiffs are aware that in this case more than one motion was filed. Therefore, Plaintiffs sought the independent and unbiased evaluation of Mr. Norman who after reviewing all the

-23-

3:17-CV-04002-LB

PLAINTIFFS' OPPOSITION TO DEFENDENT'S MOTION FOR ATTORNEY'S FEES PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16(C)

pleadings in this matter opined that the total number of hours claimed by Defendant should be between 231 and 305 hours without the summary judgment motions and between 271 and 360 hours if the Court considers the summary judgment motions intertwined with the anti-SLAPP motions. Norman Decl. ¶ 7(c). Although Plaintiffs believe Mr. Norman has been generous to Defendants (since Mr. Norman has not examined the under seal, detailed Timekeeper Records and the numerous irrelevant, duplicative, and inefficient practices employed by junior associates without proper guidance), however, Plaintiffs submit to his independent and unbiased assessment and request this Court to accept Mr. Norman's evaluation in its entirety.

## J. CALCULATION OF REASONABLE FEE

When using the lodestar method, "court[s] [are] not required to set forth an hour-by-hour analysis of the fee request." *Gates v. Deukmejian*, 987 F.2d at 1399. Courts can "make across-the-board percentage cuts either in the number of hours claims or in the final lodestar figure as a practical means of [excluding unreasonable hours] from a fee application." *Id.* When performing such reductions, the court should explain its reasoning. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1203 (9th Cir. 2013).

## III. CONCLUSION

Plaintiffs respectfully submit the Court, considering Mr. Norman's unbiased assessment, substantially reduce the number of hours and fees claimed by Defendant's counsels. In order to assist the Court with the pertinent calculations, Plaintiffs have provided a fee calculation worksheet submitted herewith as Chhabra Decl. 17, Ex. 7. Based on the evaluation, any award, including the fees for the summary judgment motions, the Court is requested to grant Defendant a reasonable fee award between **$65,248** and **$100,448,** as deemed appropriate.

## (a) Statement of Decision with Specific Findings

-24-

PLAINTIFFS' OPPOSITION TO DEFENDENT'S MOTION FOR ATTORNEY'S FEES PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16(C)

Given the fact that Plaintiffs are a small business operation with limited resources, any monetary reward against Plaintiffs is bound to hurt their business operations. However, based on this Court's Dec. 21 Order, Plaintiffs understand they are responsible for Defendant's statutorily granted attorneys' fees and hope the Court finds the detailed analysis with calculations, submitted herein, reasonable. If, however, this Court disagrees with Plaintiffs' attempt to evaluate a fair and reasonable fee, Plaintiffs request this Court to provide a statement of decision with specific findings.

**(b) Stay on Fees, Pending Appeal**

Since this matter is currently on appeal, Plaintiffs request any monetary judgment be stayed until Appellate determination.

Date: March 8, 2018

Respectfully Submitted,

CHHABRA LAW FIRM, PC

s/*Rohit Chhabra*
Rohit Chhabra
Attorney for Plaintiffs
Open Source Security Inc. & Bradley Spengler

-25-

3:17-CV-04002-LB

PLAINTIFFS' OPPOSITION TO DEFENDENT'S MOTION FOR ATTORNEY'S FEES PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE § 425.16(C)