MELODY DRUMMOND HANSEN (S.B. #278786)
mdrummondhansen@omm.com
HEATHER J. MEEKER (S.B. #172148)
hmeeker@omm.com
O'MELVENY & MYERS LLP
2765 Sand Hill Road
Menlo Park, California  94025-7019
Telephone:     +1 650 473 2600
Facsimile:     +1 650 473 2601

CARA L. GAGLIANO (S.B. #308639)
cgagliano@omm.com
Two Embarcadero Center
28th Floor
San Francisco, California 94111-3823
Telephone:     +1 415 984 8700
Facsimile:     +1 415 984 8701

Attorneys for Defendant
Bruce Perens

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| OPEN SOURCE SECURITY, INC., and BRADLEY SPENGLER,<br><br>Plaintiffs,<br><br>v.<br><br>BRUCE PERENS, and Does 1-50,<br><br>Defendants. | Case No. 3:17-cv-04002-LB<br><br>**DEFENDANT BRUCE PERENS'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR MANDATORY FEES AND COSTS UNDER CALIFORNIA'S ANTI-SLAPP LAW**<br><br>Hearing Date:  April 5, 2018<br>Time:  9:30 a.m.<br>Location:  Courtroom C, 15th Floor<br>Judge:  Hon. Laurel Beeler |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................................... 1

II.     MR. PERENS'S FEES AWARD SHOULD NOT BE REDUCED BASED ON
        THE OVERALL SIZE OF THE AWARD, THE SIZE OF PAST FEE AWARDS,
        OR THE AMOUNT OF FEES INCURRED BY PLAINTIFFS. ....................................... 2

III.    MR. PERENS SHOWED HIS COUNSEL'S RATES ARE MARKET FOR
        COMPARABLY EXPERIENCED BAY AREA ATTORNEYS; PLAINTIFFS
        RELY ON OUT-OF-STATE DATA AND OVERSIMPLIFYING THE CASE. ............. 3

IV.     MR. PERENS'S REQUESTED AWARD IS BASED ON ACTUAL HOURS
        EXPENDED DEFENDING THIS HIGH-STAKES CASE; PLAINTIFFS
        MINIMIZE THE COMPLEXITY AND VEXATIOUS NATURE OF THE CASE. ........ 6

        A.      The Court Should Not Reduce the Claimed Hours Based on Plaintiffs'
                Incorrect and Generalized Conclusions of "Inefficiency." ................................... 7

        B.      The Court Should Not Reduce the Claimed Hours Based on Plaintiffs'
                False Accusations and *Ad Hominem* Attacks.................................................... 11

        C.      Plaintiffs Ignore Their Role in Increasing Mr. Perens's Incurred Fees. ............... 13

V.      O'MELVENY SHOULD BE COMPENSATED FOR THE RISK
        UNDERTAKEN UNDER THE ALTERNATIVE FEE ARRANGEMENT. ................... 14

VI.     ENFORCEMENT OF THE MANDATORY FEES AWARD SHOULD NOT BE
        STAYED PENDING APPEAL ...................................................................................... 15

VII.    CONCLUSION ............................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AECOM Energy & Constr., Inc. v. Ripley*,
 No. 2:17-CV-05398 RSW (LSS), 2018 WL 1010270 (C.D. Cal. Feb. 16, 2018) ................... 5

*Artifex Software, Inc. v. Hancom, Inc.*,
 No. 16-CV-06982-JSC, 2017 WL 1477373 (N.D. Cal. Apr. 25, 2017) ................................. 4

*Braden v. BH Fin. Servs., Inc.*,
 No. C 13-02287 CRB, 2014 WL 892897 (N.D. Cal. Mar. 4, 2014) ........................................ 5

*Brinker v. Normandin's*, No. 14-CV-03007-EJD (HRL),
 2017 WL 713554 (N.D. Cal. Feb. 23, 2017) ........................................................................ 5

*Colony Cove Props., LLC v. City of Carson*,
 No. CV 14-3242 PSG (PJWx) (C.D. Cal. Aug. 15, 2016)............................................. 4, 5, 6

*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*,
 47 Cal. App. 4th 777 (1996) .................................................................................................. 3

*Dropbox, Inc. v. Thru Inc.*,
 No. 15-CV-01741-EMC, 2017 WL 914273 (N.D. Cal. Mar. 8, 2017)................................ 6, 8

*Ferland v. Conrad Credit Corp.*,
 244 F.3d 1145 (9th Cir. 2001)............................................................................................... 8

*Garcia v. Stanley*,
 No. 14-CV-01806-BLF, 2017 WL 897429 (N.D. Cal. Mar. 7, 2017) ................................... 5

*Gonzalez v. City of Maywood*,
 729 F.3d 1196 (9th Cir. 2013)............................................................................................... 2

*Graham-Sult v. Clainos*,
 756 F.3d 724 (9th Cir. 2014)....................................................................................... 2, 3, 13

*Graham-Sult v. Clainos*,
 No. CV 10-4877 CW, 2012 WL 994754 (N.D. Cal. Mar. 23, 2012)...................................... 8

*Henry v. Bank of Am. Corp.*,
 No. C 09-0628 RS, 2010 WL 3324890 (N.D. Cal. Aug. 23, 2010)........................................ 5

*In re HPL Techs., Inc. Secs. Litig.*,
 366 F. Supp. 2d 912 (N.D. Cal. 2005) .................................................................................. 5

*Ketchum v. Moses*,
 24 Cal. 4th 1122 (2001) ............................................................................................... 14, 15

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Lane Zhao v. Sumin Tsai*,
  No. 17-CV-07378-JCS, 2018 WL 983673 (N.D. Cal. Feb. 20, 2018)...................................... 5

*Loop AI Labs Inc v. Gatti*,
  No. 15-CV-00798-HSG, 2016 WL 2640472 (N.D. Cal. May 9, 2016).................................. 5

*Love v. Mail on Sunday*,
  No. CV05-7798 ABC (PJWx), 2007 WL 2709975 (C.D. Cal. Sept. 7, 2007) .......................... 9

*Lunada Biomedical v. Nunez*,
  230 Cal. App. 4th 459 (2014) ........................................................................ 11, 14

*Maloney v. T3Media, Inc.*,
  No. CV 14-05048-ABV (BKX), 2015 WL 3879634 (C.D. Cal. May 27, 2015).................. 3, 9

*Mangold v. Cal. Public Utils. Comm'n*,
  67 F.3d 1470 (9th Cir. 1995)........................................................................... 14

*Maughan v. Google Tech., Inc.*,
  143 Cal. App. 4th 1242 (2006) ........................................................................ 9

*Minichino v. First Cal. Realty*,
  No. C-11-5185 EMC, 2012 WL 6554401 (N.D. Cal. Dec. 14, 2012) ...................................... 5

*Nagy v. Grp. Long Term Disability Plan for Emps. of Oracle Am., Inc.*,
  No. 14-CV-00038-HSG (LB), 2017 WL 725740 (N.D. Cal. Jan. 17, 2017),
  *report and recommendation adopted in full*, 2017 WL 713126 (Feb. 23, 2017)............... 6, 7, 8

*O'Bannon v. Nat'l Collegiate Athletic Ass'n*,
  114 F. Supp. 3d 819 (N.D. Cal. 2015), *objections overruled in relevant*
  *part*, No. C 09-3329 CW, 2016 WL 1255454 (N.D. Cal. Mar. 31, 2016)................................ 7

*Pac. Gas & Elec. Co. v. SEIU Local 24/7*,
  No. C 10–05288 SBA (LB), 2012 WL 4120255 (N.D. Cal. May 25, 2012),
  *objections sustained on other grounds*, 2012 WL 4120253 (Sept. 17, 2012)........................... 5

*Pecot v. Wong*,
  No. A139566, 2018 WL 459354 (Cal. Ct. App. Jan. 18, 2018) ............................................... 9

*Perfect 10, Inc. v. Giganews, Inc.*,
  No. CV 11-07098-AB SHX, 2015 WL 1746484 (C.D. Cal. Mar. 24, 2015),
  *aff'd*, 847 F.3d 657 (9th Cir. 2017) ......................................................................... 5

*Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guar. Ass'n*,
  163 Cal. App. 4th 550 (2008) ............................................................................ 3, 7

1

2

**TABLE OF AUTHORITIES**
(continued)

Page(s)

3

4

*Prison Legal News v. Schwarzenegger*,
561 F. Supp. 2d 1095 (N.D. Cal. 2008) .............................................................. 7, 8

5

Prison Legal News v. Schwarzenegger,
608 F.3d 446 (9th Cir. 2010)................................................................................. 6

6

7

*Rosenfeld v. U.S. Dep't of Justice*,
904 F. Supp. 2d 988 (N.D. Cal. 2012) .................................................................. 6

8

*Serrano v. Unruh*,
32 Cal. 3d 621 (1982) .......................................................................................... 13

9

10

*Zepeda v. PayPal, Inc.*,
No. C 10-1668 SBA, 2017 WL 1113293 (N.D. Cal. Mar. 24, 2017), *appeal
dismissed*, No. 17-15780, 2017 WL 3138104 (9th Cir. July 11, 2017) ..................................... 6

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S REPLY ISO MOTION FOR
MANDATORY FEES & COSTS
3:17-CV-04002-LB

1

## I.     INTRODUCTION

2        Bruce Perens is the quintessential defendant anti-SLAPP is designed to protect.  After Mr.

3   Perens posted opinions on his blog criticizing Open Source Security for violating GPL Open

4   Source requirements, OSS sued him for $3 million.  Mr. Perens is a self-employed individual who

5   spends most of his time developing, supporting or advocating Open technologies, often providing

6   his services to the public without charge.  If Plaintiffs succeeded in pursuing their claims, Mr.

7   Perens could have been financially ruined—not only based on any damages recovery should

8   Plaintiffs win but based on the sheer expense of defending himself regardless of the merits.

9   Luckily, Mr. Perens has long known Open Source legal expert Heather Meeker, a partner at

10  O'Melveny, a law firm that could handle the key (and sometimes novel) issues in the case,

11  spanning Open Source, breach of contract, copyright, defamation, and anti-SLAPP.  And anti-

12  SLAPP's fee-shifting provisions allowed O'Melveny to take the case.

13        After months of litigation that Plaintiffs made more burdensome and expensive at every

14  turn, while personally attacking Mr. Perens and his counsel and ignoring warnings about

15  Plaintiffs' baseless litigation tactics and the resulting mounting fees, Mr. Perens showed—and

16  Plaintiffs do not dispute—that he is entitled to his fees and costs under the anti-SLAPP law.  Mr.

17  Perens also showed his fees request is amply supported by directly relevant evidence and caselaw.

18        In response, Plaintiffs present an alternate reality, where Plaintiffs—a corporation and its

19  CEO—are David, and Bruce Perens—the individual they sued for $3 million because they

20  disagreed with his blog post—is Goliath.  Plaintiffs lament that unlike Mr. Perens, they could not

21  afford a "5-star law firm" and "had to resort" to retaining a solo practitioner to file their SLAPP

22  suit.  But as Mr. Perens's motion showed, Mr. Perens could *not* typically afford to hire

23  O'Melveny.  O'Melveny believed strongly in Mr. Perens and his case, and provided Mr. Perens

24  with an alternative fee arrangement that would allow a robust defense, protecting Mr. Perens from

25  ruin if he lost, and compensating the firm for its risk in taking the matter, if the team succeeded in

26  defeating Plaintiffs' claims.  California's anti-SLAPP law facilitates quality counsel taking on

27  such matters, by mandating fee awards that account for quality of attorneys, case complexity,

28  reasonable time expended, and any risk of below-market payment that counsel assumed.

DEFENDANT'S REPLY ISO MOTION FOR
MANDATORY FEES & COSTS
3:17-CV-04002-LB

1    Plaintiffs argue, however, that Mr. Perens's counsel should be compensated at roughly

2    half of their usual hourly rates and for fewer than half of the hours included in Mr. Perens's fee

3    request, all of which were actually spent defending against Plaintiffs' claims.  Plaintiffs attempt to

4    justify this by reframing the case as involving only simple issues unrelated to intellectual

5    property—even though Plaintiffs' lawsuit asked the Court to decide whether Plaintiffs' practices

6    violate GPL Open Source licensing requirements (thereby subjecting their customers to breach of

7    contract and copyright infringement), an issue that has never been by any court and that Plaintiffs

8    are now asking the Ninth Circuit to resolve.

9    Plaintiffs' suggest contrary to law that Mr. Perens's requested fees can be rejected based

10   on the alleged shocking size of the overall award or its comparison to Plaintiffs' own fees.  And

11   Plaintiffs suggest that the significantly greater number of hours that O'Melveny dedicated to this

12   case (versus Plaintiffs' counsel) can only be explained by mismanagement or falsification of

13   billing records—rather than attributing those hours to a diligent defense proportionate to the risks

14   Mr. Perens faced, and necessary to respond to Plaintiffs' vexatious pleadings offering farfetched

15   accusations and spurious legal arguments.

16   While Plaintiffs may be allowed to drag Mr. Perens through a meritless appeal, Mr. Perens

17   respectfully requests that the Court deny Plaintiffs' requested stay of a fees award pending that

18   appeal and hold Plaintiffs accountable now.

19   **II.    MR. PERENS'S FEES AWARD SHOULD NOT BE REDUCED BASED ON THE**
         **OVERALL SIZE OF THE AWARD, THE SIZE OF PAST FEE AWARDS, OR**
20       **THE AMOUNT OF FEES INCURRED BY PLAINTIFFS.**

21   Mr. Perens showed the requested fees were calculated based on hours actually expended

22   that are reasonable given the complexities of the case, and charged at hourly rates that are

23   comparable to actual rates charged by Bay Area attorneys of similar skill, experience, and

24   reputation, and that have previously been approved by California courts. *See, e.g.*, Mot. at 9–18.

25   Fees calculated using this method are "presumptively reasonable" and courts do not second guess

26   them merely because the total award seems high. *See Gonzalez v. City of Maywood*, 729 F.3d

27   1196, 1208–09 (9th Cir. 2013); *Graham-Sult v. Clainos*, 756 F.3d 724, 751–52 (9th Cir. 2014).

28   In response, Plaintiffs spend pages appealing to shock value, arguing that the total amount

is "ridiculous and outrageous" in the abstract and compared to the total fees awarded in a handful of state court cases. *See, e.g.*, Opp. at 1–3, 22–23.

Anti-SLAPP fee determinations, however, must be based on the factual circumstances and lodestar components; a fee award is not unreasonable "simply because it involves a lot of money." *See Maloney v. T3Media, Inc.*, No. CV 14-05048-ABV (BKX), 2015 WL 3879634, *10 (C.D. Cal. May 27, 2015). Furthermore, courts reject a comparison of total fee awards to other cases because such a comparison "violate[s] the principle that 'each fee application under the anti-SLAPP statute must be assessed on its own merits.'" *Graham-Sult*, 756 F.3d at 752 (quoting *Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guar. Ass'n*, 163 Cal. App. 4th 550, 561 (2008)). In any event, Plaintiffs rely on stale cases—the most recent of which is fourteen years old. *See* Opp. at 22–23.[1] Market rates have changed in those 14-plus years, and none of the cited cases proceeded beyond a single anti-SLAPP motion—whereas this case involved two anti-SLAPP motions and a motion for partial summary judgment, among a multiplicity of other filings.

Plaintiffs' shock-value arguments are irrelevant to the lodestar analysis the law requires.

## III.   MR. PERENS SHOWED HIS COUNSEL'S RATES ARE MARKET FOR COMPARABLY EXPERIENCED BAY AREA ATTORNEYS; PLAINTIFFS RELY ON OUT-OF-STATE DATA AND OVERSIMPLIFYING THE CASE.

Mr. Perens demonstrated that his counsel's rates are reasonable in light of their experience in areas central to the case, including Open Source licensing and defamation law; the financial and reputational stakes of the litigation; his professional relationship with Ms. Meeker; and the successful results obtained. *See, e.g.*, Mot. at 13–15; Drummond Hansen Fees Decl. ¶¶ 7–13, 24; Covey Decl. (ECF No. 62-2) ¶¶ 7–8. Mr. Perens cited recent California cases approving O'Melveny's rates and other comparable rates, and provided a declaration from Paul Covey, who is responsible for ensuring that O'Melveny rates that are competitive with comparable peer firms in the area. *See* Mot. at 14–15; Covey Decl. ¶¶ 1, 6–8. Plaintiffs ignore this evidence and instead mischaracterize the nature of the case and defense counsel's experience, then ask the Court to cut

---

[1] Plaintiffs also confusingly claim that O'Melveny was counsel in *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman*, 47 Cal. App. 4th 777 (1996). *See* Opp. at 23. Rosenfeld represented itself in the superior court and was represented by Irell & Manella on appeal. *See id.* at 779.

DEFENDANT'S REPLY ISO MOTION FOR
MANDATORY FEES & COSTS
3:17-CV-04002-LB

1 | O'Melveny's market rates essentially by half based on *Plaintiffs'* counsel's rates, flawed logic,

2 | rates seemingly pulled from thin air, and "adjusted" out-of-state matrices.

3 | Questioning the relevance of defense counsel's experience, Plaintiffs and their expert

4 | reimagine Plaintiffs' pleadings, insisting that the case was simple and raised no issues of

5 | intellectual property law. *See, e.g.*, Opp. at 1–2; Norman Decl. ¶ 6. But Plaintiffs' pleadings

6 | directly put at issue whether it is true that their practices violate Open Source licensing terms and

7 | therefore create a risk of breach of contract and contributory infringement liability for Plaintiffs'

8 | customers. *See, e.g.*, Compl. ¶¶ 22–29; FAC ¶¶ 41–56. Had the Court found Mr. Perens's

9 | opinions legally actionable, Mr. Perens intended to present a defense of truth by establishing that

10 | Plaintiffs have, in fact, violated the GPLv2. Opp. to MPSJ at 5, 7-8 (ECF No. 32); Joint Case

11 | Management Statement at 9 (ECF No. 39). With his reputation and finances on the line, and

12 | unable to predict the outcome of the case, Mr. Perens understandably selected counsel who would

13 | be well-equipped to litigate the issues raised by the Complaint: Ms. Meeker is a leading authority

14 | on Open Source licensing issues, and O'Melveny was the first firm to successfully argue that

15 | violations of Open Source licensing terms can create a cause of action for breach of contract in

16 | addition to copyright infringement. *See, e.g.*, Mot. at 14; Drummond Hansen Fees Decl. ¶ 10;

17 | *Artifex Software, Inc. v. Hancom, Inc.*, No. 16-CV-06982-JSC, 2017 WL 1477373 (N.D. Cal.

18 | Apr. 25, 2017).

19 | Plaintiffs fail to credit defense counsel's qualifications in other ways. For example, they

20 | ignore Ms. Drummond Hansen's and Ms. Gagliano's experience with defamation, First

21 | Amendment, and anti-SLAPP law (*see* Drummond Hansen Fees Decl. ¶¶ 9, 11 & Ex. A at 2–4),

22 | and they also describe Ms. Gagliano as a first-year associate admitted to practice in February

23 | 2017. *See, e.g.*, Opp. at 3–4; Chhabra Decl. ¶ 10. Ms. Gagliano is a third-year associate who has

24 | worked at O'Melveny since October 2015 and was admitted to the California Bar in February

25 | 2016. *See* Drummond Hansen Fees Decl. ¶ 11; Drummond Hansen Reply Decl. ¶ 36 & Ex. F.

26 | While Plaintiffs dramatically proclaim O'Melveny's rates "exorbitant," "astonishing," and

27 | "patently unreasonable," they also ignore precedent cited in Mr. Perens's motion that specifically

28 | found comparable O'Melveny rates reasonable. *See* Opp. at 3; Mot. at 14–15; *Colony Cove*

DEFENDANT'S REPLY ISO MOTION FOR
MANDATORY FEES & COSTS
3:17-CV-04002-LB

1   *Props., LLC v. City of Carson*, No. CV 14-3242 PSG (PJWx), Dkt. 225, at *11 (C.D. Cal. Aug.

2   15, 2016).  Plaintiffs' counsel then relies on his own hourly rates, even though his firm structure

3   as a solo practitioner is not comparable and he lacks comparable experience.  Opp. at 1, 3.  *See*

4   Chhabra Decl. ¶¶ 2–3, 6–7.  As this Court has noted, merely calling requested rates

5   "astronomical" and declaring that one's own counsel charges "hundreds of dollars per hour less"

6   falls "well short" of carrying the burden of rebuttal.  *Pac. Gas & Elec. Co. v. SEIU Local 24/7*,

7   No. C 10–05288 SBA (LB), 2012 WL 4120255, at *6 (N.D. Cal. May 25, 2012) (Beeler, J.),

8   *objections sustained on other grounds*, 2012 WL 4120253 (Sept. 17, 2012); *see also Colony*

9   *Cove,* No. CV 14-3242 PSG (PJWx), Dkt. 225, at *11 (noting "fees charged at large, national

10   firms may exceed those of smaller, local firms").

11          Plaintiffs also cite, without analysis, various cases awarding lower hourly rates.  *See* Opp.

12   at 16–17.  But that also provides insufficient basis to reduce the requested rates.  *See Pac. Gas &*

13   *Elec.*, 2012 WL 4120255, at *6.  Moreover, in all but two of those cases, the rates awarded were

14   those requested by the prevailing party.[2]  In the two cases that reduced requested hourly rates, the

15   moving party failed to offer any persuasive support for the reasonableness of its counsel's rates.

16   *See Brinker v. Normandin's*, No. 14-CV-03007-EJD (HRL), 2017 WL 713554, at *2–3 (N.D.

17   Cal. Feb. 23, 2017); *In re HPL Techs., Inc. Secs. Litig.*, 366 F. Supp. 2d 912, 915, 919–22  (N.D.

18   Cal. 2005).  Here, by contrast, O'Melveny supported its rates, and Plaintiffs ignore the recent

19   Northern District cases Mr. Perens cited approving comparable rates.  *See* Mot. at 15.[3]

20          Finally, Plaintiffs offer two sets of alternative rates: one offered by their purported fees

---

21   [2] *See Loop AI Labs Inc v. Gatti*, No. 15-CV-00798-HSG, 2016 WL 2640472, at *2 (N.D. Cal.

22   May 9, 2016); *Henry v. Bank of Am. Corp.*, No. C 09-0628 RS, 2010 WL 3324890, at *3 (N.D.
Cal. Aug. 23, 2010); *Minichino v. First Cal. Realty*, No. C-11-5185 EMC, 2012 WL 6554401, at

23   *7 (N.D. Cal. Dec. 14, 2012); *Braden v. BH Fin. Servs., Inc.*, No. C 13-02287 CRB, 2014 WL
892897, at *6–7 (N.D. Cal. Mar. 4, 2014); *Lane Zhao v. Sumin Tsai*, No. 17-CV-07378-JCS,

24   2018 WL 983673, at *1 (N.D. Cal. Feb. 20, 2018); *Garcia v. Stanley*, No. 14-CV-01806-BLF,
2017 WL 897429, at *4 (N.D. Cal. Mar. 7, 2017).

25   [3] As for Plaintiffs' unsupported assertion that Ms. Diaz's rates in particular are "completely
unheard of," recent California cases have approved comparable paralegal rates.  *See, e.g.*,

26   *AECOM Energy & Constr., Inc. v. Ripley*, No. 2:17-CV-05398 RSW (LSS), 2018 WL 1010270,
at *1 (C.D. Cal. Feb. 16, 2018) ($334 per hour); *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-

27   07098-AB SHX, 2015 WL 1746484, at *21 (C.D. Cal. Mar. 24, 2015) ($345 per hour for
paralegal with 23 years' experience), *aff'd*, 847 F.3d 657 (9th Cir. 2017).  *See also* Drummond

28   Hansen Decl. ¶ 16 (describing Ms. Diaz's 26 years of paralegal experience).

DEFENDANT'S REPLY ISO MOTION FOR
MANDATORY FEES & COSTS
3:17-CV-04002-LB

1    expert, William H.G. Norman, without identifying any basis for his conclusions; and another

2    based on inflation-adjusted Washington, D.C. rates from the so-called "Laffey Matrix," further

3    adjusted based on cost of living for application to the Bay Area.  *See* Opp. at 16–18; Norman

4    Decl. ¶ 7(a); Chhabra Decl. Ex. 4.  Plaintiffs ignore more reliable evidence from Mr. Covey on

5    the comparability of O'Melveny's rates to hourly rates of firms of comparable skill, experience,

6    and reputation in the Bay Area.  *See* Covey Decl. ¶¶ 7–8; Mot. at 15; *see also Colony Cove*, No.

7    CV 14-3242, Dkt. 225, at *11 (approving actual O'Melveny rates).  Indeed, the Ninth Circuit has

8    recognized that "just because the Laffey Matrix has been accepted in the District of Columbia

9    does not mean that it is a sound basis for determining rates elsewhere, let alone in a legal market

10   3,000 miles away."  *See Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir.

11   2010) (affirming district court's refusal to reduce requested rates based on Laffey Matrix).

12   Accordingly, multiple courts in the Northern District have declined to use the Laffey Matrix

13   where, as here, the party requesting fees has submitted "competent evidence showing market rates

14   in this area (including those awarded by courts)."  *See, e.g.*, *Rosenfeld v. U.S. Dep't of Justice*,

15   904 F. Supp. 2d 988, 1003 (N.D. Cal. 2012); *Zepeda v. PayPal, Inc.*, No. C 10-1668 SBA, 2017

16   WL 1113293, at *22 (N.D. Cal. Mar. 24, 2017), *appeal dismissed,* No. 17-15780, 2017 WL

17   3138104 (9th Cir. July 11, 2017);  *Dropbox, Inc. v. Thru Inc.*, No. 15-CV-01741-EMC, 2017 WL

18   914273, at *4 (N.D. Cal. Mar. 8, 2017).

19          The Court therefore should find O'Melveny's rates are reasonable.

20   **IV.    MR. PERENS'S REQUESTED AWARD IS BASED ON ACTUAL HOURS**
         **EXPENDED DEFENDING THIS HIGH-STAKES CASE; PLAINTIFFS**
21       **MINIMIZE THE COMPLEXITY AND VEXATIOUS NATURE OF THE CASE.**

22          Mr. Perens demonstrated that the hours used in his fee calculation—which were actual

23   hours expended in defending this lawsuit—were reasonable in light of the stakes to Mr. Perens;

24   the number and complexity of the issues; Plaintiffs' numerous unnecessary, combative, and

25   unorthodox filings; and O'Melveny's efforts to minimize costs, including voluntary write-offs of

26   time actually spent on the matter.  *See, e.g.*, Mot. at 9–13; Drummond Hansen Fees Decl. ¶¶ 14,

27   18–19, 25–27 & Exs. A–C.  The burden then shifted to Plaintiffs to come forward with "*proof* to

28   counter [Mr. Perens's] time request."  *Nagy v. Grp. Long Term Disability Plan for Emps. of*

*Oracle Am., Inc.*, No. 14-CV-00038-HSG (LB), 2017 WL 725740, at *10 (N.D. Cal. Jan. 17, 2017) (Beeler, J.), *report and recommendation adopted in full*, 2017 WL 713126 (Feb. 23, 2017).

Plaintiffs do not meet their burden.  Instead, they rely on generalized allegations of duplication and inefficiency, substitute Plaintiffs' counsel's judgment for that of the prevailing party's counsel, mischaracterize the case and the work performed, and make *ad hominem* attacks based on a continued eagerness to assume the worst of Mr. Perens and his counsel, no matter how irrational the logic.  Plaintiffs also unnecessarily multiplied the cost of the litigation, and they should be held fully accountable for the resulting fees.

### A.   The Court Should Not Reduce the Claimed Hours Based on Plaintiffs' Incorrect and Generalized Conclusions of "Inefficiency."

Plaintiffs argue that essentially all work performed by Mr. Perens's counsel was duplicative and/or inefficient—and confusingly object to every entry of Ms. Rhoades's and Mr. Ormsby's as "irrelevant."  *See gen.* Chhabra Decl. Exs. 1-B–L.[4]  But to justify reductions to hours actually expended, Plaintiffs must "point to the specific items challenged, with a sufficient argument and citations to the evidence."  *Premier Med. Mgmt.*, 163 Cal. App. 4th at 564.  "General arguments that fees claimed are excessive, duplicative, or unrelated do not suffice."  *Id.*

Plaintiffs' objections closely resemble the approach this Court rejected in *Nagy.*  There, the defendants opposing the fee request submitted a similar list of itemized objections to entries in the prevailing plaintiff's billing records, proposing what defendants deemed a reasonable amount of time for them.  *Nagy*, 2017 WL 725740, at *10.  The Court found that the submission "mainly argue[d]" that plaintiff's counsel had "spent 'excessive' time on almost everything that they did," and did not constitute "contrary proof" that would justify the requested reductions.  *Id.*  The Court should likewise reject Plaintiffs' generalized objections of efficiency and duplication.

In addition to being grossly generalized, these objections are based on improper reasoning

---

[4] Plaintiffs argue that billing records are insufficiently detailed to permit more meaningful review (*see* Opp. at 12–13), but Plaintiffs cite no case law, and courts regularly reject similar challenges to billing entries that are much less descriptive.  *See, e.g., O'Bannon v. Nat'l Collegiate Athletic Ass'n*, 114 F. Supp. 3d 819, 832 (N.D. Cal. 2015) ("Draft complaint"), *objections overruled in relevant part*, No. C 09-3329 CW, 2016 WL 1255454, at *6 (N.D. Cal. Mar. 31, 2016) ("Research case law for motions in limine; edit motions in limine"); *Prison Legal News v. Schwarzenegger*, 561 F. Supp. 2d 1095, 1103 (N.D. Cal. 2008) ("email to/from AW").

DEFENDANT'S REPLY ISO MOTION FOR
MANDATORY FEES & COSTS
3:17-CV-04002-LB

1 and erroneous conclusions, as explained below.

2        **Plaintiffs improperly substitute their counsel's judgment for that of prevailing**

3 **counsel.**  Like in *Nagy*, Plaintiffs' objections overwhelmingly "amount to their criticism" of how

4 the prevailing party's counsel litigated the case, which the Court was "not inclined to second-

5 guess."  *See id.*; *see also* Mot. at 10.  Indeed, Plaintiffs' expert previously opined that while it

6 "may be easy for others" to say that a victory achieved in litigation "should and could have been

7 achieved at less cost," "second-guessing is simply too convenient and inappropriate."  Drummond

8 Hansen Reply Decl. Ex. G (Decl. of William H. G. Norman in Support of Nicholas P. Clainos'

9 Mot. for Award of Attorneys Fees & Costs ("Norman *Graham-Sult* Decl.") ¶ 3, *Graham-Sult v.*

10 *Clainos*, No. CV 10-4877 CW, 2012 WL 994754, at *4 (N.D. Cal. Mar. 23, 2012)).

11        In urging the Court to defer to *their* counsel's view of how the case should have been

12 managed, Plaintiffs adopt inconsistent positions.  For example, Plaintiffs complain it was

13 inefficient for O'Melveny to use junior associates to assist with research and drafting, while

14 simultaneously speculating that *their* counsel would have been *more* efficient and generated *fewer*

15 fees had he also employed junior associates and "interns"—as Plaintiffs incorrectly refer to Mr.

16 Ormsby and Ms. Rhoades.  *See* Opp. at 6; *see also* Chhabra Decl. ¶ 6.  Similarly, Plaintiffs accuse

17 Ms. Drummond Hansen of not providing guidance to the associates on the team, yet object to all

18 time spent doing just that as inefficient.  *Compare, e.g.,* Opp. at 15, 24 *with* Chhabra Decl. Ex. 1-

19 B at 8 (objecting to entries with team communications as comprising "needless discussions").[5]

20        **Plaintiffs improperly rely on their counsel's hours, which are not comparable.**

21 Plaintiffs' counsel relies on his own hours to argue the disparity between his hours and those

22 expended by Mr. Perens's counsel proves unreasonableness.  *See, e.g.*, Opp. at 6; Chhabra Decl.

23 ¶ 7.  The Ninth Circuit cautions against drawing such conclusions, which may not account for the

24 possibility that counsel for the prevailing party "spent more time because she did better work."

25 *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1151 (9th Cir. 2001); *see also Dropbox*, 2017

26 WL 914273, at *5; *Love v. Mail on Sunday*, No. CV05-7798 ABC (PJWx), 2007 WL 2709975, at

27 _____

28 [5] Courts also reject such objections when they do not support that any specific conference was excessive or duplicative.  *See Prison Legal News*, 561 F. Supp. 2d at 1103–04.

DEFENDANT'S REPLY ISO MOTION FOR
MANDATORY FEES & COSTS
3:17-CV-04002-LB

1   *10 (C.D. Cal. Sept. 7, 2007) ("Plaintiff's counsel may have billed fewer hours, but Plaintiff also

2   lost."). *Maughan v. Google Tech., Inc.*, 143 Cal. App. 4th 1242 (2006)—which applied an abuse

3   of discretion standard to affirm a fee reduction based in part on the hours expended by opposing

4   counsel—is inapposite. *See id.* at 1251; Opp. at 6–7. There, the prevailing party did not provide

5   the trial court with the number of hours spent on their anti-SLAPP motion. *Maughan*, 143 Cal.

6   App. 4th at 1251. Here, Mr. Perens's counsel submitted those hours, detailed billing records, and

7   total hours and subtotals for each project. *Maughan* also cited the trial court's finding that

8   opposing counsel's anti-SLAPP opposition was "of equal caliber" to the prevailing party's

9   briefing. *Id.* The Court has made no such finding here.[6]

10      Plaintiffs' counsel also ignores how his spending *less* time on his filings has led to more

11   work for Mr. Perens's attorneys. *Cf. Love*, 2007 WL 2709975, at *10 ("Defending against an

12   over-pled complaint packed with a barrage of convoluted allegations often requires more work

13   than maintaining such an action requires."). For example, had Plaintiffs' counsel adequately

14   researched whether a corporation can assert a false light claim under California law, he would

15   have discovered that the answer is no. Mot. to Dismiss at 19 (ECF No. 11). Instead, Mr. Perens's

16   counsel had to research that and bring a motion to dismiss. *Id.* Plaintiffs then filed an amended

17   complaint asserting that claim on Mr. Spengler's behalf—but failed to research whether Mr.

18   Spengler may state a claim for intentional interference based on economic relationships between

19   *OSS* and third parties. Second Mot. to Dismiss at 23–24 (ECF No. 30). Again, that task fell to

20   defense counsel—and again the answer is no. *Id.*

21      **Plaintiffs improperly rely on a "fee per page" analysis.** Plaintiffs support their claims

22   of inefficiency with a flawed "fee per page" methodology (Opp. at 4–5) that courts reject because

23   the length of a brief is not a reliable measure of the effort it required. *Maloney v. T3Media, Inc.*,

24   2015 WL 3879634, at *7.

25      **Plaintiffs and Mr. Norman mischaracterize the complexity and stakes of the case.** In

26   _____

27   [6] *Pecot v. Wong*, No. A139566, 2018 WL 459354 (Cal. Ct. App. Jan. 18, 2018) (*cited* in Opp. at 7) did not consider opposing counsel's hours. Defendants challenged a fee reduction, contending that the trial court did not conduct a lodestar analysis. *Pecot*, at *3–4. The appellate court

28   disagreed, emphasizing the deference of the abuse of discretion standard it applied. *Id.* at *2–5.

DEFENDANT'S REPLY ISO MOTION FOR
MANDATORY FEES & COSTS
3:17-CV-04002-LB

arguing for a reduction in Mr. Perens's counsel's hours, Plaintiffs and Mr. Norman narrowly portray the case as a simple matter involving only the issue that ultimately was the basis for the Court's dismissal of Plaintiffs' claims.  Opp. at 8-9; Norman Decl. ¶8.  They ignore both the procedural complexities introduced by Plaintiffs and the numerous other issues that were actually briefed—including, for example, Plaintiffs' false light and intentional interference claims, the first prong of the anti-SLAPP analysis, matters of public concern, and Plaintiffs' burden of proving truth.

Notably, Mr. Norman does not claim to have any defamation experience on which to base such opinions.  He does, however, have anti-SLAPP experience—and when representing a party seeking fees in *Graham-Sult*, opined that "in [his] experience," anti-SLAPP motions "are always time consuming and expensive," and "once a decision is made to file" an anti-SLAPP motion, "full attention must be devoted and corners should not be cut."  Drummond Hansen Reply Decl. Ex. G (Norman *Graham-Sult* Decl.) ¶ 3.

Plaintiffs also backpedal on the risks Mr. Perens faced, arguing that the stakes were not really so high because Plaintiffs allegedly did not seek to recover the full $3 million from Mr. Perens alone—just some undetermined amount in excess of $75,000—and suggests that recovery would be divided among 50 fictional, unknown Does.  *See* Opp. at 3–4.  This is wrong: The complaints sought judgment against Mr. Perens and each Doe defendant "jointly and severally."  Compl. at 10; FAC at 21.

**Plaintiffs and Mr. Norman misunderstand the work performed.**  Mr. Norman reviewed only the public filings in this case to form his opinions, because Plaintiffs chose not to provide him access to defense counsel's detailed billing records or any other sealed material.[7] *See* Norman Decl. ¶¶ 2, 5; Chhabra Decl. ¶ 9.  As a result, Mr. Norman criticized Mr. Perens's claimed hours based on inaccurate assumptions.  For example, Mr. Norman emphatically disputed the reasonableness of the hours attributable to the December 14 hearing, opining that the maximum reasonable amount would be six hours for two attorneys, including travel time.  *See*

---

[7] Mr. Perens's counsel offered to consider access to sealed material for any consultant if Plaintiffs provide the name so counsel could consider conflicts.

1    Norman Decl. ¶ 7(c).  Mr. Norman apparently drew the absurd and inaccurate conclusion that Mr.

2    Perens claimed 141.6 compensable hours for counsel to merely travel to and attend the motion

3    hearing, when the billing entries showed detailed hearing entries including preparation, outlining,

4    case review, and mooting.  *Cf.* Drummond Hansen Reply Decl. Ex. C (entries categorized as

5    Hearing).  Mr. Norman also incorrectly assumed that the hours claimed for settlement discussions

6    related to "the negotiation of the case dismissal terms."  Norman Decl. ¶ 7(c).  In fact, the 12.3

7    hours claimed in the "Settlement" category were spent attempting to resolve the case after the

8    hearing on Mr. Perens's anti-SLAPP motion—as the Court urged the parties to do.[8]  *See*

9    Drummond Hansen Reply Decl. Ex. C (entries categorized as Settlement); Dec. 14, 2016 Hr'g Tr.

10   at 9:1–25, 25:7–24.

11          Plaintiffs assert many other objections that stem from misreadings of billing narratives.

12   For the few instances where Mr. Perens's counsel believes the Court may find further information

13   useful, Ms. Drummond Hansen has provided brief explanations in her accompanying declaration.

14   *See* Supp. Drummond Hansen Decl. ¶¶ 30–32.

15

16          **B.     The Court Should Not Reduce the Claimed Hours Based on Plaintiffs' False
                     Accusations and *Ad Hominem* Attacks.**

17          Mr. Perens submitted detailed billing entries to demonstrate the reasonableness of his

18   claimed hours, going beyond what was required to meet his burden.  *See* Drummond Hansen

19   Decl. ¶ 25 & Ex. C; *Lunada Biomedical v. Nunez*, 230 Cal. App. 4th 459, 487–88 (2014) (anti-

20   SLAPP defendant can justify fees claimed by submitting a declaration from counsel instead of

21   billing records or invoices).  In a bewildering eagerness to find malice where none exists,

22   Plaintiffs irrationally argue that O'Melveny intentionally "doctored" these entries.  Opp. at 10–12.

23          Mr. Perens's counsel investigated the anomalies raised by Plaintiffs and determined that

24   the total hours and total fees were correct, as were the subtotal fees for each entry.  But entries in

25

26

27   _____

     [8] Plaintiffs bizarrely seem to argue, without citation to authority, that their "terse" refusals to
28   discuss settlement options or even provide a counteroffer mean that the efforts of Mr. Perens's
     counsel are not compensable.  *See* Opp. at 19; Chhabra Decl. Ex. 1-J.

                                          DEFENDANT'S REPLY ISO MOTION FOR
                                          MANDATORY FEES & COSTS
                                          3:17-CV-04002-LB

1   the "Hours" column of Exhibit C were inadvertently re-ordered before the exhibit was finalized.[9]

2   Drummond Hansen Reply Decl. ¶ 14.  Counsel regrets this clerical error and has prepared

3   corrected versions of all affected exhibits.[10]  *Id.* ¶¶ 15, 26–28 & Exs. A–D.  The fact remains,

4   however, that the error was obviously clerical and unintentional, and it did not affect the total

5   amount of fees or hours claimed.  *Id.* ¶ 4.  To provide an illustration: Plaintiffs point to a

6   September 8, 2017 billing entry from Ms. Gagliano that appears to reflect a claimed fee of over

7   $6,000 for half an hour of work.  ECF No. 78 at 11 (first substantive row of first table).

8   Mr. Perens does not dispute that the hours in that row are incorrect, but he *does* dispute that the

9   error stems from an attempt to inflate claimed fees.  The immediately adjacent rows—showing

10  Ms. Gagliano's other two billing entries for September 8, 2017—should dispel any suspicion to

11  the contrary, demonstrating that the appropriate hours for the entry were reflected in the row

12  below.  *See* Drummond Hansen Reply Decl. ¶ 12; Ex. C at 1 (September 8, 2017).  Plaintiffs have

13  no rational basis to believe Mr. Perens's counsel would intentionally manipulated billing entries

14  in this manner, nor can they explain why anyone would even *want* to.  The obvious and correct

15  explanation is that the number of hours Ms. Gagliano spent for one task on September 8th was

16  inadvertently transposed with a the number of hours spent on another task the same day—an

17  artifact from working and sorting in Excel.  *Id.*

18      Plaintiffs also falsely accuse Mr. Perens's counsel of not making a good faith effort to

19  exclude excessive, redundant, and unnecessary hours from Mr. Perens's fees request.  *See* Opp. at

20  13.  Mr. Perens's counsel reviewed the billing entries generated in this case and wrote off 194.9

21  hours actually expended on the litigation, consistent with (and indeed more generous than)

22  O'Melveny's practice for other client matters.  Mot. at 13; Drummond Hansen Decl. ¶ 26.

23  Defense counsel undertook that pre-filing review in good faith and believes the amount presented

24  was reasonable, but in the interest of compromise, agrees to additional write-offs for which Mr.

---

25  [9] A few additional, isolated errors stemming from the transcription of hours write-offs were
26  identified and have been corrected.  Drummond Hansen Decl. ¶ 20–26 (describing corrections).
    For the sake of simplicity, Mr. Perens's counsel has written off the affected hours.

27  [10] Mr. Perens's counsel first learned of this issue upon reading Plaintiffs' opposition.    Had
28  Plaintiffs notified Mr. Perens earlier, counsel would have gladly provided corrected exhibits then.
    *Id.*

DEFENDANT'S REPLY ISO MOTION FOR
MANDATORY FEES & COSTS
3:17-CV-04002-LB

1    Perens and his counsel do not request fees.  Drummond Hansen Reply Decl. ¶¶ 16–29.

2        **C.    Plaintiffs Ignore Their Role in Increasing Mr. Perens's Incurred Fees.**

3        As Mr. Perens showed in his motion, the number of hours required to litigate this case

4    were driven in large part by Plaintiffs' vexatious conduct.  Mot. at 11–12.  But Plaintiffs respond

5    with astonishment and moral outrage at the notion of being held responsible for burdens they

6    voluntarily and persistently inflicted, despite being repeatedly warned of the consequences of

7    their actions.  *See generally* Reply In Support of Sanctions Mot., Drummond Hansen Sanctions

8    Reply Decl. Exs. 1 and 2.

9        For example, Plaintiffs incorrectly argue that fees incurred in responding to their

10   premature and unsupported motion for partial summary judgment are not compensable.  Opp. at

11   8–9.  Instead, all fees incurred in "responding to a lawsuit the district court found to be baseless"

12   are subject to anti-SLAPP fee-shifting.  *See, e.g.*, Mot. at 8; *Graham-Sult*, 756 F.3d at 752.

13   Plaintiffs' argument is all the less convincing, considering that Plaintiffs insisted on fully briefing

14   summary judgment before the Court could decide Mr. Perens's anti-SLAPP motion.  Sanctions

15   Mot. at 8.

16       Relatedly, Plaintiffs complain that Mr. Perens's counsel did not staff this case leanly

17   enough (*see* Opp. at 4), but are partially responsible for the expansion of Mr. Perens's litigation

18   team.  *See* Mot. at 13.  Both Plaintiffs and their expert ignore that this matter was handled almost

19   entirely by one junior partner, one junior associate, and one paralegal until *after* Plaintiffs moved

20   for partial summary judgment and *after* Plaintiffs refused to defer briefing on that motion, so that

21   multiple motions had to be double-tracked.  ECF Nos. 24, 28.  (This was a more cost-efficient

22   team than Plaintiffs' expert proposes.  *See* Norman Decl. ¶ 7(b) (proposing use of mid-level to

23   senior partner).)  The additions of Mr. Ormsby in late October and Ms. Rhoades in mid-

24   November thus were necessitated by Plaintiffs' conduct.  Drummond Hansen Fees Decl. ¶ 19.

25       Plaintiffs cannot expect to sue Mr. Perens for millions of dollars, increase his legal fees

26   through frivolous filings and positions, and then "complain about the time necessarily spent" in

27   response.  *See Serrano v. Unruh*, 32 Cal. 3d 621, 638 (1982).

28

13

DEFENDANT'S REPLY ISO MOTION FOR
MANDATORY FEES & COSTS
3:17-CV-04002-LB

**V.    O'MELVENY SHOULD BE COMPENSATED FOR THE RISK UNDERTAKEN UNDER THE ALTERNATIVE FEE ARRANGEMENT.**

As Mr. Perens showed, the alternative fee arrangement here warrants upward adjustment of the lodestar figure. *See, e.g.*, Mot. at 16–18.  Indeed, Plaintiffs concede that in California, contingency multipliers are among "the most common fee enhancers."  Opp. at 20.

Plaintiffs erroneously argue that federal law prohibits the application of a contingency multiplier.  Opp. at 7, 19.  State law controls the application of contingency multipliers in diversity cases, however, and California has expressly rejected federal limits on contingency multipliers in anti-SLAPP cases.  *See* Mot. at 17 n.6 (citing *Mangold v. Cal. Public Utils. Comm'n*, 67 F.3d 1470, 1478–79 (9th Cir. 1995); *Ketchum v. Moses*, 24 Cal. 4th 1122, 1136–37 (2001)).

Plaintiffs further argue that O'Melveny bore "no risk" because anti-SLAPP fee-shifting is mandatory—ignoring the risk that O'Melveny might not succeed in having Plaintiffs' claims stricken.[11]  *See* Opp. at 21; *Ketchum*, 24 Cal. 4th at 1136.  O'Melveny's investment became all the more risky as it was forced to respond to more and more filings before Mr. Perens's anti-SLAPP motion was heard.  *Ketchum* also rejects Plaintiffs' alternative contention that no multiplier should apply because Mr. Perens's counsel, not Mr. Perens, bore the risk of nonpayment.  *See* Opp. at 21.  The argument that the anti-SLAPP law is meant "to protect the client, not the attorney" presupposes that those two purposes are independent of one another.  *See id.*  The purpose of a contingency multiplier is to compensate defense attorneys for assuming risk in anti-SLAPP cases—which directly benefits anti-SLAPP defendants by enabling them to persuade quality counsel to take on their cases.  *Ketchum*, 24 Cal. 4th at 1132, 1136–37.

Plaintiffs' argument that O'Melveny's hourly rates are too high and its resources too significant to warrant a multiplier is fundamentally at odds with the goal of encouraging quality representation, especially when it may otherwise be unaffordable for the defendant.[12]  *See id.* at

---

[11] Plaintiffs also ignore that the fees calculation accounted for the mandatory nature of anti-SLAPP fee-shifting by excluding "fees on fees" from the multiplier's application.  *See* Mot. at 18.

[12] To the extent Plaintiffs argue that Mr. Perens's fee request is too large for a multiplier, that is an irrelevant and impermissible factor.  *See Lunada Biomedical*, 230 Cal. App. 4th at 488.

DEFENDANT'S REPLY ISO MOTION FOR
MANDATORY FEES & COSTS
3:17-CV-04002-LB

1136; Opp. at 21.  O'Melveny's rates are a reflection of its quality, and Mr. Perens neither had the

resources to pay the firm's full rates nor met the firm's criteria for pro bono assistance.  *See, e.g.*,

Covey Decl. ¶ 9; Drummond Hansen Decl. ¶ 7; Mot. at 14–16.  The alternative fee arrangement

that Mr. Perens and O'Melveny reached is precisely the type of agreement contingency

multipliers are meant to encourage.

The Court therefore should apply the 1.5 multiplier here.

## VI.   ENFORCEMENT OF THE MANDATORY FEES AWARD SHOULD NOT BE STAYED PENDING APPEAL

The Court should reject Plaintiffs' unadorned request that the Court stay execution of its

order awarding fees pending a determination from the Ninth Circuit.  Throughout the course of

this litigation, Plaintiffs have engaged in a pattern of behavior that dramatically increased Mr.

Perens's litigation fees.  *See* Mot. at 11–13.  It is time for Plaintiffs to justly compensate for their

actions and should not be permitted to continue to force Mr. Perens to accrue fees with impunity.

## VII.  CONCLUSION

Plaintiffs do not dispute that Mr. Perens is entitled to mandatory attorneys' fees pursuant

to California's anti-SLAPP statute, having won dismissal of all four causes of action with

prejudice.  Moreover, Mr. Perens has demonstrated, and Plaintiffs have failed to convincingly

rebut, that the total requested amount is fully recoverable.  Mr. Perens therefore respectfully

requests that the Court enter a total award granting Mr. Perens his total fees requested for

mandatory fees and costs, including additional fees incurred since his motion was filed (*see*

Drummond Hansen Reply Decl. Ex. D), and that the Court apply the 1.5 multiplier to the

requested fees.

Dated:  March 22, 2018

MELODY DRUMMOND HANSEN
HEATHER J. MEEKER
CARA L. GAGLIANO
O'MELVENY & MYERS LLP


By:      _/s/ Melody Drummond Hansen_
                    Melody Drummond Hansen
Attorneys for Defendant
Bruce Perens

DEFENDANT'S REPLY ISO MOTION FOR
MANDATORY FEES & COSTS
3:17-CV-04002-LB